2023-1970

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

PERCIPIENT.AI, INC.,
*Plaintiff-Appellant,*

*v.*

UNITED STATES, CACI INC.-FEDERAL,
*Defendants-Appellees.*

---

Appeal from the United States Court of Federal Claims
in Case No. 1:23-cv-28-EGB, Senior Judge Eric G. Bruggink

---

# BRIEF FOR DEFENDANT-APPELLEE UNITED STATES

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CORINNE A. NIOSI
Assistant Director

RETA E. BEZAK
Senior Trial Counsel
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 305-0041

*Attorneys for the United States*

July 24, 2023

# TABLE OF CONTENTS


**CASES** **PAGE(S)**

TABLE OF AUTHORITIES ........ iii

STATEMENT OF RELATED CASES ........ vi

STATEMENT OF THE ISSUES ........ 1

STATEMENT OF THE CASE SETTING FORTH RELEVANT FACTS ........ 2

I. Nature Of The Case ........ 2

II. Statement Of Facts ........ 3

A. NGA's SAFFIRE Procurement ........ 3

B. Percipient's Post-Award Efforts To Promote Its Product ........ 7

III. Percipient's Bid Protest And Proceedings Before The Court Of Federal Claims ........ 7

SUMMARY OF THE ARGUMENT ........ 11

ARGUMENT ........ 12

I. Standard Of Review ........ 12

II. Percipient's Protest Falls Within The FASA Task Order Bar ........ 13

A. The FASA Task Order Bar Divests The Court of Federal Claims Of Jurisdiction To Consider Bid Protests In Connection With The Issuance Of A Task Order ........ 13

B. Percipient's Protest Is In Connection With The Issuance Of Task Order 1 ........ 14

C. Nothing About 10 U.S.C. § 3453 Abrogates The Limitations Prescribed By The Task Order Bar ........ 22

D. Task Order 1 Did Not Exceed The Scope Of The SAFFIRE Contract ........ 28

III. Other Grounds Support Affirmance Of The Dismissal Of Percipient's Protest ........ 30

A. The Violations Of Statute That Percipient Alleges Are Not In Connection With A Procurement Or Proposed Procurement ........ 30

B. Even If Percipient's Complaint Alleged A Bid Protest Within The Jurisdiction Of The Court Of Federal Claims, Percipient Lacks Standing To Pursue It ........ 34

C. Percipient's Claim That NGA Unlawfully Delegated Government Authority To Its Contractor Is Untimely ........ 37

CONCLUSION ........ 39

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*22nd Cent. Techs., Inc. v. United States*,
157 Fed. Cl. 152 (2021), *aff'd*,
57 F.4th 993 (Fed. Cir. 2023)....................11

*22nd Cent. Techs., Inc. v. United States*,
57 F.4th 993 (Fed. Cir. 2023).................... 20, 21, 22, 25

*Anaheim Gardens v. United States*,
444 F.3d 1309 (Fed. Cir. 2006)....................12

*AT&T Commc'ns, Inc. v. Wiltel, Inc.*,
1 F.3d 1201 (Fed. Cir. 1993)....................31

*Blue & Gold Fleet, L.P. v. United States*,
492 F.3d 1308 (Fed. Cir. 2007).................... 29, 30, 37, 38

*CACI, Inc.-Federal v. United States*,
67 F.4th 1145, 1151 (Fed. Cir. 2023) .................... 9, 34, 35

*COMINT Systems Corp. v. United States*,
700 F.3d 1377 (Fed. Cir. 2012)....................38

*DataMill, Inc. v. United States*,
91 Fed. Cl 740 (2010) .................... 19, 20

*Distrib. Solutions, Inc. v. United States*,
539 F.3d 1340 (Fed. Cir. 2008)....................31

*Harmonia Holdings Grp., LLC v. United States*,
999 F.3d 1397 (Fed. Cir. 2021)....................12

*Hi-Tech Bed Sys., Corp. v. United States*,
97 Fed. Cl. 349 (2011) ....................32

*Info. Tech. & Applications Corp. v. United States*,
316 F.3d 1312 (Fed. Cir. 2003)....................36

*Int'l Genomics Consortium v. United States*,
104 Fed. Cl. 669 (2012) ....................................................................................31

*Labatt Food Serv., Inc. v. United States*,
577 F.3d 1375 (Fed. Cir. 2009)...........................................................................36

*McAfee, Inc. v. United States,*
111 Fed. Cl. 696 (2013) ................................................................................... 25

*MCI Telecomms. Corp. v. United States*,
878 F.2d 362 (Fed. Cir. 1989).............................................................................35

*Mission Essential Pers. v. United States*,
104 Fed. Cl. 170 (2012) ........................................................................ 10, 15, 21

*Mlinqs, LLC v. United States*,
No. 22-1351, 2023 WL 2366654 (Fed. Cl. Mar. 6, 2023)........................... 23, 24

*MORI Associates, Inc. v. United States,*
102 Fed. Cl. 503 (2011).............................................................................. 25, 26

*Rex Serv. Corp. v. United States*,
448 F.3d 1305 (Fed. Cir. 2006)...........................................................................35

*SRA Int'l, Inc. v United States*,
766 F.3d 1409 (Fed. Cir. 2014)................................................................... passim

*Weeks Marine, Inc. v. United States*,
575 F.3d 1352 (Fed. Cir. 2009)................................................................... 34, 35

*Wyandot Nation v. United States*,
858 F.3d 1392 (Fed. Cir. 2017)................................................................... 12, 34

**STATUTES**

10 U.S.C. § 2304c(e)(1).........................................................................................13

10 U.S.C. § 2304c(e)(2).........................................................................................14

10 U.S.C. § 3406(f)..................................................................................... 3, 9, 11, 21

10 U.S.C. § 3406(f)(1) .....11

10 U.S.C. § 3406(f)(2) .....10

10 U.S.C. § 3453 ..... passim

28 U.S.C. § 1491(b)(1) ..... passim

41 U.S.C. § 4106(f) ..... 14

**REGULATIONS**

12 C.F.R. § 366.12 .....23

12 C.F.R. § 366.14 .....23

48 C.F.R. § 52.244-6(b) .....6

FAR 9.503 .....23

FAR 52.244-6 ..... 6, 18, 33, 38

## STATEMENT OF RELATED CASES

No appeal from this civil action was previously before this or any other appellate court. Counsel is not aware of any case that is currently pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

23-1970

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

PERCIPIENT.AI, INC.,

Plaintiff-Appellant,

v.

UNITED STATES, CACI, INC.–FEDERAL,

Defendants-Appellees.

On Appeal from the United States Court of Federal Claims in No. 23-28C,
Senior Judge Eric G. Bruggink

**BRIEF FOR DEFENDANT-APPELLEE UNITED STATES**

## STATEMENT OF THE ISSUES

1. Whether the United States Court of Federal Claims correctly determined that it lacked jurisdiction over Percipient's bid protest because the protest was directly and causally related to the issuance of a task order.

2. Whether the Court of Federal Claims otherwise lacked jurisdiction over Percipient's protest because the protest challenged the administration of an awarded Government contract.

3. Whether, even if the Court of Federal Claims possessed jurisdiction over Percipient's protest, Percipient nevertheless lacked standing to pursue its claims because it was neither a bidder nor a proposed bidder and did not have a substantial chance of award.

4. Whether, even if the Court of Federal Claims possessed jurisdiction over Percipient's protest, certain of its claims challenge terms of the solicitation and are therefore untimely.

## STATEMENT OF THE CASE SETTING FORTH RELEVANT FACTS

### I. Nature Of The Case

Plaintiff-appellant, Percipient.ai, Inc. (Percipient), filed a bid protest in the Court of Federal Claims challenging, nearly two years after award, a contract on which Percipient did not bid. In its protest, Percipient alleged that the National Geospatial-Intelligence Agency (NGA) failed to ensure that its awardee, defendant-appellee CACI Inc.-Federal (CACI), considered commercial or nondevelopmental products as CACI created and implemented its solution as required by the SAFFIRE contract and Task Order 1 to that contract, purportedly in violation of 10 U.S.C. § 3453.

Percipient's protest challenges actions by the agency and CACI that were the direct result of the issuance of Task Order 1. The Court of Federal Claims therefore correctly concluded that it lacked jurisdiction over Percipient's protest in

accordance with the task order bar in the Federal Acquisition Streamlining Act (FASA), 10 U.S.C. § 3406(f).

Even if the task order bar did not divest the Court of Federal Claims of jurisdiction over Percipient's challenge to the task order (it did), alternative grounds would support the affirmance of the trial court's dismissal of Percipient's complaint. Percipient's protest is not "in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Percipient challenges NGA's administration of the SAFFIRE contract, not any acquisition-related decision. Moreover, Percipient is not an "interested party" and therefore lacks standing to raise any challenge to the SAFFIRE procurement. Finally, to the extent Percipient's claims challenge aspects of the solicitation, those claims are untimely and have been waived. For all of these reasons, the Court should affirm the trial court's dismissal of Percipient's bid protest complaint.

## II. Statement Of Facts

### A. NGA's SAFFIRE Procurement

NGA "is the lead federal agency for providing geospatial intelligence, operating under the oversight of the Department of Defense ('DOD'), the Director of National Intelligence ('DNI'), and Congress." Appx38. In January 2020, NGA issued a solicitation, referred to as SAFFIRE, to address its mission-critical need for sustaining and improving the agency's processes for obtaining and storing

visual intelligence data (referred to as Structured Observational Management (SOM)) and integrating those capabilities with Computer Vision (CV) processes, which allows the agency to utilize automated software to recognize, organize, and interpret the visual data. *See* Appx57; *see also* Appx570. The solicitation sought a single-award indefinite delivery/indefinite quantity (IDIQ) contract that would consist of multiple task orders, with a five-year ordering period. Appx784, Appx786; *see also* Appx38.

The solicitation contemplated that the SAFFIRE contract would consist of two primary components: (1) provision of "an enterprise repository backbone for storing, managing, and disseminating data," which is known as the "SOM Enterprise Repository" or "SER"; and (2) provision of "a flexible, user-facing computer vision system for analyzing, storing, organizing, and producing useful intelligence from the vast amounts of geospatial-intelligence data that NGA collects from satellites and other sources," referred to as the "CV System." Appx38; *see also* Appx570-571; Appx615-620. Per the terms of the solicitation, the contractor would provide a number of CV requirements: a suite of applications utilizing CV algorithms to analyze visual data; a processing framework to host the various applications; a repository for CV application output; and maintenance and training for the applications. Appx1281-1292. The contractor would also be required to provide a framework for integrating the CV applications and output "at

enterprise scale in NGA," ensuring the various analytical tools are integrated into the agency-wide (and even external) processes for discovering, storing, adjudicating, and utilizing visual data. Appx1284.

Task Order 1 was solicited and competed (and ultimately awarded) alongside the SAFFIRE contract. *See, e.g.*, Appx844, Appx854. Task Order 1 tasked the contractor with performing essentially all of the CV requirements in the contract, with the "initial focus" being on the transition of the existing SOM capabilities into a platform to be provided by the contractor and to bring NGA's existing CV application, WATCHMAN, into operational use. Appx851. In the mid-term, the focus of the task order would shift to "augmenting user capability . . . by leveraging the rapidly maturing commercial computer vision technology." *Id*. Finally, the "later focus" of the task order would be to "increase[e] the efficiency and effectiveness" of the deployed capability. Appx851. As part of the "mid-term" focus, Task Order 1 required the contractor to develop and deliver the Computer Vision suite of systems per the statement of requirements. Appx852. This would include developing and deploying a Computer Vision Integration environment that allows NGA and its partners to evaluate, train, configure, and deploy CV algorithms into the production framework. *Id.* On the whole, "[t]he Contractor shall provide the overall design of the SOM and CV framework to

seamlessly orchestrate the data flow management within the framework and with external systems." Appx852.

In addition, Task Order 1 required the contractor to "support the incorporation of COTS, GOTS, Open Source or custom software development as applicable to support system design, with Government approval." Appx846.[1] The task order further provided that, "[i]n the case of COTS, the Contractor shall support engineering, technical assessment, development, and other required activities that leverage COTS and other technology needed for SAFFIRE efforts." Appx846. Moreover, the base IDIQ contract expressly incorporated Federal Acquisition Regulation (FAR) 52.244-6. Appx857. That clause provides in relevant part: "To the maximum extent practicable, the Contractor shall incorporate, and require its subcontractors at all tiers to incorporate, commercial products, commercial services, or non-developmental items as components of items to be supplied under this contract." 48 C.F.R. § 52.244-6(b).

In January 2021, NGA awarded the SAFFIRE contract and Task Order 1 to CACI. Appx38. CACI has been performing under the contract since that time and is now in its third year of performance.

[1] "COTS" refers to commercial-off-the-shelf software and "GOTS" refers to Government-off-the-shelf software. These are products that have already be developed, are owned by a commercial company or the Government, respectively, and are ready to use.

### B. Percipient's Post-Award Efforts To Promote Its Product

Percipient did not respond to the agency's Requests for Information (RFIs), which preceded the issuance of the SAFFIRE solicitation, Appx571-573; nor did Percipient "bid for the SAFFIRE contract or challenge the SAFFIRE solicitation or award." Appx43. Instead, shortly after NGA awarded CACI the SAFFIRE contract, Percipient began contacting both NGA and CACI in an effort to promote its product, Mirage, for inclusion in CACI's system design. *See* Appx71-78. CACI evaluated Mirage in August 2021 but concluded that Mirage was not a good fit for inclusion in SAFFIRE. Appx967.[2]

## III. Percipient's Bid Protest And Proceedings Before The Court Of Federal Claims

Percipient filed a bid protest complaint in the Court of Federal Claims on January 9, 2023. Appx34. The complaint contained four counts: (1) that NGA violated its legal obligation under 10 U.S.C. § 3453 to ensure that its SAFFIRE contractor incorporated commercial or nondevelopmental products to the maximum extent practicable, Appx94-96; (2) that NGA violated its legal

[2] Percipient's brief identifies numerous facts and makes merits-based arguments that are not relevant to the jurisdictional issues raised in this appeal. We do not address any agreements that are not the subject of this appeal, such as the Other Transactional Authority agreement (awarded by a different program office) that predated the SAFFIRE solicitation or the bailment agreement that occurred during SAFFIRE's performance, but which is not part of the SAFFIRE procurement. We also do not address the sufficiency of the agency's or CACI's actions in connection with evaluation of commercial products.

obligation under 10 U.S.C. § 3453 to ensure that its contractor conducted market research and determined whether its needs could be met by commercial or nondevelopmental products, Appx96-98; (3) that NGA unlawfully delegated inherently governmental policymaking authority to CACI by permitting CACI to exercise its discretion in determining whether to utilize commercial or nondevelopmental products in crafting the SAFFIRE system design, Appx98-99; and (4) that NGA's and CACI's conduct was arbitrary and capricious because it resisted innovation and misled Percipient as to the agency's and CACI's strategy regarding SAFFIRE, Appx99-101.

The complaint sought declaratory and injunctive relief, asking the trial court to conclude that NGA violated various aspects of 10 U.S.C. § 3453, and seeking an order enjoining NGA from violating 10 U.S.C. § 3453. Appx102. It further requested that the trial court instruct NGA to ensure that CACI incorporate commercial products to the greatest extent practicable and conduct market research to that end. Appx102. In order to ensure those requirements were met, Percipient sought an order requiring NGA and CACI to conduct new evaluations of Mirage and offer Percipient an opportunity to address any finding that it is not practicable to incorporate Mirage into the SAFFIRE system design. Appx102.

The United States and CACI filed motions to dismiss Percipient's complaint, arguing that it did not fall within the bid protest jurisdiction of the Court

of Federal Claims. The motions presented a number of arguments, including that (1) the complaint challenged contract administration and as such was not in connection with a procurement; (2) the complaint was in connection with the issuance of a task order and was therefore barred by the Federal Acquisition Streamlining Act (FASA), 10 U.S.C. § 3406(f); (3) Percipient lacked standing to challenge the SAFFIRE procurement;[3] and (4) the complaint challenged aspects of the solicitation or the task order issued therewith and was therefore untimely.

In an opinion that the trial court later vacated in its entirety, the trial court denied the motions to dismiss, finding (1) that the protest alleged a statutory violation in connection with a procurement because Percipient alleged a violation of a procurement statute; (2) that the FASA task order bar did not apply because Task Order 1 was valued at over $25,000,000; (3) that Percipient had standing because § 3453 grants rights to companies who do not bid on a prime contract; and (4) that the protest was not untimely because nothing in the solicitation or Task Order 1 appeared to violate § 3453. Appx5-12.

Both the United States and CACI sought reconsideration of the trial court's ruling that the task order bar was not applicable. Appx1185-1198. As the parties

[3] The motions to dismiss were briefed before this Court's decision in *CACI, Inc.-Federal v. United States*, in which the Court indicated that the bid protest "interested party" inquiry is a question of statutory standing and is therefore not jurisdictional. 67 F.4th 1145, 1151 (Fed. Cir. 2023).

pointed out, the value exception to the task order bar grants only the Government Accountability Office (GAO) jurisdiction over any protest. *See* Appx1195-1196; *see also* 10 U.S.C. § 3406(f)(2). The value exception to the task order bar does not apply to the Court of Federal Claims. The trial court acknowledged its error, vacated its earlier opinion in full, and requested additional briefing on the task order bar issue. *See* Appx32.

After additional briefing and oral argument, the trial court dismissed Percipient's protest on the ground that it was in connection with the issuance of a task order (specifically, Task Order 1) and therefore that the FASA task order bar applied and removed the dispute from the court's jurisdiction. Appx26-27. The trial court explained, "Percipient allege[d] that – *after* the agency issued Task Order 1, which directed CACI to develop and deliver a computer vision system – the agency violated § 3453 because it failed to consider whether Percipient's product could meet those same requirements." Appx26. The court reasoned that, even if § 3453 requires an agency to consider commercial products *after* it issues a task order (an interpretation the court questioned), "that task order would be the 'direct and immediate cause' of the agency's statutory obligation to consider those commercial products." Appx26 (quoting *Mission Essential Pers. v. United States*, 104 Fed. Cl. 170, 178 (2012)). That is, "without the task order, the work that Percipient [challenged] would not be taking place and Percipient could not allege

this § 3453 violation." Appx27. Moreover, the trial court determined that NGA's "alleged procurement decision not to consider commercial products is not 'logically distinct' from its decision to procure that same computer system through a task order." Appx27 (quoting *22nd Century Techs., Inc. v. United States*, 157 Fed. Cl. 152, 157 (2021), *aff'd*, 57 F.4th 993 (Fed. Cir. 2023)). The protest was therefore "in connection with the issuance of" Task Order 1 and could not be pursued in the Court of Federal Claims. Appx27; 10 U.S.C. § 3406(f)(1).

This appeal followed.

## SUMMARY OF THE ARGUMENT

The Court should affirm the Court of Federal Claims' dismissal of Percipient's complaint for lack of subject-matter jurisdiction. The trial court correctly determined that Percipient's protest is directly and causally connected to the issuance of a task order and therefore barred by the task order bar in FASA, 10 U.S.C. § 3406(f).

Alternatively, the Court should affirm the trial court's dismissal of Percipient's protest on other threshold grounds that were fully briefed below but did not form the basis of the trial court's dismissal. First, Percipient's protest also falls outside the bid protest jurisdiction of the Court of Federal Claims because it challenges contract performance and administration activities. The Contract Disputes Act (CDA) governs challenges to contract performance and

administration, and Percipient cannot meet the CDA's jurisdictional requirements either.

Second, Percipient lacks standing to protest the procurement at issue in this case because it was neither an actual nor a prospective bidder on the procurement. Moreover, Percipient cannot demonstrate that, absent the alleged violations, it had a substantial chance of award. Thus, even if the Court of Federal Claims possessed jurisdiction over Percipient's protest, the protest must be dismissed for lack of standing.

## ARGUMENT

### I. Standard Of Review

"This court reviews Court of Federal Claims' decisions *de novo* for errors of law, and for clear error on findings of fact." *Anaheim Gardens v. United States*, 444 F.3d 1309, 1314 (Fed. Cir. 2006). Dismissals, both for lack of subject matter jurisdiction and for failure to state a claim, are reviewed *de novo*. *Id*.; *Harmonia Holdings Grp., LLC v. United States*, 999 F.3d 1397, 1401 (Fed. Cir. 2021). The Court can "affirm the Court of Federal Claims' dismissal on any ground supported by the record." *Wyandot Nation v. United States*, 858 F.3d 1392, 1397 (Fed. Cir. 2017).

## II. Percipient's Protest Falls Within The FASA Task Order Bar

Percipient's bid protest alleged that NGA failed to ensure that the agency's contract awardee, CACI, incorporated, to the greatest extent practicable, commercial products in developing the solution required under the SAFFIRE contract. Appx94-98. Because CACI's development of the SAFFIRE solution was predicated on the issuance of a task order, the trial court correctly concluded that FASA barred the court from considering the protest.

### A. The FASA Task Order Bar Divests The Court of Federal Claims Of Jurisdiction To Consider Bid Protests In Connection With The Issuance Of A Task Order

The Tucker Act confers upon the Court of Federal Claims "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). However, FASA provides that a "protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order," except where (1) a task order increases the "scope, period, or maximum value of the contract under which the [task] order is issued" or (2) the protest is "of an order valued in excess of $25,000,000." 10 U.S.C. § 2304c(e)(1). But Congress further directed that the Government Accountability Office will have "exclusive

jurisdiction" over protests of task order valued in excess of $25,000,000. 10 U.S.C. § 2304c(e)(2).

"The statutory language of FASA is clear and gives the court no room to exercise jurisdiction over claims made 'in connection with the issuance or proposed issuance of a task or delivery order.'" *SRA Int'l, Inc. v United States*, 766 F.3d 1409, 1413 (Fed. Cir. 2014) (quoting 41 U.S.C. § 4106(f), the civilian-contract version of FASA's ban on task-order protests). Indeed, this Court has recognized that FASA "effectively eliminates all judicial review for protests made in connection with a procurement designed as a task order – perhaps even in the event of an agency's egregious, or even criminal, conduct." *Id.*

B. Percipient's Protest Is In Connection With The Issuance Of Task Order 1

This Court has held that a direct and causal connection to the issuance of a task order is sufficient to bring a protest within the task order bar. In *SRA International*, the Court explained that a challenged organizational conflict of interest (OCI) waiver issued months after the award of a task order was "directly and causally connected to issuance" of the task order because it was necessary to go forward with performance of the task order. 766 F.3d at 1413. The Court in *SRA International* therefore concluded that the task order bar precluded the Court of Federal Claims from exercising jurisdiction over SRA's protest.

Here, applying that law, the trial court correctly reached the same conclusion. As the trial court explained, "Percipient's protest alleges that – *after* the agency issued Task Order 1, which directed CACI to develop and deliver a computer vision system – the agency violated §3453 because it failed to consider whether Percipient's product could meet those same requirements." Appx26. As such, although the trial court considered it "unclear whether section 3453 requires an agency to consider commercial products after it issues a task order," the trial court concluded that to the extent such obligation exists, "that would be the 'direct and immediate cause' of the agency's statutory obligation to consider [] commercial products." Appx26 (quoting *Mission Essential Pers. v. United States*, 104 Fed. Cl. 170, 178 (2012)). Put simply, "without the task order, the work that Percipient is challenging would not be taking place and Percipient could not allege this §3453 violation." Appx27.

The trial court did not err in reaching this conclusion. Task Order 1 required CACI to deliver the CV requirements called for in the SAFFIRE contract by, among other things, "augmenting user capability with automated detections of observations by leveraging the rapidly maturing commercial computer vision technology." Appx851. The task order then shifted focus to "increasing the efficiency and effectiveness of deployed capability through technology insertion and reuse of maturing enterprise services." Appx851. Task Order 1 further

required CACI to "support incorporation of COTS, GOTS, Open Source or custom software development as applicable to support system design, with Government approval." Appx853. In short, the task order required CACI to develop and sustain the SAFFIRE CV requirements, and it required CACI to consider commercial products in order to do so.[4] Therefore, as the trial court correctly concluded, the actions Percipient challenges – CACI's alleged decision to utilize developmental software over commercial products, and NGA's acquiescence to that decision – would not have occurred without the issuance of Task Order 1. Appx26-27.[5] That is, there is a direct and causal connection between the issuance of Task Order 1 and CACI's execution of that task order.

---

[4] Percipient makes oblique comments in several places in its brief suggesting that the task order contemplated or even required that the awardee (or perhaps even NGA) would need to initiate additional procurements to complete the task order. *See, e.g.*, Applnt. Br. at 2 ("The SAFFIRE contract and initial task order left open the extent to which NGA's system would be developed or acquired, and NGA stated following award that it intended to ensure meaningful evaluation and *procurement* of commercial and nondevelopmental products before allowing its contractor to develop."); 47 ("[T]he task order left open the extent to which commercial items would be procured to meet its requirements . . . ."); 49 ("Task Order 1 left open the question of whether and the extent to which the SAFFIRE CV System would be developed or *procured* as a commercial or nondevelopmental item[.]" (emphasis added)). To be clear, nothing in the SAFFIRE solicitation or Task Order 1 required or even discussed additional Government procurements. *See* Appx653-97, Appx846, Appx851-53, Appx1260, Appx1281-1292. We understand Percipient to be protesting the SAFFIRE procurement or contract, not some other unrealized Government procurement.

[5] As the record shows, CACI in fact evaluated Mirage but concluded that it was not a good fit for CACI's SAFFIRE solution. Appx967.

Moreover, that connection is undeniable. The issuance of Task Order 1 directly required CACI's design of the SAFFIRE solution which, according to Percipient, did not incorporate commercial products to the extent legally required. Moreover, if Percipient's allegations that NGA had an obligation to consider commercial products after issuance of the task order are correct, any such obligation only came about through the issuance of the task order. *See* Appx26.

Percipient challenges the trial court's conclusion by first arguing that "Congress did not bar all protests that relate to a task order or *work performed* under a task or delivery order." Corrected Confidential Br. of Pl.-App. Percipient.ai, Inc., ECF No. 20 (Applnt. Br.), at 29 (emphasis added); *see also id.* at 33 ("[T]he task order bar does not encompass protests of all statutory violations that relate in any way to performance under a task order." (internal citation omitted)). Indeed, Percipient cautions that, under the trial court's interpretation, purportedly "all protests challenging any statutory violation that follows a task order are prohibited by FASA." *Id.* at 28. Percipient's caution is a straw man. As demonstrated below, bid protests are not intended as a vehicle to challenge work performed under a task order, or a contract at all. Thus, legitimate protests challenging statutory violations that *follow* a task order – that is, that challenge

some procurement activity and not performance or administration of the task order – would be few and far between.[6]

Percipient's primary argument, however, is that "in connection with" narrowly describes a direct and causal connection between two things that are "mutually dependent." *Id.* at 30. Percipient argues that under this framework, its protest is not "in connection with" the issuance of a task order because "NGA's issuance of the task order did not depend on its subsequent violations to go forward." *Id.* This explanation makes little sense, even crediting Percipient's novel statutory interpretation. As the trial court here noted, an "alleged procurement decision not to consider commercial products is not 'logically distinct' from its decision to procure that same computer system through a task order." Appx27. In other words, a task order award without performance is an incomplete concept.

Moreover, Percipient's interpretation of the task order bar to require "mutual dependence" is inconsistent with many of the cases it cites, particularly because Percipient understands "mutual dependence" to require that the challenged action

---

[6] In any event, the agency incorporated FAR 52.244-6 into the base IDIQ contract and Task Order 1. Appx857. That clause mirrors the statutory commercial product preference by requiring the contractor to use commercial and nondevelopmental products to the maximum extent practicable. By incorporating FAR 52.244-6 into the contract, the agency not only complied with the commercial item preference expressed by § 3453, but inextricably tied Percipient's alleged cause of action to the contract itself.

"enable" the issuance of the task order, *see* Applnt. Br. at 31, 32, a limit this Court has never endorsed. Although Percipient relies on the Court of Federal Claims' decision in *DataMill, Inc. v. United States*, 91 Fed. Cl 740 (2010), Applnt. Br. at 30, this decision predates *SRA International*, in which this Court determined that the task order bar applies where a challenged action is "directly and causally connected to issuance" of a task order. 766 F.3d at 1413. Moreover, the court in *DataMill*, after reviewing the plain meaning of the relevant words, explained that "the phrase 'in connection with' references something designed to possess *a logical or sequential relationship to* or be bound up with or directly involved in something else." 91 Fed. Cl. at 756 (emphasis added). This understanding of the phrase "in connection with," which encompasses a protest of an action with a sequential relationship to the issuance of a task order, is consistent with the application of the bar to Percipient's protest. Similarly, as demonstrated above, the issuance of a task order is inextricably "bound up with" the subsequent performance of the task order requirements.

Indeed, the cases Percipient cites do not support its interpretation. Applnt. Br. at 30, 32. In *DataMill* itself, the challenged action was the Army's decision to acquire goods and services through a sole-source vehicle (via task order) rather than through a competitive procurement. 91 Fed. Cl. at 748-49. The Army's challenged decision did not "depend" on the issuance of the task order – the two

actions cannot therefore be said to be "mutually dependent" in the way Percipient understands that phrase. The court in *DataMill* explained that the protester, "in attempting to disengage the Army's decision to acquire goods or services through a noncompetitive procurement mechanism from the ultimate issuance of that mechanism . . . ignores the *logical, causal relationship* between the two events." *Id.* at 756 (emphasis added). In the same way, Percipient ignores the logical, causal relationship between the issuance of a task order and the performance of that task order.

Next, in attempting to distinguish this Court's decision in *22nd Century Technologies, Inc. v. United States*, Percipient flat-out ignores the heart of the dispute in that case. *See* Applnt. Br. at 32 (citing 57 F.4th 993 (Fed. Cir. 2023)). Although it is perhaps literally correct to say that, in that case, "the claim depended on the language of a task order, and the injury complained of was the cancellation of a task order and its reissuance to another awardee," Applnt. Br. at 32, this is far from an accurate synopsis. *22nd Century* involved a Small Business Administration (SBA) size determination that resulted in the termination of a task order initially awarded to the protester. 57 F.4th at 996-97. This Court affirmed the trial court's rejection of the protester's argument that an SBA "size determination is a 'discrete and separate' decision temporally distanced from the

Army's task order award to 22nd Century." *Id.* at 999. The SBA determination did not "enable" the Army's issuance of the task order.

Percipient likewise misstates the nature of *Mission Essential Personnel, LLC v. United States*, 104 Fed. Cl. 170 (2012), in which it claims obliquely that "the agency's challenged action was the 'direct and immediate cause' of the issued task order" and that "the challenged action enabled the issuance of the task order, and the protester's quarrel was with the issuance of the task order." Applnt. Br. at 32. *Mission Essential* involved a protest of a corrective action taken in response to a challenge to task order awards. 104 Fed. Cl. at 172-73. Although the protester attempted to characterize its protest as only challenging the corrective action and not the issuance of the task orders, the court determined, in part, that the corrective action was "intimately entwined" with the issuance of the task orders that the corrective action sought to fix. *Id.* at 179. It would be true to say that the corrective action depended on the task orders, but the task orders did not depend on the subsequent corrective action.

Simply, Percipient's attempts to narrow the application of 10 U.S.C. § 3406(f) conflict with this Court's precedent that provides that the task order bar "effectively eliminates all judicial review for protests made in connection with a procurement designated as a task order[.]" *SRA Int'l*, 766 F.3d at 1413. Percipient seeks to challenge the actions NGA and CACI have taken in accordance with the

requirements of Task Order 1. Percipient's protest is directly and causally connected to the issuance of Task Order 1, and the FASA task order bar precludes the Court of Federal Claims from exercising jurisdiction over the complaint.

### C. Nothing About 10 U.S.C. § 3453 Abrogates The Limitations Prescribed By The Task Order Bar

Percipient additionally argues that there is something unique about 10 U.S.C. § 3453 – the statute that Percipient alleges NGA violated – that removes it from the reach of the task order bar. Applnt. Br. at 37-46. This argument is foreclosed by this Court's prior decisions, and Percipient's attempt to read a right of action into that statute where none exists misconstrues the statute.

As an initial matter, this Court has explicitly held that, "[e]ven if the protestor points to an alleged violation of statute or regulation . . . the court still has no jurisdiction to hear the case if the protest is in connection with the issuance of a task order." *SRA Int'l*, 766 F.3d at 1413; *see also 22nd Century*, 57 F.4th at 999 n.3 (explaining that protester's argument that the task order bar "does not necessarily reach bid protests brought under the third prong of [28 U.S.C.] § 1491(b)(1)" is "foreclosed by *SRA International*"). This binding precedent should end the matter.

Despite this, Percipient attempts to avoid the consequence of the task order bar by arguing that because 10 U.S.C. § 3453 is not specifically tailored to task orders, any alleged violation of section 3453 cannot be connected to the issuance

of a task order. Applnt. Br. 37-39 ("[The obligations imposed by the statute] do not cease when a task order is issued, and they are not tied to the issuance of task orders."). Percipient's argument is riddled with logical and legal fallacies. First, many (if not most) statutes that form the basis of a protest under the third prong of 28 U.S.C. § 1491(b)(1) do not direct themselves to task orders. *SRA International* provides a good illustration of the error in Percipient's analysis. In *SRA*, the protester alleged that the agency's OCI waiver violated certain regulations governing OCIs. 766 F.3d at 1411. OCI determinations and waivers are governed by a host of regulations, none of which invoke task orders. *See, e.g.*, *id.* (citing 12 C.F.R. § 366.12, 12 C.F.R. § 366.14, FAR 9.503). But the operative question was not whether the regulation at issue concerned itself with task orders – rather, the question was whether the waiver itself, lawful or not, was made in connection with the issuance of a task order. *SRA*, 766 F.3d at 1413. By Percipient's own argument, the obligations of § 3453 extend throughout all phases of a procurement – presumably that includes the issuance of task orders.

The cases Percipient cites demonstrate that 10 U.S.C. § 3453 does not and should not be treated differently from any other statute that forms the basis of a bid protest. First, Percipient leans heavily on *Mlinqs*, an unreported Court of Federal Claims decision in which the protester alleged, among other things, that the Air Force failed to conduct market research as required by 10 U.S.C. § 3453 prior to

soliciting a developmental product under an existing IDIQ contract vehicle. *Mlinqs, LLC v. United States*, No. 22-1351, 2023 WL 2366654 (Fed. Cl. Mar. 6, 2023); *see* Applnt. Br. at 39-40. In the trial court's analysis of the applicability of the task order bar, the court made almost no mention of the commercial preference statute. Rather, it extensively considered other cases addressing the task order bar and determined that the challenged actions did not "necessarily result[] in a task order, so the FASA task order bar is not applicable." *Mlinqs*, 2023 WL 2366654 at *15. Contrary to the implication of Percipient's argument, *see* Applnt. Br. at 39, nowhere in the *Mlinqs* decision did the court determine that challenges to § 3453 override the task order bar.

Moreover, the facts of *Mlinqs* are distinguishable from Percipient's claims. The protester in *Mlinqs* challenged the Air Force's pre-solicitation market research. 2023 WL 2366654 at *4-*5. Here, Percipient is challenging actions that occurred – or that it contends should have occurred – subsequent to the issuance of a task order. There can be no argument here that the agency's actions would not result in a task order and thus there is no basis to conclude the agency's actions and the issuance of the task order were logically distinct.

Percipient next points to a group of cases that it claims reflect "challenges to similar types of violations" where the trial court concluded that the task order bar did not apply. Applnt. Br. at 40-42 (discussing protests to software standardization

decisions that predated selection of a contract vehicle and small business set-aside decisions). Again, Percipient attempts to analogize its claims to decisions involving challenges to actions that *preceded the selection of a task order vehicle*, and its analogies therefore suffer from the same logical gap as with *Mlinqs*. Finally, all but one of the cases Percipient identifies predate this Court's decision in *SRA*.

For example, in *McAfee, Inc. v. United States*, the Court of Federal Claims considered a protester's challenge to an Air Force decision to utilize a single brand of network security software. 111 Fed. Cl. 696, 706 (2013). The court reasoned that, although a delivery order implemented the agency's decision to utilize a single brand of software, the decision itself predated that delivery order and was "not tied to any single solicitation or delivery order, but encompasses the whole of the Air Force's procurement of a new network security structure." *Id.* at 707. As such, not only did the challenged action precede the issuance of the delivery order, the court found that it was not directed at any particular procurement.[7]

In *MORI Associates, Inc. v. United States*, the trial court analyzed the applicability of the task order bar to a protest challenging the agency's failure to conduct a Rule of Two analysis to determine whether the procurement (a multiple-

[7] The trial court also seemed to suggest that a protest brought under the third prong of § 1491(b)(1) is not subject to the task order bar. *McAfee*, 111 Fed. Cl. at 707-08. This Court has rejected that position. *22nd Century*, 57 F.4th at 999 n.3.

award IDIQ) should be set aside for small businesses. 102 Fed. Cl. 503 (2011). After significant discussion of the role of the Rule of Two analysis in the acquisition process, the court determined that the "procurement [] which this Rule of Two protest concerns, is a 'stage of the process of acquiring property or services' that falls after the establishment of the particular agency needs, but before the choice of the vehicle to satisfy these needs," and that "[t]his is a logically distinct step from the issuance or proposed issuance of task orders, which presupposes the selection of a multiple award task order contract vehicle to begin with." *Id.* at 533-34 (internal citations omitted). The court concluded that the Rule of Two analysis was not in connection with the issuance of a task order because, "at this stage an agency could just as well choose not to go down the task order road as to follow it[.]" *Id.* at 534. That is, not only was the analysis "logically distinct" from the issuance of the task order, it was unconnected to any particular solicitation at all.

To the extent the Court of Federal Claims was correct in its analyses in these cases, typically concluding that the task order bar did not apply because the challenged actions could have led to the selection of any number of contract vehicles, this is simply not the posture of Percipient's protest. The challenged actions here came after the agency's decision to utilize an IDIQ contract, after award of that contract, and in accordance with a task order issued to carry out the

contract requirements. They are not logically distinct from the issuance of the task order.

Finally, Percipient suggests that the Court carve out an exception for protests alleging violations of § 3453 because to allow application of the task order bar would allegedly thwart the purpose of § 3453 by rendering enforcement meaningless. Applnt. Br. at 42-45. This argument is not based on the text of either statute, but seeks to read into § 3453 an implicit right of action for any and all companies who have a product they want the Government to consider using. Section 3453 contains no such right of action, nor does it in any way purport to alter the bid protest jurisdiction of the Court of Federal Claims. Indeed, acceptance of Percipient's position would dramatically expand the bid protest jurisdiction of the Court of Federal Claims. Pursuant to Percipient's interpretation, there would be no barrier to *any* company that sells *any* commercial item filing a bid protest based on § 3453 at any point in the life of a contract, regardless of whether a task order was being challenged or even whether a company submitted a proposal in response to a solicitation or otherwise timely challenged the solicitation.

Percipient's argument also ignores the ways in which a protest based on § 3453 would not run afoul of the task order bar. For example, a protest alleging that an agency failed to conduct adequate market research or consider commercial

options prior to issuing a competitive procurement, even for an IDIQ contract, would not implicate the task order bar.

In sum, nothing about § 3453 removes allegations of its violation from the effect of the task order bar. NGA's administration of, and CACI's performance under, Task Order 1 of the SAFFIRE contract are in connection with the issuance of that task order, and therefore are excluded from the jurisdiction of the Court of Federal Claims pursuant to FASA.

D. Task Order 1 Did Not Exceed The Scope Of The SAFFIRE Contract

Percipient also argues that *if* the trial court interpreted Task Order 1 to *require* CACI to *develop* the CV System requirements as opposed to utilizing nondevelopmental products in its design, *id.* at 49, then Task Order 1 exceeds the scope of the SAFFIRE contract and the FASA task order bar would not apply. Applnt. Br. at 49-50. The trial court described Task Order 1 as "direct[ing] CACI to develop and deliver a computer vision system[.]" Appx26. But nothing about this one sentence suggests that the trial court concluded that the Task Order required CACI's development of original software rather than the possibility of CACI incorporating commercial elements into its solution. The trial court's language was taken almost directly from Task Order 1 itself, which, in outlining the overarching progression of the task order requirements, stated that, "[u]pon completion of the SER & SDP, the Contractor shall develop and deliver the

Computer Vision (CV) suite of systems that comprise the CV Processing (CVP) platform and CV Integration (CVI) platform per the Statement of Requirements (SOR)." Appx861.

As Percipient has repeatedly stated, it understood Task Order 1 to have "left open" the extent to which CACI was to utilize commercial, nondevelopmental, and developmental (that is, original CACI-created) products in crafting the SAFFIRE system design. *See* Applnt. Br. at 24, 47. The use of the term "develop" in the synopsis of the Task Order 1 requirements referred to the overall compilation of that system design – that is, CACI was to "come up with" or "put together" the CV systems. No one – not the trial court, not Percipient, not the Government – understood, or has argued, that Task Order 1 required CACI to develop its own software to meet the SAFFIRE CV requirements.

As such, Percipient's argument that any such task order would exceed the scope of the SAFFIRE contract and would therefore be excepted from the task order bar is counterfactual. Moreover, to the extent Percipient does contend that the task order exceeded the scope of the contract because it required the awardee to develop custom software without considering commercial or nondevelopmental products, that claim would be untimely under *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007), since it is derived from the language

of the task order itself, which was issued in conjunction with the SAFFIRE solicitation.[8]

## III. Other Grounds Support Affirmance Of The Dismissal Of Percipient's Protest

Even if the task order bar does not preclude Percipient's protest, the protest nevertheless falls outside the bid protest jurisdiction of the Court of Federal Claims, 28 U.S.C. § 1491(b)(1), because the protest is not in connection with a Government procurement. Moreover, even if the protest falls within the bid protest jurisdiction of the Court of Federal Claims, Percipient lacks standing to bring it. Finally, any challenge to the terms of the solicitation or Task Order 1 is untimely.

### A. The Violations Of Statute That Percipient Alleges Are Not In Connection With A Procurement Or Proposed Procurement

The Court of Federal Claims has "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). This Court has

[8] As discussed in greater detail below, this Court has held that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Blue & Gold*, 492 F.3d at 1313.

stated that the phrase "'in connection with a procurement or a proposed procurement[]' by definition involves a connection with any stage of the [F]ederal contracting acquisition process, including 'the process for determining a need for property and services.'" *Distrib. Solutions, Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008).

The *Distributed Solutions* opinion makes clear, however, that the broad definition of "in connection with a procurement or a proposed procurement" was not intended to extend the trial court's bid protest jurisdiction into the administration or performance of contracts that are past the procurement stage (*i.e.*, determination of needs, solicitation, source selection, and award). Rather, referring specifically to established precedent, the Court confirmed that it "was certainly correct that adding work to an existing contract that is clearly within the scope of the contract does not raise a viable protest under § 1491(b)(1)." *Id.* at 1346 (citing *AT&T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d 1201 (Fed. Cir. 1993)). Thus, the administration of an awarded contract is not part of the "federal contracting acquisition process." *See Distrib. Sol.*, 539 F.3d at 1346; *see also Int'l Genomics Consortium v. United States*, 104 Fed. Cl. 669, 678 (2012) (concluding that a challenge to the agency's decision not to exercise contract options does not fall within the court's bid protest jurisdiction but rather must be brought, if at all, pursuant to the CDA).

In this case, Percipient's complaint is aimed at NGA's administration – and CACI's performance – of an existing contract to which Percipient is not a party. *See, e.g.*, Appx39 ("NGA has recently made clear that it is permitting its contractor CACI to develop new software in an uncertain and expensive effort to meet a substantial part, if not all, of SAFFIRE's CV System requirements"); Appx95 ("Percipient has specifically requested on several occasions that NGA and SAFFIRE's contractor evaluate Mirage for integration into the SAFFIRE procurement"); Applnt. Br. at 34 ("[The complaint's] description of potential relief . . . makes clear that Percipient's grievance is . . . with violations by NGA that occurred over the course of [] performance."). The acquisition process concluded more than two years ago.[9] Percipient is alleging that NGA has failed to ensure that its contractor has comported with Federal law in fulfilling the terms of the contract. That is not an allegation about a violation of a statute or regulation in connection with a Government procurement and thus it does do not fall within the bid protest jurisdiction of the Court of Federal Claims. *See, e.g.*, *Hi-Tech Bed Sys., Corp. v.*

[9] In an effort to cover up this glaring deficiency in its protest, Percipient contends that "[t]he SAFFIRE procurement is ongoing and years from completion." Appx94. What Percipient means is that the IDIQ contract has been awarded and the performance period is under way. *Id.* (explaining that SAFFIRE "is an [IDIQ] contract that NGA awarded to its contractor in or about January 2021"). To the extent that there is ongoing acquisition activity, it is in the form of the issuance of task orders and, as demonstrated above, not subject to protests.

*United States*, 97 Fed. Cl. 349, 353 (2011) (concluding protests challenging agency's method of administering its contracts was not "in connection with" a procurement because the procurement phase was over and the contracts were in the administration phase).

Percipient cannot have it both ways. If its protest is not in connection with the issuance of a task order as it asserts, then it is not in connection with a procurement. The only arguable "procurement" actions that can occur after issuance of an IDIQ contract are the issuance of a task order and the acquisition-related decisions that are connected to the issuance of that task order. Everything else is contract administration (by the Government) and contract performance (by the contractor-awardee).

Moreover, as noted above, the contract included FAR 52.244-6, which mirrors § 3453. Thus, because Percipient is alleging that CACI's actions violate this statute as incorporated into the contract, Percipient is challenging to the adequacy of CACI's adherence to the contract terms (i.e., its performance), which is inextricably linked to NGA's administration of the contract. Applnt. Br. at 9 (acknowledging that the SAFFIRE solicitation required the contractor, to the maximum extent practicable, to incorporate commercial and nondevelopmental products). Contract performance – and the agency's administration thereof – are not part of the acquisition process, and thus not subject to bid protests.

### B. Even If Percipient's Complaint Alleged A Bid Protest Within The Jurisdiction Of The Court Of Federal Claims, Percipient Lacks Standing To Pursue It

Percipient's complaint alleges statutory and regulatory violations in connection with NGA's SAFFIRE contract. Even if such alleged violations could form the basis of a bid protest – which they cannot – Percipient lacks standing to raise them because Percipient was not an actual or prospective bidder on the SAFFIRE procurement.

Bid protest standing "is framed by 28 U.S.C. § 1491(b)(1), which . . . imposes more stringent standing requirements than Article III." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009).[10] To have standing under 28 U.S.C. § 1491(b)(1), a litigant must be an "interested party." 28 U.S.C. § 1491(b)(1). This Court has "interpreted the statutory language 'interested party' to be an 'actual or prospective bidder[] or offeror[] whose direct economic interest would be affected by the award of the contract or by failure to award the

[10] As stated previously, the parties briefed the standing issue below prior to this Court's decision in *CACI, Inc.-Federal v. United States*, in which the Court concluded that the bid protest "interested party" inquiry is a question of statutory standing and is therefore not jurisdictional. 67 F.4th 1145, 1151 (Fed. Cir. 2023). The briefing at the trial court therefore discussed bid protest standing as an issue of jurisdiction. Although we acknowledge that the Court's decision in *CACI* requires questions of jurisdiction to be resolved prior to challenges to a party's interested party status, the Court can "affirm the Court of Federal Claims' dismissal on any ground supported by the record." *Wyandot Nation*, 858 F.3d at 1397. The record before the trial court demonstrates that Percipient is not an interested party.

contract.'" *CACI, Inc.-Federal v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023) (quoting *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006)). Thus, in order to have standing to bring a bid protest pursuant to § 1491(b)(1), a protester "is required to establish that it (1) is an actual or prospective bidder and (2) possesses the requisite direct economic interest." *Weeks Marine*, 575 F.3d at 1359 (quotation and modification notation omitted).

For the first factor, a protester is an actual bidder if it submitted an offer in response to the relevant solicitation. *See Rex Serv.*, 448 F.3d at 1307 ("[the protester] did not bid, and therefore, it is not an 'actual bidder.'"). Alternatively, a protester is a prospective bidder when the contractor expects to submit an offer prior to the closing date of the solicitation. *MCI Telecomms. Corp. v. United States*, 878 F.2d 362, 365 (Fed. Cir. 1989). "[T]he opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends." *Id.*; *Rex Serv.*, 448 F.3d at 1307. Thus, when a contractor could have submitted an offer, but did not, the Court will not consider the offeror to be a prospective bidder. *See MCI Telecomms.*, 878 F.2d at 365 ("After the date for submission of the proposals has passed, however, the would-be protester can no longer realistically expect to submit a bid on the proposed contract, and, therefore, cannot achieve prospective bidderhood with regard to the original solicitation."); *see also Rex Serv.*, 448 F.3d

at 1308 ("because [the protester] could have bid, but chose not to, it cannot be considered a prospective bidder").

To satisfy the second prong, the "direct economic interest" requirement, in a post-award protest, a plaintiff "must show that there was a substantial chance it would have received the contract award but for the alleged error in the procurement process." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). A contractor that has failed to submit an offer has no "substantial chance" of award and thus does not have an economic interest sufficient to confer standing. *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1381 (Fed. Cir. 2009).

Percipient cannot meet either factor of the interested party inquiry to challenge the SAFFIRE procurement. Percipient readily admits that it did not submit an offer in response to the SAFFIRE solicitation. Applnt. Br. at 10 ("Percipient did not bid on the SAFFIRE contract both because it could not meet the SER component and because NGA had represented that it was committed to integrating commercial technology into SAFFIRE."); *see also* Appx43 ("Percipient thus did not bid for the SAFFIRE contract or challenge the SAFFIRE solicitation or award."). It was therefore not an actual or prospective bidder, which is fatal to any challenge to the SAFFIRE procurement. Moreover, because it never submitted an offer on the solicitation, Percipient has not alleged (nor could it prove) that it

had a substantial chance of winning the SAFFIRE contract award. Percipient therefore lacks standing to pursue its protest of the SAFFIRE contract.

Thus, even if the Court concludes that the trial court had jurisdiction to consider Percipient's protest, the Court should nevertheless affirm the trial court's dismissal of the protest on the ground that Percipient is not an interested party.

### C. Percipient's Claim That NGA Unlawfully Delegated Government Authority To Its Contractor Is Untimely

Finally, to the extent that Percipient alleges that NGA permitted CACI to determine whether to utilize commercial or developmental products to create the SAFFIRE solution and, in doing so, unlawfully delegated inherently governmental functions, Appx98-99, such a claim would be an untimely challenge to the terms of the SAFFIRE solicitation. Accordingly, Percipient may not raise such a challenge years after contract award, even if Percipient had standing to do so, which it does not.[11]

It is well settled that, under *Blue & Gold Fleet, L.P. v. United States*, "a party who has the opportunity to object to the terms of a government solicitation

---

[11] Percipient argued below that this claim does not rely on a defect in the solicitation but instead identifies decisions NGA made after award regarding how CACI was to fulfill the contract requirements. Appx239-240. If that were true, this claim would fail for the reasons previously addressed in this brief – that is, it would be barred by the FASA task order bar or, alternatively, would not fall within the bid protest jurisdiction of the Court of Federal Claims because it contests contract administration activities.

containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Blue & Gold*, 492 F.3d at 1313; *see also COMINT Systems Corp. v. United States*, 700 F.3d 1377, 1382 (Fed. Cir. 2012).

Here, the SAFFIRE solicitation required offerors to submit as part of their proposal "a process to identify, evaluate and implement opportunities from the Government and commercial industry as part of each planning increment to satisfy requirements faster, reduce or avoid cost and increase system performance[.]" Appx844. That is, the solicitation explicitly contemplated that the awardee would be required to have a process in place to determine whether commercial products could be incorporated into its solution, or whether original software development was necessary. If Percipient believed that the contract term allowing the contractor to consider both commercial products and original software development was an unlawful delegation of governmental functions, the time to protest was prior to the close of bidding. *Blue & Gold*, 492 F.3d at 1313.[12] It cannot challenge an alleged error in the patent terms of the solicitation or Task Order 1 two years after award.

[12] Moreover, the agency did not "delegate authority," but contractually required its contractor to use commercial products to the maximum extent practicable by including FAR 52.244-6. That clause was vetted through and adopted by the FAR Council so that agencies could comply with 10 U.S.C. § 3453. It was not an unlawful delegation of authority to include such a FAR clause in the contract.

## CONCLUSION

For these reasons, we respectfully request that the Court affirm the Court of Federal Claims' dismissal of Percipient's bid protest complaint.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Corinne A. Niosi
CORINNE A. NIOSI
Assistant Director

/s/ Reta E. Bezak
RETA E. BEZAK
Senior Trial Counsel
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 305-0041
Reta.E.Bezak@usdoj.gov

July 24, 2023

*Attorneys for the United States*

CERTIFICATE OF COMPLIANCE
PURSUANT TO FED. R. APP. P. 32(g)(1)

This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1). The brief contains 9993 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

July 24, 2023

/s/ Reta E. Bezak
RETA E. BEZAK

*Attorney for the United States*