No. 23-1970

# United States Court of Appeals for the Federal Circuit

PERCIPIENT.AI, INC.,

*Plaintiff-Appellant*

v.

UNITED STATES OF AMERICA, CACI, INC.-FEDERAL

*Defendants-Appellees*

Appeal from the United States Court of Claims
No. 1:23-cv-00028-EGB
Senior Judge Eric G. Bruggink

**REPLY BRIEF OF PLAINTIFF-APPELLANT PERCIPIENT.AI, INC.**

Hamish P.M. Hume
Samuel C. Kaplan
Eric J. Maurer
Gina A. Rossman
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727 (t)
(202) 237-6131 (f)
hhume@bsfllp.com
skaplan@bsfllp.com
emaurer@bsfllp.com
grossman@bsfllp.com

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

ARGUMENT ..............................................................................................5

I. The Task-Order Bar Does Not Apply ......................................................5

A. Defendants' "But-For" Test for the Task-Order Bar Is Inconsistent with the Text and Intent of FASA. ...............................5

B. Defendants Ignore Percipient's Discussion of FASA's Structure, Legislative History, and Purpose. ...................................8

C. Federal Circuit and CFC Precedent Are Inconsistent with Defendants' Expansive Application of the Task-Order Bar. ............8

D. Defendants Mischaracterize and Ignore the Complaint's Allegations. .........................................................................14

E. Defendants' Position Would Eviscerate Enforcement of 10 U.S.C. § 3453 and Thereby Contradict Congress' Intent In Enacting Those Provisions. ..........................................................18

F. Defendants' Other Merits Arguments Are Irrelevant and Unsound Even as They Further Confirm That the Protest Is Not in Connection with the Issuance of a Task Order....................19

II. Defendants' Alternative Grounds for Upholding the Dismissal Misapply the Tucker Act and this Court's Precedent. ..............................22

A. The CFC Has Jurisdiction Because Percipient Alleges Statutory and Regulatory Violations "In Connection with a Procurement or a Proposed Procurement." ..................................23

B. Percipient Has Standing. ............................................................27

C. The Government's Challenge to Count Three of the Complaint Fails. .......................................................................30

CONCLUSION .........................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Akira Techs., Inc. v. United States*, 145 Fed. Cl. 101 (2019) ..................................13

*AT&T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d 1201 (Fed.Cir.1993).........................25

*CCL, Inc. v. United States*, 39 Fed. Cl. 780 (1997) ................................................29

*DataMill, Inc. v. United States*, 91 Fed. Cl. 740 (2010) .........................................12

*Distributed Sols. v. United States*, 539 F.3d 1340 (Fed. Cir. 2008) ................ passim

*Distributed Sols., Inc. v. United States*, 76 Fed. Cl. 524 (2007), *rev'd*, 539 F.3d 1340 (Fed. Cir. 2008) ..................................................................................26

*Electra-Med. Corp. v. United States*, 140 Fed. Cl. 94 (2018), *aff'd*, 791 F. App'x 179 (Fed. Cir. 2019) ..........................................................................29

*Elmendorf Support Servs. Joint Venture v. United States*, 105 Fed. Cl. 203 (2012) ..............................................................................................................29

*Global Computer Enters., Inc. v. United States*, 88 Fed. Cl. 350 (2009). 6, 7, 11, 12

*Harmonia Holdings Grp., LLC v. United States*, 156 Fed. Cl. 238 (2021).............13

*Hi-Tech Bed Sys., Corp. v. United States*, 97 Fed. Cl. 349 (2011)..........................26

*Info. Tech. & Applications v. United States*, 316 F.3d 1312 (Fed. Cir. 2003) ........28

*Innovative Mgmt. Concepts, Inc. v. United States*, 119 Fed. Cl. 240 (2014) ..........13

*Insap Servs., Inc. v. United States*, 145 Fed. Cl. 653 (2019) ..................................13

*Int'l Genomics Consortium v. United States*, 104 Fed. Cl. 669 (2012)...................27

*Kellogg Brown & Root Services, Inc. v. United States*, 117 Fed. Cl. 764 (2014) ..............................................................................................................27

*L-3 Commc'ns EOTech, Inc. v. United States*, 85 Fed. Cl. 667 (2009)...................29

*Mission Essential Pers., LLC v. United States*, 104 Fed. Cl. 170 (2012)......... 11, 13

*mLINQS, LLC v. United States*, No. 22-1351, 2023 WL 2366654 (Fed. Cl.

Mar. 6, 2023) ........ 13, 21

*RAMCOR Servs. Group v. United States*, 185 F.3d 1286 (Fed. Cir. 1999) ...... 25, 28

*SEKRI, Inc. v. United States*, 34 F.4th 1063 (Fed. Cir. 2022) ........ 29

*Splane v. West*, 216 F.3d 1058 (Fed. Cir. 2000) ........ 6

*SRA Int'l, Inc. v. United States*, 766 F.3d 1409 (Fed. Cir. 2014) ........ 3, 8, 9

*Unisys Corp. v. United States*, 90 Fed. Cl. 510 (2009) ........ 11, 24

**Statutes**

10 U.S.C. § 3406(f)(1) ........ 1, 2, 3, 23

41 U.S.C. § 7103 ........ 26

41 U.S.C. § 7107 ........ 26

**Other Authorities**

H. Rep. 103-545(I), at 28 (1994), 1994 WL 261997 ........ 20

**Regulations**

48 CFR § 212.212 ........ 15, 19

# INTRODUCTION

Defendants argue that Percipient's protest is barred by 10 U.S.C. § 3406(f)(1) because the protest challenges actions that occurred in the course of performing a task order—actions they say would not have occurred "but for" the task order. The Court of Federal Claims ("CFC") accepted that argument. But the argument, and the CFC's holding, ignores the plain text of § 3406(f), which provides that, subject to certain exceptions: "A protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order…." 10 U.S.C. § 3406(f)(1).

This language only bars claims in connection with "the issuance or proposed issuance of a task or delivery order." It does not bar challenges to unlawful actions taken during the performance of a task order. No prior case has ever held otherwise.

As shown in our opening brief (at 36-37), the purpose of § 3406(f)(1) was to prevent challenges by one of multiple IDIQ awardees to the issuance of a task order to one of the other multiple IDIQ awardees. For that reason, it has sometimes been applied to situations where the challenge by an IDIQ awardee was to some conduct that was the predicate for issuing the task order to the other IDIQ awardee who was awarded the task order or that otherwise was necessary to establish its validity.

That is not what Percipient's protest is doing. Percipient is not one of many IDIQ awardees challenging the award of a task order to another such awardee. Nor is it challenging conduct that enabled the award of the task order to another IDIQ

awardee. It is not challenging "the issuance" or "proposed issuance" of the task order at all.

Instead, Percipient is challenging the ongoing violation of the requirements for market research into, and preferences for, commercial and nondevelopmental items. It brings such a challenge not as an awardee of a multiple awardee IDIQ contract, but as a potential bidder who could provide a commercial and nondevelopmental item that could fully satisfy the agency's CV System requirements.

Further, Percipient brings its challenge based upon actions that occurred after the simultaneous award of the SAFFIRE contract and Task Order 1 ("TO1") to CACI. Both the contract and TO1 said that CACI would comply with the requirement to procure commercial and nondevelopmental items to the maximum extent practicable, as the law requires. And NGA told Percipient, after the simultaneous award of the contract and issuance of TO1, that NGA and CACI would be conducting the necessary market research into the availability of nondevelopmental and commercial items, like Percipient's, to satisfy the CV System sub-component of the overall SAFFIRE program. Percipient's challenge thus has nothing to do with "the issuance or proposed issuance" of any task order. It is based on the failure to comply with the statutory requirements to do market research into component systems, such as the CV System. Those requirements were also reflected

in the contract awarded to CACI and in the TO1 issued to CACI. Thus, if Percipient wins its challenge, there is nothing in TO1 that must change.

Defendants do not identify a single case suggesting the task-order bar should apply in these or analogous circumstances. Instead, the leading Federal Circuit case on the issue emphasizes that § 3406(f)(1) unambiguously implements "Congress's intent to ban protests on the *issuance* of task orders…." *SRA Int'l, Inc. v. United States*, 766 F.3d 1409, 1413 (Fed. Cir. 2014) (emphasis added). Percipient's claims do not present the type of direct and causal connection to "the issuance" of a task order that *SRA*—and the cases cited by it—found sufficient to trigger the task-order bar.

Defendants do not dispute that their sweeping interpretation would foreclose all enforcement of 10 U.S.C. § 3453. It would allow the Government to use task orders to immunize all violations of the section, thereby giving government agencies carte blanche to embark on expensive, years-long development projects without any judicial oversight—even where, as here, commercial and nondevelopmental items can satisfy the agency's requirements. This is directly contrary to Congress' goals in enacting § 3453, and to this Court's holdings in *Palantir USG, Inc. v. United*, 904 F.3d 984 (Fed. Cir. 2018).

Defendants offer alternative grounds for affirmance. Those arguments should be rejected for the same reasons the CFC rejected them. Appx5-13. The Tucker Act

includes a broad grant of jurisdiction for any action by "an interested party" for a number of claims, including claims based on "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Percipient is an interested party because, but for NGA's statutory and regulatory violations, Percipient would have the opportunity to offer its commercial and nondevelopmental software product that fully meets NGA's CV System requirements. Appx14.

Further, Percipient's claims are based upon an "alleged violation of statute or regulation in connection with a procurement": namely, NGA's failure to conduct the necessary market research into nondevelopmental and commercial software that could meet its CV System requirements (in violation of § 3453(c)(1)); its failure to ensure that its prime contractor, CACI, conduct such market research (in violation of § 3453(c)(5)) and related failures to ensure that such commercial and nondevelopmental items are procured "to the maximum extent practicable" (in violation of § 3453(b)(2)).

# ARGUMENT

## I. THE TASK-ORDER BAR DOES NOT APPLY

### A. Defendants' "But-For" Test for the Task-Order Bar Is Inconsistent with the Text and Intent of FASA.

Percipient established in its opening brief that its protest is not "in connection with the issuance" of TO1 because it does not challenge the issuance of the task order, the terms of the task order, or any action on which the task order depended for its issuance. Further, the terms of the task order did not require the statutory and regulatory violations that subsequently occurred. Instead, as the Complaint details and as NGA itself repeatedly insisted, the contract and simultaneously awarded task order did *not* resolve the extent to which Defendants would research and acquire commercial products to meet NGA's requirements, and the challenged violations occurred later as the result of decisions that were not set forth in, or dictated by, the task order.

Defendants strain to fit these allegations into the ambit of the task-order bar, but ignore the statute's plain language. They use varying, conclusory formulations, but at bottom assert that if the protested actions "would not have occurred" without a task order—*i.e.*, if the action has a "sequential relationship to the issuance of the task order"—the task-order bar applies. Govt Br. 15-16, 19; CACI Br. 26-27;

Appx26-27.[1]

That formulation is incorrect because it does not account for the words "issuance or proposed issuance." The Government will always be able to say there is a "sequential relationship" between the task order and the performance. Thus, Defendants' reading would convert 10 U.S.C. § 3406(f)(1) into an absolute bar on any claim related in any way to work performed under task orders. Section 3406(f), however, does not cover all protests "in connection with a task order." It bars only protests brought in connection with "the *issuance* or proposed *issuance*" of a task order. *Id.* (emphasis added). Under basic canons of construction, those words must be accounted for, but Defendants fail to do so. *Splane v. West*, 216 F.3d 1058, 1068 (Fed. Cir. 2000) (Courts must "construe a statute, if at all possible, to give effect and meaning to all its terms").

That is why the CFC (in precedent cited favorably by this Court) has previously refused to broadly construe "in connection with" the "issuance" of a task order to bar protests having "any connection with" a task order. *Global Computer Enters., Inc. v. United States*, 88 Fed. Cl. 350, 410 & 414-15 (2009). And that is why the CFC has rejected the very "but-for" test applied by Defendants

[1] Percipient does not allege that the terms of TO1 caused NGA to violate the law. The "but-for" test applied by Defendants more broadly looks at whether the work being performed was under TO1.

and the lower court—*i.e.*, that the bar applies if the protested action (or inaction) would not have occurred without the task order. *Id.* at 412.

Defendants suggest Percipient cannot account for the words "in connection with" and that Percipient's formulation would limit the task-order bar only to challenges to the issuance of task orders. Govt Br. 18-19; CACI Br. 21. That is wrong. The task-order bar also encompasses protests challenging unlawful actions that enabled the issuance of the task order, such as the OCI waiver at issue in *SRA*. But it does not encompass protests of any actions that occur in the course of task-order performance. That would immunize all statutory and regulatory violations that occur in the course of performance of an IDIQ contract, and that is not what Congress enacted.

The Government asserts that protests challenging conduct that follows a task order would be "few and far between" because there are few bases for legitimate protest that occur following contract award and in the course of a contract's performance. Govt Br. 18. That is beside the point. 10 U.S.C. § 3453 unambiguously imposes procurement-related obligations on the Government that apply post-award, and Percipient has alleged violations of those provisions that are logically and temporally distinct from the issuance of a task order. Accordingly, even assuming there are few statutes that impose ongoing post-award obligations on the Government throughout a procurement—indeed, even assuming 10 U.S.C. §

3453 is unique in this respect—that is no basis for misconstruing 10 U.S.C. § 3406(f)(1) to bar protests under statutes that impose such obligations.

**B. Defendants Ignore Percipient's Discussion of FASA's Structure, Legislative History, and Purpose.**

As Percipient explained in its opening brief (at 35-37)—and as this Court has found—Congress's "intent" was "to ban protests on the *issuance* of task orders" and thereby to streamline the award of task orders by limiting the ability to protest the issuance of task orders. *SRA*, 766 F.3d at 1413. Defendants ignore this discussion entirely, and so Percipient respectfully refers the Court to its prior filing.

**C. Federal Circuit and CFC Precedent Are Inconsistent with Defendants' Expansive Application of the Task-Order Bar.**

As we show in our opening brief (at 31-34), Defendants' "but-for" test is inconsistent with Federal Circuit precedent. In *SRA*, the leading case, plaintiffs challenged a waiver that was needed for the task order to go forward because without it *the task order would have been invalid and illegal*. 766 F.3d. at 1413. Further, plaintiffs sought to set aside the task order, argued that the task order was "void *ab initio*, illegal and a nullity," and only brought their challenge in the CFC after a failed attempt to have the GAO invalidate the task order award. *Id.* at 1410-11 (citation and internal quotations omitted). The Court thus found that the protest was "actually with the issuance of the task order, rather than the waiver alone." *Id*. at 1414.

Nothing like that is present here. Percipient does not challenge the task order, which allowed for commercial products to be used to satisfy its terms. Nor does Percipient challenge an action that was necessary to enable the award of the task order to CACI. Instead, Percipient challenges violations that followed the task order but that were in no way required by its terms and that would not require that the task order be set aside.

Far from disputing this understanding of *SRA*, the Government specifically acknowledges that the OCI waiver "was necessary to go forward with performance of the task order." *See* Govt. Br. 14 (citing *SRA*, 766 F.3d at 1413). The Government then repeats its call for a "but-for" test, even though nothing in *SRA* supports the application of such a broad test. Govt Br. 16.

The Government also ignores *SRA's* recognition that while a temporal disconnect does not automatically foreclose application of the task-order bar, the timing "may, in some circumstances, help to support the non-application of the FASA bar…." 766 F.3d at 1413. In this case, the violations are both temporally *and* logically distinct because the violations of law occurred much later and because nothing in the task order required NGA to violate the law.

Defendants also misconstrue language from *SRA* that the task-order bar eliminates "all judicial review for protests made in connection with a procurement designated as a task order…" *Id.* Contrary to Defendants' suggestion, that

sentence does not dispense with the words "issuance of" or find that the bar encompasses any protest with a relationship with a task order. Instead, the preceding two sentences, remainder of the opinion, and nature of the protest demonstrate that the protest was in connection with the "issuance of" a task order for many reasons that do not apply here. *Id*.

This Court's decision in *22nd Century Technologies, Inc. v. United States*, 57 F.4th 993 (Fed. Cir. 2023) is also inapposite because, unlike here, the protest challenged the task order's requirements. The Government argues that this description is "far from an accurate synopsis," Govt Br. 20, but that is *precisely* what *22nd Century* held. This Court applied the task-order bar because the "challenge is to *the alleged failure of the task order to require* bidders to recertify as small businesses, and 22nd Century's claim is that the only relevant size requirement for purposes of its task order proposal was in the original RS3 IDIQ Contract." 57 F.4th 993 at 1000 (emphasis added). There is nothing in *22nd Century* that would support the but-for test for which Defendants advocate here. Instead, the heart of the dispute was the cancellation of a task order and its reissuance to another party. *See id.*

Defendants' proposed test also cannot account for the CFC cases that this Court has cited in its decisions. *See SRA*, 766 F.3d at 1413-14 (citing cases). For example, in *Unisys Corp. v. United States*, 90 Fed. Cl. 510, 515-16 (2009), the

plaintiff argued that the GAO violated a statute when it failed to stay work in response to a task-order protest. Under Defendants' logic, the protest would have been barred because the challenged action would not have occurred but for the issuance of the task order, and because it sought to have the work stopped. Govt Br. 15-18; CACI Br. 26-27; Appx26-27. Nevertheless, the CFC found that it had Tucker Act jurisdiction, that the task-order bar did not apply, and that plaintiff was entitled to a stay of the task-order work. *Unisys*, 90 Fed. Cl. at 517, 521.

In *Global Computer*, the CFC found that a protest of a task-order modification did *not* fall within the bar. Focusing on the statute's inclusion of the word, "issuance," the court held that the later-occurring modification did not bear "any connection with the original issuance that brought the task order into existence." *Global Computer*, 88 Fed. Cl. at 412. Defendants' but-for test would have barred the claim because the modification would not have occurred but for the task order; the Court nevertheless declined to apply the bar. *Id.* at 415.

By contrast, in *Mission Essential*, the CFC applied the bar, but not because the protest related to work performed under the task order. The protested corrective action taken by the Army "*was* its decision to compete a new task order under the IDIQ contract." *Mission Essential Pers., LLC v. United States*, 104 Fed. Cl. 170, 179 (2012) (emphasis in original). Thus, the corrective action and "proposed issuance" of a new task order were "synonymous." *Id*. Further, the

challenged actions were "intimately entwined" with "the issuance" of two earlier task orders. *Id*. Unlike in *Global Computer* and *Unisys*—which did not challenge the "merits" of a task order or seek to "disturb" it—the protest "goes to the heart of the Army's decision to award the task orders as it did." *Id.* at 178-79.

Other CFC cases cited by Defendants likewise demonstrate that the task-order bar should *not* apply. Defendants take issue with Percipient looking at whether the alleged violations here and the issuance of TO1 are "mutually dependent." Govt Br. 18; CACI Br. 24. But that language comes from one of Defendants' cases—*DataMill* (Appx1228; CACI Br. 23-24)—which defines "in connection with" to require a "direct" and causal relationship between things that are "mutually dependent." *DataMill, Inc. v. United States*, 91 Fed. Cl. 740, 756 (2010). In *DataMill*, the protest was barred because the decision to procure using a delivery order was, "by its very nature, 'in connection with' the 'issuance' of that delivery order." *Id.* at 757. But whether or not "mutual dependence" is required, neither relevant form of dependence is present here—*i.e.*, NGA's decision to violate the law was not "dependent" on TO1 (TO1 did not require the violation), and the "issuance" (and performance) of TO1 did not depend on the violations. Defendants' remaining cases are similarly inapposite. Unlike here, they involved challenges to the award or merits of a task order, or to underlying decisions to use a

task order or task-order modification.[2]

Defendants suggest that many of Percipient's cases are distinguishable because they deal with challenges to pre-award conduct. Govt Br. 24-27; CACI Br. 31-33, 44-46. But *Global Computer* (cited by *SRA*), *Unisys* (cited by *SRA*), and *MORI* all address post-award conduct. Defendants also fail to point to any language in *mLINQS* or the "Rule of Two" cases that turned on whether the protest was brought pre- or post-award. Rather, the cases focused on whether the challenged agency decision was "logically" distinct from the issuance of a task order, "considering an agency has to review the regulations irrespective of the eventual procurement vehicle selected." *mLINQS, LLC v. United States*, No. 22-1351, 2023 WL 2366654 at *16 (Fed. Cl. Mar. 6, 2023). The same is true here. NGA had to comply with 10 U.S.C. § 3453's irrespective of the issuance of TO1, and TO1 in no way required the violations that subsequently occurred.

---

[2] *See Harmonia Holdings Grp., LLC v. United States*, 156 Fed. Cl. 238, 245 (2021) (challenge to "merits" of the task order award); *Akira Techs., Inc. v. United States*, 145 Fed. Cl. 101, 106-107 (2019) (finding a task order modification to be a "task order"; case involved challenge to reassignment of work to different IDIQ awardee via task order modification); *Insap Servs., Inc. v. United States*, 145 Fed. Cl. 653, 655 (2019) (challenge of decision to bundle services in a proposed task order); *Innovative Mgmt. Concepts, Inc. v. United States*, 119 Fed. Cl. 240, 245 (2014) (challenge to "Task Order award").

### D. Defendants Mischaracterize and Ignore the Complaint's Allegations.

Bereft of any support in text or precedent, Defendants turn to misstating the Complaint's allegations. In one remarkable example, CACI asserts that "the only 'temporal disconnect' between the relevant procurement decision and the issuance of a task order in this case was artificially created by Percipient's decision to wait two years to file a bid protest." CACI Br. 31. It does not account for the fact that following the issuance of TO1, NGA represented that it was committed to a fair evaluation of commercial technologies, provided that such an evaluation would occur before development of new software, and asserted that any contrary impression from post-award correspondence was an "unfortunate miscommunication." App73-74. Other prevarications and misrepresentations followed; NGA even thanked Percipient for its "continued patience," and later requested that Percipient "ease up on the legal pressure." Appx78-79. Percipient trusted in NGA's repeated assurances, engaging with NGA in good faith and spending over $1 million in time and resources to secure and implement NGA's agreed-to evaluation of Mirage. Appx44. CACI ignores these allegations entirely.

Other misstatements abound, including CACI's mischaracterization of Percipient's claims as "direct challenges" to NGA's "*decision to issue* CACI" TO1. CACI Br. 27 (emphasis added); *id.* 28, 32-34. This assertion is wrong. As stated repeatedly, Percipient takes no issue with the task order. Instead, it challenges

post-award violations of law that neither were necessary for the task order to go forward nor were required by the task order. Appx73-101.[3] Percipient did not have a reason to challenge the SAFFIRE contract or the contemporaneous issuance of TO1 because they left open whether the CV System would consist of or include commercial and nondevelopmental items. Appx68-69; Appx846.

For the same reason, Percipient also does not protest the "suitability and sufficiency" of SAFFIRE's requirements for market research and the consideration of commercial products. CACI Br. 35, 38. This is made clear by NGA's repeated post-award representations. Indeed, the parties all agree that TO1 contemplates that SAFFIRE's CV System requirements can be met through commercial or nondevelopmental software. Govt Br. 6, 16, 18 n.6; CACI Br. 47-48, 52; Appx846.

Percipient nowhere alleges, as CACI claims, that the law required NGA to contract with Percipient instead of issuing a task order to CACI in order to procure SAFFIRE's CV System. CACI Br. 27-28. CACI miscites a Percipient brief submitted to the CFC, in which Percipient correctly states that NGA's decision to "favor CACI's developmental solution over Percipient's commercial item solution resolved a putative competition" between CACI and Percipient in violation of §

[3] This argument also contradicts CACI's own assertions below. Specifically, in the single footnote that represented the sum total of CACI's task-order bar argument in the lower court, CACI acknowledged that Percipient "does not challenge" "the decision to award" a "task order to CACI." Appx164.

3453. *Id.* (citing Appx226). This is wrong. As examination of Percipient's allegations make clear, that refers to "NGA's post-award decision" (well *after* TO1) to forego its legal duty and permit CACI to ignore commercial options. *See* Appx212-226. Percipient does not suggest that TO1 should have been awarded to Percipient.

CACI also argues that Percipient essentially challenges the terms of TO1 because it incorporated standard provisions requiring market research and consideration of commercial items. CACI Br. 34-38. To the contrary, Percipient's claims are based on a breach of post-award statutory and regulatory obligations on NGA that exist regardless of whether the task order incorporates those provisions. Obligations that *NGA* must satisfy cannot be incorporated into CACI's contract, and even if they could, Percipient's challenge would still be based on NGA's violation of its statutory and regulatory violations, not CACI's breach of its contract.

Finally, the Government asserts in a footnote that "nothing in the SAFFIRE solicitation or Task Order 1 required or even discussed additional Government procurements" and that it "understands Percipient to be protesting the SAFFIRE procurement or contract, not some other unrealized Government procurement." Govt Br. 16 n.4.

This is just wordplay. Under this Court's precedent, the word "procurement" is not a single finite act that concludes with a contract award or simultaneously awarded task order. Instead, it includes "all stages of the process of acquiring property or services, *beginning with the process for determining a need* for property and services and *ending with contract completion and closeout*." *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008) (emphasis added) (citation omitted). That necessarily includes the decision as to whether to develop or acquire a commercial product, and as discussed, § 3453 imposes post-award obligations on NGA to ensure that their contractors research and acquire commercial products. *See also* Appx849; Appx1260 (requiring SAFFIRE offerors to account "for capabilities being developed outside of the contract…."); Appx1262 (reserving NGA's "right to procure software subscriptions, licenses and maintenance…."); Appx863 (requiring CACI to coordinate with NGA on "License Planning" for SAFFIRE—including licensing plans "for NGA….").

Percipient has consistently made clear that it challenges post-award violations that occurred in connection with the SAFFIRE procurement. *See* 10 U.S.C. § 3453(b)(1)-(2), (c)(5); *see also, e.g.*, 48 CFR § 212.212(1) (requiring agencies, "at all stages of the acquisition process," including "technology development," to identify and evaluate "opportunities for the use of commercial

computer software and other non-developmental software"). As discussed, those violations are both temporally and logically distinct from the issuance of the task order and therefore are not resolved by the issuance of the task order.

### E. Defendants' Position Would Eviscerate Enforcement of 10 U.S.C. § 3453 and Thereby Contradict Congress' Intent In Enacting Those Provisions.

Percipient's opening brief (at 37-46) demonstrates that Defendants' interpretation of 10 U.S.C. § 3406(f) would conflict with Congress' intent in enacting 10 U.S.C. § 3453. Defendants do not dispute that their position would eviscerate § 3453 enforcement. Instead, Defendants misstate Percipient's position as an argument that § 3453 is an "exception" to the task-order bar. Govt Br. 22, 27; CACI Br. 42. To the contrary, Percipient shows that the plain text, structure, and purpose of both § 3406 (addressed above) and § 3453 makes clear that Congress did not intend the task-order bar to eviscerate § 3453 enforcement.

The Government argues that it does not matter whether 10 U.S.C. § 3453 is meant to regulate task orders or post-award conduct. Govt Br. 23. It claims the same can be said of other provisions that provide the basis for protests under the third prong of 28 U.S.C. § 1491(b)(1) that would be encompassed by the task-order bar. *Id.* But the Government misses the point: not only do the provisions of 10 U.S.C. § 3453 apply post-award, but the text confirms that Government decisions made pursuant to those provisions are also logically distinct from the issuance of

any task order. The text, structure, and purpose of the provisions thus confirm that Congress intended for them to be enforceable post-award.

### F. Defendants' Other Merits Arguments Are Irrelevant and Unsound Even as They Further Confirm That the Protest Is Not in Connection with the Issuance of a Task Order.

Defendants argue the merits, though they are irrelevant to the jurisdictional question before this Court. We briefly explain why they should be rejected (on remand) as unsound.

First, Defendants point to CACI's purported "evaluation" of Mirage to argue that NGA satisfied its post-award obligations. Govt Br. 7; CACI Br. 33. But as shown in Percipient's opening brief (at 18-20), CACI's "evaluation" was based on a brief demo and was so self-serving and perfunctory that it failed to identify (even in conclusory fashion) a single CV System requirement that Percipient's product could not meet. It therefore fell short of the evaluation that this Court rejected as inadequate in *Palantir*. *See* 904 F.3d at 993-94.[4]

Second, CACI asserts for the first time on appeal that 10 U.S.C. § 3453 and related regulations do not apply to post-award conduct or at most require inclusion of boilerplate contractual language requiring incorporation of commercial products. CACI Br. 9-11, 38. While the precise contours of what post-award steps

[4] The fact that CACI's "evaluation" took place well after the issuance of the task order—and that NGA committed to an evaluation of Mirage even later—confirm that the alleged violations were not "in connection with" the issuance of TO1.

§ 3453 required in this context are beyond the scope of this appeal, the various statutes and regulations cited clearly require more than this perfunctory one-size-fits-all step. *Inter alia*, the statute and regulations require agencies to ensure contractors at all levels to incorporate commercial products "to the maximum extent practicable," requires agencies to ensure that contractors conduct "such market research as may be necessary before making purchases," and requires identification of opportunities for the use of commercial software "at all stages of the acquisition process," including "concept refinement" and "technology development." *See* Opening Br. at 38-39.[5] Whatever else may be required in particular circumstances, all of these requirements contemplate more than boilerplate language. *See also* H. Rep. 103-545(I), at 28 (1994), 1994 WL 261997 ("It is clear that without an effective enforcement mechanism, Federal agencies would be able merely to ignore the protections built into Federal procurement").

CACI also claims that Percipient seeks to assert § 3453 as an independent cause of action in order to avoid the jurisdictional limits under 28 U.S.C. § 1491(b)(1) of the Tucker Act. CACI Br. 40. But Percipient's protest is brought under 28 U.S.C. § 1491(b)(1), Appx37, which as explained below in Section II,

[5] Here, well after issuing TO1, NGA continued to update and refine its CV System requirements (indeed, some of these requests for changes seem to have been based on features showcased in demos of Mirage). *See, e.g.*, Appx1268.

provides a "broad grant of jurisdiction" that applies to statutory and regulatory violations in connection with a procurement. *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1381 (Fed. Cir. 2012). Nor have the courts "effectively recognized" a post-award limitation on 10 U.S.C. § 3453 challenges under the Tucker Act, as CACI claims. CACI Br. 44. The cases they cite (*Palantir* and *mLINQS*) did not address challenges to post-award conduct, so they did not address the provisions that impose post-award obligations. *Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218 (2016), *aff'd* 904 F.3d 984 (Fed. Cir. 2018); *mLINQS, LLC*, 2023 WL 2366654.

Finally, CACI warns of a "chain reaction" of "collateral consequences" if any level of scrutiny is applied to post-award decisions to develop rather than acquire commercial products. CACI Br. 42. The Court should, however, heed the plain language of the statutes Congress enacted rather than hyperbole from a contractor who seeks to be left alone to spend years and hundreds of millions of taxpayer dollars developing artificial intelligence software that already exists without having to first conduct a meaningful evaluation of whether commercial and nondevelopmental items can do the job now. Any inconvenience resulting from some level of judicial oversight pales by comparison to the permanent immunity from scrutiny that Defendants seek on behalf of preternatural reinventors of wheels and contracting officials who are content to give them the reins. And

whatever balance the Court would strike on a clean slate, it is Congress' views that matter, and Congress was clear that it wanted scrutiny of post-award agency decisions to develop in lieu of acquiring commercial and nondevelopmental items.

Finally, CACI reveals its misunderstanding of § 3453 with its assertion that Percipient's product and protest is about building "a better mousetrap." CACI Br. 41. To the contrary, what this case is about is trying to develop a mousetrap when someone else already offers it. This reinventing of the proverbial wheel is exactly what Congress sought to prevent in passing FASA.

## II. DEFENDANTS' ALTERNATIVE GROUNDS FOR UPHOLDING THE DISMISSAL MISAPPLY THE TUCKER ACT AND THIS COURT'S PRECEDENT.

Defendants' position that Government violations of the law are immune from challenge if they occur after a contract award has no support in the text of the Tucker Act (28 U.S.C. § 1491(b)(1)) or this Court's precedent. CACI Br. 51; Govt Br. 32-33. This Court should reject Defendants' alternative arguments for the same reasons the CFC below rejected them in its now-vacated opinion. Appx5-14.[6]

---

[6] The court vacated this opinion because it later found that the task-order bar applied, not because it reconsidered its conclusion that it would have otherwise had jurisdiction under the Tucker Act. COFC Dkt. 52; COFC Dkt. 53.

### A. The CFC Has Jurisdiction Because Percipient Alleges Statutory and Regulatory Violations "In Connection with a Procurement or a Proposed Procurement."

Relying on this Court's opinion in *Distributed Solutions*, the CFC initially (and correctly) found that Percipient had standing as an "interested party" and that it had adequately pled "non-frivolous allegations of statutory or regulatory violations 'in connection with a procurement or a proposed procurement.'" Appx5 (quoting *Distributed Sols.*, 539 F.3d at 1345). Appx5-6; *see also* Appx94-101. Defendants now seek to challenge those findings as alternative bases for affirmance, but there is no basis for doing so.

Percipient satisfies the requirements of 28 U.S.C. § 1491(b)(1) because it challenges alleged statutory and regulatory violations in connection with a procurement. Defendants do not explain how excluding post-award violations is consistent with the text of the Tucker Act. 28 U.S.C. § 1491(b)(1). Nor would there be any basis for doing so. Instead, "procurement" is broadly interpreted to include "all stages of the process of acquiring property or services, *beginning with the process for determining a need* for property or services and *ending with contract completion and closeout*." *Id.* at 1345 (emphasis added) (citation omitted); *see also Sys. Application*, 691 F.3d at 1381. The Tucker Act's "in connection with" provision "involves a connection with *any stage* of the federal contracting acquisition process…." *Distributed Sols.*, 539 F.3d at 1346 (emphasis

added).[7]

Defendants' position also contradicts their task-order bar argument. They fail to explain how the challenged actions could be in connection with the issuance of a task order, but not in connection with a procurement. *Compare* Govt Br. 3 *with* Govt Br. 14. In contrast, Percipient's position is consistent for reasons already discussed—*i.e.*, the task-order bar is limited to protests "in connection with the issuance or proposed issuance of a task order." *Cf.*, *Unisys*, 90 Fed. Cl. at 517 (finding Tucker Act jurisdiction but not applying the task-order bar, even though the statutory violation followed, and would not have occurred but for, the task order). While both statutes include the "in connection with" language, the task-order bar focuses on a single "order" (a "task order"), issued under a contract (a "task…order contract"), at a single moment in time (the task-order's "issuance"). 10 U.S.C. § 3406(b) and (f)(1). In contrast, the Tucker Act does not include the "issuance" qualifier—and instead uses the word, "procurement," which does not refer to a single contract or order.

Defendants seek to avoid this straightforward reading of the statute by characterizing this action as a "contract administration" dispute, and arguing that

[7] Even if *Distributed Solutions* did not preclude it as a matter of law, Defendants' argument that the SAFFIRE procurement completed more than two years ago is also contradicted by the terms of the contract and NGA's post-award actions. *See supra* I(D).

Percipient needed to participate in and protest the SAFFIRE solicitation and contract for there to be jurisdiction. Govt Br. 32-33; CACI Br. 50-51. But this is mere wordplay that cannot negate the plain meaning of 28 U.S.C. § 1491(b)(1), which "does not require an objection to the actual contract procurement, but only to the 'violation of a statute or regulation in connection with a procurement or a proposed procurement.'" *RAMCOR Servs. Group v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999). And, as discussed above, under this Court's precedent, a "procurement"—in this case, SAFFIRE— continues after the award until completion of the contract.

The Government irrelevantly argues that in *Distributed Solutions*, this Court stated that "adding work to an existing contract that is clearly within the scope of the contract does not raise a viable protest under § 1491(b)(1)." Govt Br. 31 (citing *Distributed Sols.*, 539 F.3d at 1346 (citing *AT&T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d 1201 (Fed.Cir.1993)). But it ignores that *AT&T* did not decline Tucker Act jurisdiction, let alone on "contract administration" grounds; instead, it found that *another statute* (CICA) did not authorize a claim based on adding work within the scope of an existing contract. *AT&T*, 1 F.3d at 1205. Here, by contrast, Percipient's protest is based on separate statutory and regulatory violations that were not addressed in those cases, that specifically address decisions to develop over acquiring commercial products, and that by their plain terms, postdate the

award of the contract.

Further, in *Distributed Solutions*, the protest actually involved an agency's decision to *add work to an existing task order*. *Distributed Sols., Inc. v. United States*, 76 Fed. Cl. 524, 527–28 (2007), *rev'd*, 539 F.3d 1340 (Fed. Cir. 2008). This Court nevertheless found that the CFC had jurisdiction under § 1491(b)(1) because the action was not "merely" based on the addition of work to the contract—it was based on the agency's violation of statutes while making the decision to add the work. *Distributed Sols.*, 539 F.3d at 1346.

The Government likewise errs in citing the *Hi-Tech* case which did not involve an alleged statutory violation under § 1491(b)(1). Govt Br. 32-33. In the portion of *Hi-Tech* cited by the Government, the court found no jurisdiction over one contractor's protest of other contractors' compliance with their contract terms. *Hi-Tech Bed Sys., Corp. v. United States*, 97 Fed. Cl. 349, 353 (2011).

Defendants' reliance on its remaining Claims Court cases and the CDA is similarly misplaced. The CDA (which is not at-issue here) applies to disputes between *the contracting parties* ("contractors" and the Government). 41 U.S.C. §§ 7107, 7103(a). And Defendants' cases do not apply a broad bar over all post-award contract decisions. They involve a *contracting party* protesting the agency's administration of its contract; and they also rely on provisions in 28 U.S.C. § 1491

that, unlike here, the contractors did not meet.[8]

Defendants also again misstate Percipient as alleging that "Defendants failed to comply with their contractual obligations…." CACI Br. 51; Govt Br. 33. But Percipient's Complaint is unambiguously based on NGA's statutory and regulatory violations. Appx94-97. The incorporation of standard FAR clauses requiring consideration of commercial products in SAFFIRE and TO1 does not relieve the Government of its statutory and regulatory duties, *see supra*; nor does it somehow remove the jurisdiction that the CFC otherwise has under the plain terms of § 1491(b)(1).

**B. Percipient Has Standing.**

The Government also argues that Percipient does not have standing as "an interested party" under § 1491(b)(1) because Percipient did not bid on SAFFIRE and must show it would have been awarded SAFFIRE but for an error in the procurement. Govt Br. 34-37. As the CFC correctly found in its now-vacated opinion, "Percipient, as an offeror of a commercial product, has standing under

[8] *Int'l Genomics Consortium v. United States*, 104 Fed. Cl. 669, 670, 673-74 (2012) (one of several parties to a contract did not have jurisdiction to challenge—on "bias" grounds—the designation of another company as having responsibility for procuring certain services where the plaintiff never even alleged it was qualified for the designation and thus was not an "interested" party); *Kellogg Brown & Root Servs., Inc. v. United States*, 117 Fed. Cl. 764, 769-70 (2014) (in dispute over the close-out method for close-out of a ten-year-old contract, no jurisdiction because plaintiff was a contractor and not an offeror).

§3453 because it was prepared to offer its product to NGA, and it had a direct economic interest in that opportunity." Appx14.

"The language of § 1491(b), however, does not require an objection to the actual contract procurement…." *RAMCOR*, 185 F.3d at 1289. Defendants' "reading of § 1491(b) would…render the 'violation of statute or regulation' prong of that provision superfluous." *Id.* Here, Percipient's claims are not based on the initial SAFFIRE solicitation or award, because (1) it could not meet one of the two key components of the award (the SER component), and (2) as NGA represented, SAFFIRE's CV System requirements could be satisfied by commercial technology (like Percipient's product). Appx43-44; Appx68-69. Its claims are based on NGA's violations of the law *after* the award. Appx94-98.

In the context of those allegations, Percipient is (1) a "prospective…offeror" of the CV System with (2) a direct economic interest. *Distributed Sols.*, 539 F.3d at 1344 (a "prospective…offeror" can be an "interested party"); *Info. Tech. & Applications v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) ("direct economic interest" looks to whether, "but for the alleged error in the procurement process," there is a substantial likelihood the plaintiff would have received the award). Percipient properly alleges that it offers a product that meets all of NGA's CV System requirements and that it would offer its Mirage product to NGA if its challenged conduct were corrected. Appx95-98; *see also* Appx11 (finding that

"Percipient's actions over the last two years make clear that it was willing and ready to offer its commercial software" if "the agency had complied with the statute").

Various cases recognize that parties need not have submitted a bid in all circumstances to qualify as an actual or prospective offeror. For example, in *SEKRI, Inc. v. United States*, 34 F.4th 1063, 1071-73 (Fed. Cir. 2022), a plaintiff that neither bid on nor protested a solicitation was found to have standing. In *Distributed Solutions*, software developers who were not parties to an IDIQ contract had standing to challenge the Government's decision to task its prime contractor with awarding subcontracts under that same IDIQ contract. *Distributed Sols.*, 539 F.3d at 1343-44. Whether a party is a prospective bidder or offeror depends on the allegations. The CFC cases are in accord.[9]

[9] *See Electra-Med. Corp. v. United States*, 140 Fed. Cl. 94, 103 (2018), *aff'd*, 791 F. App'x 179 (Fed. Cir. 2019) (contractors can be interested parties without bidding when they challenge an agency action that denies them the opportunity to compete); *CCL, Inc. v. United States*, 39 Fed. Cl. 780, 790 (1997) (even though the plaintiff was not a bidder or prospective bidder, it is sufficient if it shows that it "likely would have competed for the contract" had the government followed the law); *see also Elmendorf Support Servs. Joint Venture v. United States*, 105 Fed. Cl. 203, 208-09 (2012) (incumbent contractor need not be a bidder for standing); *L-3 Commc'ns EOTech, Inc. v. United States*, 85 Fed. Cl. 667, 673 (2009) (manufacturer had standing to challenge the government's decision to add work to a sole-source contract where vendor could only receive "a portion" of the award).

### C. The Government's Challenge to Count Three of the Complaint Fails.

Finally, the Government contends that Count Three of Percipient's Complaint—based on NGA unlawfully delegating inherently governmental functions—is untimely because it is based on a defect in SAFFIRE's solicitation. Govt. Br. 37-38. But again, the Government ignores the allegations in the Complaint, which rely on post-award delegations, not a defect in the initial solicitation. Appx98-99. SAFFIRE's solicitation did not give CACI carte blanche to decide whether to develop or acquire commercial products for the CV System. Appx68-69. Percipient's allegations focus on NGA's improper delegation after the award. *See Distributed Sols.*, 539 F.3d at 1344 (upholding post-award improper delegation claim).

## CONCLUSION

Percipient respectfully requests that this Court reverse the CFC's dismissal of the Complaint.

Respectfully Submitted,

By: /s/ Samuel C. Kaplan

Hamish P.M. Hume
Samuel C. Kaplan
Eric J. Maurer
Gina A. Rossman
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727 (t)
(202) 237-6131 (f)
hhume@bsfllp.com
skaplan@bsfllp.com
emaurer@bsfllp.com
grossman@bsfllp.com

Dated: August 14, 2023

*Counsel for Plaintiff-Appellant Percipient.ai, Inc.*

## CERTIFICATE OF SERVICE

I certify that I served the foregoing on counsel of record on August 14, 2023 by use of the Court's CM/ECF system.

Dated: August 14, 2023

/s/ Samuel C. Kaplan
Samuel C. Kaplan

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of the Federal Rules of Appellate Procedure and the Rules of this Court because it contains 6,985 words.

Dated: August 14, 2023

/s/ Samuel C. Kaplan
Samuel C. Kaplan