No. 23-1970

# United States Court of Appeals for the Federal Circuit

PERCIPIENT.AI, INC.,

*Plaintiff-Appellant,*

v.

UNITED STATES, CACI, INC.-FEDERAL,

*Defendants-Appellees.*

Appeal from the United States Court of Claims
No. 1:23-cv-00028-EGB, Senior Judge Eric G. Bruggink

## PLAINTIFF-APPELLANT PERCIPIENT.AI, INC.'S OPPOSITION TO PETITION FOR PANEL REHEARING AND REHEARING EN BANC

Hamish P.M. Hume
Samuel C. Kaplan
Eric J. Maurer
Gina A. Rossman
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727 (t)
(202) 237-6131 (f)
hhume@bsfllp.com
skaplan@bsfllp.com
emaurer@bsfllp.com
grossman@bsfllp.com

*Counsel for Plaintiff-Appellant*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Percipient.ai, Inc. certifies that:

1.      **Represented Entities.**  Provide the full names of all entities represented by undersigned counsel in this case. <u>Percipient.ai, Inc.</u>

2.      **Real Party in Interest.**  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities. <u>None.</u>

3.      **Parent Corporations and Stockholders.**  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities: <u>None.</u>

4.      **Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4). <u>Not applicable.</u>

5.      **Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)? <u>No.</u>

6.      **Organizational Victims and Bankruptcy Cases.**  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6). <u>Not applicable.</u>

Dated: September 26, 2024            /s/ Samuel C. Kaplan
                                     Samuel C. Kaplan

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................1

ARGUMENT ....................................................................2

    I.    The Court's Conclusion That Percipient Is An "Interested Party" Is Consistent With Circuit Precedent and Correct ...................................2

    II.    The Panel's Conclusion That Percipient's Protest Is "In Connection With a Procurement" Is Consistent With Circuit Precedent and Correct. .................................................................9

    III.    The Court's Conclusion That Percipient's Protest Is Not "In Connection With The Issuance of a Task Order" Is Consistent With Circuit Precedent and Correct. ............................................13

CONCLUSION ..................................................................17

# TABLE OF AUTHORITIES

## Cases

*American Federation of Government Employees, AFL-CIO v. United States*,
  258 F.3d 1294 (Fed. Cir. 2001) ............................................................2

*Arkansas Game & Fish Comm'n v. United States*,
  568 U.S. 23 (2012) ............................................................................14

*Distributed Sols., Inc. v. United States*,
  539 F.3d 1340 (Fed. Cir. 2008) .........................................................10

*Glob. Comput. Enters., Inc. v. United States*,
  88 Fed. Cl. 350 (2009) ......................................................................17

*McAfee, Inc. v. United States*,
  111 Fed. Cl. 696 (2013) ....................................................................17

*MORI Assocs., Inc. v. United States*,
  102 Fed. Cl. 503 (2011) ....................................................................17

*R.A.V. v. St. Paul*,
  505 U.S. 377 (1992)...........................................................................14

*Savantage Fin. Servs., Inc. v. United States*,
  81 Fed. Cl. 300 (2008) ......................................................................17

*SEKRI v. United States*,
  34 F.4th 1063 (Fed. Cir. 2022)........................................................7, 8

*SRA International, Inc. v. United States*,
  766 F.3d 1409 (Fed. Cir. 2014) ...................................... 13, 14, 15, 16

*Weeks Marine, Inc. v. United States*,
  575 F.3d 1352 (Fed. Cir. 2009) ...........................................................7

## Statutes

10 U.S.C. § 3406 ................................................................... 13, 17

10 U.S.C. § 3453 ................................................................... passim

28 U.S.C. § 1491 ................................................................... passim

In response to this Court's order dated September 12, 2024, Percipient submits this opposition to Defendant-Appellee's petition for rehearing by the panel or en banc.

## INTRODUCTION

The Government seeks rehearing of this Court's June 7, 2024, reversal of the Court of Federal Claims' dismissal of Percipient's bid protest. Percipient challenges the National Geospatial-Intelligence Agency ("NGA")'s violations of 10 U.S.C. § 3453 and related regulations in connection with NGA's procurement of a new Computer Vision ("CV") system.

The Government's arguments for granting the petition are uniformly unsound.[1] Under the Court's rules, rehearing en banc is appropriate where the decision conflicts with a decision of the U.S. Supreme Court or this Court or otherwise involves a question of "exceptional importance." The Government argues that the panel decision conflicts with two prior cases, but as the panel details, it does not. The Government otherwise reiterates previously rejected arguments that are wrong and not an appropriate basis for seeking further review. The petition should therefore be denied.

---

[1] This petition is the Government's latest attempt to delay reaching the merits of this protest, filed in January 2023. Prior efforts include a motion to dismiss, a motion to reconsider the Court's denial of the motion, opposing expedited appellate review, a substantial enlargement of its time to file its petition, and now this petition.

1

# ARGUMENT

## I.     The Court's Conclusion That Percipient Is An "Interested Party" Is Consistent With Circuit Precedent and Correct.

The Government first asserts that the panel's conclusion that Percipient is an "interested party" is inconsistent with *American Federation of Government Employees, AFL-CIO v. United States*, 258 F.3d 1294 (Fed. Cir. 2001) (*AFGE*). That is incorrect. *AFGE* did not address the question presented here and thus does not conflict with the panel's decision.[2]

Under 28 U.S.C. § 1491(b)(1), the Court of Federal Claims has jurisdiction over "an action by an interested party objecting to a solicitation," a "proposed award or the award of a contract," or "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." The plaintiffs in *AFGE* were federal employees who challenged a proposed award that the employees claimed would displace them. 258 F.3d at 1297. The case thus addressed who qualifies as an "interested party" when "the alleged harm-causing government action is a solicitation, an award, or a proposed award." Op.18.

---

[2] Highlighting the implausibility of the Government's claim of conflict, neither the Government nor intervenor even cited *AFGE* in their briefs before the panel. The Court of Federal Claims also rejected the Government's "interested party" argument in its decision below. Appx9-12.

By contrast, Percipient does not challenge a solicitation or award. Instead, it challenges the Government's violations of statutory and regulatory provisions that only apply post-award. In particular, 10 U.S.C. § 3453(b)(2) requires NGA, "to the maximum extent practicable," to require its prime contractors to incorporate commercial products "as components of items supplied to the agency." Further, Section 3453(c)(5) requires the agency to ensure its contractors engage "in such market research as may be necessary" to do so. Percipient offers a commercial product that meets NGA's Computer Vision system requirements. It alleges that NGA violated Section 3453 and related regulations when it allowed its prime contractor to develop a new Computer Vision system in lieu of procuring commercial items, without appropriate research and where it was practicable to do otherwise.

The question presented here is therefore materially distinct from the question addressed in *AFGE*. First, whereas *AFGE* addressed the meaning of interested party "when the alleged harm-causing government action is a solicitation, an award or a proposed award," this case "presents the different question of who qualifies as an 'interested party' . . . where the challenged harm-causing action is *not* the solicitation, the award, or the proposed award of a contract" and "the protest actually presented is, and must be, based solely on the 'third prong.'" Op.18-19, 23

3

(emphasis in original).   As the panel decision explains, this "is a crucial distinction in identifying why *AFGE* does not control here."  Op.23.

Second, *AFGE*'s reasoning specifically addressed protests of solicitations and awards, not protests based solely on the third prong.  It described 28 U.S.C. 1491(b)(1) as conferring "standing on 'an interested party objecting to *a solicitation* by a Federal agency.'" 258 F.3d at 1299 (emphasis added).  Further, to inform its interpretation of "interested party," *AFGE* relied on the definition of "interested party" in the Competition in Contracting Act ("CICA").  Op.24.  Unlike 28 U.S.C. § 1491(b)(1), however, CICA does not authorize protests of "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  *Id*.  *AFGE* thus cannot be fairly said to have addressed third prong protests when "the definition of 'interested party' in CICA" on which it relied "is not fairly borrowed to apply to everything that comes under the third prong—and specifically not for conduct challengeable only under the third prong."  *Id.*; *see also id.* at 28 (further explaining why CICA's legislative history is irrelevant).  The Government ignores this point.

Third, in *AFGE*, the plaintiffs were federal employees arguing that the "interested party" standard was as broad as standing to bring a challenge under the Administrative Procedure Act ("APA").  258 F.3d at 1299.  *AFGE* therefore addressed why the APA's standard did not apply.  *Id.* at 1302.  Percipient, by

4

contrast, does not rely on the APA's standing test.  Rather, Percipient has a direct competitive interest akin to that of a prospective bidder.  As the Panel explained:

> Percipient offers a commercial product that is plausibly alleged to satisfy the agency's needs, . . . has plausibly alleged that but for this violation of the statute its Mirage product would be incorporated into the SAFFIRE procurement, and has offered NGA and CACI its product.

Op.29.  None of this was true of the *AFGE* plaintiffs, and so *AFGE* necessarily did not address how the "interested party" test applies to a plaintiff like Percipient.

Fourth, this case involves enforcement of provisions that were not at issue in *AFGE* and that apply to post-award conduct.  Further, these provisions were enacted in 1994 just two years prior to the Administrative Dispute Resolution Act of 1996 ("ADRA").  As the panel stated, "We find it difficult to conclude that the very next Congress following passage of FASA would promulgate ADRA with the intention of eliminating any meaningful enforcement of the post-award preferences for commercial items in § 3453."  Op.27.  Again, these issues were not presented in *AFGE*, and it did not address them.  Indeed, it would have been inappropriate for the *AFGE* Court to have foreclosed review of claims alleging particular statutory violations and types of competitive injury that were not before the Court.

The Government thus offers no credible argument that *AFGE* addressed— much less foreclosed—the type of challenge that Percipient brings here.  It asserts only that "nothing in *AFGE* suggests that 'interested party' carries different meanings depending on the type of protest alleged."  Pet.4.  This is simply a

5

misleading way of saying that *AFGE* had no occasion to address how the "interested party" requirement might apply to this type of protest.

Further stretching to find a conflict, the Government asserts that the *trial court* in *AFGE* framed the issue as a third-prong protest by describing the issue as whether an interested party could challenge "an alleged 'violation of a statute or regulation in connection with a procurement.'" Pet.4-5. Reliance on the trial court only highlights that the *appellate* decision in *AFGE* contained *no* substantive discussion of the third prong, and had no reason to, when the "alleged harm-causing government action" in *AFGE* was a contract award. Op.18; *see also AFGE*, 258 F.3d at 1299 (focusing on the fact that 28 U.S.C. 1491(b)(1) confers "standing on 'an interested party objecting to *a solicitation* by a Federal agency'" (emphasis added)).

With no basis for claiming a conflict with *AFGE*, the Government claims that the panel did "not explain how the same term—'interested party'—carries different meanings depending on the facts of a case." Pet.5. Such disagreement with the panel's reasoning does nothing to establish a conflict with *AFGE* and thus provides no basis for en banc review. Further, the argument is unsound and ignores various aspects of the panel's reasoning.

First, the Government disregards the plain text and structure of 28 U.S.C. § 1491(b)(1). As the panel explains, under the third prong, a plaintiff "need not

6

challenge either a solicitation for or the award or proposed award of a government contract." Op.25. Instead, the text permits challenges to any violation "in connection with a procurement or proposed procurement," which "is a broad term" that includes "all stages of the process of acquiring property or services" beginning with the determination of needs and ending with contract completion. *Id.* "As such, the third prong covers actions that are necessarily broader" than solicitations and awards. *Id.* In light of this text and structure and the fact that "interested party" appears in various federal statutes and regulations "without a standard meaning," the panel properly concluded that it was "obliged to interpret the term 'interested party' in the context of this broader third prong to give it independent import." *Id.* The Government ignores these points.

Second, the Government ignores the panel's discussion of other Federal Circuit cases where this Court has adjusted the requirements of the interested party standard based upon the nature of the protest, the facts of the case, and the statutory provision at issue. For example, this Court in *SEKRI v. United States*, 34 F.4th 1063, 1072-73 (Fed. Cir. 2022), "declined to treat mandatory sources of commodities the same as other potential interested parties based on, in part, Congress's intent behind a statute." Op.25-26. Further, the Court in *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1356, 1359-60 (Fed. Cir. 2009), held that different standards apply to pre- and post-award protests. Op.27; *see also id.*

at 26 (citing the trial court's discussion of other cases like *SEKRI*).  The

Government ignores the panel's discussion of these cases.

Third, and as explained above, Percipient's economic interest is akin to that

of a prospective bidder in that if the Government complied with the law, Percipient

would offer its product and the Government would have procured it or ordered its

contractor to do so.

Fourth, the Court properly recognizes that its analysis "must be tailored to

the specific facts here:  an alleged violation of 10 U.S.C. § 3453 and related

regulations, which establish the preference for commercial products and

commercial services for agency procurements."  Op.25. The Court details why

such statutory guarantees would "become illusory were parties like Percipient,

under these facts, unable to protest."  *Id.* at 25-26.  Relatedly, and as discussed

above, the Court explains that it would make no sense to construe ADRA to

eliminate "any meaningful enforcement of the post-award preferences for

commercial items in § 3453."  *Id.* at 27.

The Government disputes that its position would render the statutory

requirements illusory because it claims that actual and prospective bidders would

be motivated to "bring § 3453 protests" to challenge awards and solicitations.

Pet.7.  This obviously is not a relevant argument for en banc review, and it elides

the panel's point, which is that the *post-award* guarantees of Section 3453 would

8

become illusory.  This is because (as here and as will often be the case for lengthy Indefinite Delivery/Indefinite Quantity ("IDIQ") contracts such as SAFFIRE) the decision to develop often will not have been made at the time of award.  The Government's position thus would leave the statute dependent on agencies "to self-regulate and on contractors like CACI to act against their own interest."  Op.26.

Citing an Article III standing case, the Government also argues that a "policy concern" that there will be no remedy for a statutory violation is not a sufficient basis for finding constitutional standing.  Pet.7.  This is misguided.  First, this point accompanies a discussion of this Court's precedent and the text and structure of 28 U.S.C. § 1491(b)(1) that as discussed above, the Government almost entirely ignores.  Second, the panel explains that the Government's position would eviscerate Section 3453 enforcement not as a mere "policy concern," but instead to explain why the Government's position would contradict Congress's intent.  Op.26.  Article III standing does not require the same inquiry.

## II.    The Panel's Conclusion That Percipient's Protest Is "In Connection With a Procurement" Is Consistent With Circuit Precedent and Correct.

The Government also disputes the panel's conclusion that the statutory and regulatory violations claimed here are "in connection with a procurement or proposed procurement."  Pet.8-12.  The Government, however, concedes that the

panel's conclusion does not conflict with circuit precedent. Pet.12. The argument is therefore an inappropriate basis for seeking en banc review.[3]

Further, the Government's arguments are unsound and foreclosed by this Circuit's precedent. This Court has broadly interpreted the phrase "in connection with a procurement" to mean "a connection with any stage of the federal contracting acquisition process, including 'the process for determining a need for property and services.'" Op.17 (quoting *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008)). Further, it defined the word "procurement" to mean "'all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout.'" *Id.* (quoting *Distributed Sols.*, 539 F.3d at 1345-46).

This protest thus falls squarely within the Court's jurisdiction. Percipient "alleges NGA violated 10 U.S.C. § 3453 and related regulations, which establish a preference for commercial services, in connection with the SAFFIRE procurement's CV System." Op.18. As the panel explained, a violation of such a statute is "in connection with a procurement," because "[n]aturally, the definition includes stages between issuance of a contract award and contract completion, i.e.,

---

[3] The closest that this section comes to referencing the en banc standard is the final paragraph's conclusory and meaningless contention that it raises a "consequential question." Pet.12.

actions *after* issuance of a contract award." *Id.* at 17 (emphasis in original). This encompasses the provisions at issue here "whose requirements to maximize acquisition of commercial items suitable to meet the agency's needs continue and can be violated well after the contract's award." *Id.*

Despite this clear statutory language and this Court's interpretation of it, the Government argues that 28 U.S.C. § 1491(b)(1) does not encompass Percipient's challenge because it supposedly involves "contract administration" and "contract performance." Pet.11-12. This is meritless. Section 1491(b)(1) contains no such carve-out. Percipient is challenging a violation of procurement-related statutory and regulatory obligations that apply post award—not a breach of contract. The panel properly "declined[d] Defendants' invitation to carve limitations untethered to the statute's plain text into 28 U.S.C. § 1491(b)(1)." Op.18.

The Government asserts that the "flaw in the majority's analysis is highlighted by the fact that disputes over administration of procurement contracts are governed by the Contract Disputes Act." Pet.11. But as the Government's next sentence acknowledges, the Contract Disputes Act ("CDA") provides the procedures for resolution of "government contract claims." *Id.* The CDA does not apply to challenges to the Government's violations of procurement-related statutes.

Similarly fallacious, the Government asserts there is "tension" between the prerequisites that apply to a prime contractor's CDA claim and Percipient's ability

to bring a bid protest challenging post-award statutory violations. Pet.12. There is none. The former addresses the requirements for claiming breach of a government contract. The latter addresses the requirements for enforcing post-award statutory provisions that prevent the Government and its contractors from preferring unnecessary, lengthy, and expensive developmental projects to procuring commercial products.

The Government concludes by vaguely asserting that the panel "creates an anomalous result vis-à-vis the CDA" and that it is the "first time this Court has interpreted § 1491(b)(1) as permitting a protest of contract administration." Pet.12. These are not serious bases for seeking further review. On the first, and as already discussed, there is no "anomalous result vis-à-vis the CDA." The second is merely a misleading way of saying that that this Court has never reviewed a claim based on the post-award provisions of 10 U.S.C. § 3453. The standard for en banc (or panel) review is not whether a case presents an issue of first impression, and as shown above, the Government's argument is wrong and ignores the plain language of the relevant statutory provisions.

III.    **The Court's Conclusion That Percipient's Protest Is Not "In Connection With the Issuance of a Task Order" Is Consistent With Circuit Precedent and Correct.**

Finally, the Government wrongly claims that the Court's interpretation of 10 U.S.C. § 3406(f)(1) conflicts with this Court's decision in *SRA International, Inc. v. United States*, 766 F.3d 1409 (Fed. Cir. 2014).  Pet.12.

10 U.S.C. § 3406(f)(1) provides that absent certain exceptions, a "protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order."  The Government argued that this language encompasses "all protests that relate to work performed under a task order" and that anything that "follows or comes after, a task order falls under the task order bar."  Op.12.  The panel opinion rejects that interpretation as "far too broad" in part because it reads the provision to bar all protests that relate to a task order and thus "gives no meaning to the words 'issuance or proposed issuance.'"  *Id.* at 13.  The panel decision concludes that Percipient's protest is not "in connection with the issuance of a task order" because *inter alia*, it does not challenge the issuance of Task Order 1 to CACI and because "no allegation asserts that the language of Task Order 1 was deficient or forced the alleged statutory violations to occur."  *Id.* at 12.

Nothing in this analysis conflicts with *SRA*.  Instead, *SRA* addressed a different question—namely, whether Section 3406(f) barred a challenge to an organizational conflict of interest ("OCI") waiver that the Government issued "in

13

order to go forward" with the task order that the plaintiff's protest sought to set aside. 766 F.3d at 1413. As the Court recognized, *SRA* does not apply where Percipient neither seeks to set a task order aside nor challenges an action necessary "in order to go forward" with the task order. Op.15.

As previously, the Government relies on the *SRA* Court's statement that the "OCI waiver was directly and causally connected to issuance of the task order." *Id.* at 14-15. But as explained by the panel, that line "must be understood in light of the facts at issue there." *Id.* at 13-14. "Read in context," that statement "does not broadly refer to work performed under, or events caused by the task order as asserted by the Government." *Id.* at 15. Instead, it refers "to government action in the direct causal chain sustaining the issuance of a task order, not to all actions taken under or after issuance of a proper task order." *Id.* at 14. Viewing this language to resolve issues that were not before the Court would violate basic rules of interpreting precedent by allowing general language in a decision to resolve issues that the case did not present. *Id.* at 13-14 (citing *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 36 (2012) and *R.A.V. v. St. Paul*, 505 U.S. 377, 386-87 n.5 (1992)).

This is clearly the right understanding of *SRA*. That case had no reason to— and thus did not—address whether Section 3406(f)(1) forecloses any and all actions that relate to work performed under a task order. Accordingly, this case—

14

where the Government *is* advancing such a broad proposition—does not conflict with *SRA*.

The Government has no answer to the panel's explanation for why this case does not conflict with *SRA*. It relies on the "direct and causally connected" language, but fails to respond to the Court's explanation for why that language does not govern. Pet.13.

Rather than justify its claim of a conflict, it argues the panel's conclusion is mistaken. Such arguments offer no basis for en banc review, and each is wrong. The Government first claims that the panel's reasoning gives no meaning to the words "in connection with." Pet.14-15. That is not true. As the panel decision explains, the language "in connection with" prevents protestors from seeking to set aside task orders by challenging actions like the *SRA* OCI waiver that, though not themselves the task order or its issuance, enabled it to proceed. Op.14-15. At the same time, and as the panel recognizes, the Government's interpretation would give no meaning to the words "issuance or proposed issuance." *Id.* at 13. The Government has no answer to these points.

The Government asserts that "the terms of the task order" in this case "dictate the prime contractor's 'actions after issuance,'" quoting general language about "leveraging the rapidly maturing commercial computer vision technology." Pet.15. First, such a fact-specific argument obviously does not establish a conflict

15

with circuit precedent and thus could provide no basis for en banc review. Second, on its face, the quoted language neither prohibited the contractor from conducting a full and fair evaluation of Percipient's product, nor did it require the contractor to develop a new CV System in lieu of acquiring commercial technology. If anything, it therefore confirms that Percipient's challenge is about actions and failures that took place *after* the issuance of the task order, not actions that the task order required.

Finally, the Government argues that the panel decision would yield an anomalous result because if a task order included "a requirement to develop new software to meet the computer vision requirements," a protest would be barred whereas it is not barred where an agency authorizes development after the issuance of the task order. Pet.16. This is misguided.

First, speculation about how the statute would apply to a different task order in a different case cannot justify an understanding of Section 3406(f) that conflicts with its plain text and structure. It is at most a policy argument about the statute Congress enacted, not a basis for en banc review. Second, it is far from clear that the Government could decide to permit illegal development after award and then cynically insulate that decision from review by inserting a command to develop into a task order. Unlike the challenged OCI waiver at issue in *SRA*, such a decision would not be necessary to "sustain" the task order. Instead, it would be

akin to other "logically distinct" decisions that various courts have recognized to be subject to challenge notwithstanding Section 3406(f).  *See MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 533-34 (2011); *see also McAfee, Inc. v. United States*, 111 Fed. Cl. 696 (2013); *Glob. Comput. Enters., Inc. v. United States*, 88 Fed. Cl. 350 (2009); *Savantage Fin. Servs., Inc. v. United States*, 81 Fed. Cl. 300 (2008).

Further, a task order that required a contractor to develop a product that could practicably be procured as a commercial product likely could be challenged as beyond the scope of such a contract that (as with the SAFFIRE contract) required the contractor to procure commercial products to the maximum extent practicable.  *See* 10 U.S.C. § 3406(f)(1)(A) (permitting protests of a task order that "increases the scope, period, or maximum value of the contract under which the order is issued").  Again, however, that question is not presented here.  For present purposes, it is sufficient that the Government offers nothing to justify further review.

## CONCLUSION

The petition should be denied.

Respectfully Submitted,

By: /s/ Samuel C. Kaplan
Hamish P.M. Hume
Samuel C. Kaplan
Eric J. Maurer
Gina A. Rossman
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727 (t)
(202) 237-6131 (f)
hhume@bsfllp.com
skaplan@bsfllp.com
emaurer@bsfllp.com
grossman@bsfllp.com

Dated:  September 26, 2024

*Counsel for Plaintiff-Appellant*
*Percipient.ai, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that pursuant to Federal Rule of Appellate Procedure 32(a) and Federal Circuit Rule 28(a)(14), the foregoing Brief was prepared in MS Word, is proportionally spaced, has a typeface of 14-point Times New Roman, and contains 3,883 words, excluding those sections identified in Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

Dated:  September 26, 2024                   /s/ Samuel C. Kaplan
                                              Samuel C. Kaplan