23-1970

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

PERCIPIENT.AI, INC.,

*Plaintiff-Appellant,*

v.

UNITED STATES,
CACI, INC.-FEDERAL,

*Defendants-Appellees.*

---

Appeal from the United States Court of Federal Claims in
1:23-cv-00028-EGB, Senior Judge Eric G. Bruggink

---

**BRIEF OF NATIONAL INDUSTRIES FOR THE BLIND AS AMICUS CURIAE IN PARTIAL SUPPORT OF PLAINTIFF-APPELLANT**

Tracye Winfrey Howard
Wesley Edenton Weeks
Teresita Regelbrugge
WILEY REIN LLP
2050 M Street NW
Washington, D.C. 20036
(202) 719-7000
twhoward@wiley.law
wweeks@wiley.law
rregelbrugge@wiley.law

February 4, 2025

*Attorneys for Amicus Curiae*
*National Industries for the Blind*

## CERTIFICATE OF INTEREST

Counsel for the National Industries for the Blind certifies the following:

1. The full name of every party or amicus represented by me is:

National Industries for the Blind

---

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

---

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

---

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court and who are not already listed on the docket for the current case are:

Wiley Rein LLP: Tracye Winfrey Howard; Wesley Edenton Weeks, Teresita Regelbrugge

---

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal is:

None

---

6. Information required by Federal Rule of Appellate Procedure 26.1(b) and (c) identifying organizational victims in criminal cases and debtors and trustees in bankruptcy cases:

None

---

/s/ Tracye Winfrey Howard

Date: February 4, 2025

Tracye Winfrey Howard

*Attorney for Amicus Curiae National Industries for the Blind*

# TABLE OF CONTENTS

**Page**


CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ ii

INTEREST OF AMICUS CURIAE ........ 1

SUMMARY OF ARGUMENT ........ 2

ARGUMENT ........ 3

I. NPAs Have a Direct Economic Interest as "Mandatory Sources" in Federal Procurements. ........ 3

II. The Panel Majority and the Court of Federal Claims Correctly Decided that Percipient.ai Had Standing Because It Alleged that the Agency's Actions Denied It the Opportunity to Compete When It Had a Direct Economic Interest by Statute. ........ 7

III. Even if This Court Determines that Percipient.ai Did Not Have Standing, that Decision Should Be Limited in Scope. ........ 8

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Distributed Solutions, Inc. v. United States*,
539 F.3d 1340 (Fed. Cir. 2008) ........ 8

*Goodwill Industries of South Florida, Inc. v. United States*,
162 Fed. Cl. 160 (2022) ........ 4, 12

*Kingdomware Technologies, Inc. v. United States*,
579 U.S. 162 (2016) ........ 4

*MCI Telecommunications Corp. v. United States*,
878 F.2d 362 (Fed. Cir. 1989) ........ 9

*Rex Service Corp. v. United States*,
448 F.3d 1305 (Fed. Cir. 2006) ........ 9

*SEKRI, Inc. v. United States*,
165 Fed. Cl. 21 (2023) ........ 7

*SEKRI, Inc. v. United States*,
34 F.4th 1063 (Fed. Cir. 2022) ........ *passim*

**Statutes**

28 U.S.C. § 1491 ........ 2, 7

41 U.S.C. § 8501 ........ 3

41 U.S.C. § 8503 ........ 1, 3

41 U.S.C. § 8504 ........ 4, 7

**Regulations**

41 C.F.R. § 51-5.2 ........ 4

41 C.F.R. § 51-5.3 ........ 4

41 C.F.R. § 51-6.13 ........ 4

48 C.F.R. § 8.002 ............................................................................................5, 10
48 C.F.R. § 52.208-9 ..........................................................................................5
48 C.F.R. § 8.704 ..............................................................................................4

## INTEREST OF AMICUS CURIAE[1]

Amicus Curiae National Industries for the Blind ("NIB") is the Central Nonprofit Agency designated by the Committee for Purchase from People Who Are Blind or Severely Disabled, operating as the "U.S. AbilityOne Commission," to distribute federal government orders for products and services on the AbilityOne Procurement List ("Procurement List") among qualified, American nonprofit agencies ("NPAs") for the blind. 41 U.S.C. § 8503(c). NIB has over 90 associated NPAs, which, together with NIB, form the nation's largest employer of people who are blind. The employment NIB and its associated NPAs provide to people who are blind or visually impaired is largely driven by sales of products and services to the federal government through the AbilityOne Program established by the Javits-Wagner-O'Day Act ("JWOD"), with such sales providing employment to approximately 5,112 individuals who are blind and visually impaired in fiscal year 2024. NIB represents the interests of its associated NPAs that are mandatory sources, by statute, for federal procurements, even under solicitations for which they did not submit bids and do not operate as the prime contractor.

[1] No party's counsel in this case authored this brief in whole or in part, and no one other than NIB contributed money intended to fund the preparation and submission of this brief.

NIB submits this brief pursuant to this Court's November 22, 2024, Order inviting submissions by amicus curiae. ECF No. 59 at 3.

## SUMMARY OF ARGUMENT

In its Order granting rehearing en banc, this Court asked parties and amici to "address the following question: Who can be 'an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement' under 28 U.S.C. § 1491(b)(1)." *Id.* NIB urges this Court to affirm the decision below that a party other than the direct offeror on a federal contract may be an "interested party" with standing to challenge an agency's violation of statute or regulation in connection with a procurement or proposed procurement under the Tucker Act.

As mandatory sources, NPAs have a direct interest in challenging unlawful procurements that fail to comply with the requirement of the JWOD Act. Thus, even though NPAs do not submit responses to government solicitations, NPAs are nonetheless interested parties under the third prong of the Tucker Act's jurisdictional provision, which confers jurisdiction over challenges alleging "violation of statute or regulation in connection with a procurement or proposed procurement," 28 U.S.C. § 1491(b)(1). Any decision from this Court should preserve NPAs' ability to challenge procurement actions that violate the JWOD Act, regardless of whether the

Court affirms the panel's holding with respect to commercial sources, like Percipient.ai.

## ARGUMENT

### I. NPAs Have a Direct Economic Interest as "Mandatory Sources" in Federal Procurements.

The AbilityOne Program employs Americans who are blind or have significant disabilities through sales of products and services to the federal government. Pursuant to the JWOD Act, the AbilityOne Commission determines the products and services provided by NPAs that are "suitable for the Federal Government to procure." *Id.* § 8503(a)(1). The Commission also sets the fair market price for those products and services. *Id.* § 8503(b). To qualify for the AbilityOne Program, an NPA must, among other things, ensure that 75% of the direct labor hours incurred producing products or providing services are completed by people who are blind or have significant disabilities. *Id.* § 8501(6)-(7). The sales generated through the AbilityOne Program create tens of thousands of careers for people who are blind or have significant disabilities.

The JWOD Act requires agencies to procure certain services and supplies from NPAs:

> An entity of the Federal Government intending to procure a product or service on the procurement list . . . ***shall procure*** the product or service from a qualified nonprofit agency for the blind of a qualified nonprofit agency for other severely disabled in accordance with regulations of the

> Committee and at the price the Committee establishes if the product or service is available within the period required by the entity.

41 U.S.C. § 8504(a) (emphasis added). This requirement is mandatory and not merely a preference. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."). Other than supplies and services offered by Federal Prison Industries, Inc., which take precedence, the only other exception to the JWOD's mandatory source requirement is when an NPA cannot furnish the product or service "within the period required by the entity." 41 U.S.C. § 8504(a).

Thus, when an agency or contractor seeks to procure a product or service on the Procurement List for the Government's use, that entity is obligated to purchase the product or service from a qualified NPA. In addition, agencies and contractors are prohibited from purchasing products or services that are essentially the same as those provided through the AbilityOne Program. 41 C.F.R. §§ 51-5.3(a), 51-6.13(c); 48 C.F.R. § 8.704(a); *Goodwill Indus. v. United States*, 162 Fed. Cl. 160, 208 (2022) (finding agency acted arbitrarily and capriciously when it failed to follow JWOD Act during a federal procurement).

The regulations implementing the JWOD Act confirm that this statutory obligation is not confined to agencies' direct purchase of supplies and services but also includes purchases by other entities or individuals for government use, including prime and subcontractors. For example, 41 C.F.R. § 51-5.2(c) directs

agencies to "require that their contracts with other organizations or individuals, such as prime vendors providing commodities that are already on the Procurement List to Federal agencies, require that the vendor orders these commodities from the sources authorized by the [AbilityOne Commission]."

The Federal Acquisition Regulation ("FAR") likewise reiterates that the statutory obligation to obtain supplies and services on the Procurement List from AbilityOne NPAs "also applies when contractors purchase the supplies or services for Government use." 48 C.F.R. § 8.002(c); *see also id.* § 52.208-9(b) ("The Contractor shall not purchase the supplies or services from other sources until the Contracting Officer has notified the Contractor that the Committee or an AbilityOne central nonprofit agency has authorized purchase from other sources.").

Even though mandatory sourcing from NPAs is required by the JWOD Act and its implementing regulations, agencies have frequently failed to follow these mandates. It is therefore critical that NIB and NPAs have the ability to challenge those failures in court. As this Court held in *SEKRI, Inc.*, 34 F.4th 1063, as an NPA under the JWOD Act, SEKRI was an interested party under the Tucker Act because its "direct economic interest would be affected by the award of the contract or by failure to award the contract," despite the fact that SEKRI had not submitted a bid under the relevant solicitation. *Id.* at 1071 (quoting the Competition in Contracting Act, 31 U.S.C. §§ 3551-56).

Though the agency knew that the product it sought was on the Procurement List, and that SEKRI was the mandatory source for the military equipment being procured (known as "ATAP"), the agency issued a solicitation that sought ATAP from other sources. The Government argued that because SEKRI failed to submit a bid or file a protest while the solicitation was pending, it should not qualify as a "prospective bidder."

The Court rejected the Government's argument, reasoning that it need not "treat mandatory sources of commodities participating in the AbilityOne Program the same as other potential interested parties" for at least two reasons. 34 F.4th at 1072. First, the Court held that qualified mandatory sources like SEKRI need not submit a bid in response to an agency's solicitation to be "prospective bidders" because they "obtained the right to supply the government with ATAP by participating in the AbilityOne Program, not the competitive bidding route." *Id.* Second, the Court determined that it would be "unreasonable to require mandatory sources such as SEKRI to openly compete in the competitive bidding process given Congress's intent to take participants in the AbilityOne Program out of the competitive process." *Id.* Thus, the Court concluded that "[e]ntities like SEKRI ***have established economic interest bona fides because they have been qualified under the AbilityOne Program*** and are a mandatory source. Congress has

established that such entities must be prioritized over other commercial sources, absent special circumstances." *Id.* (emphasis added).

On remand, the Court of Federal Claims ("COFC") similarly acknowledged the mandatory nature of the JWOD Act in finding that, "if the [agency] decides to procure ATAP, the [agency] remains under the 'affirmative obligation' to procure it from SEKRI." *SEKRI, Inc. v. United States*, 165 Fed. Cl. 21, 41 (2023). *As SEKRI* illustrates, NPAs do not submit bids for each procurement that may implicate their provision of products or services on the Procurement List because those NPAs are mandatory sources. *See* 41 U.S.C. § 8504.

## II. The Panel Majority and the Court of Federal Claims Correctly Decided that Percipient.ai Had Standing Because It Alleged that the Agency's Actions Denied It the Opportunity to Compete When It Had a Direct Economic Interest by Statute.

The Panel Majority and the COFC correctly held that Percipient.ai had standing as an interested party with a direct economic interest to challenge the agency's failure to comply with federal preferences for commercial sources.

The Tucker Act provides jurisdiction over an action "by an interested party objecting to" one of three actions, one of which is "any alleged violation of statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1). As discussed above and in Percipient's En Banc Opening Brief, this Court has held that entities have standing even when they did not submit a bid if their direct economic interest in the procurement action was affected by the

agency's violation of law. *See* ECF No. 60 at PDF 37 (arguing that "Percipient is a provider of a commercial product who is directly harmed by the Government's violation of a statute designed to ensure acquisition of commercial products wherever practicable"); *see, e.g.*, *SEKRI, Inc.*, *supra*; *Distributed Sols., Inc. v. United States*, 539 F.3d 1340 (Fed. Cir. 2008) (holding that plaintiffs were interested parties with a "direct economic interest in the government action at issue in that they were both deprived of the opportunity to compete for the provision of acquisition and assistance solutions").

NIB supports Percipient's proposed reading of the Tucker Act: "a protestor is an 'interested party' under the third prong of § 1491(b)(1) when the protestor's ability to offer its product or service to meet the Government's needs has been directly thwarted by the Government's alleged legal violation." ECF No. 60 at 36-37. This is consistent with this Court's holding in *SEKRI* and would preserve the ability of NIB and its NPAs to challenge agency failures to follow the mandatory sourcing requirements under the JWOD Act and implementing regulations.

## III. Even if This Court Determines that Percipient.ai Did Not Have Standing, that Decision Should Be Limited in Scope.

Should this Court determine that Percipient.ai was not an interested party under the Tucker Act, this Court should be careful to preserve *SEKRI*'s precedent confirming that NPAs have standing under the Tucker Act to challenge procurement actions that violate the JWOD Act.

The Government argued in its opening panel brief that to have standing, an actual or prospective bidder must have submitted an offer, or expect to submit an offer, prior to the closing date of the solicitation. ECF No. 25 at 34-35. Among other cases, the Government relies principally on the decision in *MCI Telecommunications Corp. v. United States*, 878 F.2d 362 (Fed. Cir. 1989), reiterated later in *Rex Service Corp. v. United States*, 448 F.3d 1305 (Fed. Cir. 2006), that "by use of the word 'prospective,' that, in order to be eligible to protest, one who has not actually submitted an offer must be expecting to submit an offer prior to the closing date of the solicitation." *MCI Telecomms. Corp.*, 878 F.2d at 365. But the reasoning in *MCI* and its progeny does not apply to NPAs that are entitled to provide goods and services to the Government as mandatory sources.[2] As this Court recognized in *SEKRI*, "[i]t is unreasonable to require mandatory sources such as SEKRI to openly compete in the competitive bidding process given Congress's intent to take participants in the AbilityOne Program out of the competitive process." *SEKRI*, 34 F.4th at 1072. The Government's proposed interpretation of the Tucker Act, if adopted, risks sowing confusion over the application of that interpretation to mandatory sources like NIB's associated NPAs.

---

[2] The Court should note that the Competition in Contracting Act's preference for commercial products and services is less stringent than the JWOD Act's mandatory sourcing requirement.

Moreover, although *SEKRI* held that SEKRI qualified for standing as a prospective bidder, *id.*, its reasoning applies equally to situations in which an NPA is the mandatory source for supplies or services procured by prime contractors. As the COFC and Panel decision in this case recognize, the Court in *SEKRI* "refused to apply the actual or prospective bidder requirement to a challenge brought under a mandatory source statute because doing so would thwart Congress's intent behind the statute." Appx8 (citing *SEKRI*, 34 F.4th at 1072-73); ECF 46 at 26.

The FAR makes clear that "[t]he statutory obligation for Government agencies to satisfy their requirements for supplies or services available from the [AbilityOne Commission] also applies when contractors purchase the supplies or services for Government use." 48 C.F.R. § 8.002(c). Just as SEKRI "obtained the right to supply the government with ATAP by participating in the AbilityOne Program, not the competitive bidding route," NPAs obtain their right to subcontracting opportunities as mandatory source under the JWOD Act. *SEKRI*, 34 F.4th at 1072. Thus, adopting any rule that would deny NPAs standing to challenge subcontracting decisions that violate the JWOD Act would run contrary to *SEKRI* and would undermine Congress's intent behind the JWOD Act.

NIB and its associated NPAs provide employment for people who are blind largely by selling products and services through the AbilityOne Program established by the JWOD Act. Such sales provided employment to approximately 5,112

Americans who are blind in fiscal year 2024. Those sales depend on compliance with the JWOD Act and the continued ability of NIB and its NPAs to challenge procurement actions that violate the JWOD Act.

While what is now known as the AbilityOne Program has existed since 1938, NIB and NPAs still find themselves educating agencies and contractors about their obligations under the JWOD Act. For example, NIB recently represented associated NPAs in seeking enforcement of the JWOD Act's mandatory sourcing requirements with respect to:

- The Marine Corps East Coast and West Coast Regional Garrison Food Service Contracts, in which the expected loss to the mandatory source NPAs from the Government's failure to enforce the FAR's mandatory source requirements on the prime contractor would be over $100 million over the life of those contracts.
- The Army's Logistics Civil Augmentation Program ("LOGCAP"), in which NIB estimates $20 million in lost NPA sales annually.
- The United States Postal Service's supply contracts, in which NIB estimates at least $10 million in lost NPA sales annually.

Although such educational efforts can be successful, there are instances in which NIB and NPAs have filed actions to enforce the JWOD Act. For example, NIB prosecuted a bid protest at the COFC in which NIB alleged that the agency's

failure to ensure that mandatory source requirements were followed under the predecessor contract led to a substantial loss of sales to qualified NPAs, and new contracts awarded under the agency's similarly-flawed solicitation would result in similar if not greater losses. *See* Kevin A. Lynch Decl., ¶ 17, No. 1:23-cv-00145 (Fed. Cl. 2023) (ECF No. 9) (describing non-compliance with the AbilityOne mandatory source requirements under pilot contract, including that more than 90% of transactions that were required to go to NPAs were instead diverted to commercial vendors supplying similar products).[3] Furthermore, in addition to the SEKRI litigation referenced above, Goodwill Industries of South Florida, an AbilityOne NPA, was also successful in its action to require the Defense Logistics Agency to purchase uniforms from the NPA. *Goodwill Indus.*, 162 Fed. Cl. at 208.

Preserving NIB's and its NPAs' ability to bring these challenges is critical to the long-term success of the AbilityOne Program and its critical mission to provide career opportunities for Americans who are blind or have significant disabilities. NIB urges the Court to maintain the precedent set by *SEKRI* and carefully limit any decision in this case so that the decision clearly does not undermine *SEKRI*.

[3] NIB voluntarily dismissed its protest after the agency took corrective action.

## CONCLUSION

For the above reasons, NIB urges the Court to uphold the Majority Panel's decision and the decision at the COFC, which held that Percipient.ai had standing because it had a direct economic interest arising from its designation as a preferred source by statute.

Respectfully submitted,

/s/ Tracye Winfrey Howard
Tracye Winfrey Howard
Wesley Edenton Weeks
Teresita Regelbrugge
WILEY REIN LLP
2050 M Street NW
Washington, D.C. 20036
(202) 719-7000
twhoward@wiley.law
wweeks@wiley.law
rregelbrugge@wiley.law

Dated: February 4, 2025

*Attorneys for Amicus Curiae National Industries for the Blind*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitations of Federal Circuit Rule 29(b). This brief contains 2802 words, excluding the parts of the brief exempted by Federal Circuit Rule 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point size Times New Roman font.

/s/ Tracye Winfrey Howard

Tracye Winfrey Howard

*Attorney for Amicus Curiae National Industries for the Blind*

Dated: February 4, 2025

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on February 4, 2025, by:

U.S. Mail

Fax

Hand

X Electronic Means (by E-mail or CM/ECF)

| Tracye Winfrey Howard | /s/ Tracye Winfrey Howard |
|---|---|
| Name of Counsel | Signature of Counsel |


| | |
|---|---|
| Law Firm | Wiley Rein LLP |
| Address | 2050 M Street NW |
| City, State, Zip | Washington, DC 20036 |
| Telephone Number | 202.719.7452 |
| Fax Number | 202.719.7049 |
| E-Mail Address | twhoward@wiley.law |