**No. 2023-1970**

# In the United States Court of Appeals for the Federal Circuit

PERCIPIENT.AI, INC.,

Plaintiff-Appellant,

v.

UNITED STATES, CACI, INC.-FEDERAL,

Defendant-Appellees.

On Appeal from Appeal from the United States Court of Federal Claims
No. 23-28, Senior Judge Eric G. Bruggink.

**EN BANC BRIEF OF DEFENDANT-APPELLEE, UNITED STATES**

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

PATRICIA M. McCARTHY
  *Director*

CORINNE A. NIOSI
RETA E. BEZAK
EMMA E. BOND
GALINA I. FOMENKOVA
  *Attorneys, Commercial Litigation Branch*
  *Civil Division, U.S. Department of Justice*
  *P.O. Box 480, Ben Franklin Station*
  *Washington, DC 20044*
  *(202) 305-5633*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT OF RELATED CASES ...................................................... 1

INTRODUCTION ......................................................................................... 2

STATEMENT OF THE ISSUE .................................................................. 5

STATEMENT OF THE CASE .................................................................... 6

    I.    Statutory Background Regarding the "Interested Party"
        Requirement in 28 U.S.C. § 1491(b)(1) .................................. 6

        A.    Bid Protest Challenges Prior to ADRA ...................... 6

        B.    Report of the Acquisition Law Advisory Panel (aka
            the Section 800 Panel) ................................................... 9

        C.    ADRA Consolidated Judicial Review of Bid Protests
            Filed by "Interested Parties" in the Court of Federal
            Claims .............................................................................. 11

    II.    Factual Background .................................................................. 13

        A.    The SAFFIRE Solicitation and Award of the
            SAFFIRE Contract and Task Order 1 to CACI ....... 13

        B.    Evaluation of Percipient's Mirage Product by CACI
            and NGA .......................................................................... 15

        C.    Percipient Files Suit, Alleging that CACI's Failure to
            Select Percipient as a Subcontractor Violates the
            Preference for Commercial Items in 10 U.S.C. § 3453 ............. 17

    III.    Prior Proceedings ...................................................................... 18

        A.    The Trial Court's Dismissal under the Task Order Bar ........... 18

        B.    The Panel Decision and *En Banc* Order ..................................... 19

SUMMARY OF ARGUMENT .................................................................... 20

ARGUMENT ................................................................................................. 23

    I.    Standard of Review ................................................................... 23

    II.    The Court's Longstanding Definition of "Interested Party"
        Is Correct and Applies Across the Full Spectrum of
        § 1491(b)(1) .................................................................................. 24

A.   The Statutory Text Shows that the CICA Definition of Interested Party Applies Across the Full Scope of § 1491(b)(1) .................................................................... 24

B.   Purpose and History Confirm the Court's Longstanding Interpretation of Interested Party in § 1491(b)(1) .................................................................... 30

C.   There Is No Basis to Disrupt Decades of This Court's Precedent Adopting CICA's Definition of "Interested Party"—Including in So-Called "Prong Three" Cases .............. 34

III.   Percipient's Arguments for Carving Out a Different "Interested Party" Standing Requirement for "Prong Three" Cases Generally Or "Commercial Preference" Cases Specifically Are Baseless ........................................................ 40

A.   The Term "Interested Party" Appears Once in § 1491(b)(1), and Has Only One Meaning ................................. 41

B.   Applying the Same CICA Definition of "Interested Party" to All Bid Protests Does Not Render the Third Prong of § 1491(b)(1) Superfluous ................................. 42

C.   Percipient's Policy Arguments Are Unfounded And Misdirected ............................................................ 48

IV.   The Court Should Reject Percipient's Invitation to Expand Bid Protest Standing by Adopting the APA Standard ........................ 52

CONCLUSION .................................................................... 53

# TABLE OF AUTHORITIES

## FEDERAL CASES

*22nd Cent. Techs., Inc. v. United States,*
    57 F.4th 993 (Fed. Cir. 2023) ................................................................... 18

*Anaheim Gardens v. United States,*
    444 F.3d 1309 (Fed. Cir. 2006) ......................................................... 23, 24

*Am. Fedn. of Govt. Employees, AFL-CIO v. United States,*
    258 F.3d 1294 (Fed. Cir. 2001) ........................... 3, 7, 19, 20, 24, 29, 34, 36, 37, 52

*Associated Energy Grp., LLC v. United States,*
    – F.4th –, 2025 U.S. App. Lexis 6381 (Fed. Cir. Mar. 19, 2025) ........................ 37

*ATL, Inc. v. United States,*
    736 F.2d 677 (Fed. Cir. 1984) ................................................................. 6

*AT & T Commc'ns, Inc. v. Wiltel, Inc.,*
    1 F.3d 1201 (Fed. Cir. 1993) ........................................................... 43, 44

*Banknote Corp. of Am., Inc. v. United States,*
    365 F.3d 1345 (Fed. Cir. 2004) ............................................................... 37

*B.K. Instrument, Inc. v. United States,*
    715 F.2d 713 (2d Cir. 1983) ................................................................... 7

*Blue & Gold, Fleet, L.P. v. United States,*
    492 F.3d 1308 (Fed. Cir. 2007) ............................................................... 49

*Bostock v. Clayton Cty.,*
    590 U.S. 644 (2020) ....................................................................... 30, 31

*Badgerow v. Walters,*
    596 U.S. 1 (2022) ........................................................................ 52, 53

*CGI Fed., Inc. v. United States,*
    779 F.3d 1346 (Fed. Cir. 2015) ............................................................... 41

*CliniComp Int'l, Inc. v. United States,*
    904 F.3d 1353 (Fed. Cir. 2018) ........................................................... 37, 39

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,*
    601 U.S. 42 (2024) ................................................................................29

*Diaz v. United States,*
    853 F.3d 1355 (Fed. Cir. 2017) ........................................................ 37, 39

*Distributed Sols., Inc. v. United States,*
    539 F.3d 1340 (Fed. Cir. 2008) ........................................ 3, 37-39, 43, 44

*Erickson Air Crane Co. of Washington v. United States,*
    731 F.2d 810 (Fed. Cir. 1984) .............................................................. 2

*Fed. Data Corp. v. United States,*
    911 F.2d 699 (Fed. Cir. 1990) .............................................................26

*First Hartford Corp. Pension Plan & Tr. v. United States,*
    194 F.3d 1279 (Fed. Cir. 1999) ............................................................. 2

*Food & Drug Admin. v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) ...........................................................................49

*Forest Grove Sch. Dist. v. T.A.,*
    557 U.S. 230 (2009) ...........................................................................30

*Free Air Corp. v. FCC,*
    130 F.3d 447 (D.C. Cir. 1997) ........................................................7, 34

*George v. McDonough,*
    596 U.S. 740 (2022) .................................................................25, 28, 34

*Gundy v. United States,*
    588 U.S. 128 (2019) ...........................................................................30

*Harmonia Holdings Grp., LLC v. United States,*
    999 F.3d 1397 (Fed. Cir. 2021) ...........................................................24

*Impresa Construzioni Geom. Domenico Garufi v. United States,*
    238 F.3d 1324 (Fed. Cir. 2001) ........................................................6, 7

*Ingersoll-Rand Co. v. United States,*
    780 F.2d 74 (D.C. Cir. 1985) ..............................................................47

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
589 U.S. 178 (2020) ............................................................. 52

*Int'l Eng'g Co. v. Richardson*,
512 F.2d 573 (D.C. Cir. 1975) ......................................... 7, 34

*Ireland v. United States*,
101 F.4th 1338 (Fed. Cir. 2024) ........................................... 31

*Kimble v. Marvel Ent., LLC*,
576 U.S. 446 (2015) .............................................................. 35

*Land Shark Shredding, LLC v. United States*,
842 F. App'x 589 (Fed. Cir. 2021) ...................................... 39

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*,
744 F.3d 1272 (Fed. Cir. 2014) ............................... 35, 38, 40

*Maracich v. Spears*,
570 U.S. 48 (2013) ................................................................ 30

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013) .............................................................. 42

*MCI Telecomm. Corp. v. United States*,
878 F.2d 362 (Fed. Cir. 1989) .............................................. 26

*Motorola, Inc. v. United States*,
988 F.2d 113 (Fed. Cir. 1993) ............................................ 6, 7

*Myers Investigative & Sec. Servs., Inc. v. United States*,
275 F.3d 1366 (Fed. Cir. 2002) ........................................... 37

*Nat'l Assn. of Home Builders v. Def. of Wildlife*,
551 U.S. 644 (2007) .............................................................. 24

*Oak Grove Techs., LLC v. United States*,
116 F.4th 1364 (Fed. Cir. 2024) ..................................... 37, 39

*Percipient.ai, Inc. v. United States*,
104 F.4th 839 (Fed. Cir. 2024) ................. 19, 20, 39, 40, 46, 49

v

*PDS Consultants, Inc. v. United States,*
   907 F.3d 1345 (Fed. Cir. 2018) ................................................................37

*Res. Conservation Grp., LLC v. United States,*
   597 F.3d 1238 (Fed. Cir. 2010) ...............................................................45

*REV, LLC v. United States,*
   91 F.4th 1156 (Fed. Cir. 2024) ...............................................................37

*Rex Serv. Corp. v. United States,*
   448 F.3d 1305 (Fed. Cir. 2006) ................................................. 8, 29, 37

*Scanwell Labs., Inc. v. Shaffer,*
   424 F.2d 859 (D.C. Cir. 1970) ...................................................................7

*SEKRI, Inc. v. United States,*
   34 F.4th 1063 (Fed. Cir. 2022) ...............................................................41

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
   559 U.S. 393 (2010) ...................................................................................38

*Sys. Application & Techs., Inc. v. United States,*
   691 F.3d 1374 (Fed. Cir. 2012) ....................................................... 37, 39

*Tinton Falls Lodging Realty, LLC v. United States,*
   800 F.3d 1353 (Fed. Cir. 2015) ...............................................................37

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021) ...................................................................................51

*Validata Chem. Servs. v. United States Dep't. of Energy,*
   169 F. Supp. 3d 69 (D.D.C. 2016) .........................................................52

*Weeks Marine, Inc. v. United States,*
   575 F.3d 1352 (Fed. Cir. 2009) ....................................................... 41, 42

*Winter v. Floorpro, Inc.,*
   570 F.3d 1367 (Fed. Cir. 2009) ....................................................... 45, 46

*Wyandot Nation v. United States,*
   858 F.3d 1392 (Fed. Cir. 2017) ...............................................................24

*United States v. Miller*,
   – S.Ct. –, No. 23-824, 2025 U.S. Lexis 1279 (Mar. 26, 2025) ..............................50

*Utility Air Regul. Grp. v. EPA*,
   573 U.S. 302 (2014) ...................................................................................................24

## STATUTES

5 U.S.C. § 702.............................................................................................. 29, 52

5 U.S.C. § 706.............................................................................................. 13, 52

10 U.S.C. § 3406 ......................................................................................... 18, 50

10 U.S.C. § 3453 ..................................................................................... 5, 48, 51

28 U.S.C. § 1491 (1994) ......................................................................................6

28 U.S.C. § 1491 ................................................................................*passim*

31 U.S.C. § 3551 (1994) ....................................................................................10

31 U.S.C. § 3551 (Supp. IV 1998) ..................................................... 3, 20, 24

31 U.S.C. § 3552 (1994) ........................................................................ 10, 26, 45

31 U.S.C. § 3554 (1994) ....................................................................................10

40 U.S.C. § 759 (1994) .......................................................................... 8, 10, 29

41 U.S.C. § 111 ...................................................................................................43

41 U.S.C. § 7104 ................................................................................................46

Administrative Disputes Resolution Act,
   Pub. L. 104-320, 110 Stat. 3870 (1996)............................. 6, 11, 12, 27, 28

Competition in Contracting Act,
   Pub. L. 98-369, Title VII, 98 Stat. 1175 (1984) ..........................7, 8, 12, 25-28, 45

Consolidated Appropriations Act,
   Pub. L. 110-161, 121 Stat 1844 (2007)....................................................30

National Defense Authorization Act for Fiscal Year 1991,
Pub. L. 101-510, 104 Stat. 1485 (1990)................................................9, 31

Pub. L. 99-500, 100 Stat. 1783 (1986) ...............................................8

## REGULATIONS AND RULES

FAR 2.101................................................................................38

FAR 9.601........................................................................... 15, 50

FAR 9.603........................................................................... 15, 50

FAR 52.219-9.............................................................................36

FAR 52.219-16............................................................................36

FAR 52.244-6........................................................15, 22, 48, 51

RCFC, Appendix C ......................................................................47

## OTHER AUTHORITIES

142 Cong. Rec. S11848 (daily ed. Sept. 30, 1996).....................9, 13, 31, 33

142 Cong. Rec. H12276 (daily ed. Oct. 4, 1996)........................11

S. Rep. 103-258.........................................................................51

S. Rep. 103-259...........................................................................9

Report of the Acquisition Law Advisory Panel (Jan. 1993),
available at https://perma.cc/5RA9-P3G2.......................... 9-11, 31-34

William L. Murphy, *The Federal Circuit and the GSBCA: Review of Protest
Decisions*, 40 Am. U.L. Rev. 1065 (1991)....................................8

## STATEMENT OF RELATED CASES

No other appeal in or from the present civil action has previously been before this or any other appellate court. Counsel is not aware of any related cases within the meaning of Federal Circuit Rule 47.5(b).

# INTRODUCTION

When it comes to procurement contracts, the Court of Federal Claims possesses jurisdiction over, broadly speaking, two categories of cases:  under 28 U.S.C. § 1491(a), it hears claims for money owed to Government contractors under existing contracts, subject to the Contract Disputes Act; and under § 1491(b), it hears bid protests challenging the process of contract formation. Standing to bring either type of claim is limited.

Under § 1491(a), only parties in privity (or those who by contractual obligation stand in the shoes of a party within privity) can bring suit; a group that does not include third parties or subcontractors directly. *Erickson Air Crane Co. of Washington v. United States*, 731 F.2d 810, 813-14 (Fed. Cir. 1984); *see also First Hartford Corp. Pension Plan & Tr. v. United States*, 194 F.3d 1279, 1289 (Fed. Cir. 1999).  And under § 1491(b), only an "interested party" can "object[] to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."

For decades, this Court has properly interpreted the term "interested party" in § 1491(b) to mean an actual or prospective bidder or offeror for a Government contract whose direct economic interest would be affected by the award of the contract or by failure to award the contract, *i.e.*, a party meaningfully in line to be in

privity with the Government. *Am. Fed'n of Govt. Employees, AFL-CIO v. United States* (*AFGE*), 258 F.3d 1294, 1299, 1302 (Fed. Cir. 2001) (citing 31 U.S.C. § 3551(2) (Supp. IV 1998)). The Court has consistently—and correctly—applied this definition of "interested party" to protests across the full spectrum of § 1491(b)(1)'s bid protest jurisdiction regardless of which "prong" of that jurisdiction the protester invoked. *See, e.g., Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1342-43, 1345 (Fed. Cir. 2008).

Plaintiff-appellant, Percipient.ai, Inc. (Percipient), now asks the Court to rupture those long-standing boundaries and upend the settled expectations that come with them. To be clear, Percipient had protest avenues under the existing legal regime by which it could have sought to vindicate the use of its Mirage product—*e.g.*, by protesting the scope of the SAFFIRE solicitation or teaming up with another contractor to submit an offer—it simply failed to timely avail itself of any of them. Now, years after choosing not to participate in any way in the SAFFIRE competition, Percipient asks the Court to enable it to meddle with the administration of an ongoing contractual relationship between the National Geospatial-Intelligence Agency (NGA) and CACI-Federal Inc. (CACI), a contractual relationship to which Percipient is undisputably not a party. The Court should reject that untenable invitation.

When Congress sought to harmonize bid protest jurisdiction by

3

consolidating judicial review in the Court of Federal Claims, it deliberately transplanted into § 1491(b)(1) the standing requirement it had previously explicitly defined in the Competition in Contracting Act.  What it did *not* do was expand bid protest review beyond the process of contract formation or grant private businesses legal oversight over contracts to which they are not a party.  Percipient's attempt to engraft onto § 1491(b)(1) a different, special, definition of "interested party" for protests challenging specifically an alleged "violation of statute or regulation in connection with a procurement or proposed procurement" contravenes the statutory text, congressional intent, and this Court's precedent.

Percipient's proposed expansion of "interested party" standing is not only fundamentally unnecessary to "give … meaning" to so-called "prong three" of § 1491(b)(1), *contra* En Banc Br. 30, it would also create a litany of perverse incentives:  inviting artifice and confusion in the resulting line-drawing problem between which "prong" of the bid protest jurisdiction is invoked; granting greater rights and easier court access to *outside third parties* the *longer* they wait to file suit than actual offerors or the prime contractor in privity with the United States possess; and opening Government contracts to unprecedented (and unpredictable) levels of potential disruption—all, ironically, under the guise of a review process mandated to "give due regard to the interests of national defense and national security and the need for expeditious resolution," § 1491(b)(3).  Nothing in the

Federal Acquisition Streamlining Act—the source of the commercial or non-developmental items preference in 10 U.S.C. § 3453 Percipient alleges was violated here—or any other congressional directive compels such a result.

The *en banc* Court should re-affirm the wisdom of its existing law and affirm the dismissal of Percipient's protest.[1]

## STATEMENT OF THE ISSUE

The *en banc* Court ordered the parties to file additional briefs on the following issue:  who can be "an interested party objecting to … any alleged violation of statute or regulation in connection with a procurement or a proposed procurement" under 28 U.S.C. § 1491(b)(1)?

---

[1]  In granting *en banc* review, the Court requested additional briefing limited to the "interested party" issue.  ECF 59.  Accordingly, we do not address the other threshold defects in Percipient's case here.  But we disagree with Percipient's "understand[ing]" that the *en banc* Court will, therefore, adopt the Panel's reversal of the "task order bar dismissal," and oppose Percipient's invitation to "adopt[] the panel majority's holding and reasoning on the issues of the task order bar, subject matter jurisdiction under 28 U.S.C. § 1491(b)(1), and timeliness of claims under *Blue & Gold*."  En Banc Br. 22 n.3, 54.  Percipient's lack of standing is an independently dispositive issue sufficient to support affirmance, but the Court also remains free to affirm the trial court's judgment on *any* basis supported by the record, including those briefed to the Panel.  In the meantime, the *en banc* Court vacated the Panel opinion in full, ECF 59 at 3, and any portion of the Panel opinion not expressly adopted by the *en banc* Court should remain vacated.

# STATEMENT OF THE CASE

## I.    Statutory Background Regarding the "Interested Party" Requirement in 28 U.S.C. § 1491(b)(1)

Section 1491(b), including the "interested party" standing requirement therein, was enacted as part of the Administrative Disputes Resolution Act of 1996 (ADRA), Pub. L. 104-320, 110 Stat. 3870 (1996), which consolidated and channeled judicial review of so-called "disappointed bidder" or now more commonly called "bid protest" cases to the Court of Federal Claims.  *Id.* at § 12(a), (d).

### A.    Bid Protest Challenges Prior to ADRA

Before ADRA was enacted in 1996, four different venues had jurisdiction to hear bid protests, with judicial review available through three of them.

1.    <u>Court of Federal Claims</u>.  First, "disappointed bidders" could pursue relief in the Court of Federal Claims under an implied-in-fact contract theory: "that the government made an implied contract with prospective bidders to fairly assess their bids," but the Court's authority to grant injunctive relief in such cases was "limited to the pre-award stage."  28 U.S.C. § 1491(a)(1) & (3) (1994); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1331 (Fed. Cir. 2001); *ATL, Inc. v. United States*, 736 F.2d 677, 682 n.17 (Fed. Cir. 1984) (citations omitted).  Standing was correspondingly limited to "disappointed bidders or their equivalents," to the exclusion of all non-bidders.  *Motorola, Inc. v. United States*, 988 F.2d 113, 115 (Fed. Cir. 1993).  Thus, for example, a non-bidder lacked standing to

challenge a procurement as being inconsistent with the then-existing preference for commercial items. *Id.*

2. <u>District Court</u>.  Second, pursuant to the Administrative Procedure Act (APA), "disappointed bidders could … challenge contract awards at the district courts for alleged violations of procurement laws or regulations, or for lack of rationality." *Impresa*, 238 F.3d at 1331 (citing *Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859, 869 (D.C. Cir. 1970)); *see also B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 720 (2d Cir. 1983) (listing circuits that had "adopted the *Scanwell* principle that a disappointed bidder has standing to challenge the award").  Standing under *Scanwell* was also typically limited to "disappointed bidder[s]" or "sufficiently viable runners-up in a procurement process." *AFGE*, 258 F.3d at 1301 (quoting *Int'l Eng'g Co. v. Richardson*, 512 F.2d 573, 579 (D.C. Cir. 1975) & *Free Air Corp. v. FCC*, 130 F.3d 447, 450 (D.C. Cir. 1997)).

3. <u>General Services Administration Board of Contract Appeals</u>.  Third, the Competition in Contracting Act (CICA) authorized interested parties to file certain bid protests in the General Services Administration Board of Contract Appeals (GSBCA), subject to judicial review in this Court.  *See* CICA, Pub. L. 98-369, Title VII; § 2713, 98 Stat. 494, 1182-84 (1984) (codified at 40 U.S.C.

§ 759(h)(1), (9)(A), (B)).[2]  Specifically, the GSBCA could hear protests in

procurements governed by the Brooks Act for automated data processing

equipment.  *See* William L. Murphy, *The Federal Circuit and the GSBCA: Review of*

*Protest Decisions*, 40 Am. U.L. Rev. 1065, 1066, 1068 (1991).  Standing at the

GSBCA was limited to "interested parties," which the statute expressly defined as

"an actual or prospective bidder or offeror whose direct economic interest would

be affected by the award of the contract or by failure to award the contract."

CICA, § 2713, 98 Stat at 1183-84; *see* 40 U.S.C. § 759(f)(1)(9)(B) (1994)).

     4.    <u>Government Accountability Office</u>.  Finally, interested parties could

file protests with the Government Accountability Office (GAO).  CICA, § 2741,

98 Stat at 1199-1203 (codified at 31 U.S.C. §§ 3551-56).  As with the GSBCA, the

statute explicitly defined an "interested party" with standing to file a protest as "an

actual or prospective bidder or offeror whose direct economic interest would be

affected by the award of the contract or by failure to award the contract."  *Id.*

Decisions of the GAO were not directly appealable to any court.

---

[2]  Congress subsequently renumbered subsection (h) as subsection (f).  Pub.
L. 99-500, § 821(b)(1), 100 Stat. 1783, 1783-342 (1986).  And § 759 was repealed in
1996, the same year that ADRA was enacted.  *See Rex Serv. Corp. v. United States*, 448
F.3d 1305, 1307 (Fed. Cir. 2006).

**B.     Report of the Acquisition Law Advisory Panel (aka the Section 800 Panel)**

As part of the National Defense Authorization Act for Fiscal Year 1991, Congress directed the Department of Defense to establish an advisory panel to "review the acquisition laws applicable to the Department of Defense with a view toward streamlining the defense acquisition process" and "make any recommendations for the repeal or amendment of such laws that the panel considers necessary." Pub. L. 101-510, Title VIII, § 800, 104 Stat. 1485, 1587 (1990). The resulting so-called Section 800 panel submitted its report and recommendations, comprehensively reviewing and analyzing more than 600 statutes, in January 1993. *See* "Streamlining Defense Acquisition Laws," Report of the Acquisition Law Advisory Panel to the United States Congress (Jan. 1993) (Panel Report), available at https://perma.cc/5RA9-P3G2. This report formed the foundation for both the Federal Acquisition Streamlining Act (where Congress enacted the commercial item preference at issue in Percipient's complaint) and ADRA's revision of the Court of Federal Claims's bid protest jurisdiction. *See* S. Rep. 103-259 at 2-3; 142 Cong. Rec. S11848, S11849 (daily ed. Sept. 30, 1996) (statement of Sen. Levin).

With respect to judicial review of bid protests, the Section 800 panel observed that "protests in the Court of Federal Claims have been enmeshed in an endless web

of jurisdictional issues," and zeroed in on two dominant questions underlying this jurisdictional "chaos":  (1) whether the court has exclusive or concurrent jurisdiction with the Federal district courts over pre-award protests, and (2) whether the court has jurisdiction "over the type of agency wrongdoing for which the GAO and the GSBCA customarily grant relief."  Panel Report at 1-258.  At the time, both GAO and GSBCA had authority to grant relief in "protests" filed by "interested parties," 31 U.S.C. §§ 3551(1) & (2), 3554(b)(1) (1994); 40 U.S.C. § 759(f)(9) (1994), with the GSBCA authorized to review contracting officer decisions "alleged to violate a statute" or "a regulation," § 759(f)(1), and the GAO authorized to review "an alleged violation of a procurement statute or regulation," § 3552(a).

The Section 800 panel recommended that judicial review of bid protests be harmonized and consolidated into a single judicial forum, the Court of Federal Claims.  Panel Report at 1-261–66.  As most relevant to the question posed by the *en banc* Court, the panel specifically recommended that § 1491 be amended (a) "to provide that the Court, like the GAO and the GSBCA, is authorized to find improper any agency action which violates a procurement law or regulation," and (b) "to provide that *only interested parties, as defined by the Competition in Contracting Act* (CICA), can file protests," citing 40 U.S.C. § 759(f)(9)(B) and 31 U.S.C. § 3551(2).  Panel Report at 1-265–66 (emphasis added).  As discussed in Section I.C, below, when Congress enacted § 1491(b)(1) in ADRA, it did just that.

### C.    ADRA Consolidated Judicial Review of Bid Protests Filed by "Interested Parties" in the Court of Federal Claims

In 1996, Congress took up the bid protest judicial review recommendations of the Section 800 panel to harmonize and consolidate judicial review over bid protests within the Court of Federal Claims.[3]  Accordingly, Congress repealed the prior § 1491(a)(3) and enacted § 1491(b), giving the Court of Federal Claims a new jurisdictional grant specifically governing bid protests, *viz.* "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  ADRA, § 12(a), 110 Stat. at 3874.

Tracking the recommendations made by the Section 800 panel to "as much as possible, parallel [the court's jurisdiction with] that of the GAO and the GSBCA in order to avoid both the forum shopping and type of confusion that has occurred in the past," Panel Report at 1-265, Congress composed § 1491(b)(1) by mirroring

---

[3]  To accommodate some Members' concerns about contractors suddenly losing access to their local courts, ADRA compromised by initially granting coextensive jurisdiction to the Court of Federal Claims and the district courts, with a sunset provision terminating district court jurisdiction in 2001.  § 12(d), 110 Stat. at 3875; 142 Cong. Rec. H12276, H12277 (daily ed. Oct. 4, 1996) (statement of Rep. Maloney).

the language it had previously used in the Competition in Contracting Act.[4]  For example, CICA allowed an "interested party" to challenge "a solicitation" or "a proposed award or the award of … a contract" at GAO and the GSBCA.  §§ 2713, 2741(a), 98 Stat. at 1183-84, 1199.  Likewise, § 1491(b)(1) authorizes an interested party to challenge "a solicitation by a Federal agency" or "a proposed award or the award of a contract."

And as most relevant here, the Competition in Contracting Act also allowed an "interested party" at the GSBCA to challenge "any decision by a contracting officer alleged to *violate a statute or regulation*" in "*connection with any procurement*" under the Brooks Act.  § 2713, 98 Stat. at 1182-84 (emphasis added).  Similarly, § 1491(b)(1) authorizes an "interested party" to challenge "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."

ADRA also eliminated the pre-award/post-award dichotomy between the Court of Federal Claims and Federal district courts by extending the Court of Federal Claims's authority to grant injunctive relief "without regard to whether suit is instituted before or after the contract is awarded."  § 12(a), 110 Stat. at 3874.

---

[4]  Notably, the Competition in Contracting Act is the only prior statute where Congress had occasion to comprehensively lay out the scope of specifically bid protest jurisdiction.  Pre-ADRA, in the Court of Federal Claims that review was an application of the Court's general "implied in fact" contract jurisdiction, and in Federal district courts, it was an application of those courts' general APA authority.

Notably, Congress did not cross-reference any portion of the APA except to adopt

the standard of review in 5 U.S.C. § 706 for the Court of Federal Claims to apply in

bid protests. § 1491(b)(4). The sponsors of what would become § 1491(b) were

careful to "note[], however, that [ADRA] in no way expands the jurisdiction of the

Court of Federal Claims beyond bid protests or changes the standard of review in

any other area of jurisdiction of the Court of Federal Claims." 142 Cong. Rec.

S11848 (daily ed. Sept. 30, 1996) (statement of Sen. Cohen).

## II.    Factual Background

### A.    The SAFFIRE Solicitation and Award of the SAFFIRE Contract and Task Order 1 to CACI

NGA is a "Combat Support Agency that provides timely, relevant, and

accurate Geospatial Intelligence" to the Department of Defense and the

Intelligence Community. SAppx1469; *see also* Appx38. NGA's mission "is critically

dependent on information-sharing and the ability to manage, discover, retrieve, and

access information." SAppx1469.

To help accomplish this mission, on January 13, 2020, NGA issued the

SAFFIRE[5] solicitation seeking an integrated system to obtain, store, recognize,

organize, and interpret visual intelligence data. *See* Appx57; Appx570. Specifically,

---

[5] SAFFIRE stands for the SOM (Structured Observation Management) AAA (Automation, Augmentation and Artificial Intelligence) Framework For Integrated Reporting and Exploitation. *See* Appx38.

NGA sought to create and organize geospatial intelligence data "that is consistently structured, accessible, and applicable to mission needs"—referred to as "Structured Observation Management (SOM)." SAppx1469. NGA also sought "Computer Vision" capabilities, which refers to the ability "to automatically derive [geospatial intelligence data] from imagery," including detection of motion and objects, geolocation, and automated alerting. SAppx1469. Percipient did not protest this solicitation or otherwise ask NGA to break up the "Structured Observation Management" and "Computer Vision" capabilities into two separate procurements.

The competition proceeded for a single-award indefinite delivery/indefinite quantity contract. Appx38. The SAFFIRE solicitation provided for a "minimum guarantee" of $1 million "to be met by the issuance of Task Order 001," and envisioned a five-year ordering period. Appx784, Appx786.

In January 2021, after completing its best value trade-off analysis, NGA awarded the SAFFIRE contract and Task Order 1 to CACI. Appx38; SAppx1513-1515, SAppx1531; *see also* Appx69, Appx116 (referencing Task Order 1). Task Order 1 required CACI to provide "development, deployment and sustainment of manual and automated" capabilities and "the sustainment of SOM and computer vision systems." SAppx1539. The task order also required CACI to augment "user capability with automated detections of observations by leveraging the rapidly maturing commercial computer vision technology." SAppx1539; *see also*

14

Appx68-69. CACI's individual subcontracting plan—incorporated into Task Order 1, SAppx1531—indicated that CACI anticipated using small business concerns to provide "Computer Vision" services and "Artificial Intelligence." SAppx1606.[6]

The SAFFIRE contract also expressly incorporated clause FAR 52.244-6. That is, under the terms of its contract with NGA, CACI is required "[t]o the maximum extent practicable, [to] incorporate … commercial" or "non-developmental items as components of items to be supplied under this contract." FAR 52.244-6(b); Appx38, Appx69; Appx797.

## B.    Evaluation of Percipient's Mirage Product by CACI and NGA

Founded in 2017, Appx59, Percipient alleges that it was almost immediately in contact with NGA, Appx106, and that its Mirage product satisfies NGA's required computer vision requirements, Appx39. Yet, when NGA issued the SAFFIRE solicitation in 2020, Percipient did not submit an offer on the SAFFIRE solicitation. Nor does Percipient allege that it teamed with another company to submit an offer. *See, e.g.*, FAR 9.601, 9.603 (authorizing teaming arrangements). Instead, Percipient waited until *after* the award to CACI to demand that CACI

---

[6] Given that CACI's small business contracting plan was incorporated in Task Order 1 and identified a small business (not Percipient) as the entity that would perform Computer Vision services, *see* SAppx1606, it is difficult to see how Percipient can claim it is not challenging the issuance of a task order.

evaluate Percipient's product in the hopes of acting as a subcontractor to satisfy the computer vision portion of the contract. *See* Appx70-71. After some back and forth among Percipient, CACI, and NGA, CACI in fact evaluated Percipient's Mirage system in May 2021, but opted not to purchase it. *See* Appx130.[7]

NGA also evaluated Percipient's Mirage system, pursuant to a separate bailment agreement. In July 2022, NGA and Percipient entered into a standalone bailment agreement to allow NGA to evaluate Percipient's Mirage intelligence analysis platform to assist NGA in developing *future* agency requirements, *i.e.*, not for purposes of the SAFFIRE contract that had already been awarded and was in performance. SAppx1702; *see also* SAppx1702-1705; Appx85 (citing the bailment agreement). The agreement did "not constitute an acquisition or procurement," and it expressly disavowed "any special or preferential treatment in any future procurement action." SAppx1705.

After the evaluation period under the bailment agreement ended, Percipient sent a letter to NGA, alleging a violation of the commercial items preference in 10 U.S.C. § 3453. Appx87-88. In January 2023, NGA responded that CACI had evaluated Mirage and continued to "evaluate and integrate commercial and other

---

[7] Although beyond the scope of the Court's current review, CACI concluded that the existing Government-off-the-shelf (*i.e.* non-developmental) platform that was the starting point for SAFFIRE's augmentation, Appx470-71, already exceeded Mirage's functionality.

solutions to meet the requirements of the SAFFIRE contract." Appx151. In
response to Percipient's threats of legal action, NGA explained that the SAFFIRE
contract "allows for both commercial and non-commercial solutions" and,
regardless, Percipient was not a bidder on the SAFFIRE procurement and thus
lacked standing to challenge either the award or the administration of CACI's
contract. Appx150-151; *see also* Appx88-89.

C. **Percipient Files Suit, Alleging that CACI's Failure to Select
Percipient as a Subcontractor Violates the Preference for
Commercial Items in 10 U.S.C. § 3453**

On January 9, 2023—three years after NGA had issued the SAFFIRE
solicitation and two years into CACI's contract performance—Percipient filed suit
in the Court of Federal Claims seeking a mandatory injunction forcing NGA to
take affirmative acts to enrich Percipient, ostensibly pursuant to 28 U.S.C.
§ 1491(b)(1). Appx94-101. Percipient alleged that NGA violated 10 U.S.C. § 3453
by (1) "refusing to ensure" that CACI incorporated commercial and
nondevelopmental items "to the maximum extent practicable," (2) refusing to
require CACI to "engage in market research" for commercial or nondevelopmental
items, (3) "improperly delegat[ing] inherently governmental authority," and
(4) through these actions engaging in "arbitrary, capricious, and unlawful conduct."
Appx94-96, Appx98, Appx99 (capitalization altered). As relief, Percipient asked

the Court to order NGA to require CACI to further evaluate and ultimately use Percipient's Mirage product.  Appx102.

## III.  Prior Proceedings

### A.  The Trial Court's Dismissal under the Task Order Bar

The United States and CACI filed motions to dismiss on multiple grounds, Appx152-173, Appx175-199, and the trial court ultimately dismissed Percipient's complaint for lack of jurisdiction, Appx15-20.  After initially denying the motions to dismiss, Appx1-14, the trial court granted our motion for reconsideration and dismissed the case as barred by the task order bar, 10 U.S.C. § 3406(f), which prohibits protests "in connection with the issuance or proposed issuance of a task or delivery order."  Appx15-20.

The trial court reasoned that "Percipient's protest [was] directly and causally related to the agency's issuance of Task Order 1," Appx19, finding that the "alleged procurement decision not to consider commercial products" was not "logically distinct" from NGA's decision to issue a task order to procure the required computer vision system.  Appx20; *see* Appx19 ("Through [the Federal Acquisition Streamlining Act], Congress effectively eliminate[d] all judicial review for protests made in connection with a procurement designated as a task order.") (citing *22nd Cent. Techs., Inc. v. United States*, 57 F.4th 993, 999 (Fed. Cir. 2023)).

18

**B.    The Panel Decision and *En Banc* Order**

In a split decision, a Panel of this Court reversed the trial court's judgment.

The Panel majority first held that the task order bar did not apply because

Percipient did not challenge the "issuance" of Task Order 1 directly. *Percipient.ai,*

*Inc. v. U.S., CACI, Inc.-Fed.*, 104 F.4th 839, 851 (Fed. Cir. 2024).  The majority also

rejected the Government's argument that Percipient had challenged matters

involving contract performance and administration that fell outside the scope of

bid protest jurisdiction, holding that jurisdiction under § 1491(b) extends to

"actions *after* issuance of a contract award."  *Id.* at 851-52.

Finally, the Panel majority held that Percipient was not required to be an

actual or prospective bidder or offeror whose direct economic interest would be

affected by the award of the contract or by failure to award the contract in order to

have standing as an "interested party." *Percipient.ai*, 104 F.4th at 855.  Side-stepping

the Court's prior precedent in *AFGE*, 258 F.3d at 1302, the Panel majority held

that Percipient qualified as an interested party because "it offered a commercial

product that had a substantial chance of being acquired to meet the needs of the

agency had the violations not occurred." *Percipient.ai*, 104 F.4th at 855.

Judge Clevenger dissented, explaining that the Panel majority had erred by

"significantly narrowing the existing scope of the task order bar" and "significantly

broadening the existing scope of 'interested party' statutory standing … by

19

permitting potential subcontractors for the first time to bring suit under

§ 1491(b)(1)." *Percipient.ai*, 104 F.4th at 859 (Clevenger, J., dissenting).

On November 22, 2024, the Court granted our petition for rehearing *en banc*, vacated the Panel opinion, and reinstated the appeal.  ECF 59.

## SUMMARY OF ARGUMENT

For decades, this Court has construed the term "interested party" in

§ 1491(b)(1) in accordance with the Competition in Contracting Act's definition of the same term in the same context to mean "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *AFGE*, 258 F.3d at 1299, 1302 (quoting § 3551(2) (Supp. IV 1998)).  The Court has consistently applied that definition of "interested party" across the full spectrum of bid protest jurisdiction in § 1491(b)(1)—regardless of which "prong" the protester invoked—and the *en banc* Court should maintain this existing understanding.

Percipient makes no argument that it satisfies the existing definition of "interested party"; thus, unless the Court opts to engraft a special exception for this case, there is no dispute that Percipient's protest should be dismissed and the trial court's judgment affirmed.  Nor could Percipient credibly claim to be an "actual or prospective bidder" here—there is no dispute that it declined to participate in the SAFFIRE competition in any way, and it is only now challenging

the course of NGA's resulting contract with CACI well into its performance.

Although Percipient attempts to excuse its decision to not participate in the

competition by admitting that it lacked the capabilities to perform the SOM

Enterprise Repository portion of the requirements, En Banc Br. 7-8, there was

nothing stopping Percipient from either protesting the SAFFIRE solicitation to try

to break out the Computer Vision portion of the requirements it believes it could

compete for into a separate procurement, or from collaborating with other

businesses to submit an offer addressing all of NGA's needs.[8]  Put simply, had

Percipient wanted a seat at the protest table, it had multiple avenues under existing

law to secure one; it chose not to.

     Unable to establish that it is an "interested party" under existing law,

Percipient urges the Court to carve out and adopt a new standard of Percipient's

invention—untethered from any textual or historical precedent—on the excuse

that it is alleging a violation of a "special" statute, and its purportedly "prong three

only" claim is disconnected from a solicitation or contract award.  En Banc Br. 25-

26, 43.  Percipient is wrong both in its premise and conclusion.  The text, structure,

and history of § 1491(b)(1) confirm that the Court's longstanding interpretation of

---

[8]  If Percipient had submitted a proposal as the prime contractor, it would have
had its own protest rights.  But even if Percipient was the proposed subcontractor
on the team—and thus could not protest directly—it would have had a business
partner incentivized to file a protest in the event of any alleged procurement error.

"interested party" is correct—there is one definition of that term across the totality of the jurisdictional grant, and Congress deliberately transplanted that one applicable standing requirement from CICA.

By contrast, Percipient's primary justification for expanding interested party standing—that it is necessitated by the alleged extension of bid protest jurisdiction under "prong three" of § 1491(b)(1) into contract administration—is itself wrong. By making explicit that the Court of Federal Claims has the authority to adjudicate an "alleged violation of statute or regulation in connection with a procurement or a proposed procurement," Congress aligned the court's authority with that of the GAO and GSBCA and it ensured that the court could hear challenges across the entire process of procurement contract formation.  Congress did *not*, however, fundamentally alter the nature of what a bid protest *is*; and it did not give private businesses a cause of action to monitor legal compliance in contracts to which they are not parties.

That is, any dispute between NGA and CACI over the meaning of the SAFFIRE contract, including CACI's compliance with its undisputed contractual obligation to "incorporate," "[t]o the maximum extent practicable," "commercial" or "non-developmental items," SAppx1445; FAR 52.244-6(b), would have to proceed pursuant to the Contract Disputes Act.  Percipient's argument that as an aspiring *sub*contractor it can skip the competition, wait until contract performance

is well under way, elide the exhaustion and privity requirements a prime contractor would be held to, and gain access to the court's more affirmative and thus intrusive injunctive relief powers is an untenable perversion of the statutory text and underlying congressional intent.[9]  At minimum, it provides no basis for the Court to depart from its longstanding precedent.

At bottom, as reflected in the established definition of "interested party," a bid protest—assuming it succeeds on the merits—has to materially advance the possibility that the protester will come to be in privity with the Government in the procurement being challenged.  That is not this case because Percipient did not participate in, and by its own admission never had any intention of competing for, the SAFFIRE procurement.  The Court should not disrupt decades of settled expectations to rescue Percipient from the, perhaps regrettable, but eminently predictable consequences of its strategic business choices.  The judgment of dismissal should be affirmed.

## ARGUMENT

## I.    Standard of Review

"This court reviews Court of Federal Claims's decisions *de novo* for errors of law, and for clear error on findings of fact."  *Anaheim Gardens v. United States*, 444

---

[9]  It would also undermine the very essence of competitive procurements:  why bother participating in the rigors of the competitive process, when you can just show up and demand entry later?

F.3d 1309, 1314 (Fed. Cir. 2006).  Dismissals, both for lack of subject matter

jurisdiction and for failure to state a claim, are reviewed *de novo*.  *Id.*; *Harmonia*

*Holdings Grp., LLC v. United States*, 999 F.3d 1397, 1401 (Fed. Cir. 2021).  And the

Court can "affirm the … dismissal on any ground supported by the record."

*Wyandot Nation v. United States*, 858 F.3d 1392, 1397 (Fed. Cir. 2017).

## II.   The Court's Longstanding Definition of "Interested Party" Is Correct and Applies Across the Full Spectrum of § 1491(b)(1)

For decades, this Court has interpreted the term "interested party" in

§ 1491(b)(1) to incorporate CICA's definition of the same term.  *AFGE*, 258 F.3d

at 1302 (citing § 3551(2) (Supp. IV 1998)).  The term "interested party" is limited

to "actual or prospective bidders or offerors whose direct economic interest would

be affected by the award of the contract or by failure to award the contract."  *Id.*

As discussed below, the text, structure, and history of § 1491(b)(1) support this

longstanding interpretation of "interested party."

### A.   The Statutory Text Shows that the CICA Definition of Interested Party Applies Across the Full Scope of § 1491(b)(1)

The Court begins, as it must, with the text of the statute.  In addition, "[i]t is

a fundamental canon of statutory construction that the words of a statute must be

read in their context and with a view to their place in the overall statutory scheme."

*Nat'l Assn. of Home Builders v. Def. of Wildlife*, 551 U.S. 644, 666 (2007) (quotation

marks omitted); *Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014).

Section 1491(b)(1) undisputedly permits the Court of Federal Claims to only hear claims filed by "interested parties."  Although ADRA did not itself define "interested party," Congress was not writing on a blank slate when it enacted § 1491(b)(1).  "Where Congress employs a term of art obviously transplanted from another legal source, it brings the old soil with it."  *George v. McDonough*, 596 U.S. 740, 746 (2022) (cleaned up).  In this case that source is transparently the Competition in Contracting Act, where Congress *did* expressly define "interested party" in the context of bid protest challenges, twice.  *See* CICA § 2741, 98 Stat. at 1199 (defining "interested party" for bid protests before the GAO); *id.* § 2713, 98 Stat. at 1183-84 (providing the same definition of "interested party" for bid protests before the GSBCA).

Moreover, the Competition in Contracting Act allowed an "interested party" to file protests at the GSBCA, whose bid protest jurisdiction mirrored all three "prongs" that Congress later incorporated into § 1491(b)(1):

(1)    "a solicitation by a Federal agency for bids or proposals for a proposed contract for the procurement of property or services,"

(2)    "a proposed award or the award of such a contract," or

(3)    "any decision by a contracting officer alleged to violate a statute or regulation" "in connection with any procurement" under the Brooks Act.

CICA, § 2713, 98 Stat. at 1182-84; *see* § 759(f)(1), (9) (1994).  Percipient mistakenly suggests that CICA only defined "interested party" for purposes of protests at

GAO, En Banc Br. 32 & n.6—ignoring the bid protest jurisdiction before the GSBCA.  Percipient is just as wrong that "the third prong" of § 1491(b)(1) jurisdiction "in no way resembles CICA."  En Banc Br. 32.  Indeed, Percipient is wrong even with respect to CICA's grant of GAO jurisdiction, which pre-ADRA also expressly authorized GAO to review "an alleged violation of a procurement statute or regulation."  § 2741, 98 Stat. at 1199; *see* § 3552 (1994).

Regardless of the "type" of protest—whether before GAO or GSBCA—CICA defined "interested party" to mean "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract."  §§ 2713, 2741, 98 Stat. at 1184, 1199.  Indeed, pre-ADRA, this Court repeatedly enforced the "interested party" requirement when reviewing protests appealed from the GSBCA.  *See, e.g., Fed. Data Corp. v. United States*, 911 F.2d 699, 703 (Fed. Cir. 1990) (dismissing a challenge that a corrective action decision violated the FAR because protester withdrew from the competition before filing its protest); *MCI Telecomm. Corp. v. United States*, 878 F.2d 362, 364 (Fed. Cir. 1989) (explaining that, having not submitted a proposal and therefore not being an *actual* bidder or offeror, "to establish that it is an interested party, MCI must convince us that it is a prospective bidder or offeror …").

ADRA transplanted this "old soil" to § 1491(b).  As shown by the chart

below, Congress used the identical term "interested party" alongside other

terminology from the Competition in Contracting Act in § 1491(b)(1)[10]:

| Terms | Competition in Contracting Act | | ADRA |
|---|---|---|---|
| | GAO Protest, § 2714, 98 Stat. at 1199 | GSBCA Protest, § 2713, 98 Stat. at 1182-84 | COFC Protest, § 12, 110 Stat. at 3870 |
| Interested Party | "'[I]interested party', with respect to a contract or proposed contract described in [the meaning of protest], means an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." | "[T]he term '*interested party*' means, with respect to a contract or proposed contract described in [the meaning of protest], an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." | Granting jurisdiction "to render judgment on an action by an *interested party* objecting to …" |
| Protest | "'[P]rotest' means a written objection by an interested party to a *solicitation* by an executive agency for bids or proposals for a proposed contract for the procurement of property or services *or* a written objection by an interested party to a *proposed award or the award of such a contract*." | "[T]he term 'protest' means a written objection by an interested party to a *solicitation* by a Federal agency for bids or proposals for a proposed contract for the procurement of property or services *or* a written objection to a *proposed award or the award* of such a contract." | "… a *solicitation* by a Federal agency for bids or proposals for a proposed contract or to a *proposed award* or the *award of a contract*" |

---

[10] All emphasis in the chart is added.

| Terms | Competition in Contracting Act | | ADRA |
| --- | --- | --- | --- |
| | **GAO Protest, § 2714, 98 Stat. at 1199** | **GSBCA Protest, § 2713, 98 Stat. at 1182-84** | **COFC Protest, § 12, 110 Stat. at 3870** |
| Alleged violation of statute or regulation in connection with a procurement or proposed procurement | "A protest concerning an alleged *violation of a procurement statute or regulation* shall be decided by the Comptroller General if filed in accordance with this subchapter."<br><br>"An interested party who has filed a protest [at the GSBCA] with respect to a *procurement or proposed procurement* may not file a protest with respect to that procurement under this subchapter." | "Upon request of an interested party *in connection with any procurement* conducted under the authority of [the Brooks Act] . . . , the board of contract appeals of the General Services Administration … shall *review any decision by a contracting officer alleged to violate a statute or regulation.*"<br><br>"An interested party who has filed a protest [at the GAO] … with respect to a *procurement or proposed procurement* may not file a protest with respect to that *procurement or proposed procurement* under this subsection." | " … or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement" |

"The point of the old-soil principle is that when Congress employs a term of art, that usage itself suffices to adop[t] the cluster of ideas that were attached to each borrowed word in the absence of indication to the contrary." *George*, 596 U.S. at 753 (quotation marks omitted). Thus, when Congress transplanted the defined

term "interested party" from the Competition in Contracting Act to § 1491(b)(1), Congress brought that definition along in the old soil. *See also Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 59 (2024) ("When Congress takes the trouble to define the terms it uses a court must respect its definitions as 'virtually conclusive.'").

For decades, this Court has recognized this fundamental principle. As explained in *AFGE*, the term that Congress chose to "define standing under § 1491(b)"—"interested party"—"is a term that is used in another statute that applies to government contract disputes, the CICA." *AFGE*, 258 F.3d at 1302. Addressing the GSBCA's bid protest jurisdiction, likewise, this Court recognized that "[t]he definition of 'interested party' in the Brooks Act applies to the Tucker Act with equal force." *See Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006); *see also* § 759(f)(9)(B) (1994).

Critically, although Congress explicitly cross-referenced the APA for the court's standard of review, § 1491(b)(4), Congress *did not* use language from the APA in defining standing. *Compare* § 1491(b)(1) ("interested party"), *with* 5 U.S.C. § 702 ("[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute"); *see AFGE*, 258 F.3d at 1302.

Moreover, subsequent amendments Congress made to both § 1491(b) and the definition of "interested party" in CICA cement the link between the two. In 2007, for purposes of GAO protests with respect to certain "public-private competition[s]," Congress added to the definition of "interested party" in 31 U.S.C. § 3551(2)(B). *See* Consolidated Appropriations Act, Pub. L. 110-161, Title VII, § 739(c)(1), 121 Stat 1844, 2030 (2007). Congress *simultaneously* amended § 1491(b) to add an explicit cross-reference to that definition. *Id.*, § 739(c)(2), 121 Stat. at 2031; § 1491(b)(5). In doing so, Congress did *not* otherwise disturb this Court's interpretation of "interested party" in § 1491(b)(1) as adopting the CICA definition. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 243 n.11 (2009) ("When Congress amended [the law] without altering the text of [the relevant provision], it implicitly adopted [the Court's prior] construction of the statute.").

## B. Purpose and History Confirm the Court's Longstanding Interpretation of Interested Party in § 1491(b)(1)

"[B]eyond context and structure, the Court often looks to 'history [and] purpose' to divine the meaning of language." *Gundy v. United States*, 588 U.S. 128, 141 (2019) (alteration in original, quoting *Maracich v. Spears*, 570 U.S. 48, 76 (2013)). And "while legislative history can never defeat unambiguous statutory text, historical sources can be useful," for example to "ferret out [] shifts in linguistic usage or subtle distinctions between literal and ordinary meaning." *Bostock v.*

*Clayton Cty.*, 590 U.S. 644, 674-75 (2020); *see Ireland v. United States*, 101 F.4th 1338, 1343 (Fed. Cir. 2024) ("Beyond the statute's text, [the traditional tools of statutory construction] include the statute's structure, canons of statutory construction, and legislative history.") (alteration in original).

In this case, the legislative history leaves no doubt that Congress deliberately used the exact same "interested party" term in § 1491(b)(1) that it had previously defined in the Competition in Contracting Act and it did so with the intention of adopting the same definition. ADRA's consolidation of bid protest judicial review in the Court of Federal Claims stemmed from the work done by the Section 800 panel chartered by Congress to "review the acquisition laws applicable to the Department of Defense with a view toward streamlining the defense acquisition process" and "make any recommendations for the repeal or amendment of such laws that the panel considers necessary." NDAA FY91, § 800, 104 Stat. at 1587; *see* 142 Cong. Rec. at S11849 (statement of Sen. Levin) (discussing the panel's recommendations).

When it came to bid protest review, the Section 800 panel recommended that "[t]here should be only one judicial system for consideration of bid protests and that forum should have jurisdiction to consider all protests which can now be considered by the district courts and by the Court of Federal Claims." Panel Report at 1-213. In setting out what that expanded jurisdiction of the Court of

Federal Claims should look like, the panel made six specific recommendations. As most relevant here, the panel expressly recommended amending § 1491 "to provide that *only interested parties, as defined by the Competition in Contracting Act (CICA)*, can file protests." Panel Report at 1-266 (emphasis added). There is no mystery in the origins of § 1491(b)(1)'s "interested party" language—or the corresponding definition of that term.

Legislative history similarly confirms that, consistent with granting the identical universe of "interested parties" standing to protest, the purpose of the so-called "prong three" language in § 1491(b)(1) was not to expand the trial court's jurisdiction *beyond* the scope of GAO's or the GSBCA's review but to *align* the trial court's authority with that review. The Section 800 panel report envisioned that in consolidating bid protest review in the Court of Federal Claims, that court's "jurisdiction should, as much as possible, *parallel* that of the GAO and the GSBCA in order to avoid both the forum shopping and type of confusion that has occurred in the past." Panel Report at 1-265 (emphasis added). In particular, the panel was concerned that the Court of Federal Claims's implied-in-fact-contract-based bid protest review did not extend to all of the "type[s] of agency wrongdoing for which the GAO and the GSBCA customarily grant relief." Panel Report at 1-258.

Thus, another of the panel's specific recommendations was that § 1491 be amended to "provide that the Court, like the GAO and the GSBCA, is authorized

to find improper any agency action which violates a procurement law or regulation." Panel Report at 1-266. Again, it is a short distance from that recommendation to § 1491(b)(1)'s "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement" language.

Critically, nothing in either the Panel Report or any other legislative history suggests that Congress intended to use this language to expand bid protest review beyond the process of procurement contract formation. To the contrary, the Panel Report addressed contract administration in a separate chapter—distinct from bid protests which it addressed in the contract formation chapter. *See* Panel Report at I-12–13. And the sponsors of § 1491(b)'s language were also careful to "note[]" that it "in no way expands the jurisdiction of the Court of Federal Claims beyond bid protests or changes the standard of review in any other area of jurisdiction of the Court of Federal Claims." 142 Cong. Rec. at S11848 (statement of Sen. Cohen); *see also* Section III.B, below.

Finally, legislative history confirms that in consolidating (and eventually eliminating) parallel Federal district court review over bid protests—the so-called *Scanwell* jurisdiction—Congress did not intend to expand the definition of "interested party" in § 1491(b)(1) beyond the confines it had given that term in CICA. For example, in addressing comments opposing the abolition of *Scanwell* jurisdiction, the Section 800 panel explained that its recommendations—which as

33

discussed above explicitly presumed the CICA definition of "interested party," Panel Report at 1-266—would give the Court of Federal Claims jurisdiction "to consider every category of bid protest previously considered by district courts." Panel Report at 1-264; *compare* § 1491(b)(1).

Moreover, the prevailing understanding of *Scanwell* jurisdiction was that it was limited to cases brought by a "disappointed bidder" or "sufficiently viable runners-up in a procurement process." *AFGE*, 258 F.3d at 1301-02 (quoting *Int'l Eng'g Co.*, 512 F.2d at 579 & *Free Air Corp.*, 130 F.3d at 450). Thus, "[e]ven if [Percipient were to] pluck from the crowd a few stray decisions" permitting parties who were not actual or prospective bidders to invoke *Scanwell* jurisdiction "that would not show a 'settled meaning' that [the Court] can infer Congress had in mind when it enacted [§ 1491(b)(1)]." *George*, 596 U.S. at 750. As the Supreme Court warned, "[w]hen we say that a statute adopts a term of art, we mean that it captures 'the state of [a] body of law,' not every errant decision of arguable relevance." *Id.* at 749-50.

### C.     There Is No Basis to Disrupt Decades of This Court's Precedent Adopting CICA's Definition of "Interested Party"—Including in So-Called "Prong Three" Cases

Finally, decades of this Court's unbroken line of precedent have applied the CICA definition of "interested party" to *all* protests filed under § 1491(b)(1). The settled expectations engendered by this stable precedent are by themselves a

powerful reason to let it stand.  Indeed, the Supreme Court has explained that "*stare decisis* carries enhanced force when a decision … interprets a statute" because "critics of [the Court's] ruling can take their objections across the street, and Congress can correct any mistake it sees."  *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 456 (2015).  Moreover, in "cases involving property and contract rights[,] considerations favoring *stare decisis* are at their acme."  *Id.* at 457 (quotation marks omitted).

Both of these thumbs on the *stare decisis* scale apply in this case.  If Congress wished to depart from the established meaning of "interested party," it could provide a new definition.[11]  And both the Government and the industry contractors who come to do business with the Government rely on the existing "precedents when ordering their affairs."  *Kimble*, 576 U.S. at 457.  "Procedures in the litigation-prone arena of" Government contracts (no less so than patent rights) "can affect the cost, time, and uncertainty of litigation, and in turn affect economic activity founded on" those contracts.  *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1283 (Fed. Cir. 2014) (en banc), *vacated on other grounds by Lighting Ballast Control LLC v. Universal Lighting Tech., Inc.*, 574 U.S. 1133 (2015).  Permitting unrelated third parties who had no involvement in the competitive process to interfere with the performance of ongoing contracts under the guise of

---

[11]  Instead, Congress strengthened the link between § 1491(b) and the CICA definition of "interested party," by later amending both together.  *See* Section II.A.

bid protest review would threaten to destabilize every Government contract.[12]

The Court first considered how to interpret "interested party" specifically in the post-ADRA § 1491(b)(1) in *AFGE*. In that case the Court directly confronted the question of whether "interested party" in § 1491(b)(1) should be interpreted in accordance with the definition in CICA, or whether instead—in "confer[ring] on the Court of Federal Claims jurisdiction previously exercised only by district courts under *Scanwell*"—"Congress intended to expand the class of parties who can bring bid protest actions" under § 1491(b)(1) to "parties other than actual or prospective bidders." 258 F.3d at 1299-302.

After exhaustively consulting the text and legislative history, the Court concluded that by "us[ing] the same term in § 1491(b) as it did in the CICA," "Congress intended the same standing requirements that apply to protests brought under the CICA to apply to actions brought under § 1491(b)(1)." *Id.* at 1302. Accordingly, the Court held "that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Id.*

---

[12] Just in the context of this case, Percipient's proposed relief could displace a contract between CACI and the small business performing the Computer Vision work in CACI's small business contracting plan. *See* Appx1603-1606. Under Percipient's proposed standard, that small business could presumably file *its own* protest against NGA under § 1491(b)(1), alleging failure to require CACI to comply with its small business subcontracting plan. FAR 52.219-9, FAR 52.219-16.

Since then, the Court has consistently, and repeatedly, applied this same definition of standing to *all* protest challenges brought under § 1491(b).[13]

Percipient's proposed interpretation of "interested party" would conflict with the Court's prior interpretation in *AFGE* and its progeny.  In *AFGE*, the plaintiffs were Government employees alleging that they would be displaced if the agency were to use an outside contract for the services they were providing—and claiming that the agency's cost comparison, which would have permitted use of an outside contractor, violated the law.  258 F.3d at 1297.  Arguably then, the *AFGE* plaintiffs' "ability to offer [their] … service[s] to meet the Government's needs [was] directly thwarted by the Government's alleged legal violation."  *See* En Banc Br. 25-26.  Admittedly, the *AFGE* plaintiffs did not "offer"—in the FAR sense, *see* FAR 2.101—their services to the Government.  Then again, neither has Percipient.  But if Percipient meets its proposed definition of interested party, it is difficult to

---

[13] *E.g., Associated Energy Grp., LLC v. United States*, – F.4th –, 2025 U.S. App. Lexis 6381, at *12-14 (Fed. Cir. Mar. 19, 2025); *Oak Grove Techs., LLC v. United States*, 116 F.4th 1364, 1376 (Fed. Cir. 2024); *REV, LLC v. United States*, 91 F.4th 1156, 1163 (Fed. Cir. 2024); *PDS Consultants, Inc. v. United States*, 907 F.3d 1345, 1356 (Fed. Cir. 2018); *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1357 (Fed. Cir. 2018); *Diaz v. United States*, 853 F.3d 1355, 1358-59 (Fed. Cir. 2017); *Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1358-61 (Fed. Cir. 2015); *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir. 2012); *Distributed Sols.*, 539 F.3d at 1344-45; *Rex Serv. Corp.*, 448 F.3d at 1307-08; *Banknote Corp. of Am., Inc. v. United States,* 365 F.3d 1345, 1351-52 (Fed. Cir. 2004); *Myers Investigative & Sec. Servs., Inc. v. United States,* 275 F.3d 1366, 1370 (Fed. Cir. 2002).

see why the *AFGE* plaintiffs would not.  Thus, contrary to Percipient's assertion, *see* En Banc Br. 40, adopting its proposed test would amount to overruling *AFGE*.

And although Percipient just barely acknowledges that the *en banc* Court does not overturn existing precedent lightly, Percipient makes no attempt to meet its burden to justify overruling *AFGE* here.  En Banc Br. 42 & n.9; *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 413-14 (2010) (explaining that the party challenging existing precedent bears the burden of persuasion to demonstrate the "special justification" necessary to set aside precedent).  No "subsequent cases have undermined [its] doctrinal underpinnings," it has not "proved 'unworkable,'" nor does "a considerable body of new experience require[] changing the law."  *Lighting Ballast Control*, 744 F.3d at 1283.

To the contrary, since 2001, the Court has repeatedly applied the CICA definition of "interested party" standing to all bid protests, including so-called "prong three only" protests without issue.  For example, in *Distributed Solutions*, the Court applied the existing CICA "interested party" requirement when reviewing the Government's decision to forego a competitive procurement and not issue a solicitation, which was alleged to violate "the Competition in Contracting Act (CICA), 31 U.S.C. § 3551, *et seq.,* the Small Business Act, 15 U.S.C. § 631(j)(3), and various Federal Acquisition Regulations (FAR)."  539 F.3d at 1343-45.  Similarly, in *Diaz v. United States*, the Court applied the CICA definition of "interested party" to

38

a bid protest alleging that "the Contracting Officer improperly rejected [an]

unsolicited proposal pursuant to FAR 15.606-1." 853 F.3d 1355, 1358 (Fed. Cir.

2017). In both these cases—by definition—neither a solicitation nor a proposed

award or award of a contract was being challenged as none existed. Other

examples of the Court applying the CICA "interested party" standard to "prong

three" protests abound, *e.g.*:

- a challenge to an agency's resolution of an alleged Procurement Integrity Act violation or organizational conflict of interest determination, *Oak Grove Techs., LLC v. United States*, 116 F.4th 1364, 1373, 1376 (Fed. Cir. 2024);

- a challenge to the cancellation of a procurement based on an alleged violation of the Rule of Two pursuant to 38 U.S.C. § 8127(d), *Land Shark Shredding, LLC v. United States*, 842 F. App'x 589, 591-92 (Fed. Cir. 2021);

- a pre-award challenge to a sole source determination based on an alleged violation of the Competition in Contracting Act, *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1357-58 (Fed. Cir. 2018);

- a challenge to the scope of an agency's corrective action based on "alleged violations of statutes and regulations governing the procurement process," *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1381-1382 (Fed. Cir. 2012);

And to the extent Percipient contends that some of these cases involve a

mix of "prongs," that would only confirm how unworkable—not to mention

needlessly complicated—it would be to require the trial court to sort the protest

into a "prong" bucket in order to know what definition of interested party to

apply. As the Panel dissent correctly observed, "[t]he majority can point to no

genuine difference in substance between prong one/two and prong three protests." *Percipient.ai*, 104 F.4th at 869 (Clevenger, J., dissenting). Indeed, in *AFGE itself*, the "primary thrust of the case was the prong three allegation of error," and "[w]hile the plaintiffs did object to the award of the contract"—"in passing as an adjunct"—"their prong three allegation of regulatory violations dominated their case." *Id.* at 866 (Clevenger, J., dissenting).

In sum, adopting Percipient's special "prong three" definition of standing would upend *AFGE* and its progeny. There is no "compelling" or "special justification" necessary to justify abandoning long and well-settled *stare decisis*. *Lighting Ballast Control LLC*, 744 F.3d at 1281-82.

## III. Percipient's Arguments for Carving Out a Different "Interested Party" Standing Requirement for "Prong Three" Cases Generally Or "Commercial Preference" Cases Specifically Are Baseless

In the face of this contrary textual, historical, and judicial authority, Percipient invents its own definition of "interested party"—untethered to any existing statutory text. *See* En Banc Br. 25-26. And it hangs the need for such a departure on the foundational premise that so-called "prong three" of § 1491(b)(1) extends protests beyond the process of contract formation and so the definition of "interested party" must be expanded beyond "actual or prospective bidders" to match. En Banc Br. 30-34; *Percipient.ai*, 104 F.4th at 855-56. This argument turns the statutory text on its head.

### A.  The Term "Interested Party" Appears Once in § 1491(b)(1), and Has Only One Meaning

First, there is no basis for assigning multiple different meanings to the term "interested party"—which appears only *once* in § 1491(b)(1).  Whatever "interested party" means in § 1491(b)(1), there is *one* definition that embraces the entire jurisdictional grant.  It would be ungrammatical for the singular noun "an interested party" to not extend in the same way to all of the "object[ions]" it is modifying.  § 1491(b)(1).

To be sure, the application of that definition may differ depending on the facts presented.  Thus, this Court has held that "prospective bidders" remain "prospective bidders" if they diligently pursue protests to the terms of a solicitation that they intend to bid on (if the protest is successful), even if the original proposal period closes while that challenge is being adjudicated.  *CGI Fed. Inc. v. United States*, 779 F.3d 1346, 1351 (Fed. Cir. 2015).  And that a "mandatory source" is a "prospective bidder" by operation of law.  *SEKRI, Inc. v. United States*, 34 F.4th 1063, 1071-73 (Fed. Cir. 2022).  And that the level of evidence required to show a "direct economic interest" will vary depending on the posture of the procurement being challenged and the resulting information available.  *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1361-62 (Fed. Cir. 2009).  But an application of the existing definition is *not* "redefin[ing]" what "interested party" means.  *Contra* En

Banc Br. 36-38.  Percipient makes *no* argument that it meets the existing definition,

even "flexibl[y]" applied.  En Banc Br. 39.

> **B.    Applying the Same CICA Definition of "Interested Party" to All
> Bid Protests Does Not Render the Third Prong of § 1491(b)(1)
> Superfluous**

Percipient next contends that its proposed interpretation of "interested

party" is necessary to avoid rendering prong three superfluous.  *E.g.*, En Banc

Br. 30; *id.* at 46; *see also* Palantir Am. Br. (ECF 71).[14]  On its face, this argument

ignores this Court's repeated application of the CICA "interested party" standing

test in what would be prong-three cases.  *See* Section II.C, above.  To the extent

Percipient nonetheless attempts to invoke the "canon against surplusage," *Marx v.

Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013)—despite failing to identify any

superfluous statutory language—it ignores the text and history showing that

Congress incorporated the "interested party" term of art from the Competition in

Contracting Act.  *See* Section II.A, above.  And, in arguing that the prong-three

language broadens that term, Percipient also ignores the shared origins of both the

"interested party" *and* "alleged violation of statute or regulation in connection with

a procurement or a proposed procurement" language in CICA (and the Section

---

[14] Palantir Technologies Inc. is not coy about the revolutionary implications it
hopes to achieve by supporting Percipient's position, asking the Court to "put an
end to" what it calls a "*misnomer* that the third prong of §1491(b)(1), like the first
two prongs, is limited to 'bid protests.'" Am. Br. 14 (emphasis added).

800 panel recommendations).  *See* Section II.B, above.

Percipient's claim to superfluity absent an expanded definition of standing also fails because it rests on the incorrect premise that § 1491(b)(1) extends beyond the process of contract formation and into contract administration.  *Contra* En Banc Br. 30-33.  Percipient points to no case *holding* that § 1491(b)(1) bid protest jurisdiction extends beyond contract formation.  Its sole support for this proposition is the *Distributed Solutions* Court's reliance on an Office of Federal Procurement Policy (OFPP) Act definition of "procurement" as "includ[ing] all stages of the process of acquiring property or services, *beginning with the process for determining a need* for property or services and ending with contract completion and closeout."  539 F.3d at 1345 (emphasis in original, citing what has since been recodified as 41 U.S.C. § 111); En Banc Br. 30-31.  But as shown by the Court's chosen emphasis, the question in *Distributed Solutions* was about the front end of the procurement process—how early can protest rights attach—not the back end, *i.e.* when do they end.  The Court's actual holding, that the Government, by starting the procurement process, had at least crossed the threshold of a "proposed procurement," 539 F.3d at 1346, certainly does not implicate bid protest review beyond contract formation.

Indeed, in *Distributed Solutions*, the Court reiterated that "[t]he trial court was certainly correct that adding work to an existing contract that is clearly within the

scope of the contract does not raise a viable protest under § 1491(b)(1)." *Id.* (citing *AT & T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d 1201 (Fed. Cir. 1993)). That recognition by itself confirms that not "*all* stages of the process of acquiring property or services … [through] contract completion and closeout" are actionable under § 1491(b)(1).

Moreover, the rest of the *Distributed Solutions* decision undermines a direct "plug-and-play" adoption of the entire OFPP definition into § 1491(b)(1). For example, the *Distributed Solutions* Court observed that § 1491(b)(1) "explicitly contemplates the ability to protest these kinds of *pre-procurement* decisions by vesting jurisdiction in the Court of Federal Claims over '*proposed* procurements.'" 539 F.3d at 1346 (emphasis added). But if the term "procurement" by itself *already* encompasses "*all* stages of the process of acquiring property or services" including "the process for determining a need for property or services," then the difference between a "procurement" and a "proposed procurement" collapses.

Similarly, the Court observed that § 1491 "does not require an actual procurement." *Id.* Again, if the word "procurement" itself means "*all* stages of the process of acquiring property or services" then that observation—implying that no procurement exists at all—would either be contrary to or undermine the Court's holding that "relief under 1491(b)(1) is unavailable outside the procurement context." *Res. Conservation Grp., LLC v. U.S.*, 597 F.3d 1238, 1245 (Fed. Cir. 2010).

The better understanding of the phrase "procurement or proposed procurement"—which, like the term "interested party," also originates in the Competition in Contracting Act—is that it reflects the intention behind ADRA to harmonize bid protest review between the Court of Federal Claims and the non-judicial forums.  The Competition in Contracting Act provided that an interested party who filed a protest at the GSBCA "with respect to a *procurement or proposed procurement* may not file a protest with respect to that procurement" before the GAO.  § 2741, 98 Stat. at 1199 (emphasis added); *see* § 3552 (1994).  Similarly, an interested party who filed a protest with the GAO could not file "a protest with respect to that *procurement or proposed procurement*" before the GSBCA.  § 2371, 98 Stat. at 1182 (emphasis added); *see* § 759(f)(1) (1994).  At the time of ADRA's passage, the understanding of bid protest review was that it was limited to the process of procurement contract formation.  There is no reason to believe that by using existing language Congress intended to expand that scope.

Percipient's attempt to sweep challenges to contract administration into "prong three"—and leverage that expansion to broaden "interested party" standing—faces still more textual and practical problems.  For example, by asking the Court to adjudicate disputes regarding contract administration under § 1491(b)(1), Percipient's position threatens the "comprehensive statutory system of legal and administrative remedies in resolving government contract claims"

established in the Contract Disputes Act. *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1369 (Fed. Cir. 2009)). Subcontractors or prospective subcontractors that are not in privity of contract with the Government generally "cannot avail themselves of the CDA's appeal provisions." *Id.* at 1371. "[S]uits brought under the CDA and § 1491(a) challenge performance under a contract, and privity of contract bars actual subcontractor standing to sue under those provisions." *Percipient.ai*, 104 F.4th at 872 (Clevenger, J., dissenting). The CDA also requires the filing of a claim with the contracting officer before the contractor may file suit. *See* 41 U.S.C. § 7104. It would make no sense to grant more court access—without the strictures of the CDA but with the availability of more disruptive injunctive relief—to aspiring subcontractors than possessed by existing prime contractors.[15]

Another problem with Percipient's premise is that § 1491(b)(4) requires the court to "review the agency's *decision* pursuant to the standards set forth in section 706 of title 5." (emphasis added). That directive makes sense in the context of the process of contract formation, which is comprised of a series of identifiable final agency decisions, *e.g.*, the decision to issue a solicitation, to form a competitive

---

[15] Extending § 1491(b)(1) to contract administration raises the specter of the Court of Federal Claims ordering an agency to take enforcement action in an ongoing contract, and the prime contractor then pursuing Contract Disputes Act remedies for an alleged breach—with each case proceeding under different bases of jurisdiction, § 1491(a) *vs.* (b)(1), and different standards of review, § 7104(b)(4) (*de novo*) *vs.* § 1491(b)(4) (APA-style review).

range, to cancel, to award a contract. *See also* Appendix C, Rules of the United States Court of Federal Claims, ¶ 22 (describing the "core documents" of an administrative record that may be "relevant to a protest" in terms of contract formation documents). But it is entirely unclear what *final agency decision* by NGA Percipient is seeking to challenge here.[16]

In any event, even if "bid protest" actions did allow challenges to the process of contract administration in addition to the process of contract formation, Percipient's conclusion—that it should escape the CICA definition of "interested party"—would still be wrong under the terms of its own argument. En Banc Br. 31. Percipient's protest *is*, and indeed must be, "with respect to a contract," specifically CACI's SAFFIRE contract. The entire premise of Percipient's protest is that by permitting CACI to not use Percipient as the source of its Computer Vision services *in the performance of that contract*, NGA has violated the law. Percipient, in fact, gives up the game when it admits that it either wants NGA to restructure its SAFFIRE procurement to separately license Percipient's product directly, or somehow direct that CACI select Percipient to be its subcontractor.

---

[16] The conflict with the Contract Disputes Act and absence of any final agency action also betrays Percipient's claimed alternative of an APA challenge in district court as an empty threat. *See* En Banc Br. 33-34; *see also, e.g., Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77 (D.C. Cir. 1985) ("[A] plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of regulatory or statutory provisions" where the "the essential rights at stake [] are contractual.").

En Banc Br. 27 n.5, 42-43.[17]

At bottom, although Percipient suggests that the Court should start with the scope of jurisdiction and backtrack into the definition of "interested party," *see* En Banc Br. 28, 32, the text of § 1491(b)(1) confirms the opposite. Whatever the breadth of the *types* of cases the Court of Federal Claims can hear under its § 1491(b)(1) authority, only "interested parties" can raise those objections. And the best, most textually grounded, interpretation of "interested party" is the Court's existing CICA definition.

## C.     Percipient's Policy Arguments Are Unfounded And Misdirected

Under Percipient's proposed rule, parties who *could not* have challenged a solicitation or award may nonetheless challenge administration of the same contract years later. This invitation to delay defies common sense and ADRA's statutory requirements. *See* § 1491(b)(3) ("[C]ourts shall give due regard to … the

---

[17] Tellingly, to the extent that this protest does go forward on remand, Percipient cites *no* law that would permit the Court to grant any such relief. And it is difficult to see how Percipient could succeed on the merits regardless, given that NGA indisputably *did*, in CACI's contract, "require [it] to incorporate commercial services, commercial products, or nondevelopmental items other than commercial products" "[t]o the maximum extent practicable," CACI in fact used an existing non-developmental solution as part of its Computer Vision services, and Percipient purports to disclaim any challenge with respect to an award of a task order. 10 U.S.C. § 3453(b)(2); Appx797 (incorporating FAR 52.244-6); Appx470-471, SAppx1404 (requiring the contractor to assume responsibility for WATCHMAN "from NGA Research" and thereafter design the Computer Vision platform and capabilities required by SAFFIRE).

need for expeditious resolution of the action."). As this Court has recognized, for example in establishing a waiver rule based in part on § 1491(b)(3), there are real benefits if challenges to procurements are raised early. *See Blue & Gold, Fleet, L.P. v. United States*, 492 F.3d 1308, 1313-15 (Fed. Cir. 2007). "[C]alling out error at the earlier stages is preferable, as remedy for error later on in a contract's life may be more costly than remedy for error earlier caught, and will significantly delay receipt by the government of the product or services for which it contracted." *Percipient.ai*, 104 F.4th at 869 (Clevenger, J., dissenting).

Percipient nonetheless argues that unless the Court expands the definition of "interested party" to accommodate its protest, the commercial items preference in § 3453 could become "illusory." *See* En Banc Br. 33. At the outset, even if Percipient were correct and no one would meet the definition of "interested party" to raise an alleged violation of this statute, that would still not undermine Congress's deliberate choice to use the CICA "interested party" language, or the imputation of the accompanying definition. The Supreme Court "has long rejected that kind of 'if not us, who?' argument as a basis for standing." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 396 (2024). "The assumption that if these plaintiffs lack standing to sue, no one would have standing, is not a reason to find standing." *Id.* (quotation marks omitted). Ultimately, the scope of the Government's sovereign immunity waiver is a policy choice that belongs to

Congress, not this Court, and Congress has undisputably seen fit to preclude bid protest review in at least some contexts, *see, e.g.*, 10 U.S.C. § 3406(f).[18]  *See also United States v. Miller*, – S.Ct. –, No. 23-824, 2025 U.S. Lexis 1279, \*21 (Mar. 26, 2025) ("[S]overeign-immunity waivers must be construed narrowly.").

But Percipient is also wrong—there are plenty of opportunities to vindicate the commercial items preference within the confines of existing law:  Percipient could have protested the scope of the SAFFIRE solicitation to separate the Computer Vision and SOM requirements into two separate procurements, *i.e.* precisely the outcome it seeks here if NGA were to license Mirage directly and incorporate it into CACI's remaining contract (except now NGA would have to pay for something it has already purchased a second time).  En Banc Br. 42-43.  It could have teamed with another business to submit an offer as a potential prime contractor (*see* FAR 9.601, 9.603) and then protested CACI's selection.  And CACI's competitors who had submitted offers could have protested based on the incorporation of commercial products in their proposal(s).

---

[18]  Indeed, although Percipient argues that it is "difficult to conclude that the very next Congress following passage of FASA would promulgate ADRA with the intention of eliminating any meaningful enforcement of the post-award preferences for commercial items in § 3453," En Banc Br. 34 (quoting Panel majority), no such difficulty exists.  ADRA did not "eliminate" anything—it simply did not expand the universe of bid protest standing as broadly as Percipient wishes.  But the FASA Congress itself undisputedly *did* eliminate a swath of bid protest judicial review in the task order bar.

Moreover, CACI's contract with NGA already requires it to "incorporate," "[t]o the maximum extent practicable," "commercial" or "non-developmental items as components of items to be supplied under this contract." FAR 52.244-6(b); Appx797.  There is nothing "illusory" about contractual obligations being enforced (and only enforceable) by the parties to the contract—that is the bedrock foundation of contract law.  Neither § 3453 nor § 1491(b)(1) gives Percipient (through the Court of Federal Claims) some Inspector General-like role in monitoring NGA's ongoing legal compliance in contract administration. *See also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021) ("Federal courts do not possess a roving commission to publicly opine on every legal question.  Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities.").

Indeed, the whole point of the commercial item preference in the Federal Acquisition *Streamlining* Act was to "reduce impediments to the purchase of commercial items" because it would make Government acquisitions cheaper, faster, and easier.  S. Rep. 103-258 at 5-6.  NGA has *every* incentive to ensure that CACI is complying with FAR 52.244-6.  By contrast, increasing the transaction costs of doing business with the Government by expanding bid protest litigation over this preference would only detract from those goals.

And if Congress one day decides, either on its own or at the urging of parties

51

like Percipient, that, in fact, enforcement of the commercial items preference (or

any other procurement law) is insufficient and that it is necessary to tip the overall

balance in favor of more protests, Congress remains free to modify the definition

of "interested party" as it sees fit.  But that freedom remains *Congress's* prerogative,

not this Court's.  "If policy considerations suggest that the current scheme should

be altered, Congress must be the one to do it."  *Intel Corp. Inv. Policy Comm. v.

Sulyma*, 589 U.S. 178, 188 (2020).

## IV.    The Court Should Reject Percipient's Invitation to Expand Bid Protest Standing by Adopting the APA Standard

Finally, Percipient invites the Court to set aside decades of its own precedent

and reverse course to adopt the analysis of a lone district court decision and

conclude that the APA standing rules apply to § 1491(b)(1) directly.  En Banc 26

n.4, Br. 47-53 (citing *Validata Chem. Servs. v. United States Dep't. of Energy*, 169 F.

Supp. 3d 69, 82, 84 (D.D.C. 2016)).  The *AFGE* Court confronted this question

head on, and correctly rejected it.  "When defining standing under § 1491(b)(1),"

Congress used the term "interested party"—not "the broad language of the APA."

*AFGE*, 258 F.3d at 1301-02 (citing § 702).  Congress could have easily cross-

referenced the standing principles of § 702 in § 1491(b)(1)—just as it did the

standard of review principles of § 706 in § 1491(b)(4)—but it did not.  "When

Congress includes particular language in one section of a statute but omits it in

another section of the same Act, [courts] generally take the choice to be deliberate." *Badgerow v. Walters*, 596 U.S. 1, 11 (2022) (alteration and quotation marks omitted).  For all the reasons discussed above, the Court should reject that broader invitation as well and sustain the wisdom of its own past counsel.

## CONCLUSION

The Court should affirm the trial court's judgment.

Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

PATRICIA M. McCARTHY
*Director*

/s/  Corinne A. Niosi
CORINNE A. NIOSI
*Assistant Director*

/s/  Reta E. Bezak
RETA E. BEZAK
EMMA E. BOND
GALINA I. FOMENKOVA
*Senior Trial Counsel*
*Commercial Litigation Branch*
*Civil Division*
*U.S. Department of Justice*
*P.O. Box 480, Ben Franklin Station*
*Washington, DC 20044*
*(202) 305-5633*
*reta.e.bezak@usdoj.gov*

April 4, 2025                    *Attorneys for the United States*

# ADDENDUM

# INDEX TO THE ADDENDUM

Competition in Contracting Act,
  Pub. L. 98-369, Title VII, 98 Stat. 1175 (1984) .................................................. Add1

31 U.S.C. § 3551, *et seq.* (1994)............................................................................ Add30

40 U.S.C. § 759 (1994) ............................................................................................ Add36

Report of the Acquisition Law Advisory Panel (Jan. 1993) [excerpt] .............. Add44

PUBLIC LAW 98–369—JULY 18, 1984        98 STAT. 1175

(b) EFFECTIVE DATE.—The amendment made by this section shall   26 USC 7652
apply to articles containing distilled spirits brought into the United   note.
States after September 30, 1985.

# TITLE VII—COMPETITION IN CONTRACTING

Competition in
Contracting Act
of 1984.

### SHORT TITLE

SEC. 2701. This title may be cited as the "Competition in Contract-   41 USC 251 note.
ing Act of 1984".

## Subtitle A—Amendments to the Federal Property and Administrative Services Act of 1949

#### PROCUREMENT PROCEDURES

SEC. 2711. (a)(1) Section 303 of the Federal Property and Adminis-
trative Services Act of 1949 (41 U.S.C. 253) is amended to read as
follows:

#### "COMPETITION REQUIREMENTS

"SEC. 303. (a)(1) Except as provided in subsections (b), (c), and (g)
and except in the case of procurement procedures otherwise ex-
pressly authorized by statute, an executive agency in conducting
a procurement for property or services—
  "(A) shall obtain full and open competition through the use of
  competitive procedures in accordance with the requirements of
  this title and the modifications to regulations promulgated
  pursuant to section 2752 of the Competition in Contracting Act
  of 1984; and                                                          *Post,* p. 1203.
  "(B) shall use the competitive procedure or combination of
  competitive procedures that is best suited under the circum-
  stances of the procurement.
"(2) In determining the competitive procedures appropriate under
the circumstance, an executive agency—
  "(A) shall solicit sealed bids if—
    "(i) time permits the solicitation, submission, and evalua-
    tion of sealed bids;
    "(ii) the award will be made on the basis of price and
    other price-related factors;
    "(iii) it is not necessary to conduct discussions with the
    responding sources about their bids; and
    "(iv) there is a reasonable expectation of receiving more
    than one sealed bid; and
  "(B) shall request competitive proposals if sealed bids are not
  appropriate under clause (A).
"(b)(1) An executive agency may provide for the procurement of
property or services covered by this section using competitive proce-
dures but excluding a particular source in order to establish or
maintain any alternative source or sources of supply for that proper-
ty or service if the agency head determines that to do so—
  "(A) would increase or maintain competition and would likely
  result in reduced overall costs for such procurement, or for any
  anticipated procurement, of such property or services;

Add1

"(B) would be in the interest of national defense in having a facility (or a producer, manufacturer, or other supplier) available for furnishing the property or service in case of a national emergency or industrial mobilization; or

"(C) would be in the interest of national defense in establishing or maintaining an essential engineering, research, or development capability to be provided by an educational or other nonprofit institution or a federally funded research and development center.

"(2) In fulfilling the statutory requirements relating to small business concerns and socially and economically disadvantaged small business concerns, an executive agency shall use competitive procedures but may restrict a solicitation to allow only such business concerns to compete.

"(c) An executive agency may use procedures other than competitive procedures only when—

"(1) the property or services needed by the executive agency are available from only one responsible source and no other type of property or services will satisfy the needs of the executive agency;

"(2) the executive agency's need for the property or services is of such an unusual and compelling urgency that the Government would be seriously injured unless the executive agency is permitted to limit the number of sources from which it solicits bids or proposals;

"(3) it is necessary to award the contract to a particular source or sources in order (A) to maintain a facility, producer, manufacturer, or other supplier available for furnishing property or services in case of a national emergency or to achieve industrial mobilization, or (B) to establish or maintain an essential engineering, research, or development capability to be provided by an educational or other nonprofit institution or a federally funded research and development center;

"(4) the terms of an international agreement or treaty between the United States Government and a foreign government or international organization, or the written directions of a foreign government reimbursing the executive agency for the cost of the procurement of the property or services for such government, have the effect of requiring the use of procedures other than competitive procedures;

"(5) a statute expressly authorizes or requires that the procurement be made through another executive agency or from a specified source, or the agency's need is for a brand-name commercial item for authorized resale;

"(6) the disclosure of the executive agency's needs would compromise the national security unless the agency is permitted to limit the number of sources from which it solicits bids or proposals; or

"(7) the head of the executive agency—

"(A) determines that it is necessary in the public interest to use procedures other than competitive procedures in the particular procurement concerned, and

"(B) notifies the Congress in writing of such determination not less than 30 days before the award of the contract.

"(d)(1) For the purposes of applying subsection (c)(1)—

"(A) in the case of a contract for property or services to be awarded on the basis of acceptance of an unsolicited research

proposal, the property or services shall be considered to be available from only one source if the source has submitted an unsolicited research proposal that demonstrates a unique and innovative concept the substance of which is not otherwise available to the United States and does not resemble the substance of a pending competitive procurement; and

"(B) in the case of a follow-on contract for the continued development or production of a major system or highly specialized equipment when it is likely that award to a source other than the original source would result in (i) substantial duplication of cost to the Government which is not expected to be recovered through competition, or (ii) unacceptable delays in fulfilling the executive agency's needs, such property may be deemed to be available only from the original source and may be procured through procedures other than competitive procedures.

"(2) The authority of the head of an executive agency under subsection (c)(7) may not be delegated.

"(e) An executive agency using procedures other than competitive procedures to procure property or services by reason of the application of subsection (c)(2) or (c)(6) shall request offers from as many potential sources as is practicable under the circumstances.

"(f)(1) Except as provided in paragraph (2), an executive agency may not award a contract using procedures other than competitive procedures unless—

"(A) the contracting officer for the contract justifies the use of such procedures in writing and certifies the accuracy and completeness of the justification;

"(B) the justification is approved—

"(i) in the case of a contract for an amount exceeding $100,000 (but equal to or less than $1,000,000), by the competition advocate for the procuring activity (without further delegation);

"(ii) in the case of a contract for an amount exceeding $1,000,000 (but equal to or less than $10,000,000), by the head of the procuring activity or a delegate who, if a member of the armed forces, is a general or flag officer or, if a civilian, is serving in a position in grade GS-16 or above under the General Schedule (or in a comparable or higher position under another schedule); or    5 USC 5332.

"(iii) in the case of a contract for an amount exceeding $10,000,000, by the senior procurement executive of the agency designated pursuant to section 16(3) of the Office of Federal Procurement Policy Act (41 U.S.C. 414(3)) (without    97 Stat. 1330. further delegation); and

"(C) Any required notice has been published with respect to such contract pursuant to section 18 of the Office of Federal Procurement Policy Act and all bids or proposals received in    *Post,* p. 1196. response to such notice have been considered by such executive agency.

"(2) In the case of a procurement permitted by subsection (c)(2), the justification and approval required by paragraph (1) may be made after the contract is awarded. The justification and approval required by paragraph (1) is not required in the case of a procurement permitted by subsection (c)(7) or in the case of a procurement conducted under the Act of June 25, 1938 (41 U.S.C. 46 et seq.), popularly referred to as the Wagner-O'Day Act.

"(3) The justification required by paragraph (1)(A) shall include—

"(A) a description of the agency's needs;

"(B) an identification of the statutory exception from the requirement to use competitive procedures and a demonstration, based on the proposed contractor's qualifications or the nature of the procurement, of the reasons for using that exception;

"(C) a determination that the anticipated cost will be fair and reasonable;

"(D) a description of the market survey conducted or a statement of the reasons a market survey was not conducted;

"(E) a listing of the sources, if any, that expressed in writing an interest in the procurement; and

"(F) a statement of the actions, if any, the agency may take to remove or overcome a barrier to competition before a subsequent procurement for such needs.

"(4) The justification required by paragraph (1)(A) and any related information shall be made available for inspection by the public consistent with the provisions of section 552 of title 5, United States Code.

"(5) In no case may an executive agency—

"(A) enter into a contract for property or services using procedures other than competitive procedures on the basis of the lack of advance planning or concerns related to the amount of funds available to the agency for procurement functions; or

"(B) procure property or services from another executive agency unless such other executive agency complies fully with the requirements of this title in its procurement of such property or services.

The restriction set out in clause (B) is in addition to, and not in lieu of, any other restriction provided by law.

"(g)(1) In order to promote efficiency and economy in contracting and to avoid unnecessary burdens for agencies and contractors, the regulations modified, in accordance with section 2752 of the Competition in Contracting Act of 1984 shall provide for special simplified procedures for small purchases of property and services.

*Post,* p. 1203.

"(2) For the purposes of this title, a small purchase is a purchase or contract for an amount which does not exceed $25,000.

"(3) A proposed purchase or contract for an amount above $25,000 may not be divided into several purchases or contracts for lesser amounts in order to use the small purchase procedures required by paragraph (1).

"(4) In using small purchase procedures, an executive agency shall promote competition to the maximum extent practicable.".

(2) Title III of such Act is further amended by inserting after section 303 the following new sections:

"PLANNING AND SOLICITATION REQUIREMENTS

41 USC 253a.

"SEC. 303A. (a)(1) In preparing for the procurement of property or services, an executive agency shall—

"(A) specify its needs and solicit bids or proposals in a manner designed to achieve full and open competition for the procurement;

"(B) use advance procurement planning and market research; and

PUBLIC LAW 98–369—JULY 18, 1984          98 STAT. 1179

"(C) develop specifications in such manner as is necessary to obtain full and open competition with due regard to the nature of the property or services to be acquired.

"(2) Each solicitation under this title shall include specifications which—

"(A) consistent with the provisions of this title, permit full and open competition;

"(B) include restrictive provisions or conditions only to the extent necessary to satisfy the needs of the executive agency or as authorized by law.

"(3) For the purposes of paragraphs (1) and (2), the type of specification included in a solicitation shall depend on the nature of the needs of the executive agency and the market available to satisfy such needs. Subject to such needs, specifications may be stated in terms of—

"(A) function, so that a variety of products or services may qualify;

"(B) performance, including specifications of the range of acceptable characteristics or of the minimum acceptable standards; or

"(C) design requirements.

"(b) In addition to the specifications described in subsection (a), each solicitation for sealed bids or competitive proposals (other than for small purchases) shall at a minimum include—

"(1) a statement of—

"(A) all significant factors (including price) which the executive agency reasonably expects to consider in evaluating sealed bids or competitive proposals; and

"(B) the relative importance assigned to each of those factors; and

"(2)(A) in the case of sealed bids—

"(i) a statement that sealed bids will be evaluated without discussions with the bidders; and

"(ii) the time and place for the opening of the sealed bids; or

"(B) in the case of competitive proposals—

"(i) a statement that the proposals are intended to be evaluated with, and awards made after, discussions with the offerors, but might be evaluated and awarded without discussions with the offerors; and

"(ii) the time and place for submission of proposals.

"EVALUATION AND AWARD

"SEC. 303B. (a) An executive agency shall evaluate sealed bids and competitive proposals based solely on the factors specified in the solicitation.                                                                          41 USC 253b.

"(b) All sealed bids or competitive proposals received in response to a solicitation may be rejected if the agency head determines that such action is in the public interest.

"(c) Sealed bids shall be opened publicly at the time and place stated in the solicitation. The executive agency shall evaluate the bids without discussions with the bidders and, except as provided in subsection (b), shall award a contract with reasonable promptness to the responsible source whose bid conforms to the solicitation and is most advantageous to the United States, considering only price and the other price-related factors included in the solicitation. The

Add5

award of a contract shall be made by transmitting written notice of the award to the successful bidder.

"(d)(1) The executive agency shall evaluate competitive proposals and may award a contract—

"(A) after discussions conducted with the offerors at any time after receipt of the proposals and before the award of the contract; or

"(B) without discussions with the offerors (other than discussions conducted for the purpose of minor clarification) when it can be clearly demonstrated from the existence of full and open competition or accurate prior cost experience with the product or service that acceptance of an initial proposal without discussions would result in the lowest overall cost to the Government.

"(2) In the case of award of a contract under paragraph (1)(A), the executive agency shall conduct, before such award, written or oral discussions with all responsible sources who submit proposals within the competitive range, considering only price and the other factors included in the solicitation.

"(3) In the case of award of a contract under paragraph (1)(B), the executive agency shall award the contract based on the proposals as received (and as clarified, if necessary, in discussions conducted for the purpose of minor clarification).

"(4) Except as otherwise provided in subsection (b), the executive agency shall award a contract with reasonable promptness to the responsible source whose proposal is most advantageous to the United States, considering only price and the other factors included in the solicitation. The executive agency shall award the contract by transmitting written notice of the award to such source and shall promptly notify all other offerors of the rejection of their proposals.

"(e) If the agency head considers that a bid or proposal evidences a violation of the antitrust laws, such agency head shall refer the bid or proposal to the Attorney General for appropriate action.".

(3) Section 309 of such Act (41 U.S.C. 259) is amended by adding at the end thereof the following new subsections:

"(b) The term 'competitive procedures' means procedures under which an executive agency enters into a contract pursuant to full and open competition. Such term also includes—

"(1) procurement of architectural or engineering services conducted in accordance with title IX of this Act (40 U.S.C. 541 et seq.);

"(2) the competitive selection of basic research proposals resulting from a general solicitation and the peer review or scientific review (as appropriate) of such proposals; and

"(3) the procedures established by the Administrator for the multiple awards schedule program of the General Services Administration if—

"(A) participation in the program has been open to all responsible sources; and

"(B) orders and contracts under such procedures result in the lowest overall cost alternative to meet the needs of the Government.

"(c) The terms 'full and open competition' and 'responsible source' have the same meanings provided such terms in section 4 of the *Post,* p. 1195. Office of Federal Procurement Policy Act (41 U.S.C. 403).".

(b) The table of contents of such Act is amended by striking out the item relating to section 303 and inserting in lieu thereof the following:

"Sec. 303. Competition requirements.
"Sec. 303A. Planning and solicitation requirements.
"Sec. 303B. Evaluation and award.".

(c) The amendments made by this section do not supersede or affect the provisions of section 8(a) of the Small Business Act (15 U.S.C. 637(a)). 41 USC 253 note.

## COST OR PRICING DATA

SEC. 2712. Section 304 of the Federal Property and Administrative Services Act of 1949 (41 U.S.C. 254) is amended by adding at the end thereof the following new subsection:

"(d)(1) A prime contractor or any subcontractor shall be required to submit cost or pricing data under the circumstances listed below, and shall be required to certify that, to the best of such contractor's or subcontractor's knowledge and belief, the cost or pricing data submitted were accurate, complete, and current—

"(A) before the award of any prime contract under this title using procedures other than sealed-bid procedures, if the contract price is expected to exceed $100,000;

"(B) before the pricing of any contract change or modification, if the price adjustment is expected to exceed $100,000, or such lesser amount as may be prescribed by the agency head;

"(C) before the award of a subcontract at any tier, when the prime contractor and each higher tier subcontractor have been required to furnish such a certificate, if the price of such subcontract is expected to exceed $100,000; or

"(D) before the pricing of any contract change or modification to a subcontract covered by clause (C), if the price adjustment is expected to exceed $100,000, or such lesser amount as may be prescribed by the agency head.

"(2) Any prime contract or change or modification thereto under which a certificate is required under paragraph (1) shall contain a provision that the price to the Government, including profit or fee, shall be adjusted to exclude any significant sums by which it may be determined by the agency head that such price was increased because the contractor or any subcontractor required to furnish such a certificate, furnished cost or pricing data which, as of a date agreed upon between the parties (which date shall be as close to the date of agreement on the price as is practicable), were inaccurate, incomplete, or noncurrent.

"(3) For the purpose of evaluating the accuracy, completeness, and currency of cost or pricing data required to be submitted by this subsection, any authorized representative of the agency who is an employee of the United States Government shall have the right, until the expiration of three years after final payment under the contract or subcontract, to examine all books, records, documents, and other data of the contractor or subcontractor related to the proposal for the contract, the discussions conducted on the proposal, pricing, or performance of the contract or subcontract.

"(4) When cost or pricing data are not required to be submitted by this subsection, such data may nevertheless be required by the agency if the agency head determines that such data are necessary for the evaluation by the executive agency of the reasonableness of the price of the contract or subcontract.

"(5) The requirements of this subsection need not be applied to contracts or subcontracts—

"(A) where the price is based on—

"(i) adequate price competition,

"(ii) established catalog or market prices of commercial items sold in substantial quantities to the general public, or

"(iii) prices set by law or regulation, or

"(B) in exceptional cases, where the agency head determines that the requirements of this subsection may be waived and states in writing the reasons for such determination.".

### AUTOMATED DATA PROCESSING DISPUTE RESOLUTION

SEC. 2713. (a) Section 111 of the Federal Property and Administrative Services Act of 1949 (40 U.S.C. 759) is amended by adding at the end thereof the following new subsection:

"(h)(1) Upon request of an interested party in connection with any procurement conducted under the authority of this section (including procurements conducted under delegations of procurement authority), the board of contract appeals of the General Services Administration (hereafter in this subsection referred to as the 'board'), shall review any decision by a contracting officer alleged to violate a statute or regulation. Such review shall be conducted under the standard applicable to review of contracting officer final decisions by boards of contract appeals. An interested party who has filed a protest under subchapter V of chapter 35 of title 31, United States Code, with respect to a procurement or proposed procurement may not file a protest with respect to that procurement or proposed procurement under this subsection.

*Post,* p. 1199.

"(2)(A) When a protest under this subsection is filed before the award of a contract in a protested procurement, the board, at the request of an interested party and within 10 days of the filing of the protest, shall hold a hearing to determine whether the board should suspend the procurement authority of the Administrator or the Administrator's delegation of procurement authority for the protested procurement on an interim basis until the board can decide the protest.

"(B) The board shall suspend the procurement authority of the Administrator or the Administrator's delegation of procurement authority unless the Federal agency concerned establishes that—

"(i) absent action by the board, contract award is likely to occur within 30 days of the hearing; and

"(ii) urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting for the decision of the board.

"(3)(A) If the Board receives notice of a protest under this subsection after the contract has been awarded but within 10 days after the contract award, the board shall, at the request of an interested party and within 10 days after the date of the filing of the protest, hold a hearing to determine whether the board should suspend the procurement authority of the Administrator or the Administrator's delegation of procurement authority for the challenged procurement on an interim basis until the board can decide the protest.

"(B) The board shall suspend the procurement authority of the Administrator or the Administrator's delegation of procurement authority to acquire any goods or services under the contract which are not previously delivered and accepted unless the Federal agency concerned establishes that urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting for the decision of the board.

"(4)(A) The board shall conduct such proceedings and allow such discovery as may be required for the expeditious, fair, and reasonable resolution of the protest.

"(B) Subject to any deadlines imposed by section 9(a) of the Contract Disputes Act of 1978 (41 U.S.C. 608(a)), the board shall give priority to protests filed under this subsection. The board shall issue its final decision within 45 working days after the date of the filing of the protest, unless the board's chairman determines that the specific and unique circumstances of the protest require a longer period, in which case the board shall issue such decision within the longer period determined by the chairman.

"(C) The board may dismiss a protest the board determines is frivolous or which, on its face, does not state a valid basis for protest.

"(5)(A) In making a decision on the merits of protests brought under this section, the board shall accord due weight to the policies of this section and the goals of economic and efficient procurement set forth in this section.

"(B) If the board determines that a challenged agency action violates a statute or regulation or the conditions of any delegation of procurement authority issued pursuant to this section, the board may suspend, revoke, or revise the procurement authority of the Administrator or the Administrator's delegation of procurement authority applicable to the challenged procurement.

"(C) Whenever the board makes such a determination, it may, in accordance with section 1304 of title 31, United States Code, further declare an appropriate interested party to be entitled to the costs of—

    "(i) filing and pursuing the protest, including reasonable attorney's fees, and
    "(ii) bid and proposal preparation.

"(6)(A) The final decision of the board may be appealed by the head of the Federal agency concerned and by any interested party, including interested parties who intervene in any protest filed under this subsection, as set forth in the Contract Disputes Act of 1978 (41 U.S.C. 601 et seq.).

"(B) If the board revokes, suspends, or revises the procurement authority of the Administrator or the Administrator's delegation of procurement authority after the contract award, the affected contract shall be presumed valid as to all goods or services delivered and accepted under the contract before the suspension, revocation, or revision of such procurement authority or delegation.

"(C) Nothing contained in this subsection shall affect the board's power to order any additional relief which it is authorized to provide under any statute or regulation. However, the procedures set forth in this subsection shall only apply to procurements conducted under the authority contained in this section. In addition, nothing contained in this subsection shall affect the right of any interested party to file a protest with the contracting agency or to file an action in a district court of the United States or the United States Claims Court.

"(8) Not later than January 15, 1985, the board shall adopt and issue such rules and procedures as may be necessary to the expeditious disposition of protests filed under the authority of this subsection.

"(9) For purposes of this subsection—

    "(A) the term 'protest' means a written objection by an interested party to a solicitation by a Federal agency for bids or

98 STAT. 1184          PUBLIC LAW 98–369—JULY 18, 1984

proposals for a proposed contract for the procurement of property or services or a written objection to a proposed award or the award of such a contract; and

"(B) the term 'interested party' means, with respect to a contract or proposed contract described in subparagraph (A), an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract.".

Effective date.    (b) The amendment made by this section shall cease to be effective
40 USC 759 note.    on January 15, 1988.

### CONFORMING AMENDMENTS

SEC. 2714. (a)(1) Section 302 of the Federal Property and Administrative Services Act of 1949 (41 U.S.C. 252) is amended—

(A) by striking out the second sentence in subsection (b); and
(B) by striking out subsections (c), (d), (e), and (f) and inserting in lieu thereof the following:

"(c)(1) This title does not (A) authorize the erection, repair, or furnishing of any public building or public improvement, but such authorization shall be required in the same manner as heretofore, or (B) permit any contract for the construction or repair of buildings, roads, sidewalks, sewers, mains, or similar items using procedures

*Ante*, p. 1175.    other than sealed-bid procedures under section 303(a)(2)(A), if the conditions set forth in section 303(a)(2)(A) apply or the contract is to be performed outside the United States.

"(2) Section 303(a)(2)(A) does not require the use of sealed-bid procedures in cases in which section 204(e) of title 23, United States Code, applies.".

(2) The heading of section 304 of such Act (41 U.S.C. 254) is amended to read as follows:

### "CONTRACT REQUIREMENTS".

(3) Section 304 of such Act (41 U.S.C. 254) is amended—

(A) by striking out "negotiated pursuant to section 302(c)" in the first sentence of subsection (a) and inserting in lieu thereof "awarded after using procedures other than sealed-bid procedures";
(B) by striking out "negotiated pursuant to section 302(c)" in the second sentence of subsection (a) and inserting in lieu thereof "awarded after using procedures other than sealed-bid procedures"; and
(C) by striking out "negotiated without advertising pursuant to authority contained in this Act" in the first sentence of subsection (c) and inserting in lieu thereof "awarded after using procedures other than sealed-bid procedures".

(4) Section 307 of such Act (41 U.S.C. 257) is amended—

(A) by striking out the first sentence of subsection (a) and inserting in lieu thereof the following: "Determinations and decisions provided in this Act to be made by the Administrator or other agency head shall be final. Such determinations or decisions may be made with respect to individual purchases or contracts or, except for determinations or decisions under sec-

*Ante*, p. 1175.    tions 303, 303A, and 303B, with respect to classes of purchases or contracts.";

(B) by striking out "Except as provided in subsection (b)," in the second sentence of subsection (a) and inserting in lieu thereof "Except as provided in section 303(d)(2),";

(C) by striking out "this chapter" in such sentence and inserting in lieu thereof "this Act";

(D) by striking out subsection (b);

(E) by striking out "by paragraphs (11), (12), (13), or (14) of section 302(c)," in subsection (c);

(F) by redesignating subsection (c) as subsection (b); and

(G) by striking out subsection (d).

(5) Section 308 of such Act (41 U.S.C. 258) is amended by striking out "entered into pursuant to section 302(c) without advertising," and inserting in lieu thereof "made or awarded after using procedures other than sealed-bid procedures".

(6) Section 310 of such Act (41 U.S.C. 260) is amended by striking out "section 302(c)(15) of this title without regard to the advertising requirements of sections 302(c) and 303" and inserting in lieu thereof "the provisions of this title relating to procedures other than sealed-bid procedures".

(b) The table of contents of such Act is amended by striking out the item relating to section 304 and inserting in lieu thereof the following:

"Sec. 304. Contract requirements.".

# Subtitle B—Amendments to Title 10, United States Code

### DECLARATION OF POLICY

SEC. 2721. Section 2301 of title 10, United States Code, is amended to read as follows:

### "§ 2301. Congressional defense procurement policy

"(a) The Congress finds that in order to ensure national defense preparedness, conserve fiscal resources, and enhance defense production capability, it is in the interest of the United States that property and services be acquired for the Department of Defense in the most timely, economic, and efficient manner. It is therefore the policy of Congress that—

"(1) full and open competitive procedures shall be used by the Department of Defense in accordance with the requirements of this chapter;

"(2) services and property (including weapon systems and associated items) for the Department of Defense be acquired by any kind of contract, other than cost-plus-a-percentage-of-cost contracts, but including multiyear contracts, that will promote the interest of the United States;

"(3) contracts, when appropriate, provide incentives to contractors to improve productivity through investment in capital facilities, equipment, and advanced technology;

"(4) contracts for advance procurement of components, parts, and materials necessary for manufacture or for logistics support of a weapon system should, if feasible and practicable, be entered into in a manner to achieve economic-lot purchases and more efficient production rates;

"(5) the head of an agency use advance procurement planning
and market research and prepare contract specifications in such
a manner as is necessary to obtain full and open competition
with due regard to the nature of the property or services to be
acquired; and

"(6) the head of an agency encourage the development and
maintenance of a procurement career management program to
ensure a professional procurement work force.

"(b) Further, it is the policy of Congress that procurement policies
and procedures for the agencies named in section 2303 of this title
shall in accordance with the requirements of this chapter—

"(1) promote full and open competition;

"(2) be implemented to support the requirements of such
agencies in time of war or national emergency as well as in
peacetime;

"(3) promote responsiveness of the procurement system to
agency needs by simplifying and streamlining procurement
processes;

"(4) promote the attainment and maintenance of essential
capability in the defense industrial base and the capability of
the United States for industrial mobilization;

"(5) provide incentives to encourage contractors to take ac-
tions and make recommendations that would reduce the costs to
the United States relating to the purchase or use of property or
services to be acquired under contracts;

"(6) promote the use of commercial products whenever practi-
cable; and

"(7) require descriptions of agency requirements, whenever
practicable, in terms of functions to be performed or perform-
ance required.

"(c) Further, it is the policy of Congress that a fair proportion of
the purchases and contracts entered into under this chapter be
placed with small business concerns.".

### CLARIFICATION OF APPLICABILITY OF CHAPTER 137 OF TITLE 10 TO THE SECRETARY OF DEFENSE; DEFINITIONS

SEC. 2722. (a) Section 2302 of title 10, United States Code, is
amended to read as follows:

### "§ 2302. Definitions

"In this chapter:

"(1) 'Head of an agency' means the Secretary of Defense, the
Secretary of the Army, the Secretary of the Navy, the Secretary
of the Air Force, the Secretary of Transportation, and the
Administrator of the National Aeronautics and Space Adminis-
tration.

"(2) 'Competitive procedures' means procedures under which
the head of an agency enters into a contract pursuant to full
and open competition. Such term also includes—

"(A) procurement of architectural or engineering services
conducted in accordance with title IX of the Federal Prop-
erty and Administrative Services Act of 1949 (41 U.S.C. 541
et seq.);

"(B) the competitive selection for award of basic research
proposals resulting from a general solicitation and the peer

40 USC 541.

Add12

review or scientific review (as appropriate) of such proposals; and

"(C) the procedures established by the Administrator of General Services for the multiple award schedule program of the General Services Administration if—

"(i) participation in the program has been open to all responsible sources; and

"(ii) orders and contracts under such program result in the lowest overall cost alternative to meet the needs of the United States.

"(3) The terms 'full and open competition' and 'responsible source' have the same meanings provided such terms in section 4 of the Office of Federal Procurement Policy Act (41 U.S.C. 403).".

(b) Section 2303 of such title is amended—

(1) in subsection (a)—

(A) by striking out "purchase, and contract to purchase," and inserting in lieu thereof "procurement";

(B) by striking out "named in subsection (b), and all services," and inserting in lieu thereof "(other than land) and all services";

(C) by redesignating clauses (1) through (5) as clauses (2) through (6), respectively; and

(D) by inserting before clause (2) (as so redesignated) the following new clause:

"(1) The Department of Defense.";

(2) by striking out subsection (b); and

(3) by redesignating subsection (c) as subsection (b).

*Post*, p. 1195.
10 USC 2303.

### PROCUREMENT PROCEDURES

SEC. 2723. (a)(1) Section 2304 of title 10, United States Code, is amended—

(A) by striking out subsections (a) through (e) and (g), (h), and (i);

(B) by redesignating subsection (f) as subsection (h); and

(C) by inserting after the section heading the following:

"(a)(1) Except as provided in subsections (b), (c), and (g) and except in the case of procurement procedures otherwise expressly authorized by statute, the head of an agency in conducting a procurement for property or services—

"(A) shall obtain full and open competition through the use of competitive procedures in accordance with the requirements of this chapter and the modifications to regulations promulgated pursuant to section 2752 of the Competition in Contracting Act of 1984; and

"(B) shall use the competitive procedure or combination of competitive procedures that is best suited under the circumstances of the procurement.

"(2) In determining the competitive procedure appropriate under the circumstances, the head of an agency—

"(A) shall solicit sealed bids if—

"(i) time permits the solicitation, submission, and evaluation of sealed bids;

"(ii) the award will be made on the basis of price and other price-related factors;

*Post*, p. 1203.

"(iii) it is not necessary to conduct discussions with the responding sources about their bids; and

"(iv) there is a reasonable expectation of receiving more than one sealed bid; and

"(B) shall request competitive proposals if sealed bids are not appropriate under clause (A).

"(b)(1) The head of an agency may provide for the procurement of property or services covered by this chapter using competitive procedures but excluding a particular source in order to establish or maintain an alternative source or sources of supply for that property or service if the head of the agency determines that to do so—

"(A) would increase or maintain competition and would likely result in reduced overall costs for such procurement, or for any anticipated procurement, of property or services;

"(B) would be in the interest of national defense in having a facility (or a producer, manufacturer, or other supplier) available for furnishing the property or service in case of a national emergency or industrial mobilization; or

"(C) would be in the interest of national defense in establishing or maintaining an essential engineering, research, or development capability to be provided by an educational or other nonprofit institution or a federally funded research and development center.

"(2) In fulfilling the statutory requirements relating to small business concerns and socially and economically disadvantaged small business concerns, the head of an agency shall use competitive procedures but may restrict a solicitation to allow only such business concerns to compete.

"(c) The head of an agency may use procedures other than competitive procedures only when—

"(1) the property or services needed by the agency are available from only one responsible source and no other type of property or services will satisfy the needs of the agency;

"(2) the agency's need for the property or services is of such an unusual and compelling urgency that the United States would be seriously injured unless the agency is permitted to limit the number of sources from which it solicits bids or proposals;

"(3) it is necessary to award the contract to a particular source or sources in order (A) to maintain a facility, producer, manufacturer, or other supplier available for furnishing property or services in case of a national emergency or to achieve industrial mobilization, or (B) to establish or maintain an essential engineering, research, or development capability to be provided by an educational or other nonprofit institution or a federally funded research and development center;

"(4) the terms of an international agreement or a treaty between the United States and a foreign government or international organization, or the written directions of a foreign government reimbursing the agency for the cost of the procurement of the property or services for such government, have the effect of requiring the use of procedures other than competitive procedures;

"(5) a statute expressly authorizes or requires that the procurement be made through another agency or from a specified source, or the agency's need is for a brand-name commercial item for authorized resale;

"(6) the disclosure of the agency's needs would compromise the national security unless the agency is permitted to limit the number of sources from which it solicits bids or proposals; or

"(7) the head of the agency—

"(A) determines that it is necessary in the public interest to use procedures other than competitive procedures in the particular procurement concerned, and

"(B) notifies the Congress in writing of such determination not less than 30 days before the award of the contract.

"(d)(1) For the purposes of applying subsection (c)(1)—

"(A) in the case of a contract for property or services to be awarded on the basis of acceptance of an unsolicited research proposal, the property or services shall be considered to be available from only one source if the source has submitted an unsolicited research proposal that demonstrates a unique and innovative concept the substance of which is not otherwise available to the United States and does not resemble the substance of a pending competitive procurement; and

"(B) in the case of a follow-on contract for the continued development or production of a major system or highly specialized equipment when it is likely that award to a source other than the original source would result in (i) substantial duplication of cost to the United States which is not expected to be recovered through competition, or (ii) unacceptable delays in fulfilling the agency's needs, such property may be deemed to be available only from the original source and may be procured through procedures other than competitive procedures.

"(2) The authority of the head of an agency under subsection (c)(7) may not be delegated.

"(e) The head of an agency using procedures other than competitive procedures to procure property or services by reason of the application of subsection (c)(2) or (c)(6) shall request offers from as many potential sources as is practicable under the circumstances.

"(f)(1) Except as provided in paragraph (2), the head of an agency may not award a contract using procedures other than competitive procedures unless—

"(A) the contracting officer for the contract justifies the use of such procedures in writing and certifies the accuracy and completeness of the justification;

"(B) the justification is approved—

"(i) in the case of a contract for an amount exceeding $100,000 (but equal to or less than $1,000,000), by the competition advocate for the procuring activity (without further delegation);

"(ii) in the case of a contract for an amount exceeding $1,000,000 (but equal to or less than $10,000,000), by the head of the procuring activity or a delegate who, if a member of the armed forces, is a general or flag officer or, if a civilian, is serving in a position in grade GS-16 or above under the General Schedule (or in a comparable or higher position under another schedule); or    5 USC 5332.

"(iii) in the case of a contract for an amount exceeding $10,000,000, by the senior procurement executive of the agency designated pursuant to section 16(3) of the Office of Federal Procurement Policy Act (41 U.S.C. 414(3)) (without    97 Stat. 1330. further delegation); and

Add15

*Post,* p. 1196.

"(C) any required notice has been published with respect to such contract pursuant to section 18 of the Office of Federal Procurement Policy Act and all bids or proposals received in response to that notice have been considered by the head of the agency.

"(2) In the case of a procurement permitted by subsection (c)(2), the justification and approval required by paragraph (1) may be made after the contract is awarded. The justification and approval required by paragraph (1) is not required in the case of a procurement permitted by subsection (c)(7) or in the case of a procurement conducted under the Act of June 25, 1938 (41 U.S.C. 46 et seq.), popularly referred to as the Wagner-O'Day Act.

"(3) The justification required by paragraph (1)(A) shall include—

"(A) a description of the agency's needs;

"(B) an identification of the statutory exception from the requirement to use competitive procedures and a demonstration, based on the proposed contractor's qualifications or the nature of the procurement, of the reasons for using that exception;

"(C) a determination that the anticipated cost will be fair and reasonable;

"(D) a description of the market survey conducted or a statement of the reasons a market survey was not conducted;

"(E) a listing of the sources, if any, that expressed in writing an interest in the procurement; and

"(F) a statement of the actions, if any, the agency may take to remove or overcome any barrier to competition before a subsequent procurement for such needs.

"(4) The justification required by paragraph (1)(A) and any related information shall be made available for inspection by the public consistent with the provisions of section 552 of title 5.

5 USC 552.

"(5) In no case may the head of an agency—

"(A) enter into a contract for property or services using procedures other than competitive procedures on the basis of the lack of advance planning or concerns related to the amount of funds available to the agency for procurement functions; or

"(B) procure property or services from another agency unless such other agency complies fully with the requirements of this chapter in its procurement of such property or services.

The restriction contained in clause (B) is in addition to, and not in lieu of, any other restriction provided by law.

"(g)(1) In order to promote efficiency and economy in contracting and to avoid unnecessary burdens for agencies and contractors, the regulations modified in accordance with section 2752 of the Competition in Contracting Act of 1984 shall provide for special simplified procedures for small purchases of property and services.

*Post,* p. 1203.

"(2) For the purposes of this chapter, a small purchase is a purchase or contract for an amount which does not exceed $25,000.

"(3) A proposed purchase or contract for an amount above $25,000 may not be divided into several purchases or contracts for lesser amounts in order to use the small purchase procedures required by paragraph (1).

"(4) In using small purchase procedures, the head of an agency shall promote competition to the maximum extent practicable.".

(2) The heading of such section is amended to read as follows:

"§ 2304. Contracts: competition requirements".

(b) Section 2305 of such title is amended to read as follows:          10 USC 2305.

"§ 2305. Contracts: planning, solicitation, evaluation, and award procedures

"(a)(1)(A) In preparing for the procurement of property or services, the head of an agency shall—

"(i) specify the agency's needs and solicit bids or proposals in a manner designed to achieve full and open competition for the procurement;

"(ii) use advance procurement planning and market research; and

"(iii) develop specifications in such manner as is necessary to obtain full and open competition with due regard to the nature of the property or services to be acquired.

"(B) Each solicitation under this chapter shall include specifications which—

"(i) consistent with the provisions of this chapter, permit full and open competition; and

"(ii) include restrictive provisions or conditions only to the extent necessary to satisfy the needs of the agency or as authorized by law.

"(C) For the purposes of subparagraphs (A) and (B), the type of specification included in a solicitation shall depend on the nature of the needs of the agency and the market available to satisfy such needs. Subject to such needs, specifications may be stated in terms of—

"(i) function, so that a variety of products or services may qualify;

"(ii) performance, including specifications of the range of acceptable characteristics or of the minimum acceptable standards; or

"(iii) design requirements.

"(2) In addition to the specifications described in paragraph (1), a solicitation for sealed bids or competitive proposals (other than for small purchases) shall at a minimum include—

"(A) a statement of—

"(i) all significant factors (including price) which the head of the agency reasonably expects to consider in evaluating sealed bids or competitive proposals; and

"(ii) the relative importance assigned to each of those factors; and

"(B)(i) in the case of sealed bids—

"(I) a statement that sealed bids will be evaluated without discussions with the bidders; and

"(II) the time and place for the opening of the sealed bids; or

"(ii) in the case of competitive proposals—

"(I) a statement that the proposals are intended to be evaluated with, and awards made after, discussions with the offerors, but might be evaluated and awarded without discussions with the offerors; and

"(II) the time and place for submission of proposals.

"(b)(1) The head of an agency shall evaluate sealed bids and competitive proposals based solely on the factors specified in the solicitation.

"(2) All sealed bids or competitive proposals received in response to a solicitation may be rejected if the head of the agency determines that such action is in the public interest.

"(3) Sealed bids shall be opened publicly at the time and place stated in the solicitation. The head of the agency shall evaluate the bids without discussions with the bidders and, except as provided in paragraph (2), shall award a contract with reasonable promptness to the responsible bidder whose bid conforms to the solicitation and is most advantageous to the United States, considering only price and the other price-related factors included in the solicitation. The award of a contract shall be made by transmitting written notice of the award to the successful bidder.

"(4)(A) The head of an agency shall evaluate competitive proposals and may award a contract—

"(i) after discussions conducted with the offerors at any time after receipt of the proposals and before the award of the contract; or

"(ii) without discussions with the offerors (other than discussions conducted for the purpose of minor clarification) when it can be clearly demonstrated from the existence of full and open competition or accurate prior cost experience with the product or service that acceptance of an initial proposal without discussions would result in the lowest overall cost to the United States.

"(B) In the case of award of a contract under subparagraph (A)(i), the head of the agency shall conduct, before such award, written or oral discussions with all responsible sources who submit proposals within the competitive range, considering only price and the other factors included in the solicitation.

"(C) In the case of award of a contract under subparagraph (A)(ii), the head of the agency shall award the contract based on the proposals received (and as clarified, if necessary, in discussions conducted for the purpose of minor clarification).

"(D) Except as provided in paragraph (2), the head of the agency shall award a contract with reasonable promptness to the responsible source whose proposal is most advantageous to the United States, considering only price and the other factors included in the solicitation. The head of the agency shall award the contract by transmitting written notice of the award to such source and shall promptly notify all other offerors of the rejection of their proposals.

"(5) If the head of an agency considers that a bid or proposal evidences a violation of the antitrust laws, he shall refer the bid or proposal to the Attorney General for appropriate action.".

10 USC 2304 note.

(c) The amendments made by this section do not supersede or affect the provisions of section 8(a) of the Small Business Act (15 U.S.C. 637(a)).

### COST OR PRICING DATA; CONFORMING AMENDMENTS

SEC. 2724. (a) The second sentence of subsection (a) of section 2306 of title 10, United States Code, is amended to read as follows: "Subject to the limitation in the preceding sentence, the other provisions of this section, and other applicable provisions of law, the head of an agency, in awarding contracts under this chapter after using procedures other than sealed-bid procedures, may enter into any kind of contract that he considers will promote the best interests of the United States".

(b) Subsection (b) of such section is amended by striking out "negotiated under section 2304" in the first sentence of subsection (b) and inserting in lieu thereof "awarded under this chapter after using procedures other than sealed-bid procedures".

(c) Subsection (c) of such section is amended by striking out "section 2304 of this title," and inserting in lieu thereof "this chapter".

(d) Subsection (e) of such section is amended by striking out "$25,000 or" in clause (2) and inserting in lieu thereof "the greater of (A) the small purchase amount under section 2304(g) of this title, or (B)".

(e) Subsection (f) of such section is amended—
  (A) in paragraph (1)—
    (i) by striking out "his" in the matter preceding clause (A) and inserting in lieu thereof "such contractor's or subcontractor's";
    (ii) by striking out "he" in the matter preceding clause (A);
    (iii) by striking out "negotiated prime contract under this title where" in clause (A) and inserting in lieu thereof "prime contract under this chapter entered into after using procedures other than sealed-bid procedures, if";
    (iv) by striking out "for which" in clauses (B) and (D) and inserting in lieu thereof "if";
    (v) by striking out "where" in clause (C) and inserting in lieu thereof "when";
    (vi) by striking out "$500,000" each place it appears and inserting in lieu thereof "$100,000"; and
    (vii) by striking out "prior to" each place it appears and inserting in lieu thereof "before";
  (B) in paragraph (2), by striking out "negotiated" both places it appears;
  (C) by redesignating paragraph (3) as paragraph (5) and striking out "negotiation," in such paragraph and inserting in lieu thereof "proposal for the contract, the discussions conducted on the proposal,";
  (D) by inserting a period after "noncurrent" in paragraph (2);
  (E) by striking out ": *Provided*, That the requirements" in paragraph (2) and inserting in lieu thereof the following:
"(3) The requirements"; and
  (F) by inserting after paragraph (3) (as designated by clause (E)) the following new paragraph:
"(4) When cost or pricing data is not required to be submitted by this subsection, such data may nevertheless be required by the head of the agency if the head of the agency determines that such data is necessary for the evaluation by the agency of the reasonableness of the price of the contract or subcontract.".

(f) The heading of such section is amended to read as follows:

**"§ 2306. Kinds of contracts; cost or pricing data: truth in negotiation".**

DETERMINATIONS AND DECISIONS

SEC. 2725. Section 2310 of title 10, United States Code, is amended—
    (1) in subsection (a)—

(A) by inserting ", except for determinations and decisions under section 2304 or 2305 of title," in the first sentence after "contract or"; and

(B) by inserting ", including a determination or decision under section 2304 or 2305 of this title," in the second sentence after "decision"; and

(2) by striking out subsection (b) and inserting in lieu thereof the following:

"(b) Each determination or decision under section 2306(c), 2306(g)(1), 2307(c), or 2313(c) of this title shall be based on a written finding by the person making the determination or decision, which finding shall set out facts and circumstances that—

"(1) clearly indicate why the type of contract selected under section 2306(c) of this title is likely to be less costly than any other type or that it is impracticable to obtain property or services of the kind or quality required except under such a contract;

"(2) support the findings required by section 2306(g)(1) of this title;

"(3) clearly indicate why advance payments under section 2307(c) of this title would be in the public interest; or

"(4) clearly indicate why the application of section 2313(b) of this title to a contract or subcontract with a foreign contractor or foreign subcontractor would not be in the public interest. Such a finding is final and shall be kept available in the agency for at least six years after the date of the determination or decision. A copy of the finding shall be submitted to the General Accounting Office with each contract to which it applies.".

LIMITATION ON AUTHORITY TO DELEGATE CERTAIN FUNCTIONS

SEC. 2726. Section 2311 of title 10, United States Code, is amended—

(1) by striking out "The head" and inserting in lieu thereof "Except as provided in section 2304(d)(2) of this title, the head"; and

(2) by striking out "chapter" and all that follows and inserting in lieu thereof "chapter.".

CONFORMING AMENDMENTS

SEC. 2727. (a) The table of sections at the beginning of chapter 137 of title 10, United States Code, is amended—

(1) by striking out the item relating to section 2301 and inserting in lieu thereof the following:

"2301. Congressional defense procurement policy."; and

(2) by striking out the items relating to sections 2304, 2305, and 2306 and inserting in lieu thereof the following:

"2304. Contracts: competition requirements.
"2305. Contracts: planning, solicitation, evaluation, and award procedures.
"2306. Kinds of contracts; cost or pricing data: truth in negotiation.".

*Ante,* p. 1187.          (b) Subsection (h) of section 2304 of such title (as redesignated by section 2723(a)(1)(B)) is amended—

(1) by striking out "negotiated under this section" and inserting in lieu thereof "awarded after using procedures other than sealed-bid procedures"; and

(2) by striking out "formal advertising" and inserting in lieu thereof "sealed-bid procedures".

(c) Section 2313(b) of such title is amended by striking out "negoti-  10 USC 2313.
ated under this chapter" and inserting in lieu thereof "awarded after using procedures other than sealed-bid procedures".

(d) Section 2356 of such title is amended by striking out "the  10 USC 2356.
formal advertising prescribed by section 2305 of this title" and inserting in lieu thereof "a solicitation for sealed bids under chapter 137 of this title".

# Subtitle C—Amendments to the Office of Federal Procurement Policy Act

### DEFINITIONS

SEC. 2731. The section of the Office of Federal Procurement Policy Act relating to definitions (41 U.S.C. 403) is redesignated as section 4  97 Stat. 1326.
and is amended—

(1) by striking out "and" at the end of paragraph (4);

(2) by striking out the period at the end of paragraph (5) and inserting in lieu thereof "; and"; and

(3) by adding at the end thereof the following new paragraphs:

"(6) the term 'competitive procedures' means procedures under which an agency enters into a contract pursuant to full and open competition;

"(7) the term 'full and open competition', when used with respect to a procurement, means that all responsible sources are permitted to submit sealed bids or competitive proposals on the procurement; and

"(8) the term 'responsible source' means a prospective contractor who—

"(A) has adequate financial resources to perform the contract or the ability to obtain such resources;

"(B) is able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and Government business commitments;

"(C) has a satisfactory performance record;

"(D) has a satisfactory record of integrity and business ethics;

"(E) has the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain such organization, experience, controls, and skills;

"(F) has the necessary production, construction, and technical equipment and facilities, or the ability to obtain such equipment and facilities; and

"(G) is otherwise qualified and eligible to receive an award under applicable laws and regulations.".

### PROCUREMENT NOTICE AND RECORDS; ADVOCATES FOR COMPETITION

SEC. 2732. (a) The Office of Federal Procurement Policy Act is further amended by adding at the end thereof the following new sections:

98 STAT. 1196          PUBLIC LAW 98-369—JULY 18, 1984

"PROCUREMENT NOTICE

41 USC 416.          "SEC. 18. (a)(1) Except as provided in subsection (c)—
    "(A) an executive agency intending to solicit bids or proposals
for a contract for property or services for a price expected to
exceed $10,000 shall furnish for publication by the Secretary of
Commerce a notice described in subsection (b); and
    "(B) an executive agency awarding a contract for property or
services for a price exceeding $25,000 shall furnish for publica-
tion by the Secretary of Commerce a notice announcing such
award if there is likely to be any subcontract under such
contract.

Commerce          "(2) The Secretary of Commerce shall publish promptly in the
Business Daily,    Commerce Business Daily each notice required by paragraph (1).
publication.          "(3) Whenever an executive agency is required by paragraph (1)(A)
to furnish a notice of a solicitation to the Secretary of Commerce,
such executive agency may not—
    "(A) issue such solicitation earlier than 15 days after the date
on which such notice is published by the Secretary of Com-
merce; or
    "(B) establish a deadline for the submission of all bids or
proposals in response to such solicitation that is earlier than 30
days after the date on which such solicitation is issued.
    "(b) Each notice required by subsection (a)(1)(A) shall include—
    "(1) an accurate description of the property or services to be
contracted for, which description is not unnecessarily restrictive
of competition;
    "(2) the name, business address, and telephone number of the
officer or employee of the executive agency who may be con-
tacted for the purpose of obtaining a copy of the solicitation;
    "(3) the name, business address, and telephone number of the
contracting officer;
    "(4) a statement that all responsible sources may submit a
bid, proposal, or quotation which shall be considered by the
executive agency; and
    "(5) in the case of a procurement using procedures other than
competitive procedures, a statement of the reason justifying the
use of such procedures and the identity of the intended source.
    "(c)(1) A notice is not required under subsection (a)(1) if—
    "(A) the notice would disclose the executive agency's needs
and the disclosure of such needs would compromise the national
security;
    "(B) the proposed procurement would result from acceptance
of any unsolicited proposal that demonstrates a unique and
innovative research concept, and the publication of any notice
of such unsolicited research proposal would disclose the origi-
nality of thought or innovativeness of the proposal or would
disclose proprietary information associated with the proposal;
    "(C) the procurement is made against an order placed under a
requirements contract, or
    "(D) the procurement is made for perishable subsistence
supplies.
    "(2) The requirements of subsection (a)(1)(A) do not apply to any
procurement under conditions described in clause (2), (3), (4), (5), or
(7) of section 303(c) of the Federal Property and Administrative
Ante, p. 1175.    Services Act of 1949 (41 U.S.C. 253(c)) or clause (2), (3), (4), (5), or (7)
Ante, p. 1187.    of section 2304(c) of title 10, United States Code.

Add22

"(3) The requirements of subsection (a)(1)(A) shall not apply in the case of any procurement for which the head of the executive agency makes a determination in writing, with the concurrence of the Administrator, that it is not appropriate or reasonable to publish a notice before issuing a solicitation.

"RECORD REQUIREMENTS

"SEC. 19. (a) Each executive agency shall establish and maintain    41 USC 417.
for a period of five years a computer file, by fiscal year, containing
unclassified records of all procurements, other than small pur-
chases, in such fiscal year.
    "(b) The record established under subsection (a) shall include—
        "(1) with respect to each procurement carried out using com-
    petitive procedures—
            "(A) the date of contract award;
            "(B) information identifying the source to whom the con-
        tract was awarded;
            "(C) the property or services obtained by the Government
        under the procurement; and
            "(D) the total cost of the procurement;
        "(2) with respect to each procurement carried out using proce-
    dures other than competitive procedures—
            "(A) the information described in clauses (1)(A), (1)(B),
        (1)(C), and (1)(D);
            "(B) the reason under section 303(c) of the Federal Prop-    *Ante,* p. 1175.
        erty and Administrative Services Act of 1949 (41 U.S.C.    *Ante,* p. 1187.
        253(c)) or section 2304(c) of title 10, United States Code, as
        the case may be, for the use of such procedures; and
            "(C) the identity of the organization or activity which
        conducted the procurement.
    "(c) The information that is included in such record pursuant to
subsection (b)(1) and relates to procurements resulting in the sub-
mission of a bid or proposal by only one responsible source shall be
separately categorized from the information relating to other pro-
curements included in such record. The record of such information
shall be designated 'noncompetitive procurements using competitive
procedures'.
    "(d) The information included in the record established and main-
tained under subsection (a) shall be transmitted to the General
Services Administration and shall be entered in the Federal Pro-
curement Data System referred to in section 6(d)(4).

"ADVOCATES FOR COMPETITION

"SEC. 20. (a)(1) There is established in each executive agency an    41 USC 418.
advocate for competition.
    "(2) The head of each executive agency shall—
        "(A) designate for the executive agency and for each procur-
    ing activity of the executive agency one officer or employee
    serving in a position authorized for such executive agency on
    the date of enactment of the Competition in Contracting Act of
    1984 (other than the senior procurement executive designated    *Ante,* p. 1175.
    pursuant to section 16(3)) to serve as the advocate for    97 Stat. 1330.
    competition;                                                    41 USC 414.

98 STAT. 1198          PUBLIC LAW 98-369—JULY 18, 1984

"(B) not assign such officers or employees any duties or
responsibilities that are inconsistent with the duties and respon-
sibilities of the advocates for competition; and

"(C) provide such officers or employees with such staff or
assistance as may be necessary to carry out the duties and
responsibilities of the advocate for competition, such as persons
who are specialists in engineering, technical operations, con-
tract administration, financial management, supply manage-
ment, and utilization of small and disadvantaged business
concerns.

"(b) The advocate for competition of an executive agency shall—

"(1) be responsible for challenging barriers to and promoting
full and open competition in the procurement of property and
services by the executive agency;

"(2) review the procurement activities of the executive
agency;

"(3) identify and report to the senior procurement executive
of the executive agency designated pursuant to section 16(3)—

"(A) opportunities and actions taken to achieve full and
open competition in the procurement activities of the exec-
utive agency; and

"(B) any condition or action which has the effect of
unnecessarily restricting competition in the procurement
actions of the executive agency; and

"(4) prepare and transmit to such senior procurement execu-
tive an annual report describing—

"(A) such advocate's activities under this section;

"(B) new initiatives required to increase competition; and

"(C) barriers to full and open competition that remain;

"(5) recommend to the senior procurement executive of the
executive agency goals and the plans for increasing competition
on a fiscal year basis;

"(6) recommend to the senior procurement executive of the
executive agency a system of personal and organizational
accountability for competition, which may include the use of
recognition and awards to motivate program managers, con-
tracting officers, and others in authority to promote competition
in procurement programs; and

"(7) describe other ways in which the executive agency has
emphasized competition in programs for procurement training
and research.

"(c) The advocate for competition for each procuring activity shall
be responsible for challenging barriers to and promoting full and
open competition in the procuring activity, including unnecessarily
detailed specifications and unnecessarily restrictive statements of
need.

"ANNUAL REPORT ON COMPETITION

"SEC. 21. (a) Not later than January 31 of each of 1986, 1987, 1988,
1989, and 1990, the head of each executive agency shall transmit to
each House of Congress a report including the information specified
in subsection (b).

"(b) Each report under subsection (a) shall include—

"(1) a specific description of all actions that the head of the
executive agency intends to take during the current fiscal year
to—

97 Stat. 1330.
41 USC 414.

Report.

41 USC 419.

Add24

"(A) increase competition for contracts with the executive agency on the basis of cost and other significant factors; and

"(B) reduce the number and dollar value of noncompetitive contracts entered into by the executive agency; and

"(2) a summary of the activities and accomplishments of the advocate for competition of the executive agency during the preceding fiscal year.".

(b)(1) Section 6(e) of such Act (41 U.S.C. 405(e)) is amended by striking out "subsection (c)" and inserting in lieu thereof "subsection (d)". 97 Stat. 1326.

(2) Section 16(1) of such Act (41 U.S.C. 414(1)) is amended to read as follows: 97 Stat. 1330.

"(1) increase the use of full and open competition in the procurement of property or services by the executive agency by establishing policies, procedures, and practices that assure that the executive agency receives a sufficient number of sealed bids or competitive proposals from responsible sources to fulfill the Government's requirements (including performance and delivery schedules) at the lowest reasonable cost considering the nature of the property or service procured;".

# Subtitle D—Procurement Protest System

## PROCUREMENT PROTEST SYSTEM

SEC. 2741. (a) Chapter 35 of title 31, United States Code, is amended by adding at the end thereof the following new subchapter:

### "SUBCHAPTER V—PROCUREMENT PROTEST SYSTEM

### "§ 3551. Definitions

31 USC 3551.

"In this subchapter—

"(1) 'protest' means a written objection by an interested party to a solicitation by an executive agency for bids or proposals for a proposed contract for the procurement of property or services or a written objection by an interested party to a proposed award or the award of such a contract;

"(2) 'interested party', with respect to a contract or proposed contract described in paragraph (1), means an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract; and

"(3) 'Federal agency' has the meaning given such term by section 3 of the Federal Property and Administrative Services Act of 1949 (40 U.S.C. 472).

### "§ 3552. Protests by interested parties concerning procurement actions

31 USC 3552.

"A protest concerning an alleged violation of a procurement statute or regulation shall be decided by the Comptroller General if filed in accordance with this subchapter. An interested party who has filed a protest under section 111(h) of the Federal Property and Administrative Services Act of 1949 (40 U.S.C. 759(h)) with respect to a procurement or proposed procurement may not file a protest with respect to that procurement under this subchapter. *Ante,* p. 1182.

98 STAT. 1200          PUBLIC LAW 98-369—JULY 18, 1984

31 USC 3553.          **"§ 3553. Review of protests; effect on contracts pending decision**

*Post,* p. 1202.          "(a) Under procedures prescribed under section 3555 of this title, the Comptroller General shall decide a protest submitted to the Comptroller General by an interested party.

"(b)(1) Within one working day of the receipt of a protest, the Comptroller General shall notify the Federal agency involved of the protest.

Report.          "(2) Except as provided in paragraph (3) of this subsection, a Federal agency receiving a notice of a protested procurement under paragraph (1) of this subsection shall submit to the Comptroller General a complete report (including all relevant documents) on the protested procurement—

"(A) within 25 working days from the date of the agency's receipt of that notice;

"(B) if the Comptroller General, upon a showing by the Federal agency, determines (and states the reasons in writing) that the specific circumstances of the protest require a longer period, within the longer period determined by the Comptroller General; or

"(C) in a case determined by the Comptroller General to be suitable for the express option under section 3554(a)(2) of this *Post,* p. 1201.          title, within 10 working days from the date of the Federal agency's receipt of that determination.

"(3) A Federal agency need not submit a report to the Comptroller General pursuant to paragraph (2) of this subsection if the agency is sooner notified by the Comptroller General that the protest concerned has been dismissed under section 3554(a)(3) of this title.

"(c)(1) Except as provided in paragraph (2) of this subsection, a contract may not be awarded in any procurement after the Federal agency has received notice of a protest with respect to such procurement from the Comptroller General and while the protest is pending.

"(2) The head of the procuring activity responsible for award of a contract may authorize the award of the contract (notwithstanding a protest of which the Federal agency has notice under this section)—

"(A) upon a written finding that urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General under this subchapter; and

"(B) after the Comptroller General is advised of that finding.

"(3) A finding may not be made under paragraph (2)(A) of this subsection unless the award of the contract is otherwise likely to occur within 30 days thereafter.

"(d)(1) If a Federal agency receives notice of a protest under this section after the contract has been awarded but within 10 days of the date of the contract award, the Federal agency (except as provided under paragraph (2)) shall, upon receipt of that notice, immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract. Performance of the contract may not be resumed while the protest is pending.

"(2) The head of the procuring activity responsible for award of a contract may authorize the performance of the contract (notwithstanding a protest of which the Federal agency has notice under this section)—

"(A) upon a written finding—
  "(i) that performance of the contract is in the best interests of the United States; or
  "(ii) that urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest; and
"(B) after the Comptroller General is notified of that finding.
"(e) The authority of the head of the procuring activity to make findings and to authorize the award and performance of contracts under subsections (c) and (d) of this section may not be delegated.
"(f) Within such deadlines as the Comptroller General prescribes, upon request each Federal agency shall provide to an interested party any document relevant to a protested procurement action (including the report required by subsection (b)(2) of this section) that would not give that party a competitive advantage and that the party is otherwise authorized by law to receive.

## "§ 3554. Decisions on protests

31 USC 3554.

"(a)(1) To the maximum extent practicable, the Comptroller General shall provide for the inexpensive and expeditious resolution of protests under this subchapter. Except as provided under paragraph (2) of this subsection, the Comptroller General shall issue a final decision concerning a protest within 90 working days from the date the protest is submitted to the Comptroller General unless the Comptroller General determines and states in writing the reasons that the specific circumstances of the protest require a longer period.
"(2) The Comptroller General shall, by regulation prescribed pursuant to section 3555 of this title, establish an express option for deciding those protests which the Comptroller General determines suitable for resolution within 45 calendar days from the date the protest is submitted.

*Post.* p. 1202.

"(3) The Comptroller General may dismiss a protest that the Comptroller General determines is frivolous or which, on its face, does not state a valid basis for protest.
"(b)(1) With respect to a solicitation for a contract, or a proposed award or the award of a contract, protested under this subchapter, the Comptroller General may determine whether the solicitation, proposed award, or award complies with statute and regulation. If the Comptroller General determines that the solicitation, proposed award, or award does not comply with a statute or regulation, the Comptroller General shall recommend that the Federal agency—
  "(A) refrain from exercising any of its options under the contract;
  "(B) recompete the contract immediately;
  "(C) issue a new solicitation;
  "(D) terminate the contract;
  "(E) award a contract consistent with the requirements of such statute and regulation;
  "(F) implement any combination of recommendations under clauses (A), (B), (C), (D), and (E); or
  "(G) implement such other recommendations as the Comptroller General determines to be necessary in order to promote compliance with procurement statutes and regulations.
"(2) If the head of the procuring activity responsible for a contract makes a finding under section 3553(d)(2)(A)(i) of this title, the Comp-

*Ante,* p. 1200.

troller General shall make recommendations under this subsection without regard to any cost or disruption from terminating, recompeting, or reawarding the contract.

"(c)(1) If the Comptroller General determines that a solicitation for a contract or a proposed award or the award of a contract does not comply with a statute or regulation, the Comptroller General may declare an appropriate interested party to be entitled to the costs of—

"(A) filing and pursuing the protest, including reasonable attorneys' fees; and

"(B) bid and proposal preparation.

"(2) Monetary awards to which a party is declared to be entitled under paragraph (1) of this subsection shall be paid promptly by the Federal agency concerned out of funds available to or for the use of the Federal agency for the procurement of property and services.

"(d) Each decision of the Comptroller General under this subchapter shall be signed by the Comptroller General or a designee for that purpose. A copy of the decision shall be made available to the interested parties, the head of the procuring activity responsible for the solicitation, proposed award, or award of the contract, and the senior procurement executive of the Federal agency involved.

"(e)(1) The head of the procuring activity responsible for the solicitation, proposed award, or award of the contract shall report to the Comptroller General, if the Federal agency has not fully implemented those recommendations within 60 days of receipt of the Comptroller General's recommendations under subsection (b) of this section.

Report.

"(2) Not later than January 31 of each year, the Comptroller General shall transmit to Congress a report describing each instance in which a Federal agency did not fully implement the Comptroller General's recommendations during the preceding fiscal year.

31 USC 3555.

"**§ 3555. Regulations; authority of Comptroller General to verify assertions**

"(a) Not later than January 15, 1985, the Comptroller General shall prescribe such procedures as may be necessary to the expeditious decision of protests under this subchapter, including procedures for accelerated resolution of protests under the express option authorized by section 3554(a)(2) of this title. Such procedures shall provide that the protest process may not be delayed by the failure of a party to make a filing within the time provided for the filing.

*Ante,* p. 1201.

"(b) The Comptroller General may use any authority available under chapter 7 of this title and this chapter to verify assertions made by parties in protests under this subchapter.

31 USC 701 *et seq.*

31 USC 3556.

"**§ 3556. Nonexclusivity of remedies; matters included in agency record**

"This subchapter does not give the Comptroller General exclusive jurisdiction over protests, and nothing contained in this subchapter shall affect the right of any interested party to file a protest with the contracting agency or to file an action in a district court of the United States or the United States Claims Court. In any such action based on a procurement or proposed procurement with respect to which a protest has been filed under this subchapter, the reports required by sections 3553(b)(2) and 3554(e)(1) of this title with respect to such procurement or proposed procurement and any decision or recommendation of the Comptroller General under this subchapter

*Ante,* p. 1200.

PUBLIC LAW 98-369—JULY 18, 1984          98 STAT. 1203

with respect to such procurement or proposed procurement shall be
considered to be part of the agency record subject to review.".
   (b) The analysis for such chapter is amended by adding at the end
thereof the following:

### "SUBCHAPTER V—PROCUREMENT PROTEST SYSTEM

"3551. Definitions.
"3552. Protests by interested parties concerning procurement actions.
"3553. Review of protests; effect on contracts pending decision.
"3554. Decisions on protests.
"3555. Regulations; authority of Comptroller General to verify assertions.
"3556. Nonexclusivity of remedies; matters included in agency record.".

## Subtitle E—Effective Date; Regulations; Study

### EFFECTIVE DATES

   SEC. 2751. (a) Except as provided in subsection (b), the amend- 41 USC 251 note.
ments made by this title shall apply with respect to any solicitation
for bids or proposals issued after March 31, 1985.
   (b) The amendments made by section 2713 and subtitle D shall *Ante,* pp. 1182,
apply with respect to any protest filed after January 14, 1985. 1199.

### MODIFICATION OF FEDERAL ACQUISITION REGULATIONS

   SEC. 2752. Not later than March 31, 1985, the single Government- 41 USC 403 note.
wide procurement regulation referred to in section 4(4)(A) of the
Office of Federal Procurement Policy Act (41 U.S.C. 403(4)(A)) shall *Ante,* p. 1195.
be modified to conform to the requirements of this title and the
amendments made by this title.

### STUDY OF ALTERNATIVES

   SEC. 2753. (a) Not later than January 31, 1985, the Administrator 41 USC 407 note.
of the Office of Federal Procurement Policy, in consultation with the
Secretary of Defense, the Administrator of General Services and the
Administrator of the National Aeronautics and Space Administra-
tion, shall complete a study of alternatives and recommend to the
Committee on Governmental Affairs of the Senate and the Commit-
tee on Government Operations of the House of Representatives a
plan to increase the opportunities to achieve full and open competi-
tion on the basis of technical qualifications, quality, and other
factors in the procurement of professional, technical, and manage-
rial services.
   (b) Such plan shall provide for testing the recommended alterna-
tive and be developed in accordance with section 15 of the Office of
Federal Procurement Policy Act (41 U.S.C. 413), and be consistent 97 Stat. 1329.
with the policies set forth in section 2 of such Act (41 U.S.C. 401). 97 Stat. 1325.

## TITLE VIII—FEDERAL CREDIT UNION ACT AMENDMENTS

   SEC. 2801. Section 201(b)(8) of the Federal Credit Union Act (12
U.S.C. 1781(b)(8)) is amended to read as follows:
   "(8) to pay and maintain its deposit and to pay the premium
charges for insurance imposed by this title; and".

Add29

title. The United States Government is not re-
quired to answer in a civil action brought under
this subsection.

(3) If the court dissolves the injunction on a
finding that the civil action for the injunction
was brought only for delay, the court may in-
crease the interest rate imposed on amounts
found due against the complainant to not more
than 10 percent a year. The judge may grant or
dissolve an injunction under this subsection ei-
ther in or out of court.

(c) A person adversely affected by a refusal to
grant an injunction or by dissolving an injunc-
tion under subsection (b) of this section may pe-
tition a judge of a circuit court of appeals in
which the district is located or the Supreme
Court justice allotted to that circuit by giving
the judge or justice a copy of the proceeding
held before the district judge. The judge or jus-
tice may grant an injunction or allow an appeal
if the judge or justice finds the case requires it.

(Pub. L. 97–258, Sept. 13, 1982, 96 Stat. 968.)

HISTORICAL AND REVISION NOTES

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 3543(a) ..... | 31:517. | R.S. § 3635. |
| 3543(b) ..... | 31:518. | R.S. § 3636. |
| 3543(c) ..... | 31:519. | R.S. § 3637. |

In subsection (a), the words "With the approval of"
and "the institution of" are omitted as surplus.

In subsections (b) and (c), the words "person ad-
versely affected" are substituted for "person who con-
siders himself aggrieved" for consistency in the revised
title and with other titles of the United States Code.

In subsection (b)(1), the words "bring a civil action
. . . court" are substituted for "prefer a bill of com-
plaint . . . judge" for consistency in the revised title
and with other titles of the Code. The words "of which
he complains" are omitted as surplus. The words "any
part of a distress warrant proceeding" are substituted
for "proceedings on such warrant altogether, or for so
much thereof as the nature of" to eliminate unneces-
sary words. The words "with sufficient security" and
"as may be awarded against him" are omitted as sur-
plus.

In subsection (b)(2), the words "in any manner" are
omitted as surplus. The words "under section 3542(b)(1)
of this title" are substituted for "produced by the issu-
ing of the warrant" for clarity. The last sentence is
substituted for 31:518(2d sentence words before semi-
colon) to eliminate unnecessary words.

In subsection (b)(3), the words "on a finding" are sub-
stituted for "it appears to the satisfaction of the
judge" for clarity and consistency and to eliminate un-
necessary words. The words "civil action" are sub-
stituted for "application" for consistency. The words
"increase the interest rate imposed . . . to" are sub-
stituted for "add to the lawful interest assessed . . .
such damages as, with such lawful interest, shall" to
eliminate unnecessary words. The words "all" and "dis-
trict" are omitted as surplus.

In subsection (c), the text of R.S. § 3637(last sentence)
is omitted as obsolete because of section 289 of the Act
of March 3, 1911 (ch. 231, 36 Stat. 1167). The words
"When the district judge", "to stay proceedings on a
distress warrant", "after it is granted", and "by the de-
cision in the premises", are omitted as surplus. The
words "may petition . . . by giving the judge or jus-
tice" are substituted for "may lay before" for clarity.
The words "judge of a circuit court of appeals" are sub-
stituted for "circuit judge of the circuit" for consist-
ency with 28:43. The words "Supreme Court justice al-
lotted to that district" are substituted for "circuit jus-
tice" for clarity and consistency with 28:42. The words

"and thereupon", "as the case may be", and "the eq-
uity of" are omitted as surplus.

§ 3544. Rights and remedies of the United States
Government reserved

This subchapter does not affect a right or rem-
edy the United States Government has by law to
recover a tax, debt, or demand.

(Pub. L. 97–258, Sept. 13, 1982, 96 Stat. 969.)

HISTORICAL AND REVISION NOTES

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 3544 ......... | 31:520. | R.S. § 3638. |

The words "relating to distress warrants" and "take
away or" are omitted as surplus.

§ 3545. Civil action to recover money

The Attorney General shall bring a civil ac-
tion to recover an amount due to the United
States Government on settlement of the ac-
count of a person accountable for public money
when the person neglects or refuses to pay the
amount to the Treasury. Any commission of
that person and interest of 6 percent a year from
the time the money is received by the person
until repaid to the Treasury shall be added to
the amount due on the account. The commission
is forfeited when judgment is obtained.

(Pub. L. 97–258, Sept. 13, 1982, 96 Stat. 969.)

HISTORICAL AND REVISION NOTES

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 3545 ......... | 31:505. | R.S. § 3624. |

The functions of the First Comptroller of the Treas-
ury, referred to in Revised Statutes section 3624, were
as a matter of law vested in the Solicitor of the Treas-
ury by Revised Statutes sections 377 and 379 (based on
the Act of May 28, 1830, ch. 153, 45 Stat. 414). This func-
tion is now vested in the Attorney General. See 28:507
as enacted in 1948 and revision notes thereto and exist-
ing 28:519, 547, and 509. The words "bring a civil action"
are substituted for "institute suit" for consistency in
the revised title and with other titles of the United
States Code. The word "amount" is substituted for
"sum or balance" to eliminate unnecessary words. The
words "reported to be" are omitted as surplus. The
word "settlement" is substituted for "adjustment" for
clarity. The words "by the person" are added for
clarity. The words "stated to be", "in every instance
where suit is commenced and . . . thereon", and "it
shall be" are omitted as surplus.

SUBCHAPTER V—PROCUREMENT PROTEST
SYSTEM

SUBCHAPTER REFERRED TO IN OTHER SECTIONS

This subchapter is referred to in section 1558 of this
title; title 10 section 2305; title 40 section 759; title 41
section 253b.

§ 3551. Definitions

In this subchapter—
(1) The term "protest" means a written ob-
jection by an interested party to any of the
following:
(A) A solicitation or other request by a
Federal agency for offers for a contract for
the procurement of property or services.

(B) The cancellation of such a solicitation or other request.

(C) An award or proposed award of such a contract.

(D) A termination or cancellation of an award of such a contract, if the written objection contains an allegation that the termination or cancellation is based in whole or in part on improprieties concerning the award of the contract.

(2) The term ''interested party'', with respect to a contract or proposed contract described in paragraph (1), means an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract.

(3) The term ''Federal agency'' has the meaning given such term by section 3 of the Federal Property and Administrative Services Act of 1949 (40 U.S.C. 472).

(Added Pub. L. 98–369, div. B, title VII, § 2741(a), July 18, 1984, 98 Stat. 1199; amended Pub. L. 99–145, title XIII, § 1304(a), Nov. 8, 1985, 99 Stat. 742; Pub. L. 103–272, § 4(f)(1)(K), July 5, 1994, 108 Stat. 1362; Pub. L. 103–355, title I, § 1401, Oct. 13, 1994, 108 Stat. 3287.)

AMENDMENTS

1994—Par. (1). Pub. L. 103–355, § 1401(a), amended par. (1) generally. Prior to amendment, par. (1) read as follows: '''protest' means a written objection by an interested party to a solicitation by a Federal agency for bids or proposals for a proposed contract for the procurement of property or services or a written objection by an interested party to a proposed award or the award of such a contract;''.

Pub. L. 103–272 substituted ''a Federal'' for ''an Federal''.

Par. (2). Pub. L. 103–355, § 1401(b)(1), inserted ''The term'' after ''(2)'' and substituted a period for ''; and'' at end.

Par. (3). Pub. L. 103–355, § 1401(b)(2), inserted ''The term'' after ''(3)''.

1985—Par. (1). Pub. L. 99–145 substituted ''Federal agency'' for ''executive agency''.

EFFECTIVE DATE OF 1994 AMENDMENT

For effective date and applicability of amendment by Pub. L. 103–355, see section 10001 of Pub. L. 103–355, set out as a note under section 251 of Title 41, Public Contracts.

EFFECTIVE DATE

Section applicable with respect to any protest filed after Jan. 14, 1985, see section 2751(b) of Pub. L. 98–369, set out as a note under section 251 of Title 41, Public Contracts.

## § 3552. Protests by interested parties concerning procurement actions

A protest concerning an alleged violation of a procurement statute or regulation shall be decided by the Comptroller General if filed in accordance with this subchapter. An interested party who has filed a protest under section 111(f) of the Federal Property and Administrative Services Act of 1949 (40 U.S.C. 759(f)) with respect to a procurement or proposed procurement may not file a protest with respect to that procurement under this subchapter.

(Added Pub. L. 98–369, div. B, title VII, § 2741(a), July 18, 1984, 98 Stat. 1199; amended Pub. L.

103–272, § 4(f)(1)(L), July 5, 1994, 108 Stat. 1362; Pub. L. 103–355, title X, § 10005(d), Oct. 13, 1994, 108 Stat. 3408.)

AMENDMENTS

1994—Pub. L. 103–272 and Pub. L. 103–355 amended section identically, substituting ''section 111(f)'' for ''section 111(h)'' and ''759(f)'' for ''759(h)''.

EFFECTIVE DATE OF 1994 AMENDMENT

For effective date and applicability of amendment by Pub. L. 103–355, see section 10001 of Pub. L. 103–355, set out as a note under section 251 of Title 41, Public Contracts.

EFFECTIVE DATE

Section applicable with respect to any protest filed after Jan. 14, 1985, see section 2751(b) of Pub. L. 98–369, set out as a note under section 251 of Title 41, Public Contracts.

## § 3553. Review of protests; effect on contracts pending decision

(a) Under procedures prescribed under section 3555 of this title, the Comptroller General shall decide a protest submitted to the Comptroller General by an interested party.

(b)(1) Within one day after the receipt of a protest, the Comptroller General shall notify the Federal agency involved of the protest.

(2) Except as provided in paragraph (3) of this subsection, a Federal agency receiving a notice of a protested procurement under paragraph (1) of this subsection shall submit to the Comptroller General a complete report (including all relevant documents) on the protested procurement—

(A) within 35 days after the date of the agency's receipt of that notice;

(B) if the Comptroller General, upon a showing by the Federal agency, determines (and states the reasons in writing) that the specific circumstances of the protest require a longer period, within the longer period determined by the Comptroller General; or

(C) in a case determined by the Comptroller General to be suitable for the express option under section 3554(a)(2) of this title, within 20 days after the date of the Federal agency's receipt of that determination.

(3) A Federal agency need not submit a report to the Comptroller General pursuant to paragraph (2) of this subsection if the agency is sooner notified by the Comptroller General that the protest concerned has been dismissed under section 3554(a)(3)[1] of this title.

(c)(1) Except as provided in paragraph (2) of this subsection, a contract may not be awarded in any procurement after the Federal agency has received notice of a protest with respect to such procurement from the Comptroller General and while the protest is pending.

(2) The head of the procuring activity responsible for award of a contract may authorize the award of the contract (notwithstanding a protest of which the Federal agency has notice under this section)—

(A) upon a written finding that urgent and compelling circumstances which significantly

_____
[1] See References in Text note below.

affect interests of the United States will not permit waiting for the decision of the Comptroller General under this subchapter; and

(B) after the Comptroller General is advised of that finding.

(3) A finding may not be made under paragraph (2)(A) of this subsection unless the award of the contract is otherwise likely to occur within 30 days after the making of such finding.

(d)(1) A contractor awarded a Federal agency contract may, during the period described in paragraph (4), begin performance of the contract and engage in any related activities that result in obligations being incurred by the United States under the contract unless the contracting officer responsible for the award of the contract withholds authorization to proceed with performance of the contract.

(2) The contracting officer may withhold an authorization to proceed with performance of the contract during the period described in paragraph (4) if the contracting officer determines in writing that—

(A) a protest is likely to be filed; and

(B) the immediate performance of the contract is not in the best interests of the United States.

(3)(A) If the Federal agency awarding the contract receives notice of a protest in accordance with this section during the period described in paragraph (4)—

(i) the contracting officer may not authorize performance of the contract to begin while the protest is pending; or

(ii) if authorization for contract performance to proceed was not withheld in accordance with paragraph (2) before receipt of the notice, the contracting officer shall immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract.

(B) Performance and related activities suspended pursuant to subparagraph (A)(ii) by reason of a protest may not be resumed while the protest is pending.

(C) The head of the procuring activity may authorize the performance of the contract (notwithstanding a protest of which the Federal agency has notice under this section)—

(i) upon a written finding that—

(I) performance of the contract is in the best interests of the United States; or

(II) urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest; and

(ii) after the Comptroller General is notified of that finding.

(4) The period referred to in paragraphs (2) and (3)(A), with respect to a contract, is the period beginning on the date of the contract award and ending on the later of—

(A) the date that is 10 days after the date of the contract award; or

(B) the date that is 5 days after the debriefing date offered to an unsuccessful offeror for any debriefing that is requested and, when requested, is required.

(e) The authority of the head of the procuring activity to make findings and to authorize the award and performance of contracts under subsections (c) and (d) of this section may not be delegated.

(f)(1) Within such deadlines as the Comptroller General prescribes, upon request each Federal agency shall provide to an interested party any document relevant to a protested procurement action (including the report required by subsection (b)(2) of this section) that would not give that party a competitive advantage and that the party is otherwise authorized by law to receive.

(2)(A) The Comptroller General may issue protective orders which establish terms, conditions, and restrictions for the provision of any document to a party under paragraph (1), that prohibit or restrict the disclosure by the party of information described in subparagraph (B) that is contained in such a document.

(B) Information referred to in subparagraph (A) is procurement sensitive information, trade secrets, or other proprietary or confidential research, development, or commercial information.

(C) A protective order under this paragraph shall not be considered to authorize the withholding of any document or information from Congress or an executive agency.

(Added Pub. L. 98–369, div. B, title VII, §2741(a), July 18, 1984, 98 Stat. 1200; amended Pub. L. 103–355, title I, §§1402, 1403(c), Oct. 13, 1994, 108 Stat. 3287, 3290.)

REFERENCES IN TEXT

Section 3554(a)(3) of this title, referred to in subsec. (b)(3), was redesignated section 3554(a)(4) of this title by Pub. L. 103–355, title I, §1403(a)(3), Oct. 13, 1994, 108 Stat. 3289.

AMENDMENTS

1994—Subsec. (b)(1). Pub. L. 103–355, §1402(a)(1)(A), substituted "one day after" for "one working day of".

Subsec. (b)(2)(A). Pub. L. 103–355, §1402(a)(1)(B)(i), substituted "35 days after" for "25 working days from".

Subsec. (b)(2)(C). Pub. L. 103–355, §1402(a)(1)(B)(ii), substituted "20 days after" for "10 working days from".

Subsec. (c)(3). Pub. L. 103–355, §1402(a)(2), substituted "after the making of such finding" for "thereafter".

Subsec. (d). Pub. L. 103–355, §1402(b), amended subsec. (d) generally. Prior to amendment, subsec. (d) read as follows:

"(d)(1) If a Federal agency receives notice of a protest under this section after the contract has been awarded but within 10 days of the date of the contract award, the Federal agency (except as provided under paragraph (2)) shall, upon receipt of that notice, immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract. Performance of the contract may not be resumed while the protest is pending.

"(2) The head of the procuring activity responsible for award of a contract may authorize the performance of the contract (notwithstanding a protest of which the Federal agency has notice under this section)—

"(A) upon a written finding—

"(i) that performance of the contract is in the best interests of the United States; or

"(ii) that urgent and compelling circumstances that significantly affect interests of the United

States will not permit waiting for the decision of the Comptroller General concerning the protest; and

''(B) after the Comptroller General is notified of that finding.''

Subsec. (f). Pub. L. 103–355, §1403(c), designated existing provisions as par. (1) and added par. (2).

Effective Date of 1994 Amendment

For effective date and applicability of amendment by Pub. L. 103–355, see section 10001 of Pub. L. 103–355, set out as a note under section 251 of Title 41, Public Contracts.

Effective Date

Section applicable with respect to any protest filed after Jan. 14, 1985, see section 2751(b) of Pub. L. 98–369, set out as a note under section 251 of Title 41, Public Contracts.

Section Referred to in Other Sections

This section is referred to in sections 3554, 3556 of this title.

## § 3554. Decisions on protests

(a)(1) To the maximum extent practicable, the Comptroller General shall provide for the inexpensive and expeditious resolution of protests under this subchapter. Except as provided under paragraph (2) of this subsection, the Comptroller General shall issue a final decision concerning a protest within 125 days after the date the protest is submitted to the Comptroller General.

(2) The Comptroller General shall, by regulation prescribed pursuant to section 3555 of this title, establish an express option for deciding those protests which the Comptroller General determines suitable for resolution within 65 days after the date the protest is submitted.

(3) An amendment to a protest that adds a new ground of protest, if timely made, should be resolved, to the maximum extent practicable, within the time limit established under paragraph (1) of this subsection for final decision of the initial protest. If an amended protest cannot be resolved within such time limit, the Comptroller General may resolve the amended protest through the express option under paragraph (2) of this subsection.

(4) The Comptroller General may dismiss a protest that the Comptroller General determines is frivolous or which, on its face, does not state a valid basis for protest.

(b)(1) With respect to a solicitation for a contract, or a proposed award or the award of a contract, protested under this subchapter, the Comptroller General may determine whether the solicitation, proposed award, or award complies with statute and regulation. If the Comptroller General determines that the solicitation, proposed award, or award does not comply with a statute or regulation, the Comptroller General shall recommend that the Federal agency—

(A) refrain from exercising any of its options under the contract;

(B) recompete the contract immediately;

(C) issue a new solicitation;

(D) terminate the contract;

(E) award a contract consistent with the requirements of such statute and regulation;

(F) implement any combination of recommendations under clauses (A), (B), (C), (D), and (E); or

(G) implement such other recommendations as the Comptroller General determines to be necessary in order to promote compliance with procurement statutes and regulations.

(2) If the head of the procuring activity responsible for a contract makes a finding under section 3553(d)(2)(A)(i)[1] of this title, the Comptroller General shall make recommendations under this subsection without regard to any cost or disruption from terminating, recompeting, or rewarding the contract.

(3) If the Federal agency fails to implement fully the recommendations of the Comptroller General under this subsection with respect to a solicitation for a contract or an award or proposed award of a contract within 60 days after receiving the recommendations, the head of the procuring activity responsible for that contract shall report such failure to the Comptroller General not later than 5 days after the end of such 60-day period.

(c)(1) If the Comptroller General determines that a solicitation for a contract or a proposed award or the award of a contract does not comply with a statute or regulation, the Comptroller General may recommend that the Federal agency conducting the procurement pay to an appropriate interested party the costs of—

(A) filing and pursuing the protest, including reasonable attorneys' fees and consultant and expert witness fees; and

(B) bid and proposal preparation.

(2) No party (other than a small business concern (within the meaning of section 3(a) of the Small Business Act)) may be paid, pursuant to a recommendation made under the authority of paragraph (1)—

(A) costs for consultant and expert witness fees that exceed the highest rate of compensation for expert witnesses paid by the Federal Government; or

(B) costs for attorneys' fees that exceed $150 per hour unless the agency determines, based on the recommendation of the Comptroller General on a case by case basis, that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

(3) If the Comptroller General recommends under paragraph (1) that a Federal agency pay costs to an interested party, the Federal agency shall—

(A) pay the costs promptly; or

(B) if the Federal agency does not make such payment, promptly report to the Comptroller General the reasons for the failure to follow the Comptroller General's recommendation.

(4) If the Comptroller General recommends under paragraph (1) that a Federal agency pay costs to an interested party, the Federal agency and the interested party shall attempt to reach an agreement on the amount of the costs to be paid. If the Federal agency and the interested party are unable to agree on the amount to be paid, the Comptroller General may, upon the request of the interested party, recommend to the

[1] See References in Text note below.

Federal agency the amount of the costs that the Federal agency should pay.

(d) Each decision of the Comptroller General under this subchapter shall be signed by the Comptroller General or a designee for that purpose. A copy of the decision shall be made available to the interested parties, the head of the procuring activity responsible for the solicitation, proposed award, or award of the contract, and the senior procurement executive of the Federal agency involved.

(e)(1) The Comptroller General shall report promptly to the Committee on Governmental Affairs and the Committee on Appropriations of the Senate and to the Committee on Government Operations and the Committee on Appropriations of the House of Representatives any case in which a Federal agency fails to implement fully a recommendation of the Comptroller General under subsection (b) or (c). The report shall include—

(A) a comprehensive review of the pertinent procurement, including the circumstances of the failure of the Federal agency to implement a recommendation of the Comptroller General; and

(B) a recommendation regarding whether, in order to correct an inequity or to preserve the integrity of the procurement process, the Congress should consider—

(i) private relief legislation;
(ii) legislative rescission or cancellation of funds;
(iii) further investigation by Congress; or
(iv) other action.

(2) Not later than January 31 of each year, the Comptroller General shall transmit to the Congress a report containing a summary of each instance in which a Federal agency did not fully implement a recommendation of the Comptroller General under subsection (b) or (c) during the preceding year. The report shall also describe each instance in which a final decision in a protest was not rendered within 125 days after the date the protest is submitted to the Comptroller General.

(Added Pub. L. 98–369, div. B, title VII, §2741(a), July 18, 1984, 98 Stat. 1201; amended Pub. L. 100–463, title VIII, §8139, Oct. 1, 1988, 102 Stat. 2270–47; Pub. L. 103–355, title I, §1403(a)–(b)(3), Oct. 13, 1994, 108 Stat. 3289, 3290.)

### REFERENCES IN TEXT

Section 3553(d) of this title, referred to in subsec. (b)(2), was amended generally by Pub. L. 103–355, title I, §1402(b), Oct. 13, 1994, 108 Stat. 3288, and, as so amended, provisions formerly appearing in subsec. (d)(2)(A)(i) of section 3553 are now contained in subsec. (d)(3)(C)(i)(I) of that section.

Section 3(a) of the Small Business Act, referred to in subsec. (c)(2), is classified to section 632(a) of Title 15, Commerce and Trade.

### AMENDMENTS

1994—Subsec. (a)(1). Pub. L. 103–355, §1403(a)(1), substituted "125 days after" for "90 working days from".

Subsec. (a)(2). Pub. L. 103–355, §1403(a)(2), substituted "65 days after" for "45 calendar days from".

Subsec. (a)(3), (4). Pub. L. 103–355, §1403(a)(3), (4), added par. (3) and redesignated former par. (3) as (4).

Subsec. (b)(3). Pub. L. 103–355, §1403(b)(1), added par. (3).

Subsec. (c). Pub. L. 103–355, §1403(b)(2), amended subsec. (c) generally. Prior to amendment, subsec. (c) read as follows:

"(c)(1) If the Comptroller General determines that a solicitation for a contract or a proposed award or the award of a contract does not comply with a statute or regulation, the Comptroller General may declare an appropriate interested party to be entitled to the costs of—

"(A) filing and pursuing the protest, including reasonable attorneys' fees; and
"(B) bid and proposal preparation.

"(2) Monetary awards to which a party is declared to be entitled under paragraph (1) of this subsection shall be paid promptly by the Federal agency concerned out of funds available to or for the use of the Federal agency for the procurement of property and services."

Subsec. (e). Pub. L. 103–355, §1403(b)(3), amended subsec. (e) generally. Prior to amendment, subsec. (e) read as follows:

"(e)(1) The head of the procuring activity responsible for the solicitation, proposed award, or award of the contract shall report to the Comptroller General, if the Federal agency has not fully implemented those recommendations within 60 days of receipt of the Comptroller General's recommendations under subsection (b) of this section.

"(2) Not later than January 31 of each year, the Comptroller General shall transmit to Congress a report describing each instance in which a Federal agency did not fully implement the Comptroller General's recommendations during the preceding fiscal year."

1988—Subsec. (a)(1). Pub. L. 100–463 struck out "unless the Comptroller General determines and states in writing the reasons that the specific circumstances of the protest require a longer period" after "submitted to the Comptroller General" before period at end.

### CHANGE OF NAME

Committee on Government Operations of House of Representatives changed to Committee on Government Reform and Oversight of House of Representatives by House Resolution No. 6, One Hundred Fourth Congress, Jan. 4, 1995.

### EFFECTIVE DATE OF 1994 AMENDMENT

For effective date and applicability of amendment by Pub. L. 103–355, see section 10001 of Pub. L. 103–355, set out as a note under section 251 of Title 41, Public Contracts.

### EFFECTIVE DATE

Section applicable with respect to any protest filed after Jan. 14, 1985, see section 2751(b) of Pub. L. 98–369, set out as a note under section 251 of Title 41, Public Contracts.

### PROMPT PAYMENT OF COSTS UNDER PRIOR LAW

Section 1403(b)(4) of Pub. L. 103–355 provided that: "Costs to which the Comptroller General declared an interested party to be entitled under section 3554 of title 31, United States Code, as in effect immediately before the enactment of this Act [Oct. 13, 1994], shall, if not paid or otherwise satisfied by the Federal agency concerned before the date of the enactment of this Act, be paid promptly."

### SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 3553, 3555, 3556 of this title; title 10 section 2305; title 41 section 253b.

## § 3555. Regulations; authority of Comptroller General to verify assertions

(a) The Comptroller General shall prescribe such procedures as may be necessary to the expeditious decision of protests under this subchapter, including procedures for accelerated

resolution of protests under the express option authorized by section 3554(a)(2) of this title. Such procedures shall provide that the protest process may not be delayed by the failure of a party to make a filing within the time provided for the filing.

(b) The procedures shall provide that, in the computation of any period described in this subchapter—

(1) the day of the act, event, or default from which the designated period of time begins to run not be included; and

(2) the last day after such act, event, or default be included, unless—

(A) such last day is a Saturday, a Sunday, or a legal holiday; or

(B) in the case of a filing of a paper at the General Accounting Office or a Federal agency, such last day is a day on which weather or other conditions cause the closing of the General Accounting Office or Federal agency, in which event the next day that is not a Saturday, Sunday, or legal holiday shall be included.

(c) The Comptroller General may prescribe procedures for the electronic filing and dissemination of documents and information required under this subchapter. In prescribing such procedures, the Comptroller General shall consider the ability of all parties to achieve electronic access to such documents and records.

(d) The Comptroller General may use any authority available under chapter 7 of this title and this chapter to verify assertions made by parties in protests under this subchapter.

(Added Pub. L. 98–369, div. B, title VII, § 2741(a), July 18, 1984, 98 Stat. 1202; amended Pub. L. 103–355, title I, § 1404, Oct. 13, 1994, 108 Stat. 3291.)

AMENDMENTS

1994—Subsec. (a). Pub. L. 103–355, § 1404(c), substituted "The Comptroller General" for "Not later than January 15, 1985, the Comptroller General".

Subsecs. (b) to (d). Pub. L. 103–355, § 1404(a), (b), added subsecs. (b) and (c) and redesignated former subsec. (b) as (d).

EFFECTIVE DATE OF 1994 AMENDMENT

For effective date and applicability of amendment by Pub. L. 103–355, see section 10001 of Pub. L. 103–355, set out as a note under section 251 of Title 41, Public Contracts.

EFFECTIVE DATE

Section applicable with respect to any protest filed after Jan. 14, 1985, see section 2751(b) of Pub. L. 98–369, set out as a note under section 251 of Title 41, Public Contracts.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 3553, 3554 of this title.

§ 3556. Nonexclusivity of remedies; matters included in agency record

This subchapter does not give the Comptroller General exclusive jurisdiction over protests, and nothing contained in this subchapter shall affect the right of any interested party to file a protest with the contracting agency or to file an action in a district court of the United States or the United States Court of Federal Claims. In any such action based on a procurement or proposed procurement with respect to which a protest has been filed under this subchapter, the reports required by sections 3553(b)(2) and 3554(e)(1) of this title with respect to such procurement or proposed procurement and any decision or recommendation of the Comptroller General under this subchapter with respect to such procurement or proposed procurement shall be considered to be part of the agency record subject to review.

(Added Pub. L. 98–369, div. B, title VII, § 2741(a), July 18, 1984, 98 Stat. 1202; amended Pub. L. 102–572, title IX, § 902(b)(1), Oct. 29, 1992, 106 Stat. 4516.)

AMENDMENTS

1992—Pub. L. 102–572 substituted "United States Court of Federal Claims" for "United States Claims Court".

EFFECTIVE DATE OF 1992 AMENDMENT

Amendment by Pub. L. 102–572 effective Oct. 29, 1992, see section 911 of Pub. L. 102–572, set out as a note under section 171 of Title 28, Judiciary and Judicial Procedure.

EFFECTIVE DATE

Section applicable with respect to any protest filed after Jan. 14, 1985, see section 2751(b) of Pub. L. 98–369, set out as a note under section 251 of Title 41, Public Contracts.

## CHAPTER 37—CLAIMS

SUBCHAPTER I—GENERAL

Sec.
3701.    Definitions and application.
3702.    Authority of the Comptroller General to settle claims.

SUBCHAPTER II—CLAIMS OF THE UNITED STATES GOVERNMENT

3711.    Collection and compromise.
3712.    Time limitations for presenting certain claims of the Government.
3713.    Priority of Government claims.
3714.    Keeping money due States in default.
3715.    Buying real property of a debtor.
3716.    Administrative offset.
3717.    Interest and penalty on claims.
3718.    Contracts for collection services.
3719.    Reports on debt collection activities.
3720.    Collection of payments.
3720A.   Reduction of tax refund by amount of debt.

SUBCHAPTER III—CLAIMS AGAINST THE UNITED STATES GOVERNMENT

3721.    Claims of personnel of agencies and the District of Columbia government for personal property damage or loss.
3722.    Claims of officers and employees at Government penal and correctional institutions.
3723.    Small claims for privately owned property damage or loss.
3724.    Claims for damages caused by investigative or law enforcement officers of the Department of Justice.
3725.    Claims of non-nationals for personal injury or death in a foreign country.
3726.    Payment for transportation.
3727.    Assignments of claims.
3728.    Setoff against judgment.
3729.    False claims.
3730.    Civil actions for false claims.
3731.    False claims procedure.

#### (b) Temporary employment of experts or consultants; stenographic reporting services

To such extent as he finds necessary to carry out the provisions of titles I, II, III, V, and VI of this Act, the Administrator is authorized to procure the temporary (not in excess of one year) or intermittent services of experts or consultants or organizations thereof, including stenographic reporting services, by contract or appointment, and in such cases such service shall be without regard to the civil-service and classification laws, and except in the case of stenographic reporting services by organizations, without regard to section 5 of title 41.

#### (c) Utilization of personnel of other Federal agencies

Notwithstanding the provisions of section 973 of title 10 or of any other provision of law, the Administrator in carrying out the functions imposed upon him by this Act is authorized to utilize in his agency the services of officials, officers, and other personnel in other executive agencies, including personnel of the armed services, with the consent of the head of the agency concerned.

(June 30, 1949, ch. 288, title II, § 208, 63 Stat. 391; Sept. 5, 1950, ch. 849, § 7(b), (c), 64 Stat. 590.)

##### REFERENCES IN TEXT

The civil-service laws, referred to in subsecs. (a) and (b), are set forth in Title 5, Government Organization and Employees. See, particularly, section 3301 et seq. of Title 5.

The classification laws, referred to in subsecs. (a) and (b), are classified generally to chapter 51 (§ 5101 et seq.) and to subchapter III (§ 5331 et seq.) of chapter 53 of Title 5.

This Act, referred to in text, is act June 30, 1949, ch. 288, 63 Stat. 377, as amended, known as the Federal Property and Administrative Services Act of 1949. For complete classification of this Act, including titles I, II, III, V and VI thereof, see Short Title note set out under section 471 of this title and Tables.

##### CODIFICATION

In subsec. (c), "section 973 of title 10" substituted for "sections 3544 and 8544 of title 10" on authority of Pub. L. 90–235, § 4(a)(5), (6), Jan. 2, 1968, 81 Stat. 759. Previously, "sections 3544 and 8544 of title 10" had been substituted for "section 1222 of the Revised Statutes (10 U.S.C. 576)" on authority of act Aug. 10, 1956, ch. 1041, § 49(b), 70A Stat. 640, the first section of which enacted Title 10, Armed Forces.

Section was formerly classified to section 630h of Title 5 prior to the general revision and enactment of Title 5, Government Organization and Employees, by Pub. L. 89–554, § 1, Sept. 6, 1966, 80 Stat. 378.

Section was also formerly classified to section 238 of Title 41, Public Contracts.

##### AMENDMENTS

1950—Subsecs. (a), (b). Act Sept. 5, 1950, substituted "V, and VI of this Act" for "and V of this Act".

##### TRANSFER OF FUNCTIONS

Functions, powers, and duties of Office of Audits and Office of Investigations in General Services Administration transferred to Office of Inspector General in General Services Administration by section 9(a)(1)(K) of the Inspector General Act of 1978, Pub. L. 95–452, set out in the Appendix to Title 5, Government Organization and Employees, section 2 of which established such Office of Inspector General.

##### DEFINITIONS

The definitions in section 472 of this title apply to this chapter.

##### CROSS REFERENCES

Employment of experts and consultants generally, see section 3109 of Title 5, Government Organization and Employees.

##### SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 752 of this title.

#### § 759. Procurement, maintenance, operation and utilization of automatic data processing equipment

#### (a) Authority of Administrator to coordinate and provide for purchase, lease and maintenance of equipment by Federal agencies

(1) The Administrator is authorized and directed to coordinate and provide for the economic and efficient purchase, lease, and maintenance of automatic data processing equipment by Federal agencies.

(2)(A) For purposes of this section, the term "automatic data processing equipment" means any equipment or interconnected system or subsystems of equipment that is used in the automatic acquisition, storage, manipulation, management, movement, control, display, switching, interchange, transmission, or reception, of data or information—

  (i) by a Federal agency, or

  (ii) under a contract with a Federal agency which—

    (I) requires the use of such equipment, or

    (II) requires the performance of a service or the furnishing of a product which is performed or produced making significant use of such equipment.

(B) Such term includes—

  (i) computers;

  (ii) ancillary equipment;

  (iii) software, firmware, and similar procedures;

  (iv) services, including support services; and

  (v) related resources as defined by regulations issued by the Administrator for General Services.

(3) This section does not apply to—

  (A) automatic data processing equipment acquired by a Federal contractor which is incidental to the performance of a Federal contract;

  (B) radar, sonar, radio, or television equipment;

  (C) the procurement by the Department of Defense of automatic data processing equipment or services if the function, operation, or use of which—

    (i) involves intelligence activities;

    (ii) involves cryptologic activities related to national security;

    (iii) involves the command and control of military forces;

    (iv) involves equipment which is an integral part of a weapon or weapons system; or

    (v) is critical to the direct fulfillment of military or intelligence missions, provided that this exclusion shall not include automatic data processing equipment used for

routine administrative and business applications such as payroll, finance, logistics, and personnel management; or

(D) the procurement of automatic data processing equipment or services by the Central Intelligence Agency.

**(b) Procurement, maintenance and repair of equipment; transfer between agencies; joint utilization; establishment and operation of equipment pools and data processing centers; delegation of Administrator's authority**

(1) Automatic data processing equipment suitable for efficient and effective use by Federal agencies shall be provided by the Administrator through purchase, lease, transfer of equipment from other Federal agencies, or otherwise, and the Administrator is authorized and directed to provide by contract or otherwise for the maintenance and repair of such equipment. In carrying out his responsibilities under this section the Administrator is authorized to transfer automatic data processing equipment between Federal agencies, to provide for joint utilization of such equipment by two or more Federal agencies, and to establish and operate equipment pools and data processing centers for the use of two or more such agencies when necessary for its most efficient and effective utilization.

(2) The Administrator may delegate to one or more Federal agencies authority to operate automatic data processing equipment pools and automatic data processing centers, and to lease, purchase, or maintain individual automatic data processing systems or specific units of equipment, including such equipment used in automatic data processing pools and automatic data processing centers, when such action is determined by the Administrator to be necessary for the economy and efficiency of operations, or when such action is essential to national defense or national security. The Administrator may delegate to one or more Federal agencies authority to lease, purchase, or maintain automatic data processing equipment to the extent to which he determines such action to be necessary and desirable to allow for the orderly implementation of a program for the utilization of such equipment.

(3) If the Administrator finds that a senior official of an agency designated pursuant to section 3506(b) of title 44 is sufficiently independent of program responsibility and has sufficient experience, resources, and ability to carry out fairly and effectively procurements under this section, the Administrator may delegate to such official the authority to lease, purchase, or maintain automatic data processing equipment pursuant to paragraph (2) of this subsection, except that any such delegation shall not relieve the Administrator of the responsibilities assigned to the Administrator under this section. A delegation by the Administrator under this subsection shall not preclude the Administrator from reviewing individual procurement requests if the Administrator determines that circumstances warrant such a review. The Administrator shall retain authority to revoke such delegations, both in general and with regard to any specific matter, including the authority to revoke a delegation of authority with respect to

a particular contract after award of the contract, except that the Administrator may revoke a delegation of authority after the contract is awarded only when there is a finding of a violation of law or regulation in connection with the contract award..[1] In acting for the Administrator, any official to whom approval authority has been delegated under this subsection shall comply fully with the rules and regulations promulgated by the Administrator.

**(c) Inapplicability of other inconsistent provisions of law**

The proviso following paragraph (4) in section 481(a) of this title and the provisions of section 474(d) of this title shall have no application in the administration of this section. No other provision of this Act or any other Act which is inconsistent with the provisions of this section shall be applicable in the administration of this section.

**(d) Standards and guidelines for Federal computer systems; promulgation, disapproval or modification, etc.**

(1) The Secretary of Commerce shall, on the basis of standards and guidelines developed by the National Bureau of Standards pursuant to section 278g–3(a)(2) and (3) of title 15, promulgate standards and guidelines pertaining to Federal computer systems, making such standards compulsory and binding to the extent to which the Secretary determines necessary to improve the efficiency of operation or security and privacy of Federal computer systems. The President may disapprove or modify such standards and guidelines if he determines such action to be in the public interest. The President's authority to disapprove or modify such standards and guidelines may not be delegated. Notice of such disapproval or modification shall be submitted promptly to the Committee on Government Operations of the House of Representatives and the Committee on Governmental Affairs of the Senate and shall be published promptly in the Federal Register. Upon receiving notice of such disapproval or modification, the Secretary of Commerce shall immediately rescind or modify such standards or guidelines as directed by the President.

(2) The head of a Federal agency may employ standards for the cost-effective security and privacy of sensitive information in a Federal computer system within or under the supervision of that agency that are more stringent than the standards promulgated by the Secretary of Commerce, if such standards contain, at a minimum, the provisions of those applicable standards made compulsory and binding by the Secretary of Commerce.

(3) The standards determined to be compulsory and binding may be waived by the Secretary of Commerce in writing upon a determination that compliance would adversely affect the accomplishment of the mission of an operator of a Federal computer system, or cause a major adverse financial impact on the operator which is not offset by Government-wide savings. The Secretary may delegate to the head of one or more Federal agencies authority to waive such stand-

---

[1] So in original.

ards to the extent to which the Secretary determines such action to be necessary and desirable to allow for timely and effective implementation of Federal computer systems standards. The head of such agency may redelegate such authority only to a senior official designated pursuant to section 3506(b) of title 44. Notice of each such waiver and delegation shall be transmitted promptly to the Committee on Government Operations of the House of Representatives and the Committee on Governmental Affairs of the Senate and shall be published promptly in the Federal Register.

(4) The Administrator shall revise the Federal information resources management regulations (41 CFR ch. 201) to be consistent with the standards and guidelines promulgated by the Secretary of Commerce under this subsection.

(5) As used in this subsection, the terms "Federal computer system" and "operator of a Federal computer system" have the meanings given in section 278g–3(d) of title 15.

**(e) Limitations on authority of Administrator and Secretary of Commerce; notice and review of Administrator's determinations**

The authority conferred upon the Administrator and the Secretary of Commerce by this section shall be exercised subject to direction by the President and to fiscal and policy control exercised by the Office of Management and Budget. Authority so conferred upon the Administrator shall not be so construed as to impair or interfere with the determination by agencies of their individual automatic data processing equipment requirements, including the development of specifications for and the selection of the types and configurations of equipment needed. The Administrator shall not interfere with, or attempt to control in any way, the use made of automatic data processing equipment or components thereof by any agency. The Administrator shall provide adequate notice to all agencies and other users concerned with respect to each proposed determination whether or not the automatic data processing equipment will be provided by the Administrator or whether or not the authority to lease, purchase, or maintain the equipment will be delegated. If the Administrator denies an agency procurement request such denial shall be subject to review and decision by the Director of the Office of Management and Budget, unless the President otherwise directs. Such review and decision shall be made only on the basis of a written appeal, and such written appeal, together with any written communications to the Administrator or any officer or employee of the Office of Management and Budget concerning such denial shall be made available to the public.

**(f) Automated data processing dispute resolution**

(1) Upon request of an interested party in connection with any procurement that is subject to this section (including any such procurement that is subject to delegation of procurement authority), the board of contract appeals of the General Services Administration (hereafter in this subsection referred to as the "board") shall review, as provided in this subsection, any decision by a contracting officer that is alleged to violate a statute, a regulation, or the conditions of a delegation of procurement authority. Such review shall be conducted under the standard applicable to review of contracting officer final decisions by boards of contract appeals. The authority of the board to conduct such review shall include the authority to determine whether any procurement is subject to this section and the authority to review regulations to determine their consistency with applicable statutes. A proceeding, decision, or order of the board pursuant to this subsection shall not be subject to interlocutory appeal or review. An interested party who has filed a protest under subchapter V of chapter 35 of title 31, with respect to a procurement or proposed procurement may not file a protest with respect to that procurement or proposed procurement under this subsection.

(2)(A) When a protest under this subsection is filed before the award of a contract in a protested procurement, the board, at the request of an interested party and within 10 days of the filing of the protest, shall hold a hearing to determine whether the board should suspend the procurement authority of the Administrator or the Administrator's delegation of procurement authority for the protested procurement on an interim basis until the board can decide the protest.

(B)(i) The board shall suspend the procurement authority of the Administrator or the Administrator's delegation of procurement authority unless the Federal agency concerned establishes that—

(I) absent action by the board, contract award is likely to occur within 30 days of the hearing; and

(II) urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting for the decision of the board.

(ii) A suspension under this subparagraph shall not preclude the Federal agency concerned from continuing the procurement process up to but not including award of the contract unless the board determines such action is not in the best interests of the United States.

(3)(A)(i) If, with respect to an award of a contract, the board receives notice of a protest under this subsection within the period described in clause (ii), the board shall, at the request of an interested party, hold a hearing to determine whether the board should suspend the procurement authority of the Administrator or the Administrator's delegation of procurement authority for the protested procurement on an interim basis until the board can decide the protest.

(ii) The period referred to in clause (i) is the period beginning on the date on which the contract is awarded and ending at the end of the later of—

(I) the tenth day after the date of contract award; or

(II) the fifth day after the debriefing date offered to an unsuccessful offeror for any debriefing that is requested and, when requested, is required.

(iii) The board shall hold the requested hearing within 5 days after the date of the filing of

the protest or, in the case of a request for debriefing under the provisions of section 2305(b)(5) of title 10 or section 303B(e) of this Act [41 U.S.C. 253b(e)], within 5 days after the later of the date of the filing of the protest or the date of the debriefing.

(B) The board shall suspend the procurement authority of the Administrator or the Administrator's delegation of procurement authority to acquire any goods or services under the contract which are not previously delivered and accepted unless the Federal agency concerned establishes that urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting for the decision of the board.

(4)(A) The board shall conduct such proceedings and allow such discovery as may be required for the expeditious, fair, and reasonable resolution of the protest.

(B) Subject to any deadlines imposed by section 9(a) of the Contract Disputes Act of 1978 (41 U.S.C. 608(a)), the board shall give priority to protests filed under this subsection. The board shall issue its final decision within 65 days after the date of the filing of the protest, unless the board's chairman determines that the specific and unique circumstances of the protest require a longer period, in which case the board shall issue such decision within the longer period determined by the chairman. An amendment which adds a new ground of protest should be resolved, to the maximum extent practicable, within the time limits established for resolution of the initial protest.

(C) The board may dismiss a protest that the board determines—

(i) is frivolous;

(ii) has been brought or pursued in bad faith; or

(iii) does not state on its face a valid basis for protest.

(5)(A) In making a decision on the merits of protests brought under this section, the board shall accord due weight to the policies of this section and the goals of economic and efficient procurement set forth in this section. The board may consider any decision, determination, opinion, or statement made by the Director of the Office of Management and Budget or any officer of any other Federal agency regarding applicability of this section to a particular procurement, and may request the advice of the Director or such officer with regard to such applicability, but shall not be bound by any such decision, determination, opinion, or statement when determining whether a procurement is subject to this section.

(B) If the board determines that a challenged agency action violates a statute or regulation or the conditions of any delegation of procurement authority issued pursuant to this section, the board may suspend, revoke, or revise the procurement authority of the Administrator or the Administrator's delegation of procurement authority applicable to the challenged procurement.

(C) Whenever the board makes such a determination, it may, in accordance with section 1304 of title 31, further declare an appropriate prevailing party to be entitled to the cost of filing and pursuing the protest (including reasonable attorneys' fees and consultant and expert witness fees), and bid and proposal preparation. However, no party (other than a small business concern (within the meaning of section 632(a) of title 15)) may be declared entitled to costs for consultants and expert witness fees that exceed the highest rate of compensation for expert witnesses paid by the Federal Government, and no party (other than a small business concern (within the meaning of section 632(a) of title 15)) may be declared entitled to attorneys' fees that exceed $150 per hour unless the board, on a case by case basis, determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

(D) Any agreement that provides for the dismissal of a protest and involves a direct or indirect expenditure of appropriated funds shall be submitted to the board and shall be made a part of the public record (subject to any protective order considered appropriate by the board) before dismissal of the protest. If a Federal agency is a party to a settlement agreement, the submission of the agreement to the board shall include a memorandum, signed by the contracting officer concerned, that describes in detail the procurement, the grounds for protest, the Federal Government's position regarding the grounds for protest, the terms of the settlement, and the agency's position regarding the propriety of the award or proposed award of the contract at issue in the protest.

(E) Payment of amounts due from an agency under subparagraph (C) or under the terms of a settlement agreement under subparagraph (D) shall be made from the appropriation made by section 1304 of title 31 for the payment of judgments. The Federal agency concerned shall reimburse that appropriation account out of funds available for the procurement.

(6)(A) The final decision of the board may be appealed by the head of the Federal agency concerned and by any interested party, including interested parties who intervene in any protest filed under this subsection, as set forth in the Contract Disputes Act of 1978 (41 U.S.C. 601 et seq.).

(B) If the board revokes, suspends, or revises the procurement authority of the Administrator or the Administrator's delegation of procurement authority after the contract award, the affected contract shall be presumed valid as to all goods or services delivered and accepted under the contract before the suspension, revocation, or revision of such procurement authority or delegation.

(C) Nothing contained in this subsection shall affect the board's power to order any additional relief which it is authorized to provide under any statute or regulation. However, the procedures set forth in this subsection shall only apply to procurements conducted under the authority contained in this section. In addition, nothing contained in this subsection shall affect the right of any interested party to file a protest with the contracting agency or to file an action in a district court of the United States or the United States Court of Federal Claims.

(7)(A) The board shall adopt and issue such rules and procedures as may be necessary to the

expeditious disposition of protests filed under the authority of this subsection.

(B) The procedures shall provide that, in the computation of any period described in this subsection—

(i) the day of the act, event, or default from which the designated period of time begins to run not be included; and

(ii) the last day after such act, event, or default be included, unless—

(I) such last day is a Saturday, a Sunday, or a legal holiday; or

(II) in the case of a filing of a paper at the board, such last day is a day on which weather or other conditions cause the closing of the board in which event the next day that is not a Saturday, Sunday, or legal holiday shall be included.

(C) The procedures may provide for electronic filing and dissemination of documents and information required under this subsection and in so providing shall consider the ability of all parties to achieve electronic access to such documents and records.

(D) The procedures shall provide that if the board expressly finds that a protest or a portion of a protest is frivolous or has been brought or pursued in bad faith, or that any person has willfully abused the board's process during the course of a protest, the board may impose appropriate procedural sanctions, including dismissal of the protest.

(8) Repealed. Pub. L. 103–355, title I, §1437(2), Oct. 13, 1994, 108 Stat. 3294.

(9) For purposes of this subsection:

(A) The term "protest" means a written objection by an interested party to any of the following:

(i) A solicitation or other request by a Federal agency for offers for a contract for the procurement of property or services.

(ii) The cancellation of such a solicitation or other request.

(iii) An award or proposed award of such a contract.

(iv) A termination or cancellation of an award of such a contract, if the written objection contains an allegation that the termination or cancellation is based in whole or in part on improprieties concerning the award of the contract.

(B) The term "interested party" means, with respect to a contract or proposed contract described in subparagraph (A), an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract.

(C) The term "prevailing party", with respect to a determination of the board under paragraph (5)(B) that a challenged action of a Federal agency violates a statute or regulation or the conditions of a delegation of procurement authority issued pursuant to this section, means a party that demonstrated such violation.

**(g) Procurement from sole source or by specific make and model**

The justifications and approvals required by section 253(f)(1) of title 41 shall apply in the case of any procurement under this section for which the minimum needs are so restrictive that only one manufacturer is capable of satisfying such needs. Such procurement includes either a sole source procurement or a procurement by specific make and model. Such justification and approval shall be required notwithstanding that more than one bid or offer is made or that the procurement obtains price competition and such procurement shall be treated as a procurement using procedures other than competitive procedures for purposes of section 417(b) of title 41.

**(h) Data collection**

(1) The Administrator shall collect and compile data regarding the procurement of automatic data processing equipment under this section. The data collected and compiled shall include, at a minimum, with regard to each contract for such a procurement, the following:

(A) The procuring agency.

(B) The contractor.

(C) The automatic data processing equipment and services procured.

(D) The manufacturer of the equipment procured.

(E) The amount of the contract, to the extent that the amount is not proprietary information.

(F) The type of contract used.

(G) The extent of competition for award.

(H) Whether compatibility restrictions were used in awarding the contract.

(I) Significant modifications of the contract.

(J) Contract price, to the extent that the price is not proprietary information.

(2) The head of each Federal agency shall report to the Administrator in accordance with regulations issued by the Administrator all information that the Administrator determines necessary in order to satisfy the requirements in paragraph (1).

(3) The Administrator—

(A) shall carry out a systematic, periodic review of information received under this subsection;

(B) shall use such information, as appropriate, to determine the compliance of Federal agencies with the requirements of this section; and

(C) may take appropriate corrective action regarding an agency's authority to lease and purchase automatic data processing equipment upon any substantial failure by the head of the agency to report to the Administrator in accordance with this subsection.

(4) The Administrator shall take appropriate corrective action upon failure of a Federal agency to comply with the terms of any delegation of authority to lease or purchase automatic data processing equipment or failure to comply with any applicable law or regulation.

(5) The Administrator shall require in the regulations implementing this subsection that (A) data collected pursuant to this subsection be drawn from existing Federal agency information; and (B) no new or additional information reporting requirements may be imposed on offerors or contractors to collect such data.

**(i) Short title**

This section may be cited as the "Brooks Automatic Data Processing Act".

(June 30, 1949, ch. 288, title I, §111, as added Oct. 30, 1965, Pub. L. 89–306, 79 Stat. 1127; amended 1970 Reorg. Plan No. 2, §102, eff. July 1, 1970, 35 F.R. 7959, 84 Stat. 2085; July 18, 1984, Pub. L. 98–369, div. B, title VII, §2713(a), 98 Stat. 1182; Nov. 8, 1985, Pub. L. 99–145, title IX, §961(c), title XIII, §1304(c)(1), 99 Stat. 703, 742; Oct. 18, 1986, Pub. L. 99–500, §101(m) [title VIII, §§821(b)(1), 822–825], 100 Stat. 1783–308, 1783–342 to 1783–344, and Oct. 30, 1986, Pub. L. 99–591, §101(m) [title VIII, §§821(b)(1), 822–825], 100 Stat. 3341–308, 3341–342 to 3341–344; Jan. 8, 1988, Pub. L. 100–235, §4, 101 Stat. 1728; Oct. 29, 1992, Pub. L. 102–572, title IX, §902(b)(1), 106 Stat. 4516; Oct. 13, 1994, Pub. L. 103–355, title I, §§1431–1439, title X, §10005(f)(3), 108 Stat. 3291–3295, 3409.)

REFERENCES IN TEXT

This Act, referred to in subsec. (c), is act June 30, 1949, ch. 288, 63 Stat. 377, as amended, known as the Federal Property and Administrative Services Act of 1949. For complete classification of this Act to the Code, see Short Title note set out under section 471 of this title and Tables.

The Contract Disputes Act of 1978, referred to in subsec. (f)(6)(A), is Pub. L. 95–563, Nov. 1, 1978, 92 Stat. 2383, as amended, which is classified principally to chapter 9 (§601 et seq.) of Title 41, Public Contracts. For complete classification of this Act to the Code, see Short Title note set out under section 601 of Title 41 and Tables.

CODIFICATION

Pub. L. 99–591 is a corrected version of Pub. L. 99–500.

Section was formerly classified to section 630g–2 of Title 5 prior to the general revision and enactment of Title 5, Government Organization and Employees, by Pub. L. 89–554, §1, Sept. 6, 1966, 80 Stat. 378.

AMENDMENTS

1994—Subsec. (b)(3). Pub. L. 103–355, §1431, inserted before period at end of third sentence '', including the authority to revoke a delegation of authority with respect to a particular contract after award of the contract, except that the Administrator may revoke a delegation of authority after the contract is awarded only when there is a finding of a violation of law or regulation in connection with the contract award.''

Subsec. (f)(1). Pub. L. 103–355, §1432, amended first sentence generally. Prior to amendment, first sentence read as follows: ''Upon request of an interested party in connection with any procurement which is subject to this section (including procurements subject to delegation of procurement authority), the board of contract appeals of the General Services Administration (hereafter in this subsection referred to as the 'board'), shall review any decision by a contracting officer alleged to violate a statute or regulation.''

Subsec. (f)(2)(B). Pub. L. 103–355, §1433(a)(1), designated existing provisions as cl. (i), redesignated former cls. (i) and (ii) as subcls. (I) and (II), respectively, of cl. (i), and added cl. (ii).

Subsec. (f)(3)(A). Pub. L. 103–355, §1433(a)(2), added subpar. (A) and struck out former subpar. (A) which read as follows: ''If the board receives notice of a protest under this subsection after the contract has been awarded but within 10 days after the contract award, the board shall, at the request of an interested party and within 10 days after the date of the filing of the protest, hold a hearing to determine whether the board should suspend the procurement authority of the Administrator or the Administrator's delegation of procurement authority for the challenged procurement on an interim basis until the board can decide the protest.''

Subsec. (f)(4)(B). Pub. L. 103–355, §1433(b), substituted ''65 days'' for ''45 working days'' and inserted at end ''An amendment which adds a new ground of protest should be resolved, to the maximum extent practicable, within the time limits established for resolution of the initial protest.''

Subsec. (f)(4)(C). Pub. L. 103–355, §1434, added subpar. (C) and struck out former subpar. (C) which read as follows: ''The board may dismiss a protest the board determines is frivolous or which, on its face, does not state a valid basis for protest.''

Subsec. (f)(5)(C). Pub. L. 103–355, §1435(a), added subpar. (C) and struck out former subpar. (C) which read as follows: ''Whenever the board makes such a determination, it may, in accordance with section 1304 of title 31, further declare an appropriate interested party to be entitled to the costs of—

''(i) filing and pursuing the protest, including reasonable attorney's fees, and

''(ii) bid and proposal preparation.''

Subsec. (f)(5)(D), (E). Pub. L. 103–355, §1436, added subpars. (D) and (E).

Subsec. (f)(7). Pub. L. 103–355, §1437(1), added par. (7).

Subsec. (f)(8). Pub. L. 103–355, §1437(2), struck out par. (8) which read as follows: ''Not later than January 15, 1985, the board shall adopt and issue such rules and procedures as may be necessary to the expeditious disposition of protests filed under the authority of this subsection.''

Subsec. (f)(9). Pub. L. 103–355, §1438(1), substituted ''subsection:'' for ''subsection—'' in introductory provisions.

Subsec. (f)(9)(A). Pub. L. 103–355, §1438(2), added subpar. (A) and struck out former subpar. (A) which read as follows: ''the term 'protest' means a written objection by an interested party to a solicitation by a Federal agency for bids or proposals for a proposed contract for the procurement of property or services or a written objection to a proposed award or the award of such a contract; and''.

Subsec. (f)(9)(B). Pub. L. 103–355, §1438(3), substituted ''The term'' for ''the term''.

Subsec. (f)(9)(C). Pub. L. 103–355, §1435(b), added subpar. (C).

Subsec. (h). Pub. L. 103–355, §1439, added subsec. (h).

Subsec. (i). Pub. L. 103–355, §10005(f)(3), added subsec. (i).

1992—Subsec. (f)(6)(C). Pub. L. 102–572 substituted ''United States Court of Federal Claims'' for ''United States Claims Court''.

1988—Subsec. (d). Pub. L. 100–235 amended subsec. (d) generally. Prior to amendment, subsec. (d) read as follows: ''The Secretary of Commerce is authorized (1) to provide agencies, and the Administrator of General Services in the exercise of the authority delegated in this section, with scientific and technological advisory services relating to automatic data processing and related systems, and (2) to make appropriate recommendations to the President relating to the establishment of uniform Federal automatic data processing standards. The Secretary of Commerce is authorized to undertake the necessary research in the sciences and technologies of automatic data processing computer and related systems, as may be required under provisions of this subsection.''

1986—Subsec. (a). Pub. L. 99–500 and Pub. L. 99–591, §101(m) [title VIII, §822(a)], designated existing provisions as par. (1) and added pars. (2) and (3).

Subsec. (b)(3). Pub. L. 99–500 and Pub. L. 99–591, §101(m) [title VIII, §822(b)], added par. (3).

Subsec. (c). Pub. L. 99–500 and Pub. L. 99–591, §101(m) [title VIII, §821(b)(1)], redesignated subsec. (e) as (c) and struck out former subsec. (c) which provided for establishment of automatic data processing fund and uses of fund and required an annual report.

Subsec. (d). Pub. L. 99–500 and Pub. L. 99–591, §101(m) [title VIII, §821(b)(1)], redesignated subsec. (f) as (d) and struck out former subsec. (d) which related to capital of automatic data processing fund, credits for fund, and transfer of net income to Treasury at close of each fiscal year.

Subsec. (e). Pub. L. 99–500 and Pub. L. 99–591, §101(m) [title VIII, §821(b)(1)(B)], redesignated subsec. (g) as (e). Former subsec. (e) redesignated (c).

Pub. L. 99–500 and Pub. L. 99–591, §101(m) [title VIII, §825], substituted "exercised by the Office of Management and Budget" for "exercised by the Bureau of the Budget".

Pub. L. 99–500 and Pub. L. 99–591, §101(m) [title VIII, §823], substituted "whether or not the automatic data processing equipment will be provided by the Administrator or whether or not the authority to lease, purchase, or maintain the equipment will be delegated" for "specifically affecting them or the automatic data processing equipment or components used by them" and "If the Administrator denies an agency procurement request such denial shall be subject to review and decision by the Director of the Office of Management and Budget, unless the President otherwise directs. Such review and decision shall be made only on the basis of a written appeal, and such written appeal, together with any written communications to the Administrator or any officer or employee of the Office of Management and Budget concerning such denial shall be made available to the public" for "In the absence of mutual agreement between the Administrator and the agency or user concerned, such proposed determinations shall be subject to review and decision by the Office of Management and Budget unless the President otherwise directs".

Subsec. (f). Pub. L. 99–500 and Pub. L. 99–591, §101(m) [title VIII, §821(b)(1)(B)], redesignated subsec. (h) as (f). Former subsec. (f) redesignated (d).

Pub. L. 99–500 and Pub. L. 99–591, §101(m) [title VIII, §824], in par. (1) substituted "in connection with any procurement which is subject to this section" for "in connection with any procurement conducted under the authority of this section", "subject to delegation" for "conducted under delegations" and inserted provision that the authority of the board include authority to determine whether a procurement is subject to this section and authority to review regulations for consistency and providing that a proceeding, decision, or order not be subject to interlocutory appeal or review, and in par. (5)(A) inserted provision that the board may consider opinions of other Federal agencies but not be bound by such opinions.

Subsecs. (g) to (i). Pub. L. 99–500 and Pub. L. 99–591, §101(m) [title VIII, §821(b)(1)(B)], redesignated subsecs. (g) to (i) as (e) to (g), respectively.

1985—Subsec. (h)(3)(A). Pub. L. 99–145, §1304(c)(1), substituted "board" for "Board".

Subsec. (i). Pub. L. 99–145, §961(c), added subsec. (i).

1984—Subsec. (h). Pub. L. 98–369 added subsec. (h).

### CHANGE OF NAME

Committee on Government Operations of House of Representatives changed to Committee on Government Reform and Oversight of House of Representatives by House Resolution No. 6, One Hundred Fourth Congress, Jan. 4, 1995.

### EFFECTIVE DATE OF 1994 AMENDMENT

For effective date and applicability of amendment by Pub. L. 103–355, see section 10001 of Pub. L. 103–355, set out as a note under section 251 of Title 41, Public Contracts.

### EFFECTIVE DATE OF 1992 AMENDMENT

Amendment by Pub. L. 102–572 effective Oct. 29, 1992, see section 911 of Pub. L. 102–572, set out as a note under section 171 of Title 28, Judiciary and Judicial Procedure.

### EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by section 101(m) [title VIII, §821(b)(1)] of Pub. L. 99–500 and Pub. L. 99–591 effective Jan. 1, 1987, and amendment by section 101(m) [title VIII, §§825–822–827] of Pub. L. 99–500 and Pub. L. 99–591 effective Oct. 18, 1986, see section 101(m) [title VIII, §833] of Pub. L. 99–500 and Pub. L. 99–591, set out as a note under section 757 of this title.

### EFFECTIVE DATE OF 1985 AMENDMENT

Amendment by section 961(c) of Pub. L. 99–145 effective as if included in enactment of Competition in Contracting Act of 1984, Pub. L. 98–369, div. B, title VII, see section 961(e) of Pub. L. 99–145, set out as a note under section 2304 of Title 10, Armed Forces.

### EFFECTIVE AND TERMINATION DATE OF 1984 AMENDMENT

Pub. L. 98–369, div. B, title VII, §2713(b), July 18, 1984, 98 Stat. 1184, which provided that amendment of this section by section 2713 of Pub. L. 98–369 would cease to be effective on Jan. 15, 1988, was repealed by Pub. L. 99–500, §101(m) [title VIII, §831], Oct. 18, 1986, 100 Stat. 1783–308, 1783–344, and Pub. L. 99–591, §101(m) [title VIII, §831], Oct. 30, 1986, 100 Stat. 3341–308, 3341–344.

Amendment by Pub. L. 98–369 applicable with respect to any protest filed after Jan. 14, 1985, see section 2751(b) of Pub. L. 98–369, set out as a note under section 251 of Title 41, Public Contracts.

### DELEGATION OF FUNCTIONS

Functions, authority, and responsibility of Director of Office of Management and Budget under this section delegated to Administrator for Office of Information and Regulatory Affairs in Office of Management and Budget pursuant to Pub. L. 96–511, §3(b), Dec. 11, 1980, 94 Stat. 2825, set out as a note under section 3503 of Title 44, Public Printing and Documents.

Functions of Office of Management and Budget approving standards on behalf of President pursuant to subsec. (f)(2) of this section transferred to Secretary of Commerce, see section 2 of Ex. Ord. No. 11717, May 9, 1973, 38 F.R. 12315, set out as a note under section 501 of Title 31, Money and Finance.

### DEFINITIONS

The definitions in section 472 of this title apply to this chapter.

### COMPUTER SECURITY

Sections 1, 2, 5–8 of Pub. L. 100–235 provided that:

"SECTION 1. SHORT TITLE.

"This Act [enacting sections 278g–3 and 278g–4 of Title 15, Commerce and Trade, amending section 759 of this title and section 272 of Title 15, and enacting provisions set out as a note under section 271 of Title 15] may be cited as the 'Computer Security Act of 1987'.

"SEC. 2. PURPOSE.

"(a) IN GENERAL.—The Congress declares that improving the security and privacy of sensitive information in Federal computer systems is in the public interest, and hereby creates a means for establishing minimum acceptable security practices for such systems, without limiting the scope of security measures already planned or in use.

"(b) SPECIFIC PURPOSES.—The purposes of this Act are—

"(1) by amending the Act of March 3, 1901 [15 U.S.C. 271 et seq.], to assign to the National Bureau of Standards responsibility for developing standards and guidelines for Federal computer systems, including responsibility for developing standards and guidelines needed to assure the cost-effective security and privacy of sensitive information in Federal computer systems, drawing on the technical advice and assistance (including work products) of the National Security Agency, where appropriate;

"(2) to provide for promulgation of such standards and guidelines by amending section 111(d) of the Federal Property and Administrative Services Act of 1949 [40 U.S.C. 759(d)];

"(3) to require establishment of security plans by all operators of Federal computer systems that contain sensitive information; and

"(4) to require mandatory periodic training for all persons involved in management, use, or operation of

Federal computer systems that contain sensitive information.

"SEC. 5. FEDERAL COMPUTER SYSTEM SECURITY TRAINING.

"(a) IN GENERAL.—Each Federal agency shall provide for the mandatory periodic training in computer security awareness and accepted computer security practice of all employees who are involved with the management, use, or operation of each Federal computer system within or under the supervision of that agency. Such training shall be—

"(1) provided in accordance with the guidelines developed pursuant to section 20(a)(5) of the National Bureau of Standards Act (as added by section 3 of this Act) [15 U.S.C. 278g–3(a)(5)], and in accordance with the regulations issued under subsection (c) of this section for Federal civilian employees; or

"(2) provided by an alternative training program approved by the head of that agency on the basis of a determination that the alternative training program is at least as effective in accomplishing the objectives of such guidelines and regulations.

"(b) TRAINING OBJECTIVES.—Training under this section shall be started within 60 days after the issuance of the regulations described in subsection (c). Such training shall be designed—

"(1) to enhance employees' awareness of the threats to and vulnerability of computer systems; and

"(2) to encourage the use of improved computer security practices.

"(c) REGULATIONS.—Within six months after the date of the enactment of this Act [Jan. 8, 1988], the Director of the Office of Personnel Management shall issue regulations prescribing the procedures and scope of the training to be provided Federal civilian employees under subsection (a) and the manner in which such training is to be carried out.

"SEC. 6. ADDITIONAL RESPONSIBILITIES FOR COMPUTER SYSTEMS SECURITY AND PRIVACY.

"(a) IDENTIFICATION OF SYSTEMS THAT CONTAIN SENSITIVE INFORMATION.—Within 6 months after the date of enactment of this Act [Jan. 8, 1988], each Federal agency shall identify each Federal computer system, and system under development, which is within or under the supervision of that agency and which contains sensitive information.

"(b) SECURITY PLAN.—Within one year after the date of enactment of this Act [Jan. 8, 1988], each such agency shall, consistent with the standards, guidelines, policies, and regulations prescribed pursuant to section 111(d) of the Federal Property and Administrative Services Act of 1949 [40 U.S.C. 759(d)], establish a plan for the security and privacy of each Federal computer system identified by that agency pursuant to subsection (a) that is commensurate with the risk and magnitude of the harm resulting from the loss, misuse, or unauthorized access to or modification of the information contained in such system. Copies of each such plan shall be transmitted to the National Bureau of Standards and the National Security Agency for advice and comment. A summary of such plan shall be included in the agency's five-year plan required by section 3505 of title 44, United States Code. Such plan shall be subject to disapproval by the Director of the Office of Management and Budget. Such plan shall be revised annually as necessary.

"SEC. 7. DEFINITIONS.

"As used in this Act, the terms 'computer system', 'Federal computer system', 'operator of a Federal computer system', 'sensitive information', and 'Federal agency' have the meanings given in section 20(d) of the National Bureau of Standards Act (as added by section 3 of this Act) [15 U.S.C. 278g–3(d)].

"SEC. 8. RULES OF CONSTRUCTION OF ACT.

"Nothing in this Act, or in any amendment made by this Act, shall be construed—

"(1) to constitute authority to withhold information sought pursuant to section 552 of title 5, United States Code; or

"(2) to authorize any Federal agency to limit, restrict, regulate, or control the collection, maintenance, disclosure, use, transfer, or sale of any information (regardless of the medium in which the information may be maintained) that is—

"(A) privately-owned information;

"(B) disclosable under section 552 of title 5, United States Code, or other law requiring or authorizing the public disclosure of information; or

"(C) public domain information."

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 757 of this title; title 10 sections 2305, 2306b, 2315; title 15 section 278g–3; title 28 section 612; title 31 sections 1558, 3552; title 38 section 310; title 41 section 253b; title 42 section 8287; title 44 sections 3502, 3504, 3505, 3506, 3518; title 49 section 40112; title 50 section 403c.

## § 760. Federal information centers

### (a) Establishment

The Administrator is authorized to establish within the General Services Administration a nationwide network of Federal information centers for the purpose of providing the public with information about the programs and procedures of the Federal Government and for other appropriate and related purposes.

### (b) Rules and regulations

The Administrator is authorized to prescribe such rules and regulations as may be necessary to the functioning of the Federal information centers.

### (c) Authorization of appropriations

There is hereby authorized to be appropriated $7,000,000 for the fiscal year ending September 30, 1980, and such sums as may be necessary for each succeeding fiscal year for carrying out the purposes of this section.

(June 30, 1949, ch. 288, title I, § 112, as added Oct. 20, 1978, Pub. L. 95–491, § 2(a), 92 Stat. 1641.)

SHORT TITLE OF 1978 AMENDMENT

Pub. L. 95–491, § 1, Oct. 20, 1978, 92 Stat. 1641, provided: "That this Act [enacting this section] may be cited as the 'Federal Information Centers Act'."

## § 761. Consumer Information Center Fund, General Services Administration

Notwithstanding any other provision of law, there is hereby established in the Treasury of the United States a Consumer Information Center Fund, General Services Administration, for the purpose of disseminating Federal Government consumer information to the public and for other related purposes. There shall be deposited into the fund for fiscal year 1983 and subsequent fiscal years: (A) Appropriations from the general funds of the Treasury for Consumer Information Center activities; (B) User fees from the public; (C) Reimbursements from other Federal agencies for costs of distributing publications; and (D) Any other income incident to Consumer Information Center activities. Moneys deposited into the fund shall be available for expenditure for Consumer Information Center activities in such amounts as are specified in appropriation Acts. Any unobligated balances at the end of the fiscal year shall remain in the fund and shall be available for authorization in

## Chapter 1
## Contract Formation

---

# STREAMLINING
# DEFENSE
# ACQUISITION LAWS

---

## Report
## of the
## Acquisition Law Advisory Panel

## to the
## United States Congress



## January
## 1993

DISTRIBUTION STATEMENT A

Approved for public release;
Distribution Unlimited

1. CONTRACT FORMATION .................................................................................... 1

1.0.  Introduction................................................................................................. 1

    1.0.1.  Competition as a National Policy........................................................... 1
    1.0.2.  Objectives ............................................................................................ 3
    1.0.3.  Acquisition of Commercial Products and Services ............................... 3
    1.0.4.  Panel Recommendations....................................................................... 4

1.1.  Chapter 137, Congressional Policy, Definitions, and Applicability ................. 9

    1.1.0.  Introduction ......................................................................................... 9
    1.1.1.  10 U.S.C. § 2301................................................................................ 11
    1.1.2.  10 U.S.C. § 2302................................................................................ 21
    1.1.3.  10 U.S.C. § 2303................................................................................ 29

1.2.  Competitive Statutes..................................................................................... 31

    1.2.0.  Introduction ....................................................................................... 31
    1.2.1.  10 U.S.C. § 2304................................................................................ 39
    1.2.2.  10 U.S.C. § 2305................................................................................ 65
    1.2.3.  10 U.S.C. § 2306................................................................................ 77
    1.2.4.  10 U.S.C. § 2317................................................................................ 89
    1.2.5.  10 U.S.C. § 2318................................................................................ 91
    1.2.6.  10 U.S.C. § 2319................................................................................ 95
    1.2.7.  10 U.S.C. § 2325................................................................................ 97
    1.2.8.  40 U.S.C. §§ 541 - 544 ..................................................................... 103
    1.2.9.  41 U.S.C. § 416............................................................................... 107
    1.2.10. 41 U.S.C. § 418............................................................................... 117
    1.2.11. 41 U.S.C. § 419............................................................................... 121

1.3.  Truth In Negotiations Act............................................................................ 123

    1.3.0.  Introduction ..................................................................................... 123
    1.3.1.  10 U.S.C. § 2306a............................................................................ 131

1.4.  Research And Development ......................................................................... 149

    1.4.0.  Introduction ..................................................................................... 149
    1.4.1.  10 U.S.C. § 2351.............................................................................. 153
    1.4.2.  10 U.S.C. § 2352.............................................................................. 155
    1.4.3.  10 U.S.C. § 2353.............................................................................. 157
    1.4.4.  10 U.S.C. § 2354.............................................................................. 161
    1.4.5.  10 U.S.C. § 2356.............................................................................. 163
    1.4.6.  10 U.S.C. § 2358.............................................................................. 167
    1.4.7.  10 U.S.C. § 2360.............................................................................. 173
    1.4.8.  10 U.S.C. § 2361.............................................................................. 175

1.4.9.  10 U.S.C. § 2364......................................................................................................179
1.4.10. 10 U.S.C. § 2367......................................................................................................183
1.4.11. 10 U.S.C. § 2368......................................................................................................185
1.4.12. 10 U.S.C. § 2370......................................................................................................187
1.4.13. 10 U.S.C. § 2371......................................................................................................189
1.4.14. 10 U.S.C. § 2372......................................................................................................193
1.4.15. 10 U.S.C. § 4503......................................................................................................195
1.4.16. 10 U.S.C. § 7303......................................................................................................197
1.4.17. 10 U.S.C. § 7522......................................................................................................199
1.4.18. 10 U.S.C. § 9503......................................................................................................201

1.5.  Procurement Protests...................................................................................................203

1.5.0.  Introduction ............................................................................................................203
1.5.1.  5 U.S.C. §§ 701 - 706 .............................................................................................219
1.5.2.  31 U.S.C. § 3551......................................................................................................225
1.5.3.  31 U.S.C. § 3552......................................................................................................227
1.5.4.  31 U.S.C. § 3553......................................................................................................229
1.5.5.  31 U.S.C. § 3554......................................................................................................239
1.5.6.  31 U.S.C. § 3555......................................................................................................251
1.5.7.  31 U.S.C. § 3556......................................................................................................255
1.5.8.  28 U.S.C. § 1491......................................................................................................257
1.5.9.  40 U.S.C. § 759 .......................................................................................................269

1.6.  Other Related Statutes.................................................................................................285

1.6.0.  Introduction ............................................................................................................285
1.6.1.  10 U.S.C. §§ 2308 and 2311 ..................................................................................287
1.6.2.  10 U.S.C. § 2310......................................................................................................293
1.6.3.  10 U.S.C. § 2316......................................................................................................301
1.5.4.  10 U.S.C. § 2326......................................................................................................303
1.6.5.  10 U.S.C. § 2329......................................................................................................309
1.6.6.  10 U.S.C. § 2331......................................................................................................313
1.6.7.  10 U.S.C. § 2381......................................................................................................319
1.6.8.  10 U.S.C. § 2384......................................................................................................323
1.6.9.  10 U.S.C. § 2410a....................................................................................................327
1.6.10. 41 U.S.C. § 12 .........................................................................................................329
1.6.11. 41 U.S.C. § 413 .......................................................................................................331
1.6.12. Public Law Number 101-189 § 821 .......................................................................333
1.6.13. Public Law Number 101-189 § 822 .......................................................................335

**1.5.8.     28 U.S.C. § 1491**

**Claims against the United States generally; actions involving Tennessee Valley Authority**

**1.5.8.1.  Summary of the Law**

This section, commonly referenced as the Tucker Act, gives the Court of Federal Claims jurisdiction to consider claims against the United States for monetary damages which are based on an "express or implied contract."[1]  In bid protest actions, the contract on which the Tucker Act claim is based is the "implied contract" that the contract bid will be "fairly and honestly considered."[2]  The Court's jurisdiction over contract claims extends to any contract of the United States, except those issued by the Tennessee Valley Authority.[3]

**1.5.8.2.  Background of the Law**

The Claims Court was established on October 1, 1982, by the Federal Courts Improvement Act of 1982 (FCIA) and was given the trial court responsibilities of the former Court of Claims.[4]  Prior to enactment of FCIA, the Court of Claims could only grant monetary relief, such as bid and proposal costs, to disappointed bidders for Federal contracts.[5]  FCIA gave the Court of Federal Claims the "exclusive jurisdiction" to provide equitable relief, including the power to enjoin contract award in protests filed before contract award.[6]

Prior to the enactment of FCIA, the district courts were the only Federal courts which provided equitable relief in bid protests.  The consideration of such protests began in 1970 when the Court of Appeals for the District of Columbia Circuit held in *Scanwell Laboratories, Inc. v. Schaffer* that the district courts had this authority.[7]  Even though the jurisdiction of the Court of Federal Claims over pre-award protests was stated to be "exclusive" in FCIA, the legislative history of FCIA suggests that Congress intended to retain concurrent jurisdiction over pre-award contracts in the district courts.  The Senate Report on FCIA for example, contains the following statement:

> By conferring jurisdiction upon the Claims Court to award injunctive relief in the pre-award stage of the procurement process,

---

[1] 28 U.S.C. § 1491(a)(1). The Claims Court was renamed the Court of Federal Claims by the Federal Courts Administration Act of 1992, Pub. L. No. 102-572, § 902, 1992 U.S.C.C.A.N. (106 Stat.) 4506.
[2] 28 U.S.C. § 1491(a)(1); *United States v. Grimberg*, 702 F.2d 1362, 1368 n.11 (Fed. Cir. 1983).
[3] 28 U.S.C. § 1491(a)(1), (b).
[4] Pub. L. No. 97-164, 1982 U.S.C.C.A.N. (96 Stat.) 25.
[5] *See, e.g., Heyer Products Co. v. United States*, 135 Ct. Cl. 63, 140 F. Supp. 409 (1956).
[6] 28 U.S.C. § 1491(a)(3).
[7] 424 F.2d 859 (D.C. Cir. 1970). *Scanwell* has been effectively adopted by all of the circuit courts of appeal. Jeffrey M. Villet, *Equitable Jurisdiction in Government Contract "Bid Protest" Cases: Discerning the Boundaries of Equity*, 17 PUB. CONT. L.J. 152 (1987); *see* discussion of 5 U.S.C.§§ 701-706 at Chapter 1.5.1 of this Report.

1-257

the Committee does not intend to alter the current state of the substantive law in this area. Specifically, the Scanwell Doctrine as enunciated by the D.C. Circuit Court of Appeals in 1970 is left in tact [sic].[8]

## 1.5.8.3.  Law in Practice

Over the past 10 years, protests in the Court of Federal Claims have been enmeshed in an endless web of jurisdictional issues. Scores of decisions have been written in an unsuccessful effort to untangle these issues. These decisions have delayed, disrupted, and increased the costs of procurements which have been the subject of these protests.[9]   In a 1987 article, one practitioner thought the judicial bid protest system had reached the point where it was "chaos."[10] By 1988, the number of bid protests filed in the Court of Federal Claims had dropped to eight from a high of 69 cases in 1983, the first year after the enactment of FCIA.[11]   In FY88, by contrast, 2,633 protests were filed with the GAO.[12]

There are two dominant issues which create these jurisdictional problems. The first deals with whether the Court of Federal Claims has exclusive jurisdiction over pre-award bid protests or whether its pre-award jurisdiction is concurrent with the district courts. The second dominant issue is whether the Court of Federal Claims has jurisdiction over the type of agency wrongdoing for which the GAO and the GSBCA customarily grant relief.

The first dominant issue is intertwined in the language of the Senate Report that is quoted above. That language has led to substantial litigation as the courts have attempted to define what, if any, significance to place on congressional intent. This has created unresolved conflicts between the courts in different parts of the country on whether the Court of Federal Claims is the exclusive judicial forum to consider pre-award bid protests. The problems with the pre-award jurisdiction issues were highlighted in the decision of the Court of Appeals for the District of Columbia in *Cubic Corporation v. Cheney*.[13]   The opinion described the confusion among the courts as follows:

> [Intervenor] argues that the Federal Courts Improvement Act of 1982 vested the Claims Court with exclusive jurisdiction over pre-award challenges to procurement decisions, and that the district court was therefore without jurisdiction over this cause of action. The 1982 statute provides that "before the contract is awarded, the [Claims Court] shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems

---

[8] S. Rep. No. 275, 97th Cong., 2d Sess. 23 (1982), *reprinted in* 1982 U.S.C.C.A.N. 11, 33.
[9] The delays, disruptions, and costs are compounded when the Government and other interested parties must wait not only for a decision of a district court, but also, as often happens, for a decision of a circuit court of appeals.
[10] Villet, *supra* note 7, at 184.
[11] *American Bar Association, Public Contract Law Section Bid Protest Committee Courts Subcommittee Project* (1991) [hereinafter *Courts Subcommittee Project*].
[12] This figure was provided by the GAO. *See also* chart accompanying note 20 at Chapter 1.5.0 of this Report.
[13] 914 F.2d 1501 (D.C. Cir. 1990).

proper, including but not limited to injunctive relief." (28 U.S.C. § 1491(a)(3)).

Of those courts of appeals that have confronted the issue, two have held that jurisdiction over pre-award challenges is exclusive in the Claims Court, see *J.P. Francis & Assocs., Inc. v. United States*, 902 F.2d 740 (9th Cir. 1990); *Rex Systems, Inc. v. Holiday*, 814 F.2d 994, 997-98 (4th Cir. 1987); two have said as much in dicta, see *F. Alderete General Contractors, Inc. v. United States*, 715 F.2d 1476, 1478 (Fed. Cir. 1983); *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 721 n.4 (2d Cir. 1983), and two have found concurrent jurisdiction in the district courts, see *Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052, 1057-58 (1st Cir. 1987) (district courts have "concurrent power to award injunctive relief in pre-award contract cases"); *Coco Bros. v. Pierce*, 741 F.2d 675, 677-79 (3d Cir. 1984) ("A superficial reading of the language in section 1491(a)(3) leads one to a result never intended by Congress"); see also *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1374-75 (Fed. Cir. 1983) (dictum that Senate and House Reports indicate that jurisdiction "is exclusive only of contract boards").[14]

As indicated by the above language, the law concerning the jurisdiction of district courts on pre-award challenges is at a disjunction.

The second dominant issue concerns whether the Court of Federal Claims has subject matter jurisdiction to consider the types of agency wrongdoing for which the GSBCA and the GAO customarily grant relief. Shortly after FCIA was passed, the Court of Appeals for the Federal Circuit ruled that Congress did not intend to change the legal basis for seeking consideration of bid protests in the Court of Federal Claims. This legal basis is the alleged breach of the Government's implied-in-fact contract to fairly and honestly consider bids or proposals which are received in response to a solicitation.[15]

The Court of Federal Claims jurisdiction is severely limited by the need to find that the Government breached this implied contract. Since the implied contract only arises when bids or proposals are submitted, numerous protests which are considered today by other bid protest forums will not be heard by the Court of Federal Claims.[16]

In a series of decisions, the Court of Appeals for the Federal Circuit and the Court of Federal Claims have ruled that protests will not be considered if: (1) they allege deficiencies in the

---

[14]*Id.* at 1503.

[15]*United States v. Grimberg*, 702 F.2d 1362, 1367-68 (Fed. Cir. 1983); *Heyer Products Co. v. United States*, 135 Ct. Cl. 63, 140 F. Supp 409 (1956); *Ingersoll-Rand Co. v. United States*, 2 Cl. Ct. 373 (1983).

[16]*Ingersoll-Rand Co. v. United States*, 2 Cl. Ct. 373, 376 (1983).

1-259

solicitation prior to the required submission of bids;[17] (2) they allege general deficiencies in competition which apply equally to all offerors;[18] or (3) they are filed by certain nonbidders.[19] However, the Court of Federal Claims will consider protests to sole-source or noncompetitive awards where no solicitation is issued.[20]

In addition to the two dominant issues already discussed, there are three potentially troublesome issues that can impact the law in practice. The first of these potentially troublesome issues is that the Government can cogently argue that a district court lacks authority to grant an unsuccessful offeror his bid and proposal fees in excess of $10,000.[21] The second issue is that a potential offeror may not have standing to challenge the agency's conduct.[22] Finally, although it has yet to be a serious obstacle, unsuccessful offerors must be prepared to establish that they have suffered "an injury in fact."[23]

The previous discussion provides a brief summary of how 28 U.S.C. § 1491 has evolved in practice. In one study, the American Bar Association Section of Public Contract Law made the following observation:

> The 1980s witnessed a dramatic evolution of the protest as a remedy for complaints for disappointed bidders in Federal procurements. The Federal Courts Improvement Act of 1982 and the Competition in Contracting Act of 1984 (CICA) created new courts, a unique forum to resolve Automatic Data Processing Equipment (ADPE) for procurement protests, stay provisions, statutory authority for the General Accounting Office (GAO) to resolve bid protests, and new procedural rules and practices with the GAO. These developments produced increased confusion over disappointment with protests in the courts. As we enter the third

[17]Id.; International Graphics v. United States, 5 Cl. Ct. 100 (1984).

[18]See Frederick W. Claybrook, Jr., The Federal Courts Improvement Act Needs Improvement: A Renewed Call for Its Amendment, 21 PUB. CONT. L.J. 1, 18 (1992).

[19]Howard v. United States, 21 Cl. Ct. 475, 478 (1990). For a more detailed discussion of this topic see generally, Villet, supra note 7, and Courts Subcommittee Project, supra note 11.

[20]See Western Pioneer, Inc. v. United States, 8 Cl. Ct. 291 (1985) (implied contract only arises out of agency obligation to consider responses to published notice of intent to make a noncompetitive award).

[21]Fairview Township v. United States Environmental Protection Agency, 773 F.2d 517 (3rd Cir. 1985) (action challenging denial of a Federal grant contract found to be a monetary claim within exclusive jurisdiction of Claims Court); see discussion of 5 U.S.C. §§ 701-706, supra, at Chapter 1.5.1 of this Report.

[22]In Control Data Corp. v. Baldridge, 655 F.2d 283 (D.C. Cir. 1981), cert. denied, 454 U.S. 881, potential bidders lacked standing to enjoin the Government from promulgating standards for specifications to be used in computer acquisitions. The potential bidders did not fall within the zone of interests to be protected by the statute under which the standards were promulgated. See also Cincinnati Electronics Corp. v. Kleppe, 509 F.2d 1080 (6th Cir. 1975), where the court found that a party had standing to bring a cause of action based on denial of a contract where the statute authorizing the procurement indicated a congressional intent to bring the protester within the "zone of interests" to be protected.

[23]For a discussion of the different tests used by the various circuits, see Kannan, supra note 21, at 421-39.

decade of bid protest jurisdiction in the Federal courts, jurisdictional problems continue to permeate the process.[24]

### 1.5.8.4. Recommendations and Justification

The Panel sought comments from Government and the private sector concerning the bid protest jurisdiction of the Federal courts. In general, respondents expressed little desire for significant amendments to the bid protest jurisdiction of the courts. However, after consideration of comments and analysis of the law, the Panel believes that a significant change should be made in the jurisdiction of the Federal courts to consider bid protests.

### I

**There should be only one judicial system for consideration of all bid protests and that forum should have jurisdiction to consider all bid protests which can now be considered by the district courts and by the Court of Federal Claims.**

The Panel recognizes that Congress has determined on at least two occasions in the past 10 years that it is appropriate to have a bid protest remedy available in the Federal courts. The Panel, therefore, does not propose to change that determination in its basic recommendations. The Panel believes, however, that there is simply no justification for the jurisdictional confusion created by the availability of two separate judicial systems for consideration of bid protests. There is no need for separate and overlapping bodies of legal precedent on protests[25] and for separate procedures for processing protests.[26] The disputes arising out of such differences unnecessarily delay the resolution of protests and only add confusion and costs to the procurement process. They do not further the goals of full and open competition and efficient procurement. Accordingly, the Panel believes that the best solution to the jurisdictional problem created by the availability of two separate judicial systems is to place all of the jurisdiction of both systems into a single system.

### II

**The Court of Federal Claims should be the single judicial forum with jurisdiction to consider all bid protests that can now be considered by any of the district courts or by the Court of Federal Claims.**

---

[24] *Courts Subcommittee Project, supra* note 11, at 1.

[25] Each of the 12 circuits, for example, has adopted a slightly different test for determining if a protester has standing to bring an action. *See* Kannan, *supra* note 21, at 21-39. While this has not been a significant problem, it highlights the potential for conflicts.

[26] The procedures for discovery, for example, vary from district court to district court, leading to hundreds of different rules. *See Courts Subcommittee Project, supra* note 11, at 43, noting "a surprising lack of uniformity in [discovery] practice."

After extensive discussion and analysis, the Panel believes that the single court to initially consider bid protests should be the Court of Federal Claims. The rationale for this is straightforward.

(1) Only the Court of Federal Claims can effectively serve as the unified judicial forum. Under current law, the jurisdictional issues that arise out of multiple judicial forums create delays, disruptions, and inefficiencies that are inconsistent with streamlining the congressional requirement for expeditious resolution of protests and for streamlining DOD procurements. If the single judicial forum system were the district courts and the regional courts of appeal or if the district courts had concurrent jurisdiction with the Court of Federal Claims, as discussed above, there would still be a potential for jurisdictional problems for the protesters who used the district courts. These jurisdictional problems arise, in part, out of the congressional designation of the Court of Federal Claims as the exclusive forum for claims against the United States, including claims for bid and proposal costs, whereas the Administrative Procedure Act provides that the district courts have jurisdiction to grant declaratory and injunctive relief in bid protest actions.[27]

(2) If the over 500 district courts and 12 regional circuit courts continue to consider bid protests, the potential abounds for conflicting decisions on fundamental procurement issues. This problem was highlighted by two law professors who wrote on another topic that "divergence among the Circuits on so many issues undermines the uniformity and predictability of trials in the Federal Circuits."[28] The Supreme Court has noted that "uniformity and predictability" are fundamental requirements for any legal system and has identified three distinct benefits to uniformity and predictability:

- To enable the parties to plan their affairs by providing a clear guide for their conduct;

- To eliminate the need "to relitigate every relevant proposition in every case;" and

- To maintain "public faith in the judiciary as a source of impersonal and reasoned judgments."[29]

The existing system for judicial bid protests lacks these benefits. A single forum at the Court of Federal Claims would make these benefits achievable.

(3) The current system encourages protesters to engage in forum shopping in an effort to select the court in pre-award or post-award cases that would best serve the protester's interests.

---

[27]For further discussion of this problem, see the analysis of 5 U.S.C. §§ 701-706 at Chapter 1.5.1 of this Report.

[28]Edward R. Becker and Aviva Overstein, *Is the Evidence All In?*, 78 A.B.A. J. 82 (Oct. 1992). The divergence discussed in this article was on evidentiary issues. The lack of uniformity on evidentiary decisions in the Federal circuits arises, in part, because, as in Government contract cases, only the Supreme Court can resolve the conflicts in circuit court cases, and "the Supreme Court rarely grants certiorari on evidentiary issues." *Id.* at 85. *See supra,* note 26.

[29]*South Corporation v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1983) (quoting *Moragne v. States Marine Lines, Inc.* 398 U.S. 375, 403 (1970), in support of decision of Court of Appeals for the Federal Circuit to adopt the precedent of the United States Court of Claims).

(4) The Court of Federal Claims has substantially more Government contract expertise than the district courts. The Court of Federal Claims has jurisdiction over major Contract Disputes Act cases and, over the years, has considered many more Federal contract cases than have been considered in all the 500 district courts.[30]

(5) The Court of Federal Claims can hold hearings throughout the United States. The Court of Federal Claims is authorized by the law to hold court proceedings anywhere in the United States (including territories and possessions) and even in foreign countries in order to minimize inconvenience and expense to litigants, and thus can hold hearings where the majority of the witnesses are located.[31]

(6) Appeals from the Court of Federal Claims are taken to a single court of appeals: the Court of Appeals for the Federal Circuit. Uniformity is better assured with exclusive jurisdiction in the Court of Federal Claims because, unlike the district courts with their 12 separate circuit courts of appeals, there is only one appellate court that considers appeals for the Court of Federal Claims. In addition, this court of appeals has Government contract law expertise that is based on reviews of appeals of decisions of the Court of Federal Claims and agency boards of contract appeals under the Contract Disputes Act.[32]

(7) The Court of Federal Claims can give more priority to bid protest cases. Federal law requiring speedy trial of criminal cases mandates a higher priority on resolution of these cases in district courts.[33] This generally delays the resolution of civil cases and makes it difficult to obtain speedy resolution of bid protests in district courts.

(8) The Government can be more effectively represented in the Court of Federal Claims. The Government position in Court of Federal Claims cases is now defended by lawyers from the Department of Justice Civil Division in Washington. These attorneys already have Government contract law expertise from defending cases in the Court of Federal Claims. By contrast, Scanwell-type actions in a district court are often defended by an Assistant United States Attorney with comparably less Government contract expertise.

(9) The Court of Federal Claims is the only court with national jurisdiction. The district courts have jurisdiction only within the state or region of the state in which the district is established.[34] By contrast, the Court of Federal Claims enjoys nationwide jurisdiction.[35] The Court of Federal Claims can therefore issue subpoenas for witnesses and document production anywhere in the United States.[36] Because a district court's territorial jurisdiction is limited,

---

[30]41 U.S.C. § 609(a)(1). The district courts currently have jurisdiction over contract cases involving $10,000 or less under the Little Tucker Act, 28 U.S.C. § 1346(a)(2).
[31]*See* 28 U.S.C. § 1295(a)(3)-(4).
[32]*Id.*
[33]Speedy Trial Act of 1974, Pub. L. No. 93-619, 1975 U.S.C.C.A.N. (88 Stat.) 2076 (amended 1979).
[34]In some states, such as Maryland, there is a single Federal district court whose jurisdiction is limited to the boundaries of that state. In other states, such as California, there are two or more Federal district courts in the state.
[35]*Courts Subcommittee Project, supra* note 11, at 42.
[36]*Id.*

1-263

protesters may have difficulty obtaining personal jurisdiction over necessary parties,[37] and this can be a difficult problem where the protester challenges an award to a contractor who does not reside or do business in the Federal court where the Government agency is located. There are no venue problems for the Court of Federal Claims because its jurisdiction is national.

(10) The United States Court of Federal Claims can now offer monetary or nonmonetary relief in protests which fall within its jurisdiction.[38]

The American Bar Association Section of Public Contract Law opposes abolition of *Scanwell* jurisdiction in the district courts.[39]  It lists the following reasons in support of its opposition:

- The Court of Federal Claims is not an effective protest forum because the Court of Federal Claims and the Federal Circuit have restricted the grant of jurisdiction provided to hear protest cases in the Federal Courts Improvement Act of 1982. Furthermore, the Court of Federal Claims has no procedures for expeditious resolution of bid protest cases.

- Restricting access to the Court of Federal Claims would restrict the ability of companies and individuals outside the Washington, D.C. area to use their local district courts.

The first concern will be resolved by the Panel's recommendation that the jurisdiction of the Court of Federal Claims be expanded "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of such a contract." With this new jurisdiction, the Court of Federal Claims will be able to consider every category of bid protest previously considered by district courts.

The American Bar Association concern arises out of existing Court of Federal Claims and the Court of Appeals for the Federal Circuit decisions. The Panel is proposing specific legislation to overturn the previous decisions that concern the American Bar Association. The net result of the new legislation is that the Court of Federal Claims will have subject matter jurisdiction to consider the types of agency wrongdoing for which the GSBCA and the GAO customarily grant relief.

The Panel believes there is a valid basis for the American Bar Association's other concern, (i.e., the need for interested protesters to utilize Washington, D.C. counsel in protests to the Court of Federal Claims). The Court is in Washington, D.C., and the presence of local counsel is beneficial because of the need for rapid and frequent involvement with the Court on protest

---

[37]*See generally* Rule 4 of the Federal Rules of Civil Procedure.

[38]*See Fairview Township v. United States Environmental Protection Agency*, 773 F.2d 517 (3rd Cir. 1985); *Heyer Products v. United States*, 135 Ct. Cl. 63, 140 F. Supp. 409 (1956).

[39]Letter from Karen Hastie Williams, Chair, Section of Public Contract Law of the American Bar Association, to Panel (Dec. 4, 1992).

matters. The Panel does not believe that the inconvenience and possible additional expense of retaining counsel in Washington outweigh the ten enumerated advantages to the Panel's recommendations. In addition, the Court of Federal Claims has a statutory mandate to mitigate such concerns. The Court's enabling legislation states:

> The times and places of the sessions of the Claims Court shall be prescribed with a view to securing reasonable opportunity to citizens to appear before the Claims Court with as little inconvenience and expense to citizens as practicable.[40]

Furthermore, the use of telefax machines and telephone conferences can also mitigate against some of the possible expense and inconvenience. Moreover, as a practical matter, Congress was well aware that the vast number of protests would be filed in Washington, D.C. when in 1984 it chose a Washington, D.C. forum, the GSBCA, to hear ADPE protests and codified the GAO protest system. Finally, the district courts are not always located in cities adjacent to the affected Government agency or the interested parties' principal places of business. Therefore, some travel and inconvenience is usually necessary for litigation in any forum.

## III

### The Court of Federal Claims should have jurisdiction to consider all protests which allege violations of procurement law or regulation; it should be authorized to provide relief comparable to that provided by the GAO and the GSBCA.

In expanding the jurisdiction of the Court of Federal Claims to consider bid protests under the Federal Courts Improvement Act of 1982 (FCIA), Congress intended to establish the Court as a viable alternative to the bid protest remedy then available at GAO. In enacting the Competition in Contracting Act (CICA), for example, the conferees characterized judicial protests as "alternative remedies."[41] The conferees stated that the Procurement Protest System of Title 31, which granted bid protest authority by statute to the GAO, "does not alter the current rights of any person to seek . . . judicial review of any alleged violation of a procurement statute or regulation."[42]

If the Court of Federal Claims is to serve as an effective alternative bid protest forum, its jurisdiction and authority to provide relief must be expanded.[43] Its jurisdiction should, as much as possible, parallel that of the GAO and the GSBCA in order to avoid both the forum shopping and type of confusion that has occurred in the past. Additionally, the court should have a common standard of review with the GAO and GSBCA.

---

[40]28 U.S.C. § 173.
[41]H.R. CONF. REP. NO. 861, 98th Cong., 2d Sess. 1437 (1984), *reprinted in* 1984 U.S.C.C.A.N. 1445, 2125.
[42]*Id.*
[43]The Court of Federal Claims, like other Federal courts, has limited resources. If the court's jurisdiction were expanded, its personnel, funding, and other resources would also need to be increased.

Accordingly, the Panel recommends that the Court of Federal Claims' charter be legislatively changed to accomplish the following principles:

- The statute should provide the Court with jurisdiction to consider all bid protest matters that can now be considered by the district courts and the Court of Federal Claims, including all matters that can be considered by the GAO and the GSBCA.

- The statute should provide that the Court, like the GAO and the GSBCA, is authorized to find improper any agency action which violates a procurement law or regulation.

- The statute should provide that the record before the agency may be supplemented by evidence which relates to the validity of the action at the time it was taken. This will make clear that the Court of Federal Claims can hold evidentiary hearings on bid protest matters.

- The statute should be amended to provide that only interested parties, as defined by the Competition in Contracting Act (CICA), can file protests.[44]

- The statute should provide that if the protester prevails in an action, the Court can grant relief similar to that which the GAO and the GSBCA can provide, including attorneys fees and costs.

- The statute should be amended to provide for expeditious resolution of protests.[45]

The Panel also recommends that an interested party should pay the costs incurred by the Government to defend a protest which is frivolous or not brought and pursued in good faith. Further discussion of the Panel's rationale can be found in Chapters 1.5.5 and 1.5.9 of this Report.

The Panel recognizes the inherent problems associated with changes in the jurisdictional statute for any court. Language changing jurisdictional statutes must be carefully considered and evaluated in order to avoid creating unintended consequences or further problems. Accordingly, the language that follows is offered simply as a model. The Panel recognizes that further discussion and research is appropriate and encourages Congress to do so in its consideration of this legislation.

The recommendation that follows hopefully achieves the six principles set out above.

### 1.5.8.5. Relationship to Objectives

This statute, as amended, simplifies the confusing process of pursing bid protests in Federal court. The proposed change maintains a balance between an efficient process and full and

---

[44]40 U.S.C. § 759(f)(9)(B) and 31 U.S.C. § 3551(2).

[45]Both the GAO and the GSBCA under 31 U.S.C. §§ 3551-56 and 40 U.S.C. § 759, respectively, are directed to conduct expeditious protests.

open access to the procurement system. Finally, the Court of Federal Claims will provide a means for expeditious and fair resolution of procurement disputes through uniform interpretation of laws and implementing regulations.

### 1.5.8.6. Proposed Statute

**28 U.S.C. § 1491.  Claims against United States generally; bid protests; actions involving Tennessee Valley Authority**

(a)(1) Claims against the United States. The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.  For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

(b)(2) Remedy and Relief. To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.  In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.  The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978 [41 U.S.C. § 609(a)(1)], including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

~~(3) To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national security.~~

(c) Bid Protests. The United States Court of Federal Claims shall have exclusive judicial jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract. The court shall have jurisdiction to entertain an action of this nature whether suit is instituted before or after the contract is awarded. To afford relief in such an action, the court may award such relief as it deems proper, including declaratory and injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national

security and the need for expeditious resolution of the action. The district courts shall have no jurisdiction to entertain any such action.

The court shall set aside an agency action if it finds the action violates a statute or regulation. Wherever it makes such a determination, it may, in accordance with section 1304 of Title 31, United States Code, further declare an appropriate interested party entitled to the costs of filing and pursing the protest, including reasonable attorney's fees, and consultant and expert witness fees, and bid and proposal preparation expenses. The record before the agency at the time of the agency action may be supplemented by evidence which relates to the validity of the agency action at the time the action was taken.

The term "interested party" shall have the meaning given in 31 U.S.C. § 3551.

If the court expressly finds that a protest or a portion of a protest is frivolous or has not been brought or pursued in good faith, the protester or other interested party, who joins the protest, shall be liable to the United States for payment of all or that portion of the United States costs, for which such a finding is made, of reviewing the protest including the fees and other expenses (as defined in section 2412 (d)(2)(A) of title 28) incurred by the United States in defending the protest, unless

(1) special circumstances would make such payment unjust or

(2) the protester obtains documents or other information after the protest is filed with the court, which establishes that the protest or a portion of the protest is frivolous or has not been brought in good faith, and the protester then promptly withdraws the protest or portion of the protest.

(b)(d) Tennessee Valley Authority. Nothing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade, or of any action against, or founded on provisions of the Tennessee Valley Authority act of 1933 with respect to actions by or against the Authority.

1-268

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FED. R. APP. P. 32(g)(1)

This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1).  The brief contains 12,432 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14.5-point Garamond.

April 4, 2025                                        /s/  Reta E. Bezak
                                                            RETA E. BEZAK