No. 23-1970

# United States Court of Appeals for the Federal Circuit

PERCIPIENT.AI, INC.,

*Plaintiff-Appellant,*

v.

UNITED STATES, CACI, INC.-FEDERAL,

*Defendants-Appellees.*

Appeal from the United States Court of Claims
No. 1:23-cv-00028-EGB, Senior Judge Eric G. Bruggink

## REPLY BRIEF OF PLAINTIFF-APPELLANT PERCIPIENT.AI, INC.

Hamish P.M. Hume
Samuel C. Kaplan
Eric J. Maurer
Gina A. Rossman
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727 (t)
(202) 237-6131 (f)
hhume@bsfllp.com
skaplan@bsfllp.com
emaurer@bsfllp.com
grossman@bsfllp.com

*Counsel for Plaintiff-Appellant*

**TABLE OF CONTENTS**

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Defendants' Answer Contradicts The Plain Text, Structure, And Legislative History Of The Relevant Statutes. .......... 2

A. Defendants' Answer Contradicts The Plain Text Of The Relevant Statutes. .......... 2

B. Defendants' Answer Contradicts The Legislative History. .......... 11

1. The Section 800 Report Supports Percipient, Not Defendants. .......... 11

2. ADRA's Intent To Give The CFC Jurisdiction Over APA *Scanwell* Claims Supports Percipient. .......... 13

II. Percipient's Answer Is Consistent With Precedent, Whereas Defendants' Is Not. .......... 15

A. Defendants' Test Contravenes The Flexible Approach Taken By This Court And The CFC. .......... 15

B. *AFGE* Does Not Constrain The Court's Ability To Articulate A More Complete Understanding Of The "Interested Party" Standard. .......... 17

III. The Policy And Purpose Of Both ADRA And FASA Support Percipient, Not Defendants. .......... 19

A. Defendants' Answer Undermines The Purpose Of Both ADRA And FASA. .......... 19

B. Defendants' Policy Arguments Are Irrelevant and Misplaced .......... 22

C. Defendants' Misstatements Of The Record Further Shows The Policy Importance Of Ruling For Percipient. .......... 24

IV. Defendants Offer No Credible Basis For Declining To Adopt The *Validata* APA Test. .......... 26

CONCLUSION ........................................................................................................ 27

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Acetris Health, LLC v. United States*,
949 F.3d 719 (Fed. Cir. 2020) ....................9, 17

*Amdahl Corp. v. Baldridge*,
617 F. Supp. 501 (D.D.C. 1985).................... 13, 14

*Arizona v. United States*,
567 U.S. 387 (2012)....................12

*CACI Inc.-Fed. v. United States*,
67 F.4th 1145 (Fed. Cir. 2023) ....................27

*CliniComp Int'l, Inc. v. United States*,
904 F.3d 1353 (Fed. Cir. 2018) ....................7

*Contractors Eng'rs Int'l, Inc. v. U.S. Dep't of Veterans Affs.*,
947 F.2d 1298 (5th Cir. 1991) ....................14

*Diaz v. United States*,
853 F.3d 1355 (Fed. Cir. 2017) ....................7

*Distributed Solutions, Inc. v. United States*
539 F.3d 1349 (Fed. Cir. 2008) .................... 7, 9, 17

*Doolin Sec. Sav. Bank, F.S.B. v. F.D.I.C.*,
53 F.3d 1395 (4th Cir. 1995) ....................13

*Int'l Genomics Consortium v. United States*,
104 Fed. Cl. 669 (2012)....................14

*Intellibridge v. United States*,
No. 24-1204 (Fed. Cl. Feb. 18, 2025)....................22

*Land Shark Shredding, LLC v. United States*,
842 F. App'x 589 (Fed. Cir. 2021) ....................7

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*,
744 F.3d 1272 (Fed. Cir. 2014) ....................18

*Michigan v. Bay Mills Indian Cmty.*,
572 U.S. 782 (2014) ........ 12

*Oak Grove Techs., LLC v. United States*,
116 F.4th 1364 (Fed. Cir. 2024) ........ 6

*Obduskey v. McCarthy & Holthus LLP*,
586 U.S. 466 (2019) ........ 12

*Palantir USG, Inc. v. United States*,
904 F.3d 980 (Fed. Cir. 2018) ........ 21

*Percipient.ai, Inc. v. United States*,
104 F.4th 839 (Fed. Cir. 2024) ........ 17

*RAMCOR Servs. Grp., Inc. v. United States*,
185 F.3d 1286 (Fed. Cir. 1999) ........ 9

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
719 F.3d 1305 (Fed. Cir. 2013) ........ 18

*Scanwell Lab'ys, Inc. v. Shaffer*,
424 F.2d 859 (D.C. Cir. 1970) ........ 13, 14, 15, 26

*SEKRI, Inc. v. United States*,
34 F.4th 1063 (Fed. Cir. 2022) ........ 16, 17

*Sys. Application & Techs., Inc. v. United States*,
691 F.3d 1374 (Fed. Cir. 2012) ........ 7

*United Servs. Auto. Ass'n v. Perry*,
102 F.3d 144 (5th Cir. 1996) ........ 13

*United States v. Crooked Arm*,
788 F.3d 1065 (9th Cir. 2015) ........ 13

*Validata Chemical Services v. United States Department of Energy*,
169 F. Supp. 3d 69 (D.D.C. 2016) ........ 26

**Statutes**

10 U.S.C. § 3453 ........ passim

28 U.S.C. § 1491 ........ passim

31 U.S.C. § 3551 ........ 3, 12, 18

40 U.S.C. § 759 ........ 3, 4

41 U.S.C. § 111 ........ 9

5 U.S.C. § 702 ........ 26, 27

**Other Authorities**

142 Cong. Rec. S11848, S11849 (Sept. 30, 1996) ........ 13

15A Fed. Proc., L. Ed. § 39:467 (2025) ........ 14

H.R. Conf. Rep. No. 104-841, at 10 (1996) ........ 13

**Regulations**

48 C.F.R. § 19.702 ........ 23

48 C.F.R. § 212.212 ........ 10, 20

# GLOSSARY

| | |
|---|---|
| ADRA | Administrative Dispute Resolution Act |
| APA | Administrative Procedure Act |
| CFC | Court of Federal Claims |
| CICA | Competition In Contracting Act |
| CV | Computer Vision |
| FASA | Federal Acquisition Streamlining Act |
| GAO | Government Accountability Office |
| GOTS | Government-Off-The-Shelf |
| GSBCA | General Services Administration Board of Contract Appeals |
| NDAA | National Defense Authorization Act |
| NGA | National Geospatial-Intelligence Agency |

## INTRODUCTION

The third prong of 28 U.S.C. § 1491(b)(1) gives the CFC jurisdiction over claims that challenge a legal violation that is "in connection with a procurement," including a violation that is not itself a solicitation or contract award. It follows that an "interested party" with standing to bring a challenge solely under that third prong cannot be determined by asking whether the person was an actual or prospective bidder for a solicitation or contract. Instead, a person is an "interested party" to bring a third-prong-only claim if it can show that "but for" the legal violation it challenges, it would be able to offer its goods or services to meet the Government's procurement needs. That person has the same direct economic interest in challenging the violation as the persons this Court has held to be interested parties in the past. Thus, Plaintiff's answer to the question applies the existing concept of "interested party" to claims brought solely under the third prong of § 1491(b)(1).

Defendants' answer is that the CICA definition of "interested party" this Court has applied in cases challenging solicitations and contract awards must be mechanically transplanted to claims that do not challenge solicitations or contract awards. They make this argument even though CICA expressly limited challenges solely to solicitations and contract awards (and related actions such as their cancellation), and did not provide for the claims later permitted by the third prong

of § 1491(b)(1). Since Defendants' approach cannot account for the ability to bring a claim solely under the third prong of § 1491(b)(1), they sprinkle in the assertion that claims under the third prong are limited to "contract formation" claims. That argument addresses a different question resolved by the CFC and the panel in Percipient's favor, and on which this Court's *en banc* Order did not seek briefing. It is also wrong for the reasons set forth in the CFC and panel opinions, including its disregard for the plain text of § 1491(b)(1).

# ARGUMENT

## I. DEFENDANTS' ANSWER CONTRADICTS THE PLAIN TEXT, STRUCTURE, AND LEGISLATIVE HISTORY OF THE RELEVANT STATUTES.

### A. Defendants' Answer Contradicts The Plain Text Of The Relevant Statutes.

Defendants assert that the only person who can be an "interested party" with standing to bring a claim under the third prong of § 1491(b)(1) is "an actual or prospective bidder or offeror for a Government contract whose direct economic interest would be affected by the award of the contract or by failure to award the contract."

In support, Defendants point to the CICA provisions that authorized protests in the GAO and General Services Administration Board of Contract Appeals ("GSBCA"). They claim those provisions defined "interested party" and provide "old soil" Congress "transplanted" into ADRA. That is incorrect. Both the GAO and GSBCA provisions of CICA expressly define "interested party" solely "with

respect to" claims challenging solicitations or contract awards (or the proposal or cancellation of either)–*not* with respect to claims that ADRA later authorized to be brought under the third prong of § 1491(b)(1).

In the GAO provisions, CICA defined "interested party" only "*with respect to a contract or a solicitation or other request for offers described in paragraph (1)*." 31 U.S.C. § 3551(2) (1996) (emphasis added).[1] It did not define "interested party" "with respect to" a claim "objecting to…any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Further, CICA defines the kind of "protest" that can be brought before the GAO as an objection to a "solicitation or other request" for a contract (or to its cancellation) or to an "award or proposed award of such a contract" (or to such an award's cancellation or termination). 31 U.S.C. § 3551(1) (1996). It contains no provision analogous to the third prong of § 1491(b)(1).

Likewise, CICA's Brooks Act amendments define "interested party" only "with respect to a contract or proposed contract described in subparagraph (A)." 40 U.S.C. § 759(f)(9)(B) (1995). That definition does not apply to claims akin to those brought solely under the third prong later enacted in § 1491(b)(1). The definition of "protest" is identical to the GAO definition. *Id.* § 759(f)(9)(A).

[1] We cite to the last version of the relevant CICA provisions in effect before ADRA was enacted, which reflects some changes from what existed when the Section 800 Report was written.

The Government tries to show otherwise, but fails. At the bottom of page 25 of its brief, the Government misleadingly mushes together selective quotes from the Brooks Act definition of "protest" in 40 U.S.C. § 759(f)(9)(A) with a convoluted mix-and-match quote from the Brooks Act jurisdictional provision of § 759(f)(1)—all in an effort to feign symmetry with the three prongs later enacted by Congress in § 1491(b)(1). This does not withstand scrutiny. Unlike the third prong of ADRA, the Brooks Act (which was limited to automated data processing procurements) only recognized a "protest" if it challenged a solicitation, a request for a contract, a contract award, a proposed award, or the cancellation (or termination) of one or the other. 40 U.S.C. § 759(f)(9)(A) (1995). Further, as discussed, the Brooks Act defines "interested party" only "with respect to a contract or proposed contract described in subparagraph (A)." 40 U.S.C. § 759(f)(9)(B). It does not purport to address who is an "interested party" that can bring claims under what was later enacted as the third prong of 28 U.S.C. § 1491(b)(1).

Likewise, the Government's chart of statutory provisions is misleading. Gov-Br.-27-28. First, it ignores that ADRA sought to give the CFC jurisdiction not just for GAO and GSBCA protests, but also for those over which the CFC previously exercised jurisdiction under its implied-in-fact contract jurisprudence and also for those brought in district courts under the APA and the *Scanwell*

decision. Second, the Government fails to recognize that CICA expressly defined the "protests" that could be brought in the GAO and GSBCA solely by reference to solicitations and contract awards, with no language mirroring that of the third prong of § 1491(b)(1).

Thus, whatever "old soil" ADRA brought over from CICA and the Brooks Act did not address who is an "interested party" that can bring a claim under the third prong of § 1491(b)(1), which did not exist in CICA or the Brooks Act. Instead, CICA and the Brooks Act specified they were defining "interested party" only "with respect to" the kinds of protests they authorized: challenges to solicitations and contract awards.

Tellingly, Defendants never attempt to address who is an "interested party" able to bring a claim under the third prong of § 1491(b)(1) if that third prong means what it says and what the CFC and the panel held it to mean. The Court need only apply the same logic that makes someone an interested party in challenging a solicitation or contract to a procurement-related violation that is not a solicitation or contract—whether, but for the alleged legal violation, the plaintiff could have offered its goods or services to meet the agency's procurement needs. If the answer is yes, then that plaintiff is an interested party.

The Government is wrong to assert that Plaintiff's position means that the phrase "interested party" has a different meaning depending on the nature of the

claim. To the contrary, in all cases, the party must be able to offer their goods or services to meet government procurement needs but for the alleged violation they challenge. But the precise application of that single meaning may vary based on the action being challenged. When the challenged action is a solicitation, the plaintiff must be a prospective bidder—someone who would and could bid but for the alleged violation in the solicitation. When the challenged action is a contract award, the plaintiff must be an actual bidder on the contract. And when the challenged action is a violation of law in connection with a procurement, courts should ask whether the plaintiff, but for that violation, would have been able to offer its goods or services to meet government procurement needs.

Defendants' position likewise would render the third prong of § 1491(b)(1) superfluous in violation of basic canons of construction. The Government responds that "this argument ignores this Court's repeated application of the CICA 'interested party' standing test in what would be prong-three cases." Gov't-Br.-42 (citing Section II(C) of its brief). But the Government predominately cites cases involving a challenge to a solicitation or contract award.[2] Of the two that do not,

---

[2] *See Oak Grove Techs., LLC v. United States*, 116 F.4th 1364, 1376-77 (Fed. Cir. 2024) (finding plaintiff was "'interested' party objecting to a contract award" and not applying third prong); *Land Shark Shredding, LLC v. United States*, 842 F. App'x 589, 592 (Fed. Cir. 2021) (not applying third prong and finding plaintiff failed to state a claim in arguing the "contracting officer should have awarded the contract to" plaintiff); *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358

*Distributed Solutions, Inc. v. United States* supports Percipient's position because the Court recognized the plaintiffs were "prospective bidders" notwithstanding the absence of a solicitation. *See* 539 F.3d 1340, 1345 (Fed. Cir. 2008); Percipient-Br.-37.[3] The Government thus fails to identify when, under its view of the statute, the third prong would provide jurisdiction over a claim that (a) would not be covered by prongs one or two, and (b) would not also encompass Percipient's claim.

The Government thus retreats to asserting that Percipient's position is "unworkable" because it supposedly has different tests for different claims. Gov't.-Br.-39. That assertion fails to address the surplusage problem. Further, there is nothing unworkable about applying the single "interested party" test in a way that takes into account the nature of the claims, as the panel did and as this Court has done in prior cases. *See* Section II, below; Percipient-Br.- 36-39.

---

(Fed. Cir. 2018) ("CliniComp challenges the VA's decision to award an EHR-system contract to Center on a sole-source basis"); *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1381 (Fed. Cir. 2012) (in challenging decision to amend or revise solicitation, plaintiff's complaint made "an unambiguous objection 'to a solicitation'" covered by Tucker Act).

[3] *Diaz v. United States*, 853 F.3d 1355, 1358-59 (Fed. Cir. 2017), focused on the second element of the "interested party" test (*i.e.*, "substantial chance of winning the contract"), and thus is inapposite. Even if understood to have implicitly found the plaintiff was a "prospective bidder," it too would support Percipient's position because it addressed the allegation that the Government had violated the law in denying the plaintiff's unsolicited proposal. *Diaz* therefore again demonstrates that the relevant question is whether the party would be able to offer its product but for the Government's violation.

Unable to provide a definition of "interested party" that accounts for the third prong of § 1491(b)(1), Defendants say the third prong must somehow be limited to "contract formation" claims. As an initial matter, this argument goes beyond what the *en banc* Court directed the parties to address.[4] And even if credited, it would not help the Government because Percipient's claim is that the NGA's violation *has* thwarted "contract formation" by preventing research on and acquisition of Percipient's commercial product.

Regardless, Defendants' interpretation of the third prong contradicts the plain text of § 1491(b)(1), which expressly provides the CFC with jurisdiction to hear claims based on an "objection to [1] a solicitation…**or** [2] to a proposed award or the award of a contract **or** [3] any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (emphasis added). The third prong stands on its own as an

[4] In its analysis of subject-matter jurisdiction, the CFC's decision expressly held that Percipient's claim properly fell within the third prong, and expressly rejected the Government's argument (made again here) that "Percipient's protest is not in connection with a procurement and is instead a challenge to NGA's administration of the SAFFIRE contract." Appx5-7. Defendants did not appeal that ruling, though they argued that if it were reversed, their interpretation of the third prong could serve as an alternative ground for affirmance. In its analysis of subject matter jurisdiction, the panel rejected that argument, and affirmed the CFC's holding. The Court's *en banc* Order stated the Court "will not revisit…subject matter jurisdiction under 28 U.S.C. § 1491(b)(1)," making clear it did not wish to revisit the decisions rejecting the Defendants' argument about the meaning of the third prong. ECF-59 at ¶ 4.

alternative to claims challenging either "a solicitation" or "the award of a contract." It contains no text that limits it to claims relating to "contract formation."

Instead, as this Court has repeatedly recognized, the statute's "operative phrase 'in connection with' is very sweeping in scope." *RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999). It encompasses any statutory violation connected to a procurement, and a procurement includes "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." *Distributed Sols., Inc.*, 539 F.3d at 1345 (emphasis omitted) (quoting 41 U.S.C. § 111); *see also Acetris Health, LLC v. United States*, 949 F.3d 719, 728 (Fed. Cir. 2020).

On its face, the third prong covers claims that an agency has violated a law or regulation "in connection with a procurement," including where the Government violates obligations that Congress expressly made applicable to the post-award acquisition process. Congress imposed such obligations in the FASA provisions at issue here, as well as other laws that apply post-award and require a preference for commercial products.

Specifically, 10 U.S.C. § 3453(c)(5) provides that heads of agencies "shall take appropriate steps to ensure that any prime contractor of a contract…engages

in such market research as may be necessary to carry out the requirements of subsection (b)(2) before making purchases for or on behalf of the Department of Defense." Subsection (b)(2), in turn, requires heads of agencies to "ensure that procurement officials in that agency, to the maximum extent practicable….require prime contractors and subcontractors at all levels under the agency contracts to incorporate commercial services, commercial products, or nondevelopmental items other than commercial products as components of items supplied to the agency." 10 U.S.C. § 3453(b)(2). These laws apply after the award of a contract. *See also* 48 C.F.R. § 212.212 (implementing NDAA and imposing requirements regarding commercial computer software that apply "at all stages of the acquisition process").

Violations of these laws are inescapably "in connection with a procurement or a proposed procurement," and providers of commercial products like Percipient have a direct economic interest in enforcing them as prospective bidders or offerors. An agency's violation of these laws prevents parties (like Percipient) from offering commercial products or services to meet agency needs, whether through a future contract with the agency or a contract with the prime contractor at the agency's behest (after actions are taken to correct the violation). Thus, the violation of these laws directly injures such a party by directly preventing it from offering its goods or services in the future. That party meets the test described by

Percipient's opening brief: but for the alleged legal violation, they would be able to offer their goods or services to meet the needs of the agency. Percipient-Br.-25-27. Such parties therefore qualify as an "interested party" who can bring a claim under the third prong of § 1491(b)(1).[5]

### B. Defendants' Answer Contradicts The Legislative History.

#### 1. The Section 800 Report Supports Percipient, Not Defendants.

The Government says that a 1993 report by the Department of Defense (called the "Section 800 Report") "formed the foundation" for "ADRA's revision of the Court of Federal Claims's bid protest jurisdiction." The Government points to the Section 800 Report's recommendation that § 1491 be amended "to provide that only interested parties, *as defined by the Competition in Contracting Act (CICA)*, can file protests." Gov't-Br.-32 (emphasis in original) (quoting the Report).

But the Government ignores that Congress went beyond the Section 800 Report's recommendations. First, the Report recommended legislation that included only the first two prongs of ADRA. Gov't-Add-57. Its proposed legislation does not include the third prong Congress ended up including in

[5] Such a party is a "prospective bidder or offeror," measured "with respect to" the violation at issue. Thus, the *AFGE* "interested party" test need only be clarified for claims brought solely under the third prong of § 1491(b)(1).

§ 1491(b)(1). It therefore cannot explain what Congress intended with that third prong, or who is an interested party with standing to bring claims under that third prong.

The Government further ignores that the Report's proposed legislation included a provision expressly defining "interested party" by reference to the CICA definition in 31 U.S.C. § 3551. But Congress chose *not* to adopt that proposed definition.

In short, the Section 800 Report cannot tell this Court who is an "interested party" to bring a claim under the third prong of § 1491(b)(1) because it (a) did not propose a third prong and (b) proposed an explicit definition of "interested party" that failed to account for the third prong, and that Congress chose not to adopt. If anything, it shows Defendants are asking the Court to adopt an "interested party" test that Congress rejected, likely because it was inapposite for third-prong claims. *E.g.*, *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 477 (2019) (drawing inference from proposals Congress rejected); *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 802 (2014) (same); *Arizona v. United States*, 567 U.S. 387, 405-07 (2012) (same).

Further, cases have refused to credit reports by executive agencies as legislative history.[6] The legislative history of ADRA cites to the Section 800 Report only once. 142 Cong. Rec. S11848, S11849 (Sept. 30, 1996). And the Report itself recognized that "further discussion and research is appropriate and encourages Congress to do so in its consideration of this legislation." Gov't-Add-56.

2. ADRA's Intent To Give The CFC Jurisdiction Over APA *Scanwell* Claims Supports Percipient.

ADRA was intended to give the CFC jurisdiction over "the full range of bid protest cases previously subject to review" in either the CFC or in the district courts under the APA, to repeal the decision in *Scanwell Lab'ys, Inc. v. Shaffer*, 424 F.2d 859 (D.C. Cir. 1970). *See AFGE*, 258 F.3d at 1300 (quoting 142 Cong. Rec. at S11849, and then citing H.R. Conf. Rep. No. 104-841, at 10 (1996)).

Prior to ADRA, various cases applying *Scanwell* held that parties could challenge subcontractor awards where the Government was "intimately involved" in the subcontractor award decision. *See Amdahl Corp. v. Baldridge*, 617 F. Supp. 501, 505-08 (D.D.C. 1985) (listing factors for determining whether agency was

[6] *See, e.g.*, *United States v. Crooked Arm*, 788 F.3d 1065, 1078 n.7 (9th Cir. 2015) (per curiam); *United Servs. Auto. Ass'n v. Perry*, 102 F.3d 144, 148 n.4 (5th Cir. 1996) (per curiam); *Doolin Sec. Sav. Bank, F.S.B. v. F.D.I.C.*, 53 F.3d 1395, 1400 n.7 (4th Cir. 1995).

involved); *Contractors Eng'rs Int'l, Inc. v. U.S. Dep't of Veterans Affs.*, 947 F.2d 1298, 1300-02 (5th Cir. 1991) (per curiam) (applying *Amdahl*). Percipient's claim is functionally analogous. As in a situation where the Government is intimately involved in a subcontract award, Percipient alleges that it has been blocked from winning a contract by the Government's violations of 10 U.S.C. § 3453.[7]

The Government argues that ADRA cannot be interpreted as adopting "stray decisions" under *Scanwell* that did not establish a "settled meaning." But the subcontractor *Scanwell* decisions are not outliers. The principle they applied continues to be applied in CFC and GAO decisions. *See Int'l Genomics Consortium v. United States*, 104 Fed. Cl. 669, 679 (2012) (asserting that a subcontract procurement can be attributed to the government where an agency relationship exists between the prime contractor and government); 15A Fed. Proc., L. Ed. § 39:467 (2025) (citing decisions and explaining the GAO will not exercise jurisdiction over subcontractor awards unless "it finds that a subcontract essentially was awarded 'by' the government").

The point is not whether these subcontractor decisions were so well-settled as to be deemed to have been adopted by Congress in ADRA. The point is that they properly applied *Scanwell* (which was based on the APA and its "zone of

[7] Percipient's opening brief explained why CFC cases rejecting so-called "subcontractor standing" are inapposite. Percipient-Br.-43-45. Defendants fail to respond.

interests" test), and Defendants never say otherwise. They therefore should guide the Court as to the kinds of cases the CFC's transplanted *Scanwell* jurisdiction covers.[8]

## II. PERCIPIENT'S ANSWER IS CONSISTENT WITH PRECEDENT, WHEREAS DEFENDANTS' IS NOT.

### A. Defendants' Test Contravenes The Flexible Approach Taken By This Court And The CFC.

As shown in our opening brief and the opinions of the panel and Judge Bruggink, both this Court and the CFC have repeatedly applied a flexible understanding of the "interested party" test to account for the circumstances of particular cases. The Government acknowledges that the "application of" the interested party definition "may differ based on the facts presented." Gov't-Br.-41. But it then argues that "an application of the existing definition is *not* 'redefin[ing]' what 'interested party' means," purporting to quote from Percipient's brief. *Id.* (alteration in original). But Percipient does not argue for "redefin[ing]" the term "interested party."[9] Instead, consistent with precedent, Percipient argues for

---

[8] While *AFGE* reasoned that the *Scanwell* jurisdiction transferred to the CFC was limited to "disappointed bidders," Percipient and the subcontractors in the cases cited above are akin to such disappointed bidders. *AFGE* addressed the different issue of whether federal employees could challenge a solicitation. Further, as shown below, this Court is not bound by the case-specific reasoning of *AFGE*.

[9] Percipient never uses any word beginning "redefin," so this is a mis-quotation.

applying the existing concept of "interested party" to a claim brought solely under the third prong.

Defendants fail to come to grips with the repeated recognition of this Court and the CFC that the "interested party" test must be applied flexibly. This is illustrated by their discussion of *SEKRI, Inc. v. United States*, 34 F.4th 1063 (Fed. Cir. 2022). Prior to that decision, to qualify as an "actual or prospective bidder" who could challenge a contract award, a party had to have actually submitted a bid by the deadline. But *SEKRI* found that where a plaintiff plausibly alleged it was a "mandatory source" for a procurement, it qualified as an "interested party" even though it failed to submit a bid by the deadline. In so doing, this Court adapted the "interested party" test to account for the facts of the case before it.

The Government says the plaintiff in *SEKRI* was a "'prospective bidder' by operation of law." But that label appears nowhere in the Court's decision and is not a principled basis for distinguishing the plaintiff in *SEKRI* from other interested parties, like Percipient, who are prevented from offering their commercial products or services based on an agency's violation of the commercial item preference law. Similarly, CACI attempts to distinguish *SEKRI* by merely saying Percipient is not a mandatory source. That misses the point that *SEKRI* shows that the "interested party" test must be adapted to the circumstances. It also ignores that 10 U.S.C. § 3453 makes commercial product offerors like Percipient

analogous to mandatory sources by requiring a preference for their products "to the maximum extent practicable." *See* ECF-72 (Nat'l Indus. for Blind Amicus) at 7-8 (likening Percipient to plaintiff in *SEKRI*).

Defendants likewise have no good answer to *Distributed Solutions*, where this Court found the plaintiffs were prospective bidders, and thus interested parties, even though there was no solicitation. 539 F.3d at 1345-46; *see also Acetris Health*, 949 F.3d at 727-28 (allowing challenge to interpretation that would have excluded the plaintiff from future procurements).

Defendants also have no answer for, and entirely ignore, the case law cited by Judge Bruggink to support his observation that case law resists the "wooden" application of standing requirements. Percipient-Br.-40 & n.8 (citing cases).

### B. *AFGE* Does Not Constrain The Court's Ability To Articulate A More Complete Understanding Of The "Interested Party" Standard.

The Government says the Court would have to overrule *AFGE* to accept Percipient's view of who is an "interested party" in a claim brought solely under prong three. That is incorrect. *AFGE* involved a challenge to a contract award, not a claim brought solely under the third prong; indeed, this Court has not yet addressed who is an interested party in a case brought solely under the third prong. *Percipient.ai, Inc. v. United States*, 104 F.4th 839, 855 (Fed. Cir. 2024) ("Percipient"); Percipient-Br-27-28. Thus, the Court at most needs to clarify the

scope of *AFGE* and apply the animating principle of its "interested party" holdings to claims brought solely under the third prong.[10]

If this Court nonetheless concludes it cannot accept Percipient's answer without "overruling" *AFGE*, it plainly has the power to do so, and should. As this Court has explained, "the implications of stare decisis are less weighty than if we were reconsidering a precedent established by the court en banc." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1316 (Fed. Cir. 2013) (en banc) (cleaned up). *Bosch* called for "good and sufficient reason" for overruling prior panel decisions. If the Court concludes *AFGE* must be overruled to adopt Percipient's answer, there is "good and sufficient reason" for doing so since that answer is the only one that makes sense of and gives meaning to the third prong of § 1491(b)(1); further, *AFGE* was indisputably not focused on the question at issue here—*i.e.*, how the test applies to a violation that is not a solicitation or contract award. Indeed, this case would meet even the standards for overturning an *en banc* decision. *See Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1283 (Fed. Cir. 2014) (overturning prior *en banc* decisions "may be

---

[10] The Government also suggests Percipient's argument could have been used to reverse the precise result in *AFGE*. That is highly questionable given that the Plaintiffs were government employees, but it also is moot because Congress already modified that result. 28 U.S.C. § 1491(b)(5); *see* 31 U.S.C. § 3551(2)(B) (providing for the right of public employee representatives to challenge the result of public-private competitions); Percipient-Br.-42 n.10.

appropriate when subsequent cases have undermined its doctrinal underpinnings, or when the precedent has proved unworkable, or when a considerable body of new experience requires changing the law." (cleaned up)). Here, "subsequent cases" since *AFGE* have shown the need for flexible application of the "interested party" test in a way that reflects the different claims and circumstances that may arise. It also does not practically work to apply the CICA definition of "interested party" to a claim brought solely under the third prong. Together, these developments show the need to clarify how the test works in a case such as this.

## III. THE POLICY AND PURPOSE OF BOTH ADRA AND FASA SUPPORT PERCIPIENT, NOT DEFENDANTS.

### A. Defendants' Answer Undermines The Purpose Of Both ADRA And FASA.

As shown above, 10 U.S.C. § 3453(c)(5) and (b)(2) impose obligations on Government agencies that unambiguously apply after a contract is awarded. To the extent Defendants are suggesting that parties like Percipient who are injured by a violation of those statutes must bring a claim in district court under the APA (but not in the CFC under § 1491(b)(1)), their position undermines the purpose of ADRA, which was intended to consolidate all procurement-related cases within the exclusive jurisdiction of the CFC. *See* Section I(B)(2), above; *see also* Gov't-Add.-52-53 (citing policy rationales for consolidating procurement cases in CFC).

By contrast, if Defendants are instead taking the position that private parties cannot object in any forum to a violation of § 3453(c)(5) and (b)(2) that causes them injuries, that would thwart the purpose of the commercial item preference enacted in FASA. Both the panel majority and Judge Bruggink recognized this. *See* Appx10 ("It would thwart Congress's intent behind § 3453 if offerors of commercial products could not bring challenges under the statute."); *Percipient*, 104 F.4th at 857 (the "statute would have minimal bite" if "parties like Percipient" are "unable to challenge statutory violations in connection with procurements"). *See also id.* (it is "difficult to conclude that the very next Congress following passage of FASA would promulgate ADRA with the intention of eliminating any meaningful enforcement of the post-award preferences for commercial items in § 3453").

Defendants have no answer to this other than to extoll the virtues of self-policing. According to the Government, NGA "has *every* incentive" to ensure its contractor procures commercial items. Dkt-90-51. But if that "incentive" were enough, Congress would not have seen the need to enact § 3453. Nor would it have decided later to reinforce those requirements. *See* 48 C.F.R. § 212.212 (implementing 2009 NDAA in area of software procurement).

Further, there have been ample illustrations of the folly of that line of thinking. These include:

- This Court's decision in *Palantir USG, Inc. v. United States*, 904 F.3d 980 (Fed. Cir. 2018). On remand, the Army conducted the legally-required market research and ultimately acquired Palantir's product (which its original solicitation precluded Palantir from offering).[11]

- NGA's blind deference to the patently-inadequate evaluation of its self-interested contractor in this case. *See* Section III(C), below.

- Recently enacted software guidelines that amicus Palantir highlights in its amicus brief. ECF-71 (Palantir Techs. Inc. Amicus) at 15-16.

The Government says Percipient could have protested the initial solicitation or teamed with another contractor and protested CACI's selection. But if the initial solicitation were all that mattered, Congress would not have enacted provisions imposing *post-award* obligations to ensure that contractors research and procure commercial products. 10 U.S.C. § 3453(b)(2), (c)(5). Congress recognized that in large, multi-year procurements, the decision to engage in wasteful development often will not occur until after an initial contract award. That is what occurred here: following the contract award, the Government insisted for months that it had not yet made a decision as to whether the CV System would be acquired as a commercial product or as the subject of a new developmental effort. *See* Percipient-Br.-10 (citing communications); Appx3-4, Appx12, Appx73-76, Appx125-130, Appx133.

---

[11] *See* Shane Harris, *Palantir Wins Competition to Build Army Intelligence System*, The Wash. Post (Mar. 26, 2019), https://www.washingtonpost.com/world/national-security/palantir-wins-competition-to-build-army-intelligence-system/2019/03/26/c6d62bf0-3927-11e9-aaae-69364b2ed137_story.html.

Moreover, by seeking to preclude enforcement of the post-award provisions, the Government would be able to eliminate enforcement of all of § 3453 by (as in this case) deferring the decision as to whether to launch a developmental effort until after award and inserting boilerplate contractual language generally requiring the use of commercial items (the violation of which could not be challenged by any injured third party).[12] In this way, the Government could dismiss pre-award challenges as premature, while immunizing itself from post-award challenges.

**B. Defendants' Policy Arguments Are Irrelevant and Misplaced**

The Government argues that a ruling for Percipient will encourage "delay" in raising protests. This ignores that NGA repeatedly assured Palantir (before and after the award to CACI) that Percipient's product would be evaluated and that no decision had been made as to whether to acquire a commercial product to meet NGA's CV needs, or instead to launch a new development project. It also ignores that Congress expressly imposed statutory obligations that apply both before and after contract award. 10 U.S.C. § 3453(b)(2) & (c)(5).

---

[12] For example, the Government specifically argued that a recent pre-award challenge to a solicitation that appeared to call for development was immune from scrutiny and at least "premature" because the solicitation included boilerplate language requiring the contractor to propose commercial products "to the maximum extent practicable." *See Intellibridge v. United States*, No. 24-1204 (Fed. Cl. Feb. 18, 2025), at Dkt. 29 at 21-23, Dkt. 39 at 13 n.2, Dkt. 55 at 7-8.

CACI asserts that a ruling for Percipient would open the door to protests under a range of statutory provisions that, according to CACI, could be brought "at any time" throughout a procurement. Even assuming that were true, it would not provide insight into the meaning of the third prong or a basis for denying jurisdiction Congress has conferred. Further, CACI fails to identify any statute or regulation, other than the one at issue here, that imposes ongoing obligations that apply after a contract's execution. With respect to the Buy American Act and the Trade Adjustment Act, CACI only quotes an executive order. CACI-Br.-33-35 (citing Executive Order 14005, 86 Fed. Reg. No. 7475 (Jan. 28, 2021)). An executive order is not a "statute or regulation" and thus appears not to fall under the plain text of the third prong of § 1491(b)(1).[13] CACI also cites a decision rejecting a protest of a prime contractor's failure to comply with a Buy American provision in a contract, but again, the violation of a contractual obligation is not a "violation of statute or regulation," and thus does not trigger the third prong of § 1491(b)(1).

CACI's discussion of provisions governing preferences for small businesses is also unavailing. It cites a regulation (48 C.F.R. § 19.702) that specifies language

[13] Section 16(c) of the cited Executive Order specifically states that it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities," or any other person.

that must be included in contracts. It also cites a statutory provision requiring contractors to submit a small business plan and stating that contractors will be in material breach of those provisions if they fail to do so. Again, a contractor's breach of contract is not a violation by the Government of a statutory or regulatory obligation, and thus does not trigger the third prong of § 1491(b)(1).

### C. Defendants' Misstatements Of The Record Further Shows The Policy Importance Of Ruling For Percipient.

Defendants' misstatements of the record further underscore the reasons for ruling in Percipient's favor. For example, CACI devotes several pages to asserting that any decision to develop the CV System was necessarily made at the time of the original contract. This argument ignores NGA's numerous statements following the award that the decision as to whether to develop the CV System had not yet been made. Percipient-Br.-10; Appx12.

Likewise, Defendants repeatedly mischaracterize Percipient's claims as addressing enforcement of CACI's contractual obligations or challenging "contract administration." *E.g.*, CACI-Br.-39-40; Gov't-Br.-51. Defendants never come to terms with the fact that Congress imposed post-award statutory obligations on the Government. This protest is about challenging NGA's violation of those statutory obligations, which apply regardless of what the contract says.

The Government also asserts that CACI concluded that a prior GOTS product "already exceeded Mirage's functionality." Gov't.-Br.-16 n.7. While

ultimately an issue for the merits on remand, that is false. The referenced "evaluation" concludes that certain Mirage functionality could be found in a GOTS product while failing to (i) evaluate the full scope of Mirage's functionality and (ii) identify a single SAFFIRE CV System requirement that Mirage could not meet. Appx966-968. The Government further ignores the statements of its own Associate Director of Capabilities, who acknowledged after a subsequent demonstration that "Mirage meets all of NGA's analytical transformation requirements." Appx11.

Defendants also claim it is somehow unclear as to what final decision Percipient challenges. It is not. Percipient challenges the decision to launch a development effort to meet NGA's needs for a CV System, rather than to conduct the needed market research that would show the existence of a commercial product that could meet those needs. By NGA's own admission, that decision was made after the decision to award the SAFFIRE contract to CACI. *See* Percipient-Br.-10; Appx12.

Finally, the Government says that "years after choosing not to participate in any way in the SAFFIRE competition , Percipient asks the Court to enable it to meddle with the administration of an ongoing contractual relationship." The timing of Percipient's protest resulted from the Government's pre- and post-award assurances that it intended to consider commercial products. Percipient-Br.-8-13.

It is now years later solely because of Defendants' efforts to mislead Percipient into believing it would eventually be given a fair opportunity to compete, and then to forestall a merits review of this case through a motion to dismiss, motion for reconsideration, opposition to expedited review, and petition for rehearing.

## IV. DEFENDANTS OFFER NO CREDIBLE BASIS FOR DECLINING TO ADOPT THE *VALIDATA* APA TEST.

Defendants largely ignore Percipient's alternative proposal that the Court adopt Judge Moss's conclusion in *Validata Chemical Services v. United States Department of Energy*, 169 F. Supp. 3d 69 (D.D.C. 2016), that parties with APA standing are "interested parties" in challenging a violation that "implicates only the third prong of ADRA's 'objecting to' test."

The Government says the APA standard should not apply because Congress did not reference the APA's statutory standing language. That is not a sound basis for disregarding *Validata*'s exhaustive reasoning, which addressed that point. *See* Percipient-Br.-47-53.[14] It is undisputed that Congress intended ADRA to give the CFC the same jurisdiction over procurement-related protests that the district courts had under *Scanwell*. *Scanwell* in turn was based on the APA and its "zone of

[14] Invoking a canon of construction governing the interpretation of different terms in the same statute, the Government says the term "interested party" in ADRA cannot have the same meaning as the statutory language in 5 U.S.C. § 702 describing who can bring an APA claim. Gov't-Br.-52-53. But those terms appear in different statutes enacted at different times, and therefore the canon of construction is inapposite.

interests" test. This background shows that Congress understood itself to be adopting the APA standard. Further, as amicus Palantir observes, adoption of the "zone-of-interests" test is dictated by this Court's recent recognition that the "interested party" test is itself rooted in statutory standing, which itself is just another name for the "zone-of-interests" test. ECF-71 at 13-14 (citing *CACI Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023)).

As a textual matter, there is no evident difference between (1) an "interested party" objecting to "any alleged violation of statute or regulation in connection with a procurement," 28 U.S.C. § 1491(b)(1), and (2) a party within the "zone of interests" of the statutory provision on which the claim is based who is "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Equating those standards is consistent with the statutory text and fulfills the purpose of ADRA.

## **CONCLUSION**

For these reasons and those set forth in the panel decision, this Court should hold that Percipient is an "interested party" under 28 U.S.C. § 1491(b)(1) and that the CFC has jurisdiction to hear Percipient's claims.

Respectfully Submitted,

By: /s/ Hamish Hume

Hamish P.M. Hume
Samuel C. Kaplan
Eric J. Maurer
Gina A. Rossman
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727 (t)
(202) 237-6131 (f)
hhume@bsfllp.com
skaplan@bsfllp.com
emaurer@bsfllp.com
grossman@bsfllp.com

Dated: May 5, 2025

*Counsel for Plaintiff-Appellant Percipient.ai, Inc.*

**CERTIFICATE OF SERVICE**

I certify that I served the foregoing on counsel of record on May 5, 2025, by use of the Court's CM/ECF system.

Dated: May 5, 2025

/s/ Hamish Hume
Hamish P.M. Hume

**CERTIFICATE OF COMPLIANCE**

I certify that pursuant to Federal Rule of Appellate Procedure 32(a) and Federal Circuit Rule 28(a)(14), the foregoing Brief was prepared in MS Word, is proportionally spaced, has a typeface of 14-point Times New Roman, and contains 6451 words, excluding those sections identified in Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

Dated: May 5, 2025

/s/ Hamish Hume
Hamish P.M. Hume